**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| GAVRIELI BRANDS LLC, a California Limited Liability Company, | |
| Plaintiff, | |
| v. | Civil Action No.: _____ |
| | JURY TRIAL DEMANDED |
| SOTO MASSINI (USA) CORP., a Delaware corporation; SOTO MASSINI S.R.L.S., an Italian limited company; and THOMAS PICHLER, an individual, | |
| Defendants. | |

---

**VERIFIED COMPLAINT FOR PATENT INFRINGEMENT, TRADE DRESS INFRINGEMENT, AND UNFAIR COMPETITION**

---

Plaintiff Gavrieli Brands LLC. ("Gavrieli") for its complaint against Defendants Soto Massini (USA) Corp., Soto Massini S.L.R.S., and Thomas Pichler (collectively "Defendants"), hereby alleges as follows:

**NATURE OF THE ACTION**

1. This is an action for patent infringement arising under the laws of the United States, 35 U.S.C. § 101 *et seq.*, trade dress infringement arising under the Federal Trademark Act of 1946, known as the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and unfair trade practices arising under the laws of the state of California, Cal. Bus. Prof. Code § 17200 *et seq.* Gavrieli is the owner of all right, title, and interest in United States Design Patents Nos. D781,035 (the "'035 patent"), D781,032 (the "'032 patent"), D781,034 (the "'034 patent"), D681,927 (the "'927

patent"), and D761,538 (the "'538 patent") (collectively, the Patents-in-Suit," attached hereto as Exs. A-E), as well as the distinctive trade dress (the "Trade Dress") associated with Tieks®.

2.      Defendants have used and continue to use the claimed designs of the Patents-in-Suit, without Gavrieli's permission, in their "Terzetto Milano" ballet flats that Defendants have made, used, offered for sale, sold, and/or imported into the United States.

3.      Defendants have incorporated and continue to incorporate the Trade Dress, without Gavrieli's permission, into the "Terzetto Milano" ballet flats that Defendants make, use, offer for sale, sell, and/or import into the United States.

4.      Gavrieli seeks, among other things, preliminary and permanent injunctive relief to stop Defendants from infringing the Patents-in-Suit and the Trade Dress; damages and/or restitution of Defendants' profits from their infringing and deceptive activities; prejudgment interest; costs and attorneys' fees; and all other relief the Court deems just and proper.

**PARTIES**

5.      Plaintiff Gavrieli Brands LLC is a California limited liability company with its principal place of business at 5731 Buckingham Parkway, Culver City, California 90230.

6.      Upon information and belief, Defendant Thomas Pichler is an officer and/or owner of Soto Massini (USA) Corp. and Soto Massini S.R.L.S and resides at 2505 Old Quarry Road, Apt. 1538 San Diego, CA 92108.  On information and belief, Mr. Pichler has ultimate decision making authority for, and control over, all Defendants' marketing, design, manufacture, sales, and offers for sale of all products, including the Accused Products identified in this Complaint.

7.      Defendant Soto Massini (USA) Corp. ("SM USA") is a Delaware corporation that conducts business in San Diego, California.  Upon information and belief, SM USA may be

served with process through its registered agent, Business Filings Incorporated, 108 West 13th Street, Wilmington, DE 19801.

8.     Defendant Soto Massini S.R.L.S. ("SM Italy") is an Italian limited company with a principal place of business at Viale Monza, 347, 20126 Milano MI, Italy.

## JURISDICTION AND VENUE

9.     This action arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, and the trademark laws of the United States, 15 U.S.C. § 1111 *et seq.*

10.     This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, 2202, the patent laws of the United States, including 35 U.S.C. § 271 *et seq.*, and the Lanham Act, 15 U.S.C. § 1114 *et seq.*  This court has the power to resolve the related state law claims under principles of pendent, supplemental, and/or ancillary jurisdiction.

11.     This Court has personal jurisdiction over SM USA because it is incorporated in Delaware, and by virtue of its sufficient minimum contacts with this forum such that the exercise of jurisdiction over SM USA will not offend traditional notions of fair play and substantial justice.

12.     This Court has personal jurisdiction over SM Italy and Mr. Pichler because, on information and belief, they have regularly and systematically transacted business in this judicial district, directly or through intermediaries, and/or committed acts of infringement in this judicial district.  SM Italy and Mr. Pichler, directly or through intermediaries such as SM USA, have also placed infringing products into the stream of commerce by offering those products for sale into this district.

13.     This Court also has personal jurisdiction over and/or venue is proper under 35 U.S.C. § 1400(b) as to SM Italy and Mr. Pichler because, upon information and belief, SM USA is the alter-ego and agent of SM Italy and Mr. Pichler, and acts solely through the direction of SM Italy and/or Mr. Pichler to the extent that it makes decisions, including decisions regarding the design, manufacture, sales, and/or offers for sale of the products identified in this Complaint. Upon information and belief, SM USA acts and is regarded as an extension of a single enterprise personal to Mr. Pichler, one that also includes SM Italy.

14.     Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c), and 1400(b) at least because each Defendant, or a related entity, alter-ego, and/or agent, (i) resides here, (ii) has committed acts of infringement and has a regular and established place of business here, (iii) is subject to personal jurisdiction here, and/or (iv) is a defendant not resident in the United States that may be sued in any district, and the joinder of a such a defendant shall be disregarded in determining where the action may be brought with respect to other defendants.

## FACTUAL ALLEGATIONS

### Gavrieli's Innovation and Industry Recognition

15.     Gavrieli is well known around the world for its Tieks® by Gavrieli line of footwear ("Tieks®"). Through Gavrieli's significant investment in research, design, development, and marketing, Tieks® has come to possess a distinctive design, instantly recognizable by its many unique features, such as the blue outsole design shown below. These unique features are essential to the Tieks® brand identity and have developed strong secondary meaning in the marketplace as a designator of the Tieks® brand. An example Tieks® shoe is shown below.



16.     Tieks® are available in over fifty (50) styles and patterns, and retail for $175 to $345 per pair.  Sold out styles and patterns of Tieks® are often resold by consumers on secondary markets, such as Poshmark and eBay, for well-above the retail price.

17.     Tieks® has received extensive and favorable media coverage on its innovative and stunning design.  In the August 2011 issue of Oprah Winfrey's O Magazine, Tieks® was selected to be on the "O List," and was again featured by Oprah in Spring 2012, as an item on her list of "Mother's Day Gifts She Really Wants."  Oprah's endorsement of Tieks® was so well-known that E! News published an article titled "Obsessions: Oprah's Ultra-Comfy Ballet Flats."

18.     Tieks® has also been recognized for the strength of the brand.  In 2012, INC Magazine featured Tieks® on its "30 Under 30" list, praising the founders for having "created a powerful brand as well as their own category of footwear."  Similarly, in 2013, Forbes listed Tieks® on its list of the "25 Most Innovative Consumer and Retail Brands" that "honor[s] . . . companies that are starting to change the way we live our lives." In 2013, Entrepreneur wrote that Tieks® had "develop[ed] a cult status."

