# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

GAVRIELI BRANDS LLC, a California
Limited Liability Company,

      Plaintiff,

     v.

SOTO MASSINI (USA) CORP., a Delaware
corporation; and THOMAS PICHLER, an
individual,

      Defendants.

Case No. 18-cv-00462-MN

---

## PLAINTIFF GAVRIELI BRANDS LLC'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 37(b)

John V. Gorman (DE Bar No. 6599)
David W. Marston, Jr. (DE Bar No. 3972)
Amy M. Dudash (DE Bar No. 5741)
**MORGAN, LEWIS & BOCKIUS LLP**
The Nemours Building
1007 North Orange Street
Suite 501
Wilmington, Delaware 19801
Telephone:  302.574.3000
Fax:  302.574.3001
john.gorman@morganlewis.com
david.marston@morganlewis.com
amy.dudash@morganlewis.com

Michael J. Lyons (admitted *pro hac vice*)
Ehsun Forghany (admitted *pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
1400 Page Mill Road
Palo Alto, CA 94304
Telephone: 1.650.843.4000
michael.lyons@morganlewis.com
ehsun.forghany@morganlewis.com

Sharon R. Smith (admitted *pro hac vice*)
Brett A. Lovejoy, Ph.D (admitted *pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone: 1.415.442.1000
sharon.smith@morganlewis.com
brett.lovejoy@morganlewis.com

*Attorneys for Plaintiff Gavrieli Brands, LLC*

Dated: March 13, 2019

# TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF PROCEEDINGS ........................................................................... 1

SUMMARY OF THE ARGUMENT ....................................................................................... 1

CONCISE STATEMENT OF FACTS ...................................................................................... 2

ARGUMENT ...................................................................................................................... 3

I.     LEGAL STANDARD ................................................................................................. 3

II.    DEFENDANTS VIOLATED THIS COURT'S DISCOVERY ORDER .......................... 4

       A.     Defendants Failed to Produce All Customer Communications Referencing
              "Gavrieli" and/or "Tieks" ............................................................................... 4

       B.     Defendants Failed to Produce All Sales Orders for the Accused Products .......... 5

III.   GAVRIELI HAS BEEN SEVERELY PREJUDICED BY DEFENDANTS'
       DISCOVERY MISCONDUCT .................................................................................... 9

IV.    DEFENDANTS' MISCONDUCT WARRANTS SEVERE SANCTIONS ................... 11

       A.     Findings of Infringement Should Be Ordered ................................................... 12

       B.     Adverse Jury Instructions Should Be Ordered .................................................. 15

              1.     An Adverse Jury Instruction Should Be Given Concerning the
                     Withheld Sales of the Accused Products ................................................. 15

              2.     An Adverse Jury Instruction Should Be Given Concerning the
                     Withheld Customer Communications ....................................................... 18

       C.     Monetary Sanctions Should Be Ordered ........................................................... 19

       D.     Sanctions Should Be Applied Jointly and Severely to SM USA and Pichler ...... 20

V.     CONCLUSION ........................................................................................................ 20

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Alexsam, Inc. v. IDT Corp.*
  715 F.3d 1336 (Fed. Cir. 2013)................................................................12

*In re Bear Stearns*
  308 F.R.D. 113 (S.D.N.Y. 2015) ..............................................................19

*Chambers v. NASCO*
  501 U.S. 32 (1991)......................................................................................3

*Chrysler Corp. v. Carey*
  186 F.3d 1016 (8th Cir. 1999) ............................................................11, 12

*Ciba Specialty Chem. Corp. v. Zinkan Enter. Inc.*
  2003 WL 22309275 (S.D. Ohio Jul. 29, 2003)........................................13

*Coca-Cola Bottling Co. v. Coca-Cola Co.*
  110 F.R.D. 363 (D. Del. 1986) (Schwartz, J.) ...................................11, 19

*Comiskey v. JFTJ Corp.*
  989 F.2d 1007 (8th Cir. 1993) ...................................................................3

*DeCastro v. Kavadia*
  309 F.R.D. 167 (S.D.N.Y. 2015) ..............................................................15

*Derzack v. County of Allegheny, Pa.*
  173 F.R.D. 400 (W.D. Pa. 1996), *judgment aff'd*, 118 F.3d 1575 (3d Cir.
  1997) .........................................................................................................12

*DiGregorio v. First Rediscount Corp.*
  506 F.2d 781 (3d Cir. 1974)................................................................3, 7, 9

*Dong Ah Tire & Rubber Co. v. Glasforms, Inc.*
  2009 WL 1949124 (N.D. Cal. Jul. 2, 2009), *modified by*, 2009 WL 2485556
  (N.D. Cal. Aug. 12, 2009)........................................................................15

*Eash v. Riggins Trucking Inc.*
  757 F.2d 557 (3d Cir. 1985) (*en banc*) ......................................................3

*First Mariner Bank v. Res. Law Grp.*
  2013 U.S. Dist. LEXIS 153299 (D. Md. Oct. 24, 2013).......................9, 16

*GE Harris Ry. Elecs., LLC v. Westinghouse Air Brake Cor.*
  2004 WL 5702740 (D. Del. Mar. 29, 2004) (Sleet, J.) ............................11

**TABLE OF AUTHORITIES**
(continued)

Page

*Greatbatch Ltd. v. AVX Corp.*
179 F. Supp. 3d 370, 383 (D. Del. 2016) (Stark, J.) ............................................................12

*Haeger v. Goodyear Tire & Rubber Co.*
906 F. Supp. 2d 938 (D. Ariz. 2012) ...........................................................................9

*Hawk Mountain LLC v. Mirra*
2016 WL 3176566 (D. Del. Jun. 3, 2016) ..................................................................3

*Hyde & Drath v. Baker*
24 F.3d 1162 (9th Cir. 1994) ..............................................................................19, 20