19.     The Tieks® brand has a strong and devoted fan base, including one of the largest social media followings in the fashion world, with over one million followers on Facebook.

20.     Tieks® has been advertised and featured extensively throughout the United States, including through Gavrieli's own social media and advertising, as well as dozens of feature stories in national publications and broadcast, such Forbes, INC, and O Magazine, and the Today Show, and hundreds of blogs.  The vast majority of the articles, broadcasts, and blog posts about Tieks® focus on the distinctive blue outsole design:

- "The shoes' signature blue soles" Christina DesMarais, *The Shoes Oprah Would Wear to Work (If She Had to Walk)*, Inc. (July 2, 2012);

- "[T]he signature blue soled flats…" *An Easy Step To Empowering Other Women: Like Tieks*, Women You Should Know Blog (Mar. 12, 2013);

- "Tieks Italian leather designer flats are quickly identified by way of their signature blue bottoms," *Tieks: A Study in Stylish Social Branding*, Business 2 Community (Oct. 29, 2013);

- "These colorful, Italian leather flats with blue soles were worn by women all over the world…" Dawn Elizabeth, *Seeing Where My Blue Prints Take Me – Tieks Review*, Dawn Elizabeth Studios Blog (Mar. 2, 2015).

21.     Gavrieli has made significant investments, both in time and resources, in developing Tieks®, as well as securing the intellectual property rights that protect it.  This intellectual property includes valuable trade dress, trademark, copyright, and patent rights.

## Gavrieli's Trade Dress

22.     Through extensive and consistent advertising, promotion, and publicity of the Tieks® line of footwear, Gavrieli has obtained and holds trade dress protection in the design elements most closely associated with Tieks®.

23.     Gavrieli has owned and used its distinctive and non-functional trade dress on its footwear and featured prominently in its advertising for well over six years to identify Gavrieli as the source of the footwear.

24.     The trade dress at issue in this case consists of a distinctive blue outsole design (the "Trade Dress"), as shown below:



25.     The Trade Dress has acquired secondary meaning in the minds of consumers through Gavrieli's widespread use, sale, advertising, and promotion of its Trade Dress, and as such, is distinctive and serves to identify Tieks® by Gavrieli as the source of any shoe using the Trade Dress.

26.     The color blue on the outsole of the Trade Dress serves no functional or utilitarian purpose.

27.     To reinforce the brand significance of the color blue, Gavrieli's advertising and promotional efforts from as early as 2011 to present have consistently focused on educating the public to associate a blue outsole as applied to shoes with Tieks®.  As one example, Gavrieli markets the outsole color on Tieks® as "Tiek Blue."  The express purpose of this "look for" advertising is to establish the Trade Dress as a symbol of origin to identify that the shoes emanate only from the Tieks® brand.   Gavrieli has devoted significant resources over the years to advertise and promote its blue outsole shoes using "look for" advertising.

28.     Gavrieli's advertising in visual media since 2011 has consistently emphasized the Trade Dress and the "look for" blue theme, including, for example, emphasizing the blue outsole using blue motifs, such as blue borders and underlines. Also, Gavrieli's advertising text has used

various "blue" phrases in addition to "Tiek Blue," including, but not limited to, "Something Tiek Blue," "Say 'I Do' In Tiek Blue," "I'm Dreaming of a Tiek Blue Christmas," "All I Want for Christmas Is Tiek Blue," "A Tiek Blue Dream Come True." Moreover, Gavrieli includes a handwritten note with each pair of Tieks® sold that says: "We Look Forward to Seeing Where Your Blue Prints Take You."

29.     Gavrieli has also extensively advertised the Trade Dress on social media, including advertisements that encouraged consumers to post pictures of the blue outsole design on their Tieks® using the "Tieks" and/or "BluePrints" hashtag. Gavrieli's online advertisements emphasizing the Trade Dress reached tens of millions of people each year. Gavrieli also operates a blog called "The Blue Prints Blog," and has organized a giveaway called "The Blue Prints Box Giveaway." The Gavrieli website has a page dedicated to displaying Instagram and Facebook posts that use "#Tieks," as well as a slider on the home page dedicated to displaying Instagram and Facebook posts that use "#BluePrints." Additionally, Gavrieli's advertising text uses various "Blue Prints" phrases, including "Blue Prints & Paw Prints" and "Where are your #BluePrints taking you today?" To date, over 71,000 pictures have been posted to Instagram using "#Tieks," and over 54,000 using "#BluePrints." Below is a small sample of Gavrieli's social media advertising from 2011 to present emphasizing the blue outsole, as well as exemplary Instagram posts from consumers that used "#Tieks" and "#BluePrints" to denote the Trade Dress on the shoe.



30.     Gavrieli has for many years placed ads on different online sites, including numerous popular and highly trafficked websites, including, but not limited to, Google, Facebook, Instagram, Yahoo, New York Times, CNN, Huffington Post, Fox News, and MSN. Gavrieli's advertising is being, and has been, exposed to millions of people.  Below is an exemplary online advertisement placed by Gavrieli for Tieks®, which prominently features the color blue on the outsole.



31.     Gavrieli has spent substantial money and resources to advertise, market, and promote the Trade Dress through online and print media in the United States. The Trade Dress has also received significant media coverage in digital, broadcast, online, and print media around the United States.

32.     Gavrieli has made substantial sales of Tieks® in the United States, all of which use the Trade Dress.

33.     Through Gavrieli's continued and widespread commercial use and success of the Trade Dress, as well as its advertising, publicity, and promotion, the consuming public has come to recognize the design of the Trade Dress, which is non-functional and distinctive, and to associate it with a single source, namely, Tieks® by Gavrieli.

### Gavrieli's Design Patents

34.     On March 14, 2017, the USPTO issued U.S. Design Patent No. D781,035, titled "Shoe with Blue Outpatch Sole" ("the '035 patent"). The '035 patent claims priority to an

earlier application filed on August 10, 2011. A true and correct copy of the '035 patent is attached hereto as Exhibit A.

35.     On March 14, 2017, the USPTO issued U.S. Design Patent No. D781,032, titled "Dual-Sole Shoe with Color Outpatch Sole" ("the '032 patent"). The '032 patent claims priority to an earlier application filed on August 10, 2011. A true and correct copy of the '032 patent is attached hereto as Exhibit B.

36.     On May 14, 2017, the USPTO issued U.S. Design Patent No. D781,034, titled "Dual-Sole Shoe with Color Outpatch Sole" ("the '034 patent"). The '034 patent claims priority to an earlier application filed on August 10, 2011. A true and correct copy of the '034 patent is attached hereto as Exhibit C.

37.     On May 14, 2013, the USPTO issued U.S. Design Patent No. D681,927, titled "Shoe" ("the '927 patent"). The '927 patent claims priority to an earlier application filed on August 10, 2011. A true and correct copy of the '927 patent is attached hereto as Exhibit D.

38.     On July 19, 2016, the USPTO issued U.S. Design Patent No. D761,538, titled "Dual Sole Shoe with Outpatch Sole" ("the '538 patent"). The '538 patent claims priority to an earlier application filed on August 10, 2011. A true and correct copy of the '538 patent is attached hereto as Exhibit E.