*Imagenetix, Inc. v. Robinson Pharma, Inc.*
2017 WL 8940118 (C.D. Cal. Jan. 12, 2017), *modified by*, 2017 WL 570708
(C.D. Cal. Feb. 13, 2017)....................................................................................16

*Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*
456 U.S. 694 (1982)..........................................................................................14

*Liafail, Inc. v. Learning 2000, Inc.*
2002 WL 31954396 (D. Del. Dec. 23, 2002) (Sleet, J.) ...........................................17

*Mali v. Fed. Ins. Co.*
720 F.3d 387 (2d Cir. 2013).................................................................................17

*Micron Tech., Inc. v. Rambus Inc.*
917 F. Supp. 2d 300 (D. Del. 2013) (Robinson, J.) ................................................14

*Monsanto Co. v. Ralph*
382 F.3d 1374 (Fed. Cir. 2004)........................................................................12, 13

*Mosel Vitelic Corp. v. Micron Tech., Inc.*
162 F. Supp. 2d 307 (D. Del. 2000) (J. Sleet)......................................................18

*Navellie v. Sletten*
262 F.3d 923 (9th Cir. 2001) .............................................................................17

*In re O'Brien*
351 F.3d 832 (8th Cir. 2003) ............................................................................11

*Reilly v. Natwest Markets Group Inc.*
181 F.3d 253 (2d Cir. 1999)..............................................................................16

*Sellon v. Smith*
112 F.R.D. 9 (D. Del. 1986) (Longobardi, J.).........................................................3

## TABLE OF AUTHORITIES
(continued)

**Page**

*SynQor, Inc. v. Artesyn Technologies, Inc.*
709 F.3d 1365 (Fed. Cir. 2013).............................................................................14

*Tessera, Inc. v. Sony Corp.*
2013 WL 5692109 (N.D. Cal. 2013) ......................................................................16

*In re Wechsler*
121 F. Supp. 2d 404 (D. Del. 2000) (Sleet, J.)......................................................19

**Rules and Regulations**

Fed. R. Civ. P. 37 .................................................................................... *passim*

iv

## NATURE AND STAGE OF PROCEEDINGS

On February 11, 2019, this Court granted Gavrieli's motion to compel (D.I. 93, 98) and ordered Defendants Soto Massini (USA) Corp. ("SM USA") and Mr. Thomas Pichler to "produce the documents that are requested within two weeks," which included, among other things, all sales order records generated by customer purchases of the Accused Products and all customer e-mails referencing "Gavrieli" or "Tieks." Ex. 1 ("Hr'g. Tr.") at 37:13-39:19 ("Order"). Despite finding Defendants' decision to withhold these documents "disturbing" and being "troubled" by their "changing positions on the existence of those documents," this Court declined to impose sanctions at that time because "I am not yet convinced that I am in a position to issue sanctions of the type that are requested by plaintiff." *Id*.

After more than three weeks, Defendants still have not produced any customer sales order records for the Accused Products or all of the customer e-mails referencing "Gavrieli" or "Tieks." Gavrieli now moves for sanctions under Rule 37(b) and this Court's inherent authority for Defendants' violation of the February 11, 2019 Discovery Order.

## SUMMARY OF THE ARGUMENT

Defendants should be sanctioned under Rule 37(b) and the Court's inherent authority for *violating this Court's Order* by continuing to withhold critical evidence of infringement after repeatedly *making false statements to this Court, falsely answering discovery requests*, and *falsely testifying* at a deposition to conceal the existence of this evidence—all to limit Defendants' liability for infringement. Defendants' failure to produce the requested documents amounts to spoliation because it has the same practical effect as destroying those documents.

Defendants' misconduct has inflicted both "procedural prejudice" and "substantive prejudice" on Gavrieli. To mitigate this prejudice, Gavrieli requests three types of sanctions: (1) that **infringement be taken as established** for purposes of this action; (2) that **adverse jury**

**instructions** be ordered concerning the withheld documents; and (3) that **monetary sanctions** be awarded for the fees and costs Gavrieli incurred attempting to obtain this discovery. Gavrieli requests that these sanctions be applied jointly and severally to both SM USA and Mr. Pichler.

By violating this Court's Order and continuing to withhold the requested documents, Defendants have made it impossible to ascertain the full extent of harm caused by their infringement. Defendants' disregard for the basic rules of litigation has caused Gavrieli irremediable prejudice, for no litigant can fairly present a case where the only reliable facts are those that it has independently uncovered outside of discovery. No lesser sanctions other than those requested by Gavrieli would prevent Mr. Pichler from benefitting from his own false testimony and deter him from similarly abusing the process in another court of law.

## CONCISE STATEMENT OF FACTS

After two months of meeting and conferring to obtain documents responsive to its discovery requests, Gavrieli first moved to compel those documents on October 31, 2018, including Defendants' sales order records and customer e-mails. D.I. 65. Defendants never objected to the scope of these discovery requests. Instead, to avoid producing the requested documents, Defendants falsely informed the Court that those documents did not exist (D.I. 66)—a misrepresentation that this Court expressly relied on in its Nov. 5, 2018 Order (D.I. 68).

To prevent Gavrieli from uncovering the full extent of their infringement through other means of discovery, Mr. Pichler made false representations in numerous declarations, falsely answered discovery requests, and falsely testified at his December 4, 2018 deposition about the scope of his infringing sales and the substance of his customer communications. At the same time, Defendants continued to withhold the requested documents past the end of fact discovery.

After independently uncovering evidence proving the falsity of Defendants' representations and confirming the existence of the withheld documents, Gavrieli once again

moved to compel their production on February 6, 2019.  D.I. 93, 98.   The Court granted Gavrieli's motion, and ordered Defendants to produce the requested documents within two weeks.   Order. Defendants never produced even a single customer sales order record for the Accused Products and failed to produce all of their customer communications referencing "Gavrieli" or "Tieks."