39.     Gavrieli is the owner of all right, title, and interest in the '035, '032, '034, '927, and '538 patents ("Patents-in-Suit") with the full and exclusive right to bring suit to enforce the patent, including the right to recover for past infringement.

**Orthera: Defendant's Failed Attempt to Sell Ballet Flats With No Colored Outsole**

40.     Upon information and belief, Defendant Thomas Pichler owns Orthera, Inc., a company that at one point manufactured and offered for sale shoes marketed as the "Orthera Bailadrina." An example is shown below:



41.     Mr. Pichler has been quoted as saying that, while the Orthera Bailadrina had "medical Orthotics inside," it was available in "only 3 colors (black, beige, and brown)," and did not have a brightly colored outsole. In 2017, Mr. Pichler "test[ed] the market for the concept" but "stopped the shoe business about a year ago."

**Defendants' Misuse of Kickstarter to Sell or Offer for Sale the Accused Products**

42.     Upon information and belief, Mr. Pichler was aware of Tieks® before 2017. In an online post, Mr. Pichler commented that "with regards to creating a strong brand with dedicated followers, our admiration extends especially to the TIEKS® brand whose managers have done an amazing job in creating an ecommerce business with phenomenal management of social media that many companies and us included, can learn from as we try to build our own brand over the next years."

43.     Upon information and belief, Mr. Pichler rebranded the "Orthera Bailadrina" as "Terzetto Milano" sometime in 2017 and began marketing them under the Soto Massini brand. The two ballet flats differ in one significant way: the "Terzetto Milano" is advertised as having a blue outsole design.

| Orthera's Orthera Bailadrina | Soto Massini's Terzetto Milano |
|---|---|



44.     Defendants have offered for sale, sold, used, and/or marketed in the United States, and/or imported into the United States, the Terzetto Milano shoes ("Accused Products").

45.     As one example, Defendants have advertised the Accused Products and made them available for purchase through a Kickstarter project created by Mr. Pichler ("the Kickstarter Campaign"). Generally speaking, Kickstarter is a website that allows companies to sell pre-orders of their product to customers referred to as "backers" as a way to fund their projects. The backers who purchase products in advance through Kickstarter are the first to receive the product when the project has been successfully funded.

46.     According to the Kickstarter Campaign, Defendants ran their sales campaign from February 5, 2018 to March 17, 2018 and raised $694,417 from 3,354 backers.  From its inception and then throughout the vast majority of those 40 days, the Kickstarter Campaign only advertised images of the Terzetto Milano with a blue outsole design.  Moreover, a product catalog that Defendants advertised, marketed, promoted, distributed, and made available on the Kickstarter Campaign ("Product Catalog") depicted the Terzetto Milano with three different colored uppers (*i.e.*, the top portion of the shoe), black, red, and yellow, but, for the entire duration of the Kickstarter Campaign, every shoe in the Product Catalog was advertised as having only one color outsole: blue.  *See* Exhibit F.  An excerpt from the Product Catalog is shown below.



47.     Over 70% of the Kickstarter Campaign backers are from the United States, and Los Angeles is listed in the top five cities worldwide in numbers of backers for the Accused Products.  For between $125 and $436, backers of the Kickstarter Campaign were able to

purchase the Accused Products in different quantities. As one example, the following offer for sale was accepted 1,446 times on the Kickstarter Campaign:

**Pledge $150 or more**

1 PAIR

1 Pair in color and size of your choosing.

Post campaign price will be US$249

A size and color survey will be sent out at the end of the campaign.

INCLUDES:
- Terzetto Milano - Complete Package

ESTIMATED DELIVERY    SHIPS TO
Jun 2018              Anywhere in the world

**Reward no longer available**

1,446 backers

48.     On the Kickstarter Campaign, the offer is for delivery "[a]nywhere in the world," including the United States.

49.     As shown below, the Accused Products mimic several designs protected by Gavrieli intellectual property, including its valuable trade dress and patent rights.

50.     Instead of trying to create their own distinctive product design, Defendants chose to embark on a campaign that systematically copied Gavrieli's distinctive footwear in order to improperly trade on the goodwill Gavrieli has spent years building in the marketplace and blatantly infringing Gavrieli's intellectual property. Even a cursory comparison of Tieks® with the Accused Products reveals the extent of this misappropriation of Gavrieli's intellectual property.

51.     Table 1 below compares exemplary images of Tieks® with exemplary images of the "Terzetto Milano," taken from the Product Catalog that Defendants advertised, marketed, promoted, distributed, and made available on the Kickstarter Campaign for the entire duration of the Kickstarter Campaign.

| Table 1: Comparison of Gavrieli's Tieks® and Defendants' Terzetto Milano | |
| --- | --- |
| Tieks® by Gavrieli (in Matte Black) | Terzetto Milano (in Black) |



| Tieks® by Gavrieli (in Cardinal Red) | Terzetto Milano (in Red) |
|---|---|



| Tieks® by Gavrieli (in Mustard Yellow) | Terzetto Milano (in Yellow) |
|---|---|



52.    To further promote their infringement, Defendants' advertisements have emphasized the infringing design features of the Accused Products, including the blue outsole design used by the Accused Products.  Below is an exemplary advertisement promoting the blue outsole design used by the Accused Products.



53.    Online advertisements for Defendants' Kickstarter Campaign further emphasized the infringing design features of the Accused Products, including the blue outsole design used by the Accused Products.  Below is a small sample of advertisements promoting the blue outsole design used by the Accused Products, one of which had received over four thousand Facebook "Likes" and over nine hundred "Shares."

 

54.     Defendants' have also engaged in a concerted effort to misappropriate Gavrieli's

commercial identity.  As one example, Defendants have posted content on their social media

accounts and the Kickstarter Campaign that unabashedly copied Gavrieli's advertisements and

marketing material.





55. Defendants even copied the design of Gavrieli's webpage, down to the tagline:

- Gavrieli: "It takes 3 days and over 150 steps to make a single pair of Tieks."

- Defendants: "Handcrafted in 100 steps"

| Gavrieli's Tagline Image | Defendants' Tagline Image |
|---|---|



56. Defendants' copying has been so pervasive that they have gone so far as to copy the design of the care card Gavrieli includes with the purchase of every pair of Tieks®.

| Gavrieli's Care Card | Defendants' Care Card |
|---|---|





57.     Upon information and belief, Defendants encouraged certain backers to recruit other consumers to purchase the infringing shoes from the Kickstarter Campaign, which they did by infiltrating Gavrieli's Facebook Fan Page and advertising the infringing shoes to Gavrieli's core customer base.  As one backer posted on the Kickstarter Campaign: "I backed this kickstarter after being recruited by the Soto Facebook group members, convinced that these were the best shoes … This company seems fraudulent and it seems like they are being sued for ripping off another brand's color."