## ARGUMENT

### I.    LEGAL STANDARD

Rule 37 gives a court "broad discretion" to sanction the violation of its orders.  *Sellon v. Smith*, 112 F.R.D. 9, 11 (D. Del. 1986) (J. Longobardi); *Hawk Mountain LLC v. Mirra*, 2016 WL 3176566, at *2 (D. Del. Jun. 3, 2016) (M.J. Fallon).   Available sanctions include: "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims," "striking pleadings in whole or in part," and "rendering a default judgement against the disobedient party." *See* Fed. R. Civ. P. 37(b)(2)(A). "Rule 37 sanctions must be applied diligently both to penalize those whose conduct may be deemed to warrant such a sanction [and] to deter those who might be tempted to such conduct in the absence of such a deterrent." *Comiskey v. JFTJ Corp.*, 989 F.2d 1007, 1011–12 (8th Cir. 1993).

Even where the misconduct does not violate an order, a court may still impose the same sanctions under its inherent authority.  *Eash v. Riggins Trucking Inc.*, 757 F.2d 557, 567 (3d Cir. 1985) (*en banc*) ("[C]ourt's inherent powers include the ability to do whatever is reasonably necessary to deter abuse of the judicial process."); *Chambers v. NASCO*, 501 U.S. 32, 50-51 (1991) (court's inherent power "reaches both conduct before the court and beyond the court's confines"). Thus, a court can exercise its discretion to impose the most onerous sanction appropriate under the circumstances; it is not limited to imposing the least onerous one.  *DiGregorio v. First Rediscount Corp.*, 506 F.2d 781, 788 (3d Cir. 1974) (affirming sanction of dismissal).

## II.     DEFENDANTS VIOLATED THIS COURT'S DISCOVERY ORDER

### A.     Defendants Failed to Produce All Customer Communications Referencing "Gavrieli" and/or "Tieks"

On February 11, 2019, the Court ordered Defendants to produce all of their customer communications that reference "Gavrieli" and/or "Tieks."  In particular, this Court ruled that:

> E-mails sent to SM USA referencing Gavrieli or Tieks, I'm going to order that a full set of e-mails from Mr. Pichler and the corporation, including e-mails for the addresses support@sotomassini.com, and tpichler@sotomassini.com be produced to the extent that they reference Gavrieli or Tieks.  And if there are other e-mail addresses for the company or Mr. Pichler that are used for the company, those should also be searched for references to Gavrieli or Tieks.

Hr'g Tr. at 39:4-12.  Rather than fully comply with this Order, Defendants have produced only a handful of customer e-mails referencing "Gavrieli" or "Tieks," while continuing to withhold other responsive customer communications on the basis that "Plaintiff could just as easily search those public messages (and likely already has)."  Ex. 2.  This response is improper for at least two reasons.  ***First***, the Court ordered Defendants (not Gavrieli) to produce these communications.  ***Second***, Defendants are indisputably in a better position to search through their own social media accounts to find communications with their own customers that reference "Gavrieli" or "Tieks."

Either way, Defendants have not only refused to produce public communications with customers through social media as ordered by this Court, but also have withheld *private* communications with customer through e-mail.  Indeed, as a result of its own independent investigation, Gavrieli uncovered at least three e-mails sent by Mr. Pichler to Soto Massini customers that reference "Tieks" or "Gavrieli"—not one of which was produced by Defendants. Exs. 9-11. Gavrieli only discovered these undisclosed e-mails because the recipients happened to post them online to share Mr. Pichler's email responses with other customers:



Ex. 11. These publicly-posted Soto Massini emails conclusively prove that Defendants have failed

produce all the communications that they were ordered to produce.

Other evidence demonstrates these public-posted emails are just the tip of the iceberg.

Indeed, the fact that Mr. Pichler has explicitly referenced "Tieks" in his online store and

advertisements since 2017 strongly indicates that other customer e-mails have been withheld.  Ex.

3 at G and H.  Further, the deposition testimony of the third-party individuals responsible for

answering customer e-mails on behalf of Soto Massini confirms that emails referencing Tieks and

Gavrieli were far more common than the handful of emails Defendants have produced to date.  *See*

Ex. 13 (LeColst Depo. Tr.) at 10:1-25, 16:7-18:12.  Ms. Alison Stevens testified that it was "fairly

common for [Soto Massini customers] to inquire about the size of the Soto Massini ballet flats

based on the size they wore in Tieks." Ex. 12 (Stevens Depo. Tr.) at 90:1-92:5. These e-mails are

highly-relevant to Gavrieli's trade dress infringement claims because they confirm not only that

customers associate the blue outsole design with Tieks (demonstrating secondary meaning), but

also that they were actually confused by Defendants' unauthorized use of the trade dress.

### B.  Defendants Failed to Produce All Sales Orders for the Accused Products

The Court also ordered Defendants to produce all sales documents for the Accused

Products, including every underlying sales order placed on Kickstarter, Indiegogo, Shopify, and

any other sales channels.  In particular, this Court ruled that:

> I'm going to order that the defendants produce all sales of the
> accused products regardless of the channel by which they are sold.
> The sales should include worldwide sales as there has been an
> allegation that the products are imported into the United States, all
> of the products that are sold are imported first into the United States
> which would be an act of infringement.