58.     Defendants' unauthorized infringement and improper sales tactics in marketing the Accused Products have enabled them to misappropriate and trade on Gavrieli's goodwill and proprietary designs.  Indeed, many backers explicitly ordered the Accused Product in a "blue" or "teal" outsole on the Kickstarter campaign, and some backers even placed orders based on the size they wore in Tieks®.

### Defendants Acknowledged Their Infringement But Pressed On

59.     On February 16, 2018, counsel for Gavrieli sent Defendants a letter notifying Defendants that the Accused Products infringed the Trade Dress and the '035 patent.

60.     In response to Gavrieli's February 16, 2018 letter, Mr. Pichler sent counsel for Gavrieli an email on March 13, 2018, in which he stated: "Rest assured that we have no interest infringing in any patent of Gavrieli." Mr. Pichler further stated: "Please give me a few days to get this sorted out. [My attorney] will be get [sic] back to you but as said above, we haven't sold a single pair of shoe and any order will be filled with product that will not violate Gavrieli's IP."

61.     On March 15, 2018, counsel for Gavrieli sent counsel for Defendants a follow-up e-mail notifying Defendants that the Accused Products, whether with a blue outsole or some other colored outsole, infringed some or all of the '032, '034, '927, and '538 patents. Counsel for Gavrieli separately communicated that the blue outsole design was used in all of the Accused Products sold and offered for sale during the vast majority of the Kickstarter Campaign.

62.     In response to Gavrieli's March 15, 2018 letter, Mr. Pichler sent counsel for Gavrieli an email on March 16, 2018, in which he stated: "I am willing to request that KickStarter withdraw the project and that no backers will be charged."

63.     Despite Defendants' acknowledgement of their infringement, Defendants continued to sell or offer for sale the Accused Products on the Kickstarter Campaign until the funding period ended at 9:01 A.M. PDT on March 17, 2018. Indeed, despite claims that they did not intend to deliver shoes with blue outsoles, the Product Catalog only depicted the Terzetto Milano with a blue outsole design for the entire duration of the Kickstarter Campaign. *See* Exhibit F. Moreover, the online advertisements that drove traffic to the Kickstarter Campaign prominently featured the blue outsole design of the Accused Products, the feature image of the Kickstarter Campaign only depicted the Accused Products with a blue outsole design until the last day of the campaign, and the majority of the product images on the Kickstarter Campaign

only depicted the Accused Products with a blue outsole design for the vast majority of the campaign.

64.     To fulfill the infringing orders, Defendants have represented in their Kickstarter project that SM Italy will manufacture the infringing shoes overseas using the funds SM USA and/or Mr. Pichler solicited in the United States.  On information and belief, SM USA and/or Mr. Pichler will receive their ill-gotten gains from Kickstarter by as early as March 30, 2018.  Upon such receipt, Defendants may transfer the ill-gotten gains to SM Italy to begin manufacturing the infringing shoes abroad.

65.     Defendants had innumerable design options for their product that would not embody the same combination of elements as the Trade Dress and Patents-in-Suit.  Nevertheless, Defendants chose to infringe Gavrieli's Trade Dress and patent rights through the design, configuration, and promotion of the Accused Products, and did so willfully to trade upon the goodwill that Gavrieli has developed in connection with the Tieks® brand.

### Defendants' Infringement of the Patents-in-Suit

66.     The Accused Products, including the Terzetto Milano sold or offered for sale by Defendants on the Kickstarter Campaign, incorporate designs that infringe the '035, '032, '034, '927, and '538 patents ("Patents-in-Suit") and thereby unlawfully misappropriate Gavrieli's patented and distinctive designs.

67.     Table 2 below compares exemplary figures from the '035 patent[1] with exemplary images of the "Terzetto Milano," taken from the Product Catalog that Defendants advertised,

---

[1] The '035 patent claims "a shoe with a blue outpatch sole."  *See* Exhibit A.  For purposes of comparison, the outsole depicted in the '035 patent figures have been colored blue.

marketed, promoted, distributed, and made available on the Kickstarter Campaign for the entire duration of the Kickstarter Campaign.

| Table 2: Comparison of the '035 Patent and the Terzetto Milano | |
|---|---|
| '035 Patent | Terzetto Milano |
|  |  |
|  |  |
|  |  |

68.    Table 3 below compares exemplary figures from the '032 patent[2] with exemplary images of the "Terzetto Milano," taken from the Product Catalog that Defendants advertised, marketed, promoted, distributed, and made available on the Kickstarter Campaign for the entire duration of the Kickstarter Campaign.

---

[2] The '032 patent claims "a dual-sole shoe with a color outpatch sole," wherein the claimed color includes "blue." *See* Exhibit B.  For purposes of comparison, the outsole depicted in the '032 patent figures have been colored blue.

Table 3: Comparison of the '032 Patent and the Terzetto Milano

| '032 Patent | Terzetto Milano |
|---|---|

69.     Table 4 below compares exemplary figures from the '034 patent[3] with exemplary

images of the "Terzetto Milano," taken from the Product Catalog that Defendants advertised,

marketed, promoted, distributed, and made available on the Kickstarter Campaign for the entire

duration of the Kickstarter Campaign.

---

[3] The '034 patent claims "a dual-sole shoe with a color outpatch sole," wherein the claimed color includes "blue." *See* Exhibit C.  For purposes of comparison, the outsole depicted in the '034 patent figures have been colored blue.



| Table 4: Comparison of the '034 Patent and the Terzetto Milano | |
|---|---|
| **'034 Patent** | **Terzetto Milano** |

70.     Table 5 below compares exemplary figures from the '927 patent with exemplary images of the "Terzetto Milano," taken from the Product Catalog that Defendants advertised, marketed, promoted, distributed, and made available on the Kickstarter Campaign for the entire duration of the Kickstarter Campaign.



| Table 5: Comparison of the '927 Patent and the Terzetto Milano | |
|---|---|
| '927 Patent | Terzetto Milano |

71.     Table 6 below compares exemplary figures from the '538 patent with exemplary images of the "Terzetto Milano," taken from the Product Catalog that Defendants advertised, marketed, promoted, distributed, and made available on the Kickstarter Campaign for the entire duration of the Kickstarter Campaign.

| Table 6: Comparison of the '538 Patent and the Terzetto Milano | |
| --- | --- |
| '538 Patent | Terzetto Milano |
|  |  |
|  |  |
|  |  |

72.     Defendants, without authorization from Gavrieli, have made, used, offered for sale, sold, and/or imported into or in the United States, and continue to make, use, offer for sale, sell, and/or import into or in the United States, the Accused Products having designs that infringe the Patents-in-Suit, including, but not limited to, the "Terzetto Milano" that Defendants sold or offered for sale on the Kickstarter Campaign.

73.     By the foregoing acts, Defendants have directly infringed, infringed under the doctrine of equivalents, contributorily infringed, and/or induced infringement of the Patents-in-Suit in violation of the 35 U.S.C. § 271.

74. Defendants have had actual notice of the '035 patent at least as early as February 16, 2018, when counsel for Gavrieli sent Defendants a letter notifying Defendants of their infringement of the '035 patent.