Hr'g Tr. at 38:1-9. The Court specifically ordered Defendants to "produce the documents that are
requested" in Gavrieli's motion, including the underlying sales order records for all brick-and-
mortar stores and for Kickstarter, Indiegogo, and Shopify. *Id.* at 37:21-23. Following the hearing,
Defendants produced a single document that should have been produced long ago: an invoice from
SM USA (dated 2017) for the sale of approximately 300 Accused Products to Workout S.R.L., a
brick-and-mortar store in Italy.[1] But Defendants stopped there, defying this Court's order by
continuing to withhold other sales documents, including the SM USA invoice for Tury, the **second**
brick-and-mortar store in Italy that Gavrieli identified in its Motion to Compel. D.I. 93, Ex. 3.
Gavrieli knows this invoice exists because its Italian counsel purchased the Accused Products from
that store in May 2018. Ex. 16 (photographs of sales receipt and Accused Product from Tury).

Worse yet, Defendants have continued to withhold **all of the underlying sales order
records** from Kickstarter, Indiegogo, and Shopify. For every sale of the Accused Products,
Defendants generate a customer sales order record with a unique order number evidencing that
particular sale to a customer. This sales order record identifies, among other things, the sales
channel the Accused Products were purchased from, the number of pairs sold, the purchase price
for each pair sold (which varies across sales channels), and the outsole color of each pair sold.
Once again, Gavrieli knows these sales orders exist because a Morgan Lewis paralegal and the

---

[1] In their February 25, 2019 letter (Ex. 2), Defendants claim that this was a foreign sale, but the
invoice they produced was issued from SM USA's address in San Diego, CA (Ex. 17).

infringement expert retained in this case both received a sales order record with a unique order number immediately after purchasing the Accused Products on Shopify:



Ex. 14 (exemplary Shopify sales order); D.I. 93, Ex. 7 (same); *see also* Ex. 15 (exemplary Indiegogo sales order). Yet not a single sale order record was produced. That Defendants chose to violate this Court's Order rather than produce the underlying sales order records strongly suggests that the actual amount of infringing sales is significantly higher than the amount represented by Mr. Pichler in his sales summaries.

Indeed, Mr. Pichler's sales summaries have conveniently omitted relevant sales. For example, Gavrieli just learned of yet another undisclosed channel used by Mr. Pichler to advertise and offer for sale the Accused Products to U.S. customers back in 2017, well before he launched on Kickstarter.[2] But Mr. Pichler's summaries contain no mention of this. Additionally, in their February 25, 2019 discovery letter, Defendants claim for the first time that the "remaining inventory was repurchased [from the Italian store] on May 4, 2018 (*see* SM001705)," thereby conceding that at least 120 of those 296 Accused Products were imported into the United States or sold to U.S.-based SM USA. Yet the sales and costs summaries provided by Defendants

---

[2] A Soto Massini customer informed Gavrieli last week that she had received a promotional email advertising the Accused Products for sale after purchasing another pair of shoes from Mr. Pichler's *eBay* store. A declaration from this customer—confirming her sales order and attaching her screenshots of the eBay store—is attached hereto as Exhibit 3.

conveniently omit information regarding this repurchased inventory.  Without the underlying sales order records, particularly the Shopify sales order records, Gavrieli cannot verify the total amount of Accused Products that were sold, how many were sold on each particular sales channel, the amount paid for the Accused Products (which depends on the particular sales channel), or whether any of the repurchased inventory was resold—which define the scope of Defendants' infringement.

By violating this Court's Order and continuing to withhold the underlying sales order records, Defendants have made it impossible to ascertain the full extent of their infringement, particularly given that Mr. Pichler has changed his story each time Gavrieli independently discovers new evidence of infringement.  For example, Mr. Pichler made false representations in numerous declarations in order to conceal his infringing activities—namely, falsely representing under oath that the Accused Products were never made or sold prior to this suit (initiated in 2018), and that the Accused Products were never sold in Italy or in any brick-and-mortar stores.  D.I. 13, 24, 30, at ¶4; D.I. 37 at ¶10.  Even when he was questioned about these representations at his December 4, 2018 deposition, Mr. Pichler falsely testified that the Accused Products were not available outside of the Kickstarter or Indiegogo Campaigns:

> Q. So prior to Kickstarter, there was nowhere anyone could go to buy the Soto Massini shoe; is that right?
>
> A. I didn't offer anything for sale, no, because we -- the shoe was not ready.
>
> ****
>
> Q.  So you've never had any shoe available in any boutique, say, in Milan, for example?
>
> A. No.
>
> ****
>
> Q. So the only way you can get a Soto Massini shoe is either to be a Kickstarter backer or Indiegogo backer?
>
> A. Right. And that campaign has not even started production, so that is -- I don't consider those sales yet so, so far, it's really Kickstarter.

*See* Ex. 4 (Pichler Depo Tr.) at 106:10-20, 192:3-5, 202:16-21; *see also* Ex. 5 at 88:6-10, 154:17-23, 155:2-8, 158:8-10, 188:7-9, 191:11-192:13.  All of these representations were knowingly false given that Mr. Pichler—the sole owner, employee, agent, and alter ego of SM USA—had manufactured and sold the Accused Products to at least two brick-and-mortar stores in Italy prior to this suit, and also sold a yet-to-be-discovered amount of Accused Products through the Shopify store.  Yet only after Gavrieli independently uncovered evidence of these sales did Mr. Pichler finally admit that those sales had occurred.

Defendants have also taken untrue litigation positions based on these false representations to try to prevent Gavrieli from discovering their infringing activities.  For example, SM USA falsely responded to Gavrieli's interrogatories ("ROGs"), including stating that "the date of first manufacture [for the Accused Products] is August 13, 2018," that "the location of each sale is Kickstarter," that "it does not keep a customer list," and that "there are no other entities purchasing, selling, or making any Terzetto Milano ballet flats."  Ex. 6 (SM USA's Am. Suppl. Resps. to ROGs).  These false interrogatory answers have never been corrected.  As yet another example, Defendants falsely denied numerous Requests for Admission ("RFAs"), including denying that "[o]rders for the Accused Products with Blue Soles had been taken by March 11, 2018" (RFA No 18); denying that the "Accused Products with Blue Soles were manufactured prior to February 16, 2018" (RFA No. 33); and denying that the "Accused Products with Blue Soles were imported into the United States after March 26, 2018" (RFA No. 36).  *Compare* Ex. 7 (Plf's First Set of RFAs)*, with* Ex. 8 (Def's Am. Resp. to RFAs).