75. Defendants have had actual notice of the '032, '034, '927, and '538 patents at least as early as March 15, 2018, when counsel for Gavrieli sent Defendants an e-mail notifying Defendants of their infringement of the '032, '034, '927, and '538 patents.

76. Upon information and belief, Defendants' infringement of the Patents-in-Suit is, has been, and continues to be undertaken knowingly, willfully, deliberately, maliciously, and in bad faith, entitling Gavrieli to enhanced damages under 35 U.S.C. § 284 and to attorneys' fees and expenses incurred in prosecuting this action under 35 U.S.C. § 285.

77. Further, by using the Kickstarter Campaign to make sales or offers for sale of Accused Products having designs that infringe the Patents-in-Suit, Defendants have obtained $694,417 from 3,354 backers, a sum that constitutes one of a number of losses of related revenues Gavrieli could reasonably have expected to earn.

78. Upon information and belief, Defendants intend to immediately begin manufacturing and importing into the United States the Accused Products using the $694,417 that Defendants obtained by making sales or offers for sale of the Accused Products on the Kickstarter Campaign.

79. Defendants' unauthorized acts as described herein have caused and will continue to cause irreparable damage to Gavrieli and the Tieks® brand unless preliminarily and permanently restrained by this Court. Absent preliminary relief, Gavrieli will further suffer irreparable harm in the form of decreased market share, irreversible price erosion, loss of control over Gavrieli's intellectual property rights, and loss of consumer goodwill.

## Defendant's Infringement of the Trade Dress

80.     On information and belief, Defendants, in common with the rest of the trade and relevant consuming public, were well aware of the Trade Dress, and of the goodwill represented and symbolized thereby.  Notwithstanding this awareness, the Defendants sold or offered for sale competitive footwear with a blue outsole on their Kickstarter Campaign that duplicates, copies, and uses the distinctive Trade Dress.

81.     Several backers of Defendants' Kickstarter Campaign have posted comments stating that they purchased the Accused Product because of its blue outsole.

82.     Defendants have no license, authority, or other permission from Gavrieli to use the Trade Dress in connection with the design, manufacture, advertising, promotion, distribution, sale and/or offer for sale of the Accused Products.

83.     One of Gavrieli's most significant distinctions in the marketplace is its blue outsole design, which uniquely stands out from all other shoes on the market.  Gavrieli's goodwill among consumers is uniquely tied to its Trade Dress.  Defendants' copying of Gavrieli's intellectual property rights not only allows Defendants to trade on the benefits of Gavrieli's investment, it threatens to substantially diminish the goodwill that Gavrieli has developed with its consumers.  Defendants have marketed the Accused Products as a way to trade on Gavrieli's goodwill derived from its product design.

84.     Defendants have had actual notice of their infringement of the Trade Dress as early as February 16, 2018, when counsel for Gavrieli sent Defendants a letter notifying Defendants of their infringement.

85.     The Accused Products have caused and are likely to cause confusion, mistake, and deception as to their source of origin, and their unauthorized use of the Trade Dress is likely

to falsely suggest a sponsorship, connection, or association between Defendants, their products, and/or their commercial activities with Gavrieli.  For example, the public is likely to mistakenly believe that Gavrieli makes the Accused Products, that Gavrieli has authorized Defendants to use its distinctive design, or that there is some kind of relationship between Gavrieli and Defendants.

86.     Upon information and belief, Defendants' infringement of the Trade Dress has been, and continues to be undertaken knowingly, willfully, deliberately, maliciously, and in bad faith, entitling Gavrieli to enhanced damages and to attorneys' fees and expenses incurred in prosecuting this action under 15 U.S.C. § 1117.

87.     Further, by using the Kickstarter Campaign to make sales or offers for sale of Accused Products having designs that infringe the Trade Dress, Defendants have obtained $694,417 from 3,354 backers, a sum that constitutes one of a number of losses of related revenues Gavrieli could reasonably have expected to earn.

88.     Upon information and belief, Defendants intend to immediately begin manufacturing and importing into the United States the Accused Products using the $694,417 that Defendants obtained by making sales or offers for sale of the Accused Products on the Kickstarter Campaign.

89.     Defendants' unauthorized acts as described herein have caused and will continue to cause irreparable damage to Gavrieli and the Tieks brand unless preliminarily and permanently restrained by this Court.

<strong>FIRST CLAIM FOR RELIEF</strong>

<strong>(Infringement of the '035 Patent – 35 U.S.C. § 271)</strong>

90.     Paragraphs 1 through 89 are incorporated by reference as if fully stated herein.

91.     Gavrieli owns all rights, title, and interest in the '035 patent.

92. Defendants, without authorization from Gavrieli, have made, used, offered for sale, sold, and/or imported into or in the United States, and continue to make, use, offer for sale, sell, and/or import into or in the United States, the Accused Products having designs that infringe the '035 patent, including, but not limited to, the "Terzetto Milano" that Defendants sold or offered for sale on the Kickstarter Campaign.

93. By the foregoing acts, Defendants have directly infringed, infringed under the doctrine of equivalents, contributorily infringed, and/or induced infringement of the '035 patent in violation of the 35 U.S.C. § 271.

94. Defendants have had actual knowledge of the '035 patent and of their infringement of this patent at least as of February 16, 2018.

95. Upon information and belief, Defendants' infringement of the '035 patent is, has been, and continues to be undertaken knowingly, willfully, deliberately, maliciously, and in bad faith, entitling Gavrieli to enhanced damages under 35 U.S.C. § 284 and to attorneys' fees and expenses incurred in prosecuting this action under 35 U.S.C. § 285.

96. Further, through sales of the Accused Products on the Kickstarter Campaign, Defendants have obtained $694,417 from 3,354 backers, a sum that constitutes one of a number of losses of related revenues Gavrieli could reasonably have expected to earn.

97. Upon information and belief, Defendants have gained profits by virtue of their infringement of the '035 patent.

98. Upon information and belief, Defendants have obtained further investment by virtue of their infringement of the '035 patent.

99. As a direct and proximate result of Defendants' infringement of the '035 patent, Gavrieli has been and continues to be damaged in an amount yet to be determined.

100.   Gavrieli will suffer and is suffering irreparable harm from Defendant's infringement of the '035 patent. Gavrieli has no adequate remedy at law and is entitled to an injunction against Defendants' infringement of the '035 patent. Unless enjoined by this Court, Defendants will continue their infringing conduct, thereby causing Gavrieli to further sustain irreparable damage, loss, and injury, for which Gavrieli has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF

### (Infringement of the '032 Patent – 35 U.S.C. § 271)

101.   Paragraphs 1 through 89 are incorporated by reference as if fully stated herein.

102.   Gavrieli owns all rights, title, and interest in the '032 patent.

103.   Defendants, without authorization from Gavrieli, have made, used, offered for sale, sold, and/or imported into or in the United States, and continue to make, use, offer for sale, sell, and/or import into or in the United States, the Accused Products having designs that infringe the '032 patent, including, but not limited to, the "Terzetto Milano" that Defendants sold or offered for sale on the Kickstarter Campaign.