III.  **GAVRIELI HAS BEEN SEVERELY PREJUDICED BY DEFENDANTS' DISCOVERY MISCONDUCT**

Defendants' discovery misconduct has not only caused Gavrieli to suffer "procedural prejudice" (resulting from the delay in obtaining discovery that hinders a party's ability to develop

its case), but also "substantive prejudice" (from the failure to provide the discovery at all).  *First Mariner Bank v. Res. Law Grp.*, 2013 U.S. Dist. LEXIS 153299, at *29-32 (D. Md. Oct. 24, 2013).

**First**, Defendants improperly withheld the sales order records and customer e-mails for the entire duration of fact discovery, even though those documents were responsive to at least RFP Nos. 2 and 83, which were served on August 2, 2018.  This undermined Gavrieli's ability to not only question Mr. Pichler about these sales and emails during his December 4, 2018 deposition, but also to seek the testimony of those customers who were actually confused by his infringement.  *Haeger v. Goodyear Tire & Rubber Co.*, 906 F. Supp. 2d 938, 978 (D. Ariz. 2012) (finding defendants' choice "to make no effort to produce responsive document" was evidence of bad faith).

**Second**, in response to Gavrieli moving to compel the same sales records and customer emails in October 2018 (D.I. 65), Defendants falsely stated that those documents did not exist (D.I. 66)—a misrepresentation that this Court relied on in its Order (D.I. 68).  This too deprived Gavrieli of the ability to use the withheld documents to develop its case during the discovery period.

**Third**, Defendants made false statements in numerous declarations and falsely answered ROGs and RFAs concerning the scope of infringing sales—all to prevent Gavrieli from uncovering the extent of infringing sales during fact discovery.  The harm caused by Defendants' refusal to answer honestly was compounded by the false testimony Mr. Pichler gave in his December 4, 2018 deposition, in which he falsely testified that the Accused Products were never made or sold prior to the suit, that the Accused Products were never sold in Italy or in any brick-and-mortar store, and that the Accused Products were never sold on Shopify.  *See* Ex. 5.

**Fourth**, Defendants deliberately violated this Court's February 11, 2019 order by failing to produce the sales order records and customer e-mails.  The result of Defendants' evasion—and disinformation—is the loss of crucial discovery concerning the scope of infringement, benefitting

Defendants by limiting their liability.  Now, with only weeks left until trial, Gavrieli must present its case using facts that it only uncovered outside of discovery, and seek relief from a harm that it knows is greater than that disclosed by Defendants during discovery.

Defendants' disregard for basic rules of litigation has caused Gavrieli irremediable prejudice.  By improperly withholding their sales order records and customer e-mails and making false representations to conceal that evidence, Defendants have made it impossible for this Court to ascertain the full extent of harm caused by their infringement.  For Gavrieli's trade dress claims, the amount of harm Gavrieli suffered from Defendants' infringement and, concomitantly, the amount it can recover turn on Defendants' use of the trade dress in the Accused Products.  The goodwill Gavrieli developed in the trade dress is damaged whenever it is used by another brand; but that harm increases dramatically with every infringing sale that occurs through an undisclosed channel, particularly where, as here, Gavrieli is mistaken as the source of the Accused Products.

Thus, the prejudice caused by Defendants' misconduct "goes far beyond merely the added time and resources expended to discover the evidence," as Gavrieli has been forced to go "to trial lacking evidence it would have had but for the deceit of the defendants."  *Chrysler Corp. v. Carey*, 186 F.3d 1016, 1021 (8th Cir. 1999); *In re O'Brien*, 351 F.3d 832, 839 (8th Cir. 2003) ("A finding of 'prejudice' under Rule 37(b) is proper if the failure to make discovery impairs an opponent's ability to determine the factual merits of a party's claim.").

## IV.    DEFENDANTS' MISCONDUCT WARRANTS SEVERE SANCTIONS

The severity of sanctions "should reflect the severity of the misconduct."  *GE Harris Ry. Elecs., LLC v. Westinghouse Air Brake Cor.*, 2004 WL 5702740, at *1 (D. Del. Mar. 29, 2004) (Sleet, J.).  To mitigate the prejudice caused by Defendants' conduct, Gavrieli requests three different sanctions: (1) a finding that the Accused Products infringe the asserted patents and trade dress; (2) adverse jury instructions concerning the withheld sales and customer documents, and (3)

an attorneys' fees award—all of which should be applied jointly and severally to both SM USA and Mr. Pichler.  Individually, each of these sanctions falls within this Court's powers, and collectively, they are commensurate with Defendants' gross discovery misconduct, ensuring that Mr. Pichler does not profit from his perjury.

### A.     Findings of Infringement Should Be Ordered

To alleviate the procedural and substantive prejudice caused by Defendants' misconduct, Gavrieli requests that this Court, pursuant to Rule 37(b) and its inherent authority, issue an order finding that the Accused Products infringe the asserted patents and trade dress.  Fed. R. Civ. P. 37(b)(2)(A)(i); *see, e.g.*, *Coca-Cola Bottling Co. v. Coca-Cola Co.*, 110 F.R.D. 363, 369 (D. Del. 1986) (Schwartz, J.) (ordering sanction finding contested facts established under Rule 37(b) due to violation of discovery order); *Greatbatch Ltd. v. AVX Corp.* 179 F. Supp. 3d 370, 383 (D. Del. 2016) (Stark, J.) (ordering sanction finding infringement established under inherent power for defendant's failure to produce documents concerning accused products until after fact discovery).