104.   By the foregoing acts, Defendants have directly infringed, infringed under the doctrine of equivalents, contributorily infringed, and/or induced infringement of the '032 patent in violation of the 35 U.S.C. § 271.

105.   Defendants have had actual knowledge of the '032 patent and of their infringement of this patent at least as of March 15, 2018.

106.   Upon information and belief, Defendants' infringement of the '032 patent is, has been, and continues to be undertaken knowingly, willfully, deliberately, maliciously, and in bad faith, entitling Gavrieli to enhanced damages under 35 U.S.C. § 284 and to attorneys' fees and expenses incurred in prosecuting this action under 35 U.S.C. § 285.

107. Further, through sales of the Accused Products on the Kickstarter Campaign, Defendants have obtained $694,417 from 3,354 backers, a sum that constitutes one of a number of losses of related revenues Gavrieli could reasonably have expected to earn.

108. Upon information and belief, Defendants have gained profits by virtue of their infringement of the '032 patent.

109. Upon information and belief, Defendants have obtained further investment by virtue of their infringement of the '032 patent.

110. As a direct and proximate result of Defendants' infringement of the '032 patent, Gavrieli has been and continues to be damaged in an amount yet to be determined.

111. Gavrieli will suffer and is suffering irreparable harm from Defendant's infringement of the '032 patent. Gavrieli has no adequate remedy at law and is entitled to an injunction against Defendants' infringement of the '032 patent. Unless enjoined by this Court, Defendants will continue their infringing conduct, thereby causing Gavrieli to further sustain irreparable damage, loss, and injury, for which Gavrieli has no adequate remedy at law.

## THIRD CLAIM FOR RELIEF

### (Infringement of the '034 Patent – 35 U.S.C. § 271)

112. Paragraphs 1 through 89 are incorporated by reference as if fully stated herein.

113. Gavrieli owns all rights, title, and interest in the '034 patent.

114. Defendants, without authorization from Gavrieli, have made, used, offered for sale, sold, and/or imported into or in the United States, and continue to make, use, offer for sale, sell, and/or import into or in the United States, the Accused Products having designs that infringe the '034 patent, including, but not limited to, the "Terzetto Milano" that Defendants sold or offered for sale on the Kickstarter Campaign.

115.    By the foregoing acts, Defendants have directly infringed, infringed under the doctrine of equivalents, contributorily infringed, and/or induced infringement of the '034 patent in violation of the 35 U.S.C. § 271.

116.    Defendants have had actual knowledge of the '034 patent and of their infringement of this patent at least as of March 15, 2018.

117.    Upon information and belief, Defendants' infringement of the '034 patent is, has been, and continues to be undertaken knowingly, willfully, deliberately, maliciously, and in bad faith, entitling Gavrieli to enhanced damages under 35 U.S.C. § 284 and to attorneys' fees and expenses incurred in prosecuting this action under 35 U.S.C. § 285.

118.    Further, through sales of the Accused Products on the Kickstarter Campaign, Defendants have obtained $694,417 from 3,354 backers, a sum that constitutes one of a number of losses of related revenues Gavrieli could reasonably have expected to earn.

119.    Upon information and belief, Defendants have gained profits by virtue of their infringement of the '034 patent.

120.    Upon information and belief, Defendants have obtained further investment by virtue of their infringement of the '034 patent.

121.    As a direct and proximate result of Defendants' infringement of the '034 patent, Gavrieli has been and continues to be damaged in an amount yet to be determined.

122.    Gavrieli will suffer and is suffering irreparable harm from Defendant's infringement of the '034 patent.  Gavrieli has no adequate remedy at law and is entitled to an injunction against Defendants' infringement of the '034 patent.  Unless enjoined by this Court, Defendants will continue their infringing conduct, thereby causing Gavrieli to further sustain irreparable damage, loss, and injury, for which Gavrieli has no adequate remedy at law.

## FOURTH CLAIM FOR RELIEF

## (Infringement of the '927 Patent – 35 U.S.C. § 271)

123. Paragraphs 1 through 89 are incorporated by reference as if fully stated herein.

124. Gavrieli owns all rights, title, and interest in the '927 patent.

125. Defendants, without authorization from Gavrieli, have made, used, offered for sale, sold, and/or imported into or in the United States, and continue to make, use, offer for sale, sell, and/or import into or in the United States, the Accused Products having designs that infringe the '927 patent, including, but not limited to, the "Terzetto Milano" that Defendants sold or offered for sale on the Kickstarter Campaign.

126. By the foregoing acts, Defendants have directly infringed, infringed under the doctrine of equivalents, contributorily infringed, and/or induced infringement of the '927 patent in violation of the 35 U.S.C. § 271.

127. Defendants have had actual knowledge of the '927 patent and of their infringement of this patent at least as of March 15, 2018.

128. Upon information and belief, Defendants' infringement of the '927 patent is, has been, and continues to be undertaken knowingly, willfully, deliberately, maliciously, and in bad faith, entitling Gavrieli to enhanced damages under 35 U.S.C. § 284 and to attorneys' fees and expenses incurred in prosecuting this action under 35 U.S.C. § 285.

129. Further, through sales of the Accused Products on the Kickstarter Campaign, Defendants have obtained $694,417 from 3,354 backers, a sum that constitutes one of a number of losses of related revenues Gavrieli could reasonably have expected to earn.

130. Upon information and belief, Defendants have gained profits by virtue of their infringement of the '927 patent.

131.    Upon information and belief, Defendants have obtained further investment by virtue of their infringement of the '927 patent.

132.    As a direct and proximate result of Defendants' infringement of the '927 patent, Gavrieli has been and continues to be damaged in an amount yet to be determined.

133.    Gavrieli will suffer and is suffering irreparable harm from Defendant's infringement of the '927 patent.  Gavrieli has no adequate remedy at law and is entitled to an injunction against Defendants' infringement of the '927 patent.  Unless enjoined by this Court, Defendants will continue their infringing conduct, thereby causing Gavrieli to further sustain irreparable damage, loss, and injury, for which Gavrieli has no adequate remedy at law.

### FIFTH CLAIM FOR RELIEF

### (Infringement of the '538 Patent – 35 U.S.C. § 271)

134.    Paragraphs 1 through 89 are incorporated by reference as if fully stated herein.

135.    Gavrieli owns all rights, title, and interest in the '538 patent.

136.    Defendants, without authorization from Gavrieli, have made, used, offered for sale, sold, and/or imported into or in the United States, and continue to make, use, offer for sale, sell, and/or import into or in the United States, the Accused Products having designs that infringe the '538 patent, including, but not limited to, the "Terzetto Milano" that Defendants sold or offered for sale on the Kickstarter Campaign.

137.    By the foregoing acts, Defendants have directly infringed, infringed under the doctrine of equivalents, contributorily infringed, and/or induced infringement of the '538 patent in violation of the 35 U.S.C. § 271.

138.    Defendants have had actual knowledge of the '538 patent and of their infringement of this patent at least as of March 15, 2018.