Both default judgement and issue establishment have been found to be appropriate sanctions where, as here, a party has concealed relevant evidence through false testimony. *Alexsam, Inc. v. IDT Corp.*, 715 F.3d 1336, 1345 (Fed. Cir. 2013) (upholding Rule 37(b) sanction deeming patent infringed due to false representations and failure to comply with court order); *Cf. Derzack v. County of Allegheny, Pa.*, 173 F.R.D. 400 (W.D. Pa. 1996), *judgment aff'd*, 118 F.3d 1575 (3d Cir. 1997) (ordering dismissal of suit under inherent powers due to false deposition testimony concerning the authenticity of a document).  As the Eight Circuit has found:

> Striking a party's pleadings under Rule 37 is within the range of appropriate sanctions when a party demonstrates a blatant disregard for the Court's orders and discovery rules, engaging in a pattern of deceit by presenting ***false and misleading answers and testimony under oath in order to prevent their opponent from fairly presenting its case***.

*Chrysler*, 186 F.3d at 1022 (affirming Rule 37 sanction of dismissal where defendants withheld relevant documents by claiming that "[n]o such documents existed," and "repeatedly lied during the discovery process" to conceal them) (emphasis added).

Given Defendants' open disregard for this Court's order and repeated false testimony, Gavrieli requests that this Court order, at a minimum, the "lesser sanction" of a finding of infringement.  In *Monsanto Co. v. Ralph*, the Federal Circuit upheld a dispositive sanction that both established infringement and entered default under the court's inherent authority where the defendant had concealed the scope of his infringing activities through false testimony, noting that "Ralph had represented under oath . . . that there was no [Accused Product]." 382 F.3d 1374, 1382 (Fed. Cir. 2004).  Although the defendant had not gone so far as to violate a court order (as SM USA and its alter-ego Mr. Pichler have done), the Court concluded that "the district court has the inherent authority under Section 37 to sanction abuse of the judicial process irrespective of the existence of any particular order."  *Id*.   Emphasizing that sanctions are designed to both punish and deter, the Court dismissed the viability of a lesser sanction, noting that a lesser sanction would have done nothing to remedy the lack of integrity in the case.  *Id*. at 1382 ("We find no abuse of discretion in the district court's refusal to allow Ralph to benefit from his own perjury."); *Ciba Specialty Chem. Corp. v. Zinkan Enter. Inc.*, 2003 WL 22309275, at *3-4 (S.D. Ohio Jul. 29, 2003) (ordering dispositive sanction of infringement where the defendant withheld relevant evidence concerning the accused process and gave false deposition testimony to conceal its infringing activities—"This sanction is the only one appropriate to deter [defendant] from future misconduct while at the same time protecting [plaintiff] and adequately remedying its harm.").

This case easily meets—and exceeds—the *Monsanto* criteria for issuing a sanction of infringement.  Mr. Pichler did not just ***withhold*** relevant evidence until after the close of fact

discovery; he repeatedly made misrepresentations under oath by denying the existence of that evidence and then ***violated a court order*** by continuing to withhold that evidence in an effort to hide the full extent of his infringing activities from the Court.   Mr. Pichler's concealment of evidence has made it impossible to ascertain the full extent of harm caused by his infringement. An order finding the Accused Products to infringe is the only appropriate sanction for Defendants' open disregard for this Court's order and tactical decision to give false deposition testimony and discovery responses.

Moreover, the requested sanction is closely related to Defendants' discovery misconduct. Mr. Pichler did more than just withhold relevant sales documents; he made misrepresentations under oath repeatedly and he violated this Court's order—all to conceal additional sales activities. As in *Monsanto,* Mr. Pichler's series of bad acts constitutes a wholesale abuse of the judicial process, and imposing a sanction deeming sales of the Accused Products—the subject of Defendants' deception—to be infringing sales is directly related to those bad acts, and the subject of the Order that Mr. Pichler purposefully violated.  *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982) (upholding Rule 37(b) sanction deeming fact established because the sanction was "specifically related to the particular 'claim'...at issue in the order to provide discovery" that defendants had violated); *SynQor, Inc. v. Artesyn Technologies, Inc.*, 709 F.3d 1365, 1386 (Fed. Cir. 2013) (upholding Rule 37(b) sanction deeming foreign sales of accused products to have infringed the asserted patent because accused infringer failed to timely disclose the sales during discovery—"The district court recognized that if [patentee] had been informed of the 17,000 sales by [defendant], those sales would have been included in [the expert's] damages model—either as additional sales by [defendant] or by adjusting the importation rate for other Defendants whose products made up for the lost U.S. sales volume.").

No lesser sanction would serve the purpose of both punishing Defendants for their misconduct, and deterring them from engaging in similar discovery misconduct in future proceedings.  An instruction to the jury regarding additional, undisclosed sales activities or e-mail communications would simply put Defendants in roughly the same position they would have been in had they complied with this Court's order to produce those documents.  Only an order deeming the Accused Products as infringing the asserted patents and trade dress would both punish Defendants and deters others from engaging in the same misconduct.  *Micron Tech., Inc. v. Rambus Inc.*, 917 F. Supp. 2d 300, 328 (D. Del. 2013) (Robinson, J.) ("Any lesser sanction would, in effect, reward [the spoliator] for the gamble it took by spoliating and tempt others to do the same.").