139. Upon information and belief, Defendants' infringement of the '538 patent is, has been, and continues to be undertaken knowingly, willfully, deliberately, maliciously, and in bad faith, entitling Gavrieli to enhanced damages under 35 U.S.C. § 284 and to attorneys' fees and expenses incurred in prosecuting this action under 35 U.S.C. § 285.

140. Further, through sales of the Accused Products on the Kickstarter Campaign, Defendants have obtained $694,417 from 3,354 backers, a sum that constitutes one of a number of losses of related revenues Gavrieli could reasonably have expected to earn.

141. Upon information and belief, Defendants have gained profits by virtue of their infringement of the '538 patent.

142. Upon information and belief, Defendants have obtained further investment by virtue of their infringement of the '538 patent.

143. As a direct and proximate result of Defendants' infringement of the '538 patent, Gavrieli has been and continues to be damaged in an amount yet to be determined.

144. Gavrieli will suffer and is suffering irreparable harm from Defendant's infringement of the '538 patent. Gavrieli has no adequate remedy at law and is entitled to an injunction against Defendants' infringement of the '538 patent. Unless enjoined by this Court, Defendants will continue their infringing conduct, thereby causing Gavrieli to further sustain irreparable damage, loss, and injury, for which Gavrieli has no adequate remedy at law.

## SIXTH CLAIM FOR RELIEF

### (Federal Trade Dress Infringement and Unfair Competition – 15 U.S.C. § 1125(a))

145. Paragraphs 1 through 89 are incorporated by reference as if fully stated herein.

146. Since as early as 2011, Gavrieli has used and marketed its Tieks® line of footwear, which embodies the Trade Dress, in interstate commerce to identify it as the source of

Tieks®. The Trade Dress is unique, arbitrary, and non-functional, and has acquired secondary meaning in the minds of consumers and resulted in a belief that goods embodying the Trade Dress emanate from a single source through substantial sales over many year, and substantial promotional and advertising activities calling consumers' attention to the blue outsole design comprising the Trade Dress.

147.　The Tieks® footwear which embody the Trade Dress are extremely popular among the relevant consumers and has been widely promoted by Gavrieli through numerous channels of trade. Upon information and belief, Defendants have marketed, offered for sale, and sold the Accused Products to the identical group of consumers as Gavrieli via the same channels of trade as Gavrieli.

148.　Gavrieli's rights in the Trade Dress were established many years before Defendants' first use of the Trade Dress in their Accused Products or any other product embodying the Trade Dress.

149.　The design of Defendants' Accused Products uses the Trade Dress, and so resembles it in appearance and overall commercial impression that the Accused Products are likely to cause confusion or mistake, or to deceive consumers as to the affiliation, connection, or association of Defendants with Gavrieli, or to the origin, sponsorship, or approval by Gavrieli of Defendants' Accused Products.

150.　Defendants' manufacture, promotion, and/or distribution of the Accused Products, which copy and use the Trade Dress, enables Defendants to benefit unfairly from Gavrieli's reputation, success, and goodwill in its Trade Dress.

151.　Defendants' actions constitute false designation of origin, false endorsement, and unfair competition in violation of 15 U.S.C. § 1125(a).

152.    Upon information and belief, Defendants were aware of the Trade Dress at the time the Accused Products were designed, manufactured, offered for sale, and/or sold. Accordingly, Defendants' infringement has been and continues to be intentional and willful, calculated specifically to trade off the goodwill that Gavrieli has developed in regards to its successful Tieks® line of footwear, making this an exceptional case under 15 U.S.C. § 1117.

153.    Gavrieli has been and will continue to be irreparably harmed and damaged by Defendants' conduct, and Gavrieli lacks an adequate remedy at law to compensate for this harm and damage unless restrained by this Court entitling it to injunctive relief.

154.    Further, by their sales through the Kickstarter Campaign, Defendants have obtained $694,417 from 3,354 backers, a sum that constitutes one of a number of losses of related revenues Gavrieli could reasonably have expected to earn.

155.    Upon information and belief, Defendants have obtained further investment by virtue of their infringement of the Trade Dress.

156.    Gavrieli has also sustained damages as a direct and proximate result of Defendants' infringement of the Trade Dress in an amount to be proven at trial, including Defendants' profits and/or gains of any kind resulting from its acts of infringement.

157.    Upon information and belief, Defendants have engaged in acts of trade dress infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), with knowledge of the exclusive rights of Gavrieli to the Trade Dress in connection with identical goods, and Defendants continue in such acts of trade dress infringement, thus entitling Gavrieli to an award of its actual damages, Defendants' profits, enhanced and exemplary damages, including treble its actual damages, an award of costs, destruction of the Accused Products, and, this being an exceptional case, reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

# SEVENTH CLAIM FOR RELIEF

## (Common Law Trade Dress Infringement and Unfair Competition)

158.    Paragraphs 1 through 89 are incorporated by reference as if fully stated herein.

159.    Since as early as 2011, Gavrieli has utilized and marketed its Tieks® footwear, which embody the Trade Dress. The Trade Dress is unique, arbitrary, and non-functional, and has acquired secondary meaning in the minds of consumers and resulted in a belief that goods embodying the Trade Dress emanate from a single source.

160.    The Tieks® line of footwear which embodies the Trade Dress is extremely popular among the relevant consumers and has been widely promoted by Gavrieli through numerous channels of trade. Upon information and belief, Defendants have marketed, offered for sale, and sold the Accused Products to the identical group of consumers as Gavrieli via the same channels of trade as Gavrieli.

161.    Defendants have misappropriated the Trade Dress by offering for sale or selling competitive footwear using the Trade Dress. The design of Defendants' Accused Products so resembles the Trade Dress in appearance and overall commercial impression that the Accused Products are likely to cause confusion or mistake, or to deceive consumers as to the affiliation, connection, or association of Defendants with Gavrieli, or to the origin, sponsorship, or approval by Gavrieli of Defendants' Accused Products.

162.    Defendants' manufacture, promotion, and/or distribution of the Accused Products uses the Trade Dress, enabling Defendants to benefit unfairly from Gavrieli's reputation, success, and goodwill in its Trade Dress.

163.    Upon information and belief, Defendants were aware of the Trade Dress at the time the Accused Products were designed, manufactured, offered for sale, and/or sold. Accordingly, Defendants' infringement has been and continues to be intentional and willful.

164.    Gavrieli has been and will continue to be irreparably harmed and damaged by Defendants' conduct, and Gavrieli lacks an adequate remedy at law to compensate for this harm and damage.

165.    Further, by their sales through the Kickstarter Campaign, Defendants have obtained $694,417 from 3,354 backers, a sum that constitutes one of a number of losses of related revenues Gavrieli could reasonably have expected to earn.

166.    Upon information and belief, Defendants have obtained further investment by virtue of their infringement of the Trade Dress.

167.    Gavrieli has also sustained damages as a direct and proximate result of Defendants' infringement of the Trade Dress in an amount to be proven at trial, including Defendants' profits and/or gains of any kind resulting from its acts of infringement.