### B.   Adverse Jury Instructions Should Be Ordered

In addition to a sanction establishing infringement, Gavrieli also requests that this Court give certain adverse jury instructions concerning the withheld sales of the Accused Products and the withheld customer communications.  It is well established that "[t]he Court has broad discretion to fashion, on a case-by-case basis, an appropriate adverse inference jury instruction for [discovery violations]."  *Dong Ah Tire & Rubber Co. v. Glasforms, Inc.*, 2009 WL 1949124, at *10 (N.D. Cal. Jul. 2, 2009), *modified by*, 2009 WL 2485556, at *4 (N.D. Cal. Aug. 12, 2009) (ordering adverse inference); *DeCastro v. Kavadia*, 309 F.R.D. 167, 182 (S.D.N.Y. 2015) ("[T]he particular nature of the [adverse inference] instruction ... lie[s] within the discretion of the court.").

### 1.   An Adverse Jury Instruction Should Be Given Concerning the Withheld Sales of the Accused Products

As demonstrated above, the obstructive discovery tactics of Mr. Pichler, and his agent and alter ego SM USA, have prevented Gavrieli from obtaining a clear picture of Defendants' infringing activities, including the amount and scope of sales for the Accused Products.  To mitigate this prejudice, Gavrieli requests an instruction as follows:

In this case, Gavrieli asked Defendants, Soto Massini (USA) Corp. and Mr. Pichler, for all sales information for the Accused Products, including sales orders that were generated through the Shopify store and any brick-and-mortar stores. Defendants falsely represented to this Court and Gavrieli, on more than one occasion, that these documents did not exist, and that the Accused Products had never been sold on Shopify or in any brick-and-mortar stores.

After discovering that these representations were false, the Court ordered Defendants to produce all sales orders for the Accused Products regardless of the sales channel. Although they were legally obligated to obey the Court, Defendants violated this Court's order by failing to produce any sales orders for the Accused Products.

You, the jury, may infer that Defendants, Soto Massini (USA) Corp. and Mr. Pichler, violated this Court's order to conceal from Gavrieli the full extent of their patent and trade dress infringement. You may also infer that Defendants did not turn over their sales data to Gavrieli, as they were ordered to, because they believe the actual, complete sales data would have been unfavorable to Defendants. You may also infer that the sales data would have helped Gavrieli prove its case.

To allow the jury to connect a name with a face, and to see Mr. Pichler's false testimony obstruction for themselves, Gavrieli further requests that it be permitted to play portions of SM USA's videotaped 30(b)(6) deposition immediately after this instruction. *See First Mariner*, 2013 U.S. Dist. LEXIS 153299, at *38 (D. Md. Oct. 24, 2013) ("The most appropriate sanction for defendants' conduct is to bring it to light in front of the jury, whose members may consider it along with all other evidence at trial."). Unless the false statements from Mr. Pichler's testimony are isolated and played immediately after the requested instruction, the jury will not be able to distinguish his truthful testimony from those found to be false, thereby undermining Gavrieli right to rely on SM USA's videotaped 30(b)(6) deposition as part of its case in chief. This would also ensure that the Defendants "do not benefit from their wrongdoing—a remedial purpose that is best adjusted according to the facts and evidentiary posture of each case." *Reilly v. Natwest Markets Group Inc.*, 181 F.3d 253, 267 (2d Cir. 1999) (citation omitted).

Where an accused infringer has improperly withheld sales data, courts have ordered similar adverse inferences under Rule 37(b) to prevent the infringer from benefiting from its spoliation. *Imagenetix, Inc. v. Robinson Pharma, Inc.*, 2017 WL 8940118, at \*4 (C.D. Cal. Jan. 12, 2017), *modified by*, 2017 WL 570708 (C.D. Cal. Feb. 13, 2017) (ordering adverse instruction due to nonproduction of complete sales data for Accused Products: "You may infer that Defendants did not produce this information to Plaintiff because they believed that this information would help Plaintiff and hurt Defendants."); *Tessera, Inc. v. Sony Corp.*, 2013 WL 5692109, at \*4 (N.D. Cal. 2013) (recommending instruction: "You may infer that [defendant] did not turn over its sales data to [patentee], as it should have, because the actual, complete sales data would have helped [patentee] and hurt [defendant]."); *Liafail, Inc. v. Learning 2000, Inc.*, 2002 WL 31954396, at \*2 (D. Del. Dec. 23, 2002) (Sleet, J.) (finding appropriate instruction that the "jury would be permitted to infer that [the plaintiff's] bad faith alone is sufficient circumstantial evidence from which a reasonable fact finder could conclude that the missing evidence was unfavorable to that party").

This requested instruction is relatively lenient under the law because it is stated in permissive form, although this Court has the power to instruct the jury that it ***must*** find certain facts to be true. *Mali v. Fed. Ins. Co.*, 720 F.3d 387, 392 (2d Cir. 2013) (recognizing as appropriate adverse inference "that the jury ***should*** draw adverse inference against [the sanctioned party] based on those facts") (emphasis in original). In *Navellie v. Sletten,* a nonparty witness was found to have willfully obstructed discovery by refusing to comply with a court-ordered deposition. 262 F.3d 923, 947-48 (9th Cir. 2001). The district court sanctioned the affiliated party, the plaintiff, by instructing the jury that the defendants' version of the facts was true. *Id*. The Ninth Circuit found the district court did not abuse its direction in rendering this instruction. *Id*.

Gavrieli's proposed instruction is less severe than the instruction in *Navellie*, yet the misconduct here is even more egregious.  Mr. Pichler not only ***withheld*** relevant evidence until after the close of fact discovery, but Mr. Pichler also repeatedly ***made misrepresentations*** under oath by denying the existence of that evidence and then ***violated a court order*** by continuing to withhold that evidence. They have thus deprived Gavrieli of critical discovery and also significantly delayed the discovery it was able to obtain, undermining Gavrieli's ability to prepare its case.  The Court should therefore instruct the jury that it may infer a motive behind Defendants' discovery misconduct: Defendants did not disclose complete sales information because it would have hurt them and helped Gavrieli.