168.    Because Defendants' actions have been willful, Gavrieli is entitled to exemplary and punitive damages, an award of costs, and reasonable attorneys' fees.

## EIGHTH CLAIM FOR RELIEF

### (Unfair Competition – California Business and Professions Code § 17200, *et seq.*)

169.    Paragraphs 1 through 89 are incorporated by reference as if fully stated herein.

170.    Defendants' use of a copy, variation, simulation, or colorable imitation of Gavrieli's Trade Dress in connection with its sales and offers for sale of the Accused Products, at least as described above in regards to the Sixth and Seventh Claims for Relief, constitutes an unfair, unlawful, and/or deceptive trade practice by creating a likelihood of confusion or of

misunderstanding as to the source, sponsorship, approval, or certification of Defendants' goods and/or services, or by creating a likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, Gavrieli.

171. Defendants' acts are in violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 (2010), *et seq.*

172. As a consequence of the foregoing, Gavrieli has suffered and will continue to suffer irreparable harm and loss.

## NINTH CLAIM FOR RELIEF

### (Unjust Enrichment)

173. Paragraphs 1 through 89 are incorporated by reference as if fully stated herein.

174. As a result of the conduct alleged herein, Defendants have been unjustly enriched to Gavrieli's detriment. Gavrieli therefore seeks an accounting and disgorgement of all ill-gotten gains and profits resulting from Defendants' inequitable activities.

## DEMAND FOR JURY TRIAL

175. In accordance with Federal Rule of Civil Procedure 38 and Local Rule 38.1, Gavrieli respectfully demands a jury trial of all issues triable to a jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, Gavrieli prays for judgement against Defendants as follows:

A. A judgment and order adjudicating and declaring that Defendants have infringed each of the Patents-in-Suit;

B. A judgment and order adjudicating and declaring that Defendants have infringed the Trade Dress;

C.   A judgment and order adjudicating and declaring that Defendants have engaged in unfair competition in violation of California's Unfair Competition Law;

D.   A judgment and order preliminarily and permanently enjoining Defendants, their officers, agents, servants, employees, attorneys and all persons in active concert or participation with Defendants from further infringement of the Patents-in-Suit and the Trade Dress;

E.   A judgment and order that Defendants must account and pay actual damages (but no less than a reasonable royalty), to Gavrieli for Defendants' infringement of the Patents-in-Suit and the Trade Dress;

F.   A judgment and order awarding Gavrieli the total profits realized by Defendants from their infringement of the Patents-in-Suit pursuant to 35 U.S.C. § 289;

G.   A judgment and order declaring that Defendants have willfully infringed the Patents-in-Suit and the Trade Dress;

H.   A judgment and order awarding Gavrieli enhanced damages up to three times any amount ordered under 35 U.S.C. § 284 and the amount found as actual damages for Defendants' trade dress infringement under 15 U.S.C. § 1117(a);

I.   A judgment and order awarding Gavrieli all damages sustained as a result of Defendants' willful infringement of the Trade Dress described above, and the total profits realized by Defendants from such willful infringement, together with appropriate interest thereon, pursuant to 15 U.S.C. § 1117;

J.   A determination that this is an exceptional case under 35 U.S.C. § 285;

K.   A determination that this is an exceptional case under 15 U.S.C. § 1117;

L. A judgement and order awarding Gavrieli punitive damages pursuant to California Civil Code § 3294;

M. A judgment and order awarding Gavrieli its reasonable attorneys' fees;

N. A judgment and order awarding Gavrieli its costs, expenses, and interest, including pre-judgment interest, as provided for by 35 U.S.C. § 284 and 15 U.S.C. § 1117(a);

O. A judgment and order awarding Gavrieli both pre-judgment and post-judgment interest on each and every monetary award;

P. Granting Gavrieli such other and further relief as the Court deems just and appropriate, or that Gavrieli may be entitled to as a matter of law or equity.

March 26, 2018

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By:    _/s/ David W. Marston Jr._
David W. Marston Jr., Bar No. 3972
david.marston@morganlewis.com
Amy M. Dudash, Bar No. 5741
amy.dudash@morganlewis.com
The Nemours Building
1007 North Orange Street, Suite 501
Wilmington, DE  19801
Telephone: +1.302.574.3000
Facsimile:+1.302.574.3001

*Attorneys for Plaintiff*
*GAVRIELI BRANDS LLC*

Michael J. Lyons (*pro hac vice* motion forthcoming)
michael.lyons@morganlewis.com
Ehsun Forghany (*pro hac vice* motion forthcoming)
ehsun.forghany@morganlewis.com
1400 Page Mill Road

Palo Alto, CA 94304
Telephone: 1.650.843.4000
Facsimile: 1.650.843.4001

Sharon M. Smith (*pro hac vice* motion forthcoming)
sharon.smith@morganlewis.com
Brett A. Lovejoy, Ph.D (*pro hac vice* motion forthcoming)
brett.lovejoy@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone: 1.415.442.1000
Facsimile: 1.415.442.1001

*Attorneys for Plaintiff*
*GAVRIELI BRANDS LLC*

## **VERIFICATION**

I, Kfir Gavrieli, declare under penalty of perjury as follows:

I am the Chief Executive Officer of Gavrieli Brands LLC and as such am authorized to execute this verification. I have read the foregoing Verified Complaint and am familiar with the allegations and statements therein. I hereby verify that those allegations and statements in the Verified Complaint are true and correct to the best of my information, knowledge, and belief.



CAMILLE JOHNSON
Notary Public – California
Los Angeles County
Commission # 2189045
My Comm. Expires Mar 31, 2021

_____
Kfir Gavrieli

Sworn and subscribed before me this $23$ day of March, 2018.

_____
Notary Public

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**          **CIVIL CODE § 1189**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California )
County of _Los Angeles_ )

On _March 23, 2018_ before me, _Camille Johnson_,
        Date                          Here Insert Name and Title of the Officer

personally appeared _Kfir Gavrieli_
                     Name(s) of Signer(s)

_____,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
              Signature of Notary Public

CAMILLE JOHNSON
Notary Public – California
Los Angeles County
Commission # 2189045
My Comm. Expires Mar 31, 2021

        Place Notary Seal Above

────────────────── **OPTIONAL** ──────────────────
*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: _____
Document Date: _____       Number of Pages: _____
Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

| | |
|---|---|
| Signer's Name: _____ | Signer's Name: _____ |
| ☐ Corporate Officer — Title(s): _____ | ☐ Corporate Officer — Title(s): _____ |
| ☐ Partner — ☐ Limited ☐ General | ☐ Partner — ☐ Limited ☐ General |
| ☐ Individual ☐ Attorney in Fact | ☐ Individual ☐ Attorney in Fact |
| ☐ Trustee ☐ Guardian or Conservator | ☐ Trustee ☐ Guardian or Conservator |
| ☐ Other: _____ | ☐ Other: _____ |
| Signer Is Representing: _____ | Signer Is Representing: _____ |

©2016 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)    Item #5907