### 2. An Adverse Jury Instruction Should Be Given Concerning the Withheld Customer Communications

To remedy the prejudice caused by Defendants' failure to produce all customer communications, Gavrieli similarly requests that the following adverse inference be given:

> Gavrieli also asked Defendants, Soto Massini (USA) Corp. and Mr. Pichler, for all of the e-mails they received from customers referencing "Tieks" or "Gavrieli." Defendants falsely represented to this Court and Gavrieli that no such documents existed.
>
> After discovering this representation was false, the Court ordered Defendants to produce all of their customer e-mails referencing "Tieks" or "Gavrieli." Although they were legally obligated to obey the Court, Defendants violated this Court's order by failing to produce all of the requested e-mails.
>
> You, the jury, may infer that Defendants, Soto Massini (USA) Corp. and Mr. Pichler, violated this Court's order to conceal from Gavrieli the full extent of their trade dress infringement.  You may also infer that these e-mails would have shown that Defendants' customers associate the trade dress with Gavrieli, and that Defendants' use of the trade dress in the Accused Products confused these customers.

By improperly withholding customer e-mails referencing "Tieks" or "Gavrieli," Defendants robbed Gavrieli of one of the most pertinent evidentiary sources for trade dress validity and

infringement: evidence of actual customer confusion.  Worse yet, Defendants' decision to violate this Court's order by failing to produce all of these customer e-mails also prevents Gavrieli from proving trade dress infringement based on inferences arising from these e-mails.  Absent a complete production, Gavrieli has no way of determining the ***total number*** of Soto Massini customers who referenced "Tieks" or "Gavrieli" in their e-mails to Defendants, let alone how many of those e-mails could also be used to infer secondary meaning or actual confusion.  *Mosel Vitelic Corp. v. Micron Tech., Inc.*, 162 F. Supp. 2d 307, 314 (D. Del. 2000) (Sleet, J.) (ordering adverse inference for spoliation of draft opinion letters, and finding appropriate an instruction "which would allow the jury to infer that litigation counsel suggested or made other changes to these drafts").

In short, given that Defendants' have deliberately withheld key documents, Gavrieli is "entitled to the advantage of every possible inference that fairly could be drawn from the [withheld] evidence." *Coca-Cola*, 110 F.R.D. at 369 (Schwartz, J.) (evidentiary sanctions warranted where defendant withheld the chemical formulae needed to prove plaintiff's case, and ordering that an inference be drawn to "obtain a favorable comparison of the entire formulae"); *In re Wechsler*, 121 F. Supp. 2d 404 (D. Del. 2000) (Sleet, J.) (dispositive sanction warranted where party withheld relevant evidence to prevent inspection by opponent and the spoliation substantially prejudiced the opponent such that it could not establish its claims).

### C.    <u>Monetary Sanctions Should Be Ordered</u>

Gavrieli also requests that the Court award the attorneys' fees and costs it accrued in pursuing the fruitless discovery of the sales orders and customer e-mails.  Rule 37 provides that "the court must order the disobedient party, attorney advising that party, or both to pay the reasonable expenses, including attorneys' fees, caused by the failure."  Should the Court decide to award Gavrieli its fees and costs, Gavrieli will submit a declaration setting them forth.

**D.** **Sanctions Should Be Applied Jointly and Severely to SM USA and Pichler**

An individual cannot avoid sanctions by attempting to hide behind a paper company, as Mr. Pichler has sought to do in this case with SM USA.  "Courts have not hesitated to impose sanctions on a party when a person who is the 'alter-ego' of a party or under the party's 'control' commits the sanctionable conduct."  *In re Bear Stearns*, 308 F.R.D. 113, 120 (S.D.N.Y. 2015).  In *Hyde & Drath v. Baker*, the Ninth Circuit recognized a court's power to reach through such false walls and hold the real actor—here, Mr. Pichler—liable not only for its own misconduct, but also jointly and severally liable for the misconduct of its affiliates—here, SM USA (the agent and alter-ego of Mr. Pichler).  24 F.3d 1162, 1168, 1170-71 (9th Cir. 1994).  Because this Court has already found Mr. Pichler to be the agent and alter ego of SM USA, it may appropriately sanction SM USA *and* Mr. Pichler jointly and severally for the discovery misconduct that has occurred in this case.  Hr'g. Tr. at 36:5-10 ("The company and the man, Mr. Pichler, are indistinguishable regarding the issues in this case and Mr. Pichler is subject to jurisdiction by virtue of this Court's jurisdiction over SM (USA) under at least agency and alter ego theories.").  To further support this finding, the Court may also deem Mr. Pichler the agent and alter ego of SM USA as a sanction for violating this Court's Order.  *Ins. Corp. of Ireland*, 456 U.S. at 709 ("That a particular legal consequence—personal jurisdiction over defendants—follows from this [sanction], does not in any way affect the appropriateness of the sanction."); *Compaq Comp. Corp. v. Egronome, Inc.*, 387 F.3d 403, 414 (5th Cir. 2004) (affirming sanction deeming individual alter ego of corporation).

**V.** **CONCLUSION**

Gavrieli respectfully requests that the Court order the aforementioned sanctions.

Dated:  March 13, 2019

Respectfully submitted,

MORAN, LEWIS & BOCKIUS LLP

*/s/ Amy M. Dudash*
John V. Gorman (DE Bar No. 6599)
David W. Marston, Jr. (DE Bar No. 3972)
Amy M. Dudash (DE Bar No. 5741)
The Nemours Building
1007 North Orange Street
Suite 501
Wilmington, Delaware 19801
Telephone:  302.574.3000
Fax:  302.574.3001
john.gorman@morganlewis.com
david.marston@morganlewis.com
amy.dudash@morganlewis.com

*Attorneys for Plaintiff Gavrieli Brands LLC*