**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| GAVRIELI BRANDS LLC, a California Limited Liability Company, | |
| Plaintiff, | |
| v. | Civil Action No. 18-462-MN |
| SOTO MASSINI (USA) CORP., a Delaware corporation, and THOMAS PICHLER, an individual, | |
| Defendants. | |

## [PROPOSED] FINAL PRETRIAL ORDER[1]

This matter comes before the Court at a final pretrial conference held pursuant to Rule 16

of the Federal Rules of Civil Procedure.

MORGAN, LEWIS & BOCKIUS LLP
John V. Gorman (#6599)
Amy M. Dudash (#5741)
The Nemours Building
1007 North Orange Street, Suite 501
Wilmington, DE 19801
(302) 574-3000
john.gorman@morganlewis.com
amy.dudash@morganlewis.com

Michael J. Lyons (admitted *pro hac vice*)
Ahren C. Hsu-Hoffman (admitted *pro hac vice*)
Ehsun Forghany (admitted *pro hac vice*)
1400 Page Mill Road
Palo Alto, CA 94304
(650) 843-4000
michael.lyons@morganlewis.com
ahren.hsu-hoffman@morganlewis.com

STAMOULIS & WEINBLATT LLC
Stamatios Stamoulis (#4606)
800 N. West Street, Third Floor
Wilmington, DE 19801
(302) 999-1540
stamoulis@swdelaw.com

SML AVVOCATI P.C.
Stephen M. Lobbin (admitted *pro hac vice*)
Austin J. Richardson (admitted *pro hac vice*)
888 Prospect Street, Suite 200
San Diego, CA 92037
sml@smlavvocati.com
ajr@smlavvocati.com

*Attorneys for Defendants Soto Massini (USA) Corporation and Thomas Pichler*

---

[1] As permitted by the Court's April 3, 2019 Order (D.I. 118), this version of the Final Pretrial Order includes updated sections and supplements by Plaintiffs Gavrieli Brands LLC ("Gavrieli") to the version of the Final Pretrial Order submitted March 29, 2019, which was approved for submission by Defendants' counsel. Gavrieli has identified any new updates and supplements herein.

ehsun.forghany@morganlewis.com

Sharon R. Smith (admitted *pro hac vice*)
Brett A. Lovejoy, Ph.D (admitted *pro hac vice*)
One Market, Spear Street Tower
San Francisco, CA 94105
(415) 442-1000
sharon.smith@morganlewis.com
brett.lovejoy@morganlewis.com

*Attorneys for Plaintiff*
*Gavrieli Brands LLC*

# TABLE OF CONTENTS

I. NATURE OF THE CASE ......................................................................................... 1

II. FEDERAL JURISDICTION ................................................................................... 3

III. FACTS ...................................................................................................................... 3

    A. Uncontested Facts .......................................................................................... 3

    B. Contested Facts .............................................................................................. 4

IV. ISSUES OF LAW ..................................................................................................... 8

V. WITNESSES ............................................................................................................. 9

    A. Witness Lists .................................................................................................. 9

    B. Testimony by Deposition ............................................................................. 12

VI. EXHIBITS .............................................................................................................. 12

VII. DISCLOSURES OF WITNESSES AND EXHIBITS DURING TRIAL ...................... 16

VIII. GAVRIELI'S STATEMENT OF INTENDED PROOF ......................................... 18

IX. DEFENDANTS' STATEMENT OF INTENDED PROOF ..................................... 21

X. CERTIFICATION OF GOOD-FAITH SETTLEMENT EFFORTS............................. 25

XI. AMENDMENTS OF THE PLEADINGS ......................................................... 26

XII. OTHER MATTERS............................................................................................... 26

    A. Length of Trial ............................................................................................. 26

    B. Motions in Limine........................................................................................ 26

    C. Voir Dire, Jury Instructions, and Verdict Form.................................... 27

    D. Jurors and Jury Procedures ...................................................................... 27

    E. Objections to Expert Testimony ................................................................ 28

    F. Set-up of Electronic Equipment................................................................ 28

    G. Other Stipulations ...................................................................................... 28

## I.    NATURE OF THE CASE

1.     Plaintiff Gavrieli Brands, LLC ("Gavrieli") initiated this case for design patent infringement, trade dress infringement, and other causes of action on March 26, 2018.  D.I. 1.  In its Amended Complaint (D.I. 27), Gavrieli asserted the following claims against Defendants Soto Massini (USA) Corporation ("SM USA"), Thomas Pichler ("Pichler"), and Soto Massini S.R.L.S. ("SM Italy"): (1) patent infringement under 35 U.S.C. § 271; (2) federal trade dress infringement and unfair competition under 15 U.S.C. § 1125(a); (3) common law trade dress infringement and unfair competition; (4) unfair competition under Cal. Bus. & Prof. Code § 17200; (5) unjust enrichment, (6) false advertising under 15 U.S.C. § 1125(a); and (7) false advertising under Cal. Bus. & Prof. Code § 17500.  The patents asserted in the Amended Complaint include: United States Design Patents Nos. D781,035 (the "'035 patent"), D781,032 (the "'032 patent"), D781,034 (the "'034 patent"), and D681,927 (the "'927 patent"), and D761,538 (the "'538 patent") (collectively, the "Patents-in-Suit").[2]

2.     On June 5, 2018, Pichler and SM Italy moved to dismiss Gavrieli's claims for lack of personal jurisdiction.  D.I. 29.  On February 11, 2019, this Court granted SM Italy's motion to dismiss but denied the motion as to Pichler.  *See* 2/11/19 Minute Entry; 2/11/19 Hearing Tr. at 32:5-10.  The Court found that it had jurisdiction over Pichler because Gavrieli's Amended Complaint sufficiently alleged that Pichler personally committed acts of infringement and engaged in other tortious conduct.  2/11/19 Hearing Tr. at 34:5-11.  The Court also found that Pichler was subject to personal jurisdiction under an agency theory because Pichler "controls

---

[2] The Amended Complaint also included U.S. Design Patent No. D761,538 (the "'538 patent").  To streamline the case for trial, Plaintiff proposes not to assert claims relating to the '538 patent and to dismissal of those claims, counterclaims, and defenses without prejudice.  Defendants do not agree because they have been sued on this patent and have pled an extant counterclaim for non-infringement and invalidity of the '538 patent.

SM USA and dominates it" and "has authorized the actions that are relevant to this case." *Id.* at 34:12-17.  The Court also found that Pichler was subject to personal jurisdiction under an alter ego theory because, for example, "it seems clear that no corporate formalities have been followed" and that "[t]he company and the man, Mr. Pichler, are indistinguishable regarding the issues in this case." *Id.* at 34:18-36:10.

3.      On June 5, 2018, SM USA filed its First Amended Answer and Counterclaims ("FACC").  Dkt. 31.  In the FACC, SM USA asserted ten counterclaims against Gavrieli, namely: (1) patent non-infringement; (2) patent invalidity; (3) trade dress non-infringement; (4) trade dress invalidity; (5) false advertising under the 15 U.S.C. § 1125(a); (6) false advertising under Cal. Bus. & Prof. Code § 17500; (7) unfair competition under Cal. Bus. & Prof. Code § 17200; (8) intentional interference with contractual relations, (9) intentional interference with prospective economic relations; and (10) trade libel.  SM USA also raised certain affirmative defenses.  In response to the FACC, on June 21, 2018, Gavrieli filed a motion to dismiss SM USA's counterclaims and to strike SM USA's affirmative defenses.  D.I. 34-35.

4.      On July 17, 2018, SM USA filed a Second Amended Answer and Counterclaims ("SACC") asserting the same ten counterclaims as the FACC.  D.I. 45.  The Court denied Gavrieli's motion to strike the SACC for being filed without consent or leave of court and also denied Gavrieli's motion to dismiss the FACC as moot.  D.I. 83.  On January 24, 2019, Gavrieli filed a motion to dismiss the fifth through tenth counterclaims of SM USA's SACC and to strike the affirmative defenses set forth in the SACC ("Motion to Dismiss the SACC").  D.I. 89, 90. The Court has not yet ruled on Gavrieli's Motion to Dismiss the SACC.

5.      On March 11, 2019, Pichler filed an answer to Gavrieli's Amended Complaint.[3] D.I. 109.

6.      The following motions are pending: (1) Gavrieli's Motion to Dismiss the SACC and Affirmative Defenses (D.I. 89); and (2) Gavrieli's Motion for Sanctions (D.I. 111).

## II.      FEDERAL JURISDICTION

7.      This Court has federal question jurisdiction over this action because it arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, and the trademark laws of the United States, 15 U.S.C. § 1111 *et seq.*

8.      This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, 2202, the patent laws of the United States, including 35 U.S.C. § 271 *et seq.*, and the Lanham Act, 15 U.S.C. § 1114 *et seq.* and 15 U.S.C. § 1125 *et seq.*

9.      This Court has the power to resolve the related state law claims under principles of pendent, supplemental, and/or ancillary jurisdiction and 28 U.S.C. § 1367.

10.     SM USA admitted that this Court has personal jurisdiction over SM USA.  D.I. 45, ¶ 15.  This Court also found that Pichler was subject to personal jurisdiction.  *See* 2/11/19 Minute Entry; 2/11/19 Hearing Tr. at 32:5-10.

11.     Facts supporting jurisdiction are set forth in the joint statement of facts that are admitted and require no proof attached as **Exhibit 1**.

## III.     FACTS

### A.      Uncontested Facts

12.     The parties' joint statement of facts that are admitted and require no proof is attached as **Exhibit 1**.  Gavrieli proposes that the statement of undisputed facts should include

---

[3] Gavrieli reserves the right to assert that Pichler's answer should be stricken as untimely and that the allegations of the Amended Complaint should be deemed admitted by Pichler.

basic facts that are not the subject of any reasonable dispute (such as ownership of the patents) as well as facts that Defendants admitted in their pleadings and during discovery in response to interrogatories and requests for admission.  Gavrieli has identified in Exhibit 1 the additional undisputed facts that it contends should be admitted at trial without further proof.

> B.     **Contested Facts**

13.     Gavrieli's statement of issues of fact that remain to be litigated is attached as **Exhibit 2**.  Defendants' statement of issues of fact that remain to be litigated is attached as **Exhibit 3**.

14.     **Gavrieli's Objection to Defendants' Statement of Issues of Fact (supplemented 4/4/19):**  Gavrieli objects to paragraphs 31-58 of Soto Massini's Statement because these paragraphs refer to facts pertinent to Soto Massini's counterclaims, and Soto Massini refused to describe or provide any factual basis for its fifth through tenth counterclaims in response to Gavrieli's Second Set of Interrogatories.  Interrogatories 20-25 expressly requested that Soto Massini "[i]dentify and describe in detail" the factual bases underlying its fifth through tenth counterclaims for false advertising, unfair competition, intentional interference with contractual relations, intentional interference with economic relations, and trade libel.  *See* Exhibit 13.  In response, Soto Massini lodged boilerplate objections, failed to provide any substantive response regarding the factual bases for its counterclaims, and purported to rely on Federal Rule of Civil Procedure 33(d).  *See id.* at Responses to Interrogatory Nos. 20-25.

15.     Despite purporting to invoke Rule 33(d), Soto Massini failed to supplement its responses during fact discovery to identify any business records upon which it relied as allegedly disclosing the requested factual underpinnings for its counterclaims as required by Rule 26(e)(1)(a).  *See* Fed. R. Civ. P. 26(e)(1)(A) ("A party who has . . . responded to an interrogatory

... must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete . . . .").  As a result, the admission of the evidence surrounding the factual issues set forth in paragraphs 31-58 of Soto Massini's Statement of Issues of Fact that Remain to Be Litigated would constitute precisely the type of "surprise" evidence that Gavrieli has moved *in limine* to exclude.  *See* D.I. 117-11 at MIL No. 1.

16.     The Court has the power to exclude evidence based on a party's failure to comply with their obligations under Rule 26(e)(1)(a) to supplement their interrogatory responses. Specifically, Rule 37(c)(1) provides that "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless."  Here, there is no justification for Defendants' failure to disclosure the factual bases for their counterclaims during discovery. Defendants' failure to disclose the factual bases for their counterclaim during discovery is not harmless because Gavrieli was deprived of the opportunity to explore these factual allegations during the discovery period.  Indeed, with the trial is less than four weeks away, Gavrieli still has no clear notice what Soto Massini intends to argue and on what evidence Soto Massini intends to rely in in support of its counterclaims.

17.     Soto Massini should not be permitted to try this case by ambush, disclosing its theories and supporting evidence for the first time at trial, as that negates the entire purpose of the discovery process and rules requiring disclosure of contentions and supporting evidence during fact discovery.  Thus, the Court should preclude Soto Massini from presenting evidence regarding factual issues underlying its fifth through tenth counterclaims as set forth in paragraphs

31-58 of its Statement.[4]  *See, e.g.*, *Unigene Labs. v. Apotex, Inc.*, No. 06-cv-5571, 2010 WL 2730471, at *2, 2010 U.S. Dist. LEXIS 67444, at *6 (S.D.N.Y. July 7, 2010), *aff'd*, 655 F.3d 1352 (Fed. Cir. 2011) (finding claim waived pursuant to Rule 37(c)(1) because there was substantial prejudice to plaintiff where the defendants failed to "advise[] of the contours of this claim" in their contention interrogatory answers); *Woods v. DeAngelo Marine Exhaust, Inc.*, 692 F.3d 1272, 1282-83 (Fed. Cir. 2012) (affirming district court's decision to exclude evidence and argument under Rule 37(c) because a party failed to supplement its interrogatory response in a timely fashion); *Renfroe v. United States*, No. CV 04-1955-GHK (SHx), 2005 WL 5887178, at *9 (C.D. Cal. July 6, 2005) (precluding party from introducing evidence on issue not disclosed in interrogatory response); *Carter v. Moog Automotive, Inc.*, 126 F.R.D. 557, 559 (E.D. Mo. 1989) ("Information that should have been conveyed to an opposing party by means of supplemental answers to interrogatories that are withheld until a later date, which may prejudice the opposing party, may be denied admission into evidence at trial.").

18.      **Gavrieli's Objection to Defendants' Untimely Disclosures (updated 4/4/19)[5]:**

Gavrieli objects to Defendants' statement of issues of fact because Defendants' statement was not disclosed by the March 25, 2019 deadline for Defendants to disclose their portions of the pretrial order. *See* Court's February 27, 2019 Order and the Parties' Joint Stipulation (D.I. 107) (setting March 25, 2019 as the deadline for Defendants' portions for the pretrial order). Defendants' counsel, Mr. Stephen Lobbin, first emailed Defendants' statement of issues of fact

---

[4] If the Court grants Gavrieli's pending Motion to Dismiss these counterclaims (D.I. 89), then the Court need not reach the evidentiary issues outlined herein.

[5] Gavrieli has now refiled the pretrial order with additional content that addresses Defendants' untimely pretrial disclosures.

(attached as Exhibit 3) to Gavrieli's counsel at **10:15 A.M. on March 29, 2019**.  Gavrieli submits that Defendants' untimely disclosures should be stricken.

19.     Defendants' position is that documents sent on March 15 were buried in an email that looked like a supplemental document production.[6]  No cover letter was provided informing defendants that the files were Plaintiff's pretrial order drafts, statements of facts and law, exhibit lists and motions *in limine*.  Rather, the files were described as pretrial disclosures with an additional message that additional PDFs would be sent, and no reminders were ever given. Moreover, there is no prejudice to Plaintiff since the majority of what had to be provided to Plaintiff was Defendants' separate documents and separate entries to the pretrial order. The only collaboration was in regards to the Joint Pre-Trial order and the joint stipulated facts, Defendants made only minor changes to the collaborative sections of the PTO and Defendants' cannot stipulate to the majority of the proposed stipulated facts. Furthermore, as a result of the stipulation, Defendants had only ten days to review and respond to Plaintiff's proposed pretrial order drafts, statements of facts and law, exhibit lists and motions *in limine* rather than the standard sixteen days to review and respond.

---

[6] Gavrieli cannot understand Defendants' assertion that they were unaware of Gavrieli's pretrial disclosures and the deadline for submitting their own disclosures.  There was nothing unclear or confusing about Gavrieli's transmittal of its pretrial disclosures to Defendants; they were sent to multiple of Defendants counsel, including its local counsel Stamatios Stamoulis, and at least one of Defendants' counsel, Josh Osborn, confirmed actually receiving Gavrieli's disclosures. *See* Exhibit 14 (copy of 3/15/19 transmittal email advising Defendants' counsel to "please see the attached draft pretrial disclosures prepared by Gavrieli").  Moreover, the pretrial disclosure requirements are set forth in the local rules and this Court's scheduling order, so Defendants cannot reasonably claim surprise by Gavrieli's submission of disclosures that comply with these requirements.  Moreover, Defendants stipulated to the deadline for making their pretrial disclosures—they have offered no reason why they could not have responded to Gavrieli's disclosures and provided their own disclosures by this deadline.

## IV.   ISSUES OF LAW

20.   Gavrieli's statement of issues of law that remain to be litigated is attached as

**Exhibit 4**.  Defendants' statement of issues of law that remain to be litigated is attached as

**Exhibit 5**.

21.   **Gavrieli's Objection to Defendants' Untimely Disclosure (updated 4/4/19):**

As with Defendants' statement of issues of fact, Gavrieli objects to Defendants' statement of

issues of law because this statement was not disclosed by the March 25, 2019 deadline.

Defendants' counsel, Mr. Stephen Lobbin, first emailed Defendants' statement of issues of law

(attached as Exhibit 5) to Gavrieli's counsel at **10:15 A.M. on March 29, 2019**.  Gavrieli

submits that Defendants' untimely disclosures should be stricken.

22.   Defendants' position is that documents sent on March 15 were buried in an email

that looked like a supplemental document production.  No cover letter was provided informing

defendants that the files were Plaintiff's pretrial order drafts, statements of facts and law, exhibit

lists and motions *in limine*.  Rather, the files were described as pretrial disclosures with an

additional message that additional PDFs would be sent, and no reminders were ever given.

Moreover, there is no prejudice to Plaintiff since the majority of what had to be provided to

Plaintiff was Defendants' separate documents and separate entries to the pretrial order.  The only

collaboration was in regards to the Joint Pre-Trial order and the joint stipulated facts, Defendants

made only minor changes to the collaborative sections of the PTO and Defendants' cannot

stipulate to the majority of the proposed stipulated facts.  Furthermore, as a result of the

stipulation, Defendants had only ten days to review and respond to Plaintiff's proposed pretrial

order drafts, statements of facts and law, exhibit lists and motions *in limine* rather than the

standard sixteen days to review and respond.

## V.    WITNESSES

### A.    Witness Lists

23.    The parties have prepared good-faith lists of witnesses expected to be called at trial, either live or by deposition, including a "will call" list and a "may call" list.  Gavrieli's list of witnesses to be called at trial is attached as **Exhibit 6**.  Defendants' list of witnesses to be called at trial is attached as **Exhibit 7**.

24.    Any witness not listed will be precluded from testifying, absent good cause shown.

25.    **Gavrieli's Objection to Defendants' Untimely Disclosure (updated 4/4/19)**: Defendants' witness list was not disclosed by the March 25, 2019 deadline for Defendants' disclosures.  Defendants' counsel, Mr. Stephen Lobbin, first emailed Defendants' witness list (attached as Exhibit 7) to Gavrieli's counsel at **10:15 A.M. on March 29, 2019**.  Gavrieli submits that Defendants' untimely disclosures should be stricken.

26.    **Gavrieli's Objection to Defendants' Identification of Adriana Giraldo as a Trial Witness (updated and supplemented 4/4/2019)**:  Gavrieli objects to Defendants' identification of Adriana Giraldo as an individual whom Defendants "will call" at trial for at least two reasons.

27.    *First*, Ms. Giraldo was never identified in Defendants' initial disclosures pursuant to Fed. R. Civ. P. 26.  Instead, Defendants only identified "Thomas Pichler" and "Officers, directors, managing agents, and/or employees of Plaintiff" as having discoverable information or relevant testimony.  Courts in this district have precluded witnesses from testiyfing on this basis alone, particularly where, as here, Defendants have known that Ms. Giraldo could be a witness from the start of this case.  *Stambler v. RSA Security, Inc.,* 212 F.R.D. 470 (D. Del. Jan. 14, 2003) (J. Robinson) (precluding late-disclosed witnesses from testifying at trial—"There is no

reason why defendants did not identify Mssrs. Kish, Connally and Kathol as fact witnesses during fact discovery.  Plaintiff will clearly be prejudiced if these witnesses are permitted to now testify regarding defenses to this action.  Defendants have attempted to cure the prejudice by offering to allow plaintiff to depose the witnesses.  This solution creates more problems than it solves."); *Hansen v. Umtech Industriesservice Und Spedition*, 1996 WL 732556 (D. Del. Dec. 9, 1996) (J. Schwartz) (denying request to modify a pre-trial order to add witness not identified in plaintiff's initial disclosures, where the Plaintiff "had to know, from the very time suit was instituted, that Kay would be a witness," as well as the "importance of Kay's testimony before the start of discovery," noting that "defendant would be unfairly prejudiced if Kay testified at trial."); *see also Traxys North Am. LLC v. Evraz Claymont Steel, Inc.*, 2011 WL 13142484 (D. Del. May 16, 2011) (granting motion *in limine* to preclude the testimony of an individual that was not identified in defendant's initial disclosures but was identified as a potential witness in the Defendant's pretrial memorandum); *Schmidt v. Mars, Inc.*, 587 F. App'x. 12 (3d. Cir. 2014) (finding no abuse of discretion where the district court excluded testimony from fifteen witnesses that were not identified in plaintiff's initial disclosures because "Schmidt did not properly disclose these witnesses or otherwise indicate she might call them to testify at trial until after the discovery period had closed[.]").

28.      *Second*, Defendants refused to make Ms. Giraldo available for a deposition after Gavrieli noticed her deposition, and repeatedly claimed that she did not have any discoverable information or relevant testimony.  Indeed, in a November 27, 2018 email, counsel for Defendants reiterated their refusal to produce Ms. Giraldo for a deposition, claiming that "Ms. Giraldo is not even an 'employee,' and certainly she is not an officer or director of SM-USA, nor was she ever a 'managing agent.'  She manages nothing related to the business, and has only

done work for the business on rare occasions as the wife of the principal, nothing more. Her real job is being a wife and mother, and raising her young children." Defendants' counsel also claimed that she was out of the country (in Columbia) for the holidays (which is the whole month of December in Latin America) and unable to sit for a deposition before the close of fact discovery.[7] This warrants exclusion of Ms. Giraldo's testimony. *DCK TTEC, LLC v. Postel Indus., Inc.*, 602 F. App'x. 895, 890 (3d. Cir. 2015) (finding no abuse of discretion where district court excluded a witness from testifying at trial, finding that the defendants had in bad faith sought to surprise plaintiff with the witness's testimony at trial because the witness was not made available for deposition despite Plaintiff's multiple attempts to depose that witness during fact discovery); *see also Reilly v. Natwest Mkts. Group Inc.*, 181 F.3d 253, 268-69 (2d. Cir. 1999) (finding no abuse of discretion where district court precluded testimony of defense witnesses that defendants failed to produce in response to a deposition notice, finding that defendants "never explained why [the witnesses] were not made available for deposition" and that the plaintiff "would have been prejudiced by the fact that he did not have an opportunity to depose them").

29.  Defendants' position is that documents sent on March 15 were buried in an email that looked like a supplemental document production. No cover letter was provided informing defendants that the files were Plaintiff's pretrial order drafts, statements of facts and law, exhibit lists and motions *in limine*. Rather, the files were described as pretrial disclosures with an additional message that additional PDFs would be sent, and no reminders were ever given. Moreover, there is no prejudice to Plaintiff since the majority of what had to be provided to Plaintiff was Defendants' separate documents and separate entries to the pretrial order. The only

---

[7] Despite these claims, Gavrieli's counsel learned at the December 4, 2019 deposition of Mr. Pichler that Ms. Giraldo had in fact not left the country. Defendants' counsel assertions regarding her unavailability were false.

11

collaboration was in regards to the Joint Pre-Trial order and the joint stipulated facts, Defendants made only minor changes to the collaborative sections of the PTO and Defendants' cannot stipulate to the majority of the proposed stipulated facts.  Furthermore, as a result of the stipulation, Defendants had only ten days to review and respond to Plaintiff's proposed pretrial order drafts, statements of facts and law, exhibit lists and motions *in limine* rather than the standard sixteen days to review and respond.

      **B.**    **Testimony by Deposition**

    30.    Gavrieli's list of deposition designations is attached hereto as **Exhibit 8**. Defendants have no deposition designations; consequently, no **Exhibit 9** is being submitted.

    31.    The parties agree that objections and statements by counsel will not be introduced except where necessary to understand the answer to the question.  The parties agree that exhibit(s) referenced in a designated deposition excerpts may be presented and shown to the jury at the same time that the excerpt is played or read.

**VI.**    **EXHIBITS**

    32.    Gavrieli's trial exhibit list is attached as **Exhibit 10**.  Defendants' trial exhibit list is attached as **Exhibit 11** (supplemented 4/4/19 with Gavrieli's specific objections to each exhibit).

    33.    **Gavrieli's General Objections to Defendants' Proposed Trial Exhibits (supplemented 4/4/19):**  *First*, a significant portion of the document identified in Defendants' exhibit list were produced well after the close of fact discovery, and some were even produced for the first time along with Defendants' pretrial disclosures.  *EMC Corporation v. Pure Storage Inc.*, 2016 WL 823110 (D. Del. Feb. 29, 2016) (J. Andrews) (striking documents produced after the close of fact discovery, noting that "Plaintiffs should not benefit from their own late fact discovery allowed as a curative measure for their previous late disclosures."); *Philips Elec. North*

*Am. Corp. v. Contec Corp.*, 2004 WL 769371 (D. Del. Apr. 5, 2004) (J. Jordan) (same).

Defendants should not be permitted to rely on any of their late-produced documents at the trial.

34.    ***Second***, many of the purported prior art references identified in Defendants'

exhibit list were neither included in their invalidity contentions, nor produced during fact

discovery.  *Praxair, Inc. v. ATMI, Inc.,* 2005 WL 3159054, at \*4 (D. Del. Nov. 28, 2005) (J.

Robinson) (excluding prior art patents and references not timely disclosed during fact

discovery—"Prior art references must be disclosed during fact discovery and the parties must

disclose their intent to rely thereon, regardless of whether or not the opposing party is aware of

the reference.  It is undisputed that the two references at issue, and the intent to rely on them for

invalidating the asserted claims, were not disclosed to plaintiffs by defendants until after the

close of fact discovery.  Therefore, these references are excluded from defendants' invalidity

case."); *Bridgestone Sports Co. Ltd. v. Acushnet Co.*, 2007 WL 521894, at \*5 (D. Del. Feb. 15,

2007) **(**J. Farnan) (same—"The Court also agrees with Bridgestone that if Acushnet is permitted

to rely on these untimely identified references, Bridgestone would be required to conduct

additional fact and expert discovery in order to formulate a proper response.  As Bridgestone

noted in its Reply Brief, it focused its attention during discovery on the numerous references

identified by Acushnet in its validity contentions and not on these undisclosed references.").  As

explained in Gavrieli's Motion *in Limine* No. 2, Defendants should not be permitted to rely on

alleged prior art that was not disclosed in their invalidity contentions, and they certainly should

not be permitted to rely on alleged prior art that was not timely disclosed.

35.    ***Third***, the alleged prior art references that were identified in Defendants'

invalidity contentions are fatally incomplete and designed only to mislead the jury.  Although

disguised as images from certain "archived" webpages, the archived webpages themselves do not

actually contain these images.  Instead, Defendants found images *currently* on Gavrieli's web servers and apparently intend to argue (without any corroborating evidence) that those images qualify as prior art because the image name matches the one listed in the archived webpage. Allowing Defendants to present images incapable of being authenticated as prior art would be severely prejudicial to Gavrieli and extremely confusing to the jury.

36.     Gavrieli's trial exhibits will be identified with PTX numbers, starting with PTX1. Gavrieli's demonstrative exhibits will be identified with PDX numbers, starting at PDX1. Defendants' trial exhibits will be identified with DTX numbers, starting with DTX1. Defendants' demonstrative exhibits will be identified with DDX numbers, starting with DDX1.

37.     On or before the first day of trial, counsel will deliver to the Courtroom Deputy a completed AO Form 187 exhibit list for each party.

38.     Exhibits that a party seeks to move into evidence to which no objection has been made will be received into evidence without the need for additional foundation testimony once introduced through and shown to a testifying witness.

39.     The parties agree that any description or date of a document on an exhibit list is provided for convenience only and may not be used as an admission or otherwise as evidence regarding the listed document or any other listed document.

40.     Any documents, deposition transcripts, or portions thereof, or other items, not specifically identified herein or offered into evidence, may still be used at trial for purposes of impeachment, if otherwise competent for such purposes, and may be admitted into evidence consistent with the requirements of the Federal Rules of Evidence.

41.     In order to reduce the number of duplicate exhibits, where a deposition excerpt references a document by exhibit number and that identical document was also marked with a

different trial exhibit number, a party may substitute one exhibit for the other.  In addition, the parties will meet and confer regarding replacing any poor print or digital quality copies of exhibits with substantively identical improved or higher quality or color copies.

42.     Legible photocopies of documents may be offered and received in evidence in lieu of originals thereof.  Electronic versions of document exhibits in their native format, such as spreadsheets or presentations, may be offered into evidence in lieu of paper or PDF versions. The parties will exchange replacement versions and/or native versions of exhibits prior to use in trial.

43.     The parties agree that demonstrative exhibits the parties and experts intend to use at trial do not need to be included on their respective lists of trial exhibits attached hereto.

44.     Subject to other provisions of this Order, no party may offer as evidence an exhibit not present on its exhibit list absent Court order or by agreement of the parties.

45.     The parties will meet and confer regarding their respective objections in an effort to resolve all objections and issues prior to presenting them to the Court.

46.     **Gavrieli's Objection to Defendants' Untimely Disclosure (updated 4/4/19):** Defendants' trial exhibit list was not disclosed by the March 25, 2019 deadline for Defendants' pretrial order materials.  Defendants' counsel, Mr. Stephen Lobbin, first emailed Defendants' trial exhibit list (attached as Exhibit 1) to Gavrieli's counsel at **2:01 P.M. on March 29, 2019**. Therefore, Gavrieli submits that Defendants' exhibit list should be stricken as untimely.

47.     Defendants' position is that documents sent on March 15 were buried in an email that looked like a supplemental document production.  No cover letter was provided informing defendants that the files were Plaintiff's pretrial order drafts, statements of facts and law, exhibit lists and motions *in limine*.  Rather, the files were described as pretrial disclosures with an

additional message that additional PDFs would be sent, and no reminders were ever given. Moreover, there is no prejudice to Plaintiff since the majority of what had to be provided to Plaintiff was Defendants' separate documents and separate entries to the pretrial order. The only collaboration was in regards to the Joint Pre-Trial order and the joint stipulated facts, Defendants made only minor changes to the collaborative sections of the PTO and Defendants' cannot stipulate to the majority of the proposed stipulated facts.  Furthermore, as a result of the stipulation, Defendants had only ten days to review and respond to Plaintiff's proposed pretrial order drafts, statements of facts and law, exhibit lists and motions *in limine* rather than the standard sixteen days to review and respond.

## VII.   DISCLOSURES OF WITNESSES AND EXHIBITS DURING TRIAL

48.     The parties shall disclose by email the identity of any witnesses they intend to call, and whether each such witness will be called live or by deposition, by 7:30 p.m. the day before the day of trial during which the witness will testify.  In other words, if a witness will testify on a Wednesday, the witness must be identified by 7:30 p.m. on Tuesday prior to said Wednesday.

49.     The parties will identify deposition designations by 7:30 p.m. three days before their intended use.  Counter-designations will be due by 8:30 p.m. that evening.  The parties shall exchange objections to deposition designations at 9:00 p.m. that evening and meet and confer at 9:30 p.m. regarding the same.  The party introducing the deposition testimony shall be responsible for editing the deposition video to include the testimony and any counter-designation testimony.

50.     Each party shall provide to the other side a list of all exhibits, non-documentary demonstratives (e.g., poster boards), and live product demonstrations (such as physical exhibit(s), physical prior art, or physical products) for direct examination, but not for cross

examination, by no later than 7:30 p.m. the day before the party intends to call each witness.  The

parties shall exchange objections to these exhibits by 9:00 p.m. on the day they are received.

The parties shall meet and confer regarding any objections to these exhibits at 9:30 p.m. on the

day they are received.  Any demonstratives exchanged during trial will not be used by an

opposing party prior to being used by the disclosing party.

51.     The parties shall exchange copies of all documentary, graphic, slide, animation,

and any other form of demonstratives they plan to use at trial during direct examination, but not

for cross-examinations, by 7:30 p.m. the day before their anticipated use.  Any objections to the

demonstrative exhibits shall be provided by 9:00 p.m.  The parties shall meet and confer

telephonically or in person in an attempt to resolve any objections to the demonstrative at 9:30

p.m.  This provision does not apply to demonstratives created during testimony or demonstratives

to be used for cross examination, neither of which need to be provided to the other side in advance

of their use.  In addition, blow-ups or highlights of exhibits or parts of exhibits or testimony are

not required to be provided to the other side in advance of their use.

52.     Any exhibits to be used during opening statements are to be exchanged by 4 p.m.

the day before the opening statements.  Any objections to those exhibits must be provided by 6

p.m. the same day the exhibits are received (the day before the opening statements).  The parties

shall meet and confer telephonically or in person in an attempt to resolve any objections to these

exhibits at 8:00 p.m.  If objections cannot be resolved by the parties, the unresolved issues will

be raised with the Court in the morning before the exhibits are to be presented to the jury.  Any

exhibit listed on a party's own exhibit list as to which no objection remains pending at the time

of opening statements may be shown to the jury by that party during opening statements if the

exhibit will be introduced at trial.  Demonstratives for either party's opening or closing do not need to be exchanged or that deposition video should be permitted during any party's opening.

53.     If good faith efforts to resolve objections to demonstrative exhibits fail, the objecting party shall bring its objections to the Court's attention prior to the opening statements or prior to the applicable witness being called to the witness stand.

## VIII.   GAVRIELI'S STATEMENT OF INTENDED PROOF

54.     Gavrieli intends to prove that Defendants have infringed the Patents-in-Suit by making, using, offering for sale, and selling in the United States and importing into the United States the "Terzetto Milano" ballet flats (the "Accused Products"); that Defendants infringement of the Patents-in-Suit was willful; that damages should be awarded to Gavrieli due to Defendants' infringement of the Patents-in-Suit; that Gavrieli should be awarded the total profits realized by Defendants' for their infringement under 35 U.S.C. § 289; that Gavrieli should be awarded enhanced damages under 35 U.S.C. § 284 for Defendants' willful infringement of the Patents-in-Suit; that Gavrieli should be awarded its costs and reasonable attorneys' fees under at least 35 U.S.C. § 285; and that Gavrieli is entitled to permanent injunctive relief enjoining Defendants from further infringement of any of the Patents-in-Suit.

55.     Gavrieli also intends to prove that its trade dress (*i.e.*, signature blue soles used on Tieks ballet flats) has acquired distinctiveness or secondary meaning and is non-functional; that Defendants' have infringed Gavrieli's trade dress under the Lanham Act, 15 U.S.C. § 1125(a), and the common law; that Defendants' infringement of Gavrieli's trade dress have been willful; that Gavrieli should be awarded damages, including without limitation the amount of Defendants' total profits from the infringement, harm to Gavrieli's goodwill and reputation, and corrective advertising needed to restore Gavrieli's reputation, due to Defendants' infringement of Gavrieli's trade dress; that Gavrieli should be entitled to recover its costs of this action under 15

U.S.C. § 1117 due to Defendants' infringement of Gavrieli's trade dress; that Gavrieli should be awarded three times the amount of damages and/or Defendants' profits pursuant to 15 U.S.C. § 1117 because Defendants' infringement of Gavrieli's trade dress was intentional and willful; that Gavrieli is entitled to exemplary and punitive damages, an award of costs, reasonable attorneys' fees, and prejudgment interest; that this is an exceptional case and that Gavrieli is entitled to an award of attorneys' fees and costs under 15 U.S.C. § 1117 and the common law; and that Gavrieli is entitled to permanent injunctive relief enjoining Defendants from further infringement of Gavrieli's trade dress.

56.     Gavrieli also intends to prove that Defendants committed acts of unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a), and the common law; that Defendants' acts of unfair competition have been willful; that Gavrieli should be awarded damages, including without limitation the amount of Defendants' total profits from the infringement, harm to Gavrieli's goodwill and reputation, and corrective advertising needed to restore Gavrieli's reputation, due to Defendants' acts of unfair competition; that Gavrieli should be entitled to recover its costs of this action under 15 U.S.C. § 1117 due to Defendants' acts of unfair competition; that Gavrieli should be awarded three times the amount of damages and/or Defendants' profits pursuant to 15 U.S.C. § 1117 because Defendants' acts of unfair competition were intentional and willful; that because Defendants' actions have been willful, Gavrieli is entitled to exemplary and punitive damages, an award of costs, reasonable attorneys' fees, and prejudgment interest; that this is an exceptional case and that Gavrieli is entitled to an award of attorneys' fees and costs under 15 U.S.C. § 1117 and that common law; and that Gavrieli is entitled to permanent injunctive relief enjoining Defendants from further unfair competition.

57.     Gavrieli also intends to prove that Defendants' have engaged in unfair competition in violation of California Business and Professions Code § 17200 *et seq.*; that Gavrieli is entitled to restitutionary recovery from Defendants; that Gavrieli is entitled to award of punitive damages pursuant to California Civil Code § 3294; and that Gavrieli is entitled to permanent injunctive relief against Defendants for infringement of Gavrieli's trade dress and unfair competition.

58.     Gavrieli also intends to prove that Defendants have been unjustly enriched to Gavrieli's detriment; and that Gavrieli is entitled to a disgorgement of all ill-gotten gains and profits resulting from Defendants' inequitable activities.

59.     Gavrieli also intends to prove that Defendants made false and misleading statements and omissions in violation of the Lanham Act, 15 U.S.C. § 1125(a), injuring both consumers and Gavrieli; that Defendants' false and misleading statements were made willfully; that Gavrieli should be awarded damages, including without limitation the amount of Defendants' total profits and gains from Defendants' inequitable activities, harm to Gavrieli's goodwill and reputation, and corrective advertising needed to restore Gavrieli's reputation, that Gavrieli has proven by a preponderance of the evidence that it should be awarded due to Defendants' false and misleading statements; that Gavrieli should recover its costs of this action under 15 U.S.C. § 1117 due to Defendants' false and misleading statements; that Gavrieli should be awarded three times the amount of damages and/or Defendants' profits pursuant to 15 U.S.C. § 1117 because Defendants' false and misleading statements were made intentionally and willfully; that because Defendants' actions have been willful, Gavrieli is entitled to exemplary and punitive damages, an award of costs, reasonable attorneys' fees, and prejudgment interest; that this is an exceptional case and Gavrieli is entitled to an award of attorneys' fees and costs

under 15 U.S.C. § 1117; and that Gavrieli is entitled to permanent injunctive relief enjoining Defendants from further making any false and misleading statements and ordering removal of all of Defendants' false advertisements.

60.     Gavrieli also intends to prove that Defendants made false and misleading statements and omissions in violation of California Business and Professions Code § 17500 *et seq.* injuring both consumers and Gavrieli; that Gavrieli is entitled to restitutionary recovery from Defendants for these acts; that Gavrieli is entitled to award of punitive damages pursuant to California Civil Code § 3294; and that Gavrieli is entitled to permanent injunctive relief enjoining Defendants from further making any false and misleading statements and ordering removal of all of Defendants' false advertisements.

61.     Gavrieli also intends to establish that it should be awarded prejudgment and postjudgment interest under 35 U.S.C. § 284.

62.     Gavrieli will seek an order awarding any other such relief as is just and proper.

63.     Gavrieli also intends to rebut any assertions by Defendants that the Patents-in-Suit are not infringed and invalid and that Gavrieli's trade dress is not infringed and invalid.  Gavrieli also intends to rebut any affirmative defenses or counterclaims that Defendants are permitted to raise at the trial.

64.     Gavrieli objects to Defendants' Statement of Intended Proof as it was submitted after the March 25, 2019 deadline for Defendants to submit their portions of the pretrial order.  *See* Court's February 27, 2019 Order and the Parties' Joint Stipulation (D.I. 107) (setting March 25, 2019 as the deadline for Defendants' portions for the pretrial order).  As such, Gavrieli has not had a fair opportunity to review, evaluate, and, if necessary, state objections as to what

Defendants propose proving at trial. Gavrieli reserves the right to raise other objections after fully reviewing and considering Defendants' statement.

## IX.    DEFENDANTS' STATEMENT OF INTENDED PROOF

65.    Defendants intend to prove that Defendants have not infringed, either directly or indirectly, any valid claim of the patents-in-suit; that no ordinary, reasonable observer with knowledge of the prior art would find that the accused infringing products utilize any of the asserted novel elements of the designs claimed in the patents-in-suit, for reasons including but not limited to the much different shapes of the soles used in the accused infringing products; and that an ordinary, reasonable observer would find that the designs used in the accused infringing products more closely resemble the Camper "Right" shoe first sold in 2005.

66.    Defendants also intend to prove that each claim of the patents-in-suit is invalid under 35 U.S.C. § 102 and 35 U.S.C. § 102 (pre-AIA) as the designs claimed in the patents-in-suit were disclosed prior to the critical date of August 10, 2010, including being offered for sale within the United States on the Tieks.com website on or before May 13, 2010; that Plaintiff knew that the claimed designs were disclosed by offering them for sale within the US on or before May 13, 2010; that Plaintiff did not inform the USPTO that similar designs were sold on or before May 13, 2010.

67.    Defendants also intend to prove that each of the patents-in-suit is invalid for non-statutory double patenting for extending the term of D676,634.

68.    Defendants also intend to prove that Plaintiff has not complied with the labeling requirements of 35 U.S.C. § 287(a).

69.    Defendants also intend to prove that Defendants have not infringed and is not infringing any valid trademark or trade dress rights of Plaintiff, as alleged or otherwise, including that there is no likelihood of confusion; that consumers do not associate the sole colors blue or teal with Plaintiff, or that secondary meaning does not otherwise exist; that the use of teal or blue on

the sole of a shoe is not distinct to Plaintiff and that other similarly colored soles have been offered

for sale in the United States by others; and that the shade of blue originally used by Defendants is

clearly darker than the shade of teal used by Plaintiff, and as such, it is unlikely that consumers

would confuse Soto USA's shoes with Plaintiff's shoes if any trade dress rights exist.

70.     Defendants also intend to prove that Plaintiff's asserted trademark and/or trade

dress rights are invalid, including for lack of distinctiveness and/or lack of secondary meaning;

that consumers do not associate the sole colors blue or teal with Plaintiff, or that secondary

meaning does not otherwise exist; and that the use of teal or blue on the sole of a shoe is not distinct

to Plaintiff and that other similarly colored soles have been offered for sale in the United States by

others.

71.     Defendants also intend to prove that Plaintiffs made false and misleading

statements and omissions in violation of the Lanham Act, 15 U.S.C. § 1125(a), injuring both

consumers and Defendants; that Plaintiff's false and misleading statements were made willfully;

that Defendants should be awarded damages, including without limitation the amount of

Plaintiff's total profits and gains from Plaintiff's inequitable activities, harm to Defendants'

goodwill and reputation, and corrective advertising needed to restore Defendants' reputation, that

Defendant has proven by a preponderance of the evidence that it should be awarded due to

Plaintiff's false and misleading statements; that Defendants should recover their costs of this

action under 15 U.S.C. § 1117 due to Plaintiff's false and misleading statements; that Defendants

should be awarded three times the amount of damages and/or Plaintiff's profits pursuant to 15

U.S.C. § 1117 because Plaintiff's false and misleading statements were made intentionally and

willfully; that because Plaintiff's actions have been willful, Defendants are entitled to exemplary

and punitive damages, an award of costs, reasonable attorneys' fees, and prejudgment interest;

that this is an exceptional case and Defendants are entitled to an award of attorneys' fees and costs under 15 U.S.C. § 1117; and that Defendants are entitled to permanent injunctive relief enjoining Plaintiff from further making any false and misleading statements and ordering removal of all of Plaintiff's false advertisements.

72.     Defendants also intend to prove that Plaintiff made false and misleading statements and omissions in violation of California Business and Professions Code § 17500 *et seq.* injuring both consumers and Defendants; that Defendants are entitled to restitutionary recovery from Plaintiff for these acts; that Defendants are entitled to award of punitive damages pursuant to California Civil Code § 3294; and that Defendants are entitled to permanent injunctive relief enjoining Plaintiff from further making any false and misleading statements and ordering removal of all of Plaintiff' false advertisements.

73.     Defendants also intend to prove that Plaintiff has engaged in unfair competition in violation of California Business and Professions Code § 17200 *et seq.*; that Defendants are entitled to restitutionary recovery from Plaintiff; and that Defendants are entitled to an award of punitive damages pursuant to California Civil Code § 3294.

74.     Defendants also intend to prove that Plaintiff has engaged in intentional interference with contractual relations under California common law and that Defendants are entitled to restitutionary recovery from Plaintiff.

75.     Defendants also intend to prove that Plaintiff has engaged in intentional interference with prospective economic relations under California common law and that Defendants are entitled to restitutionary recovery from Plaintiff.

76.     Defendants also intend to prove that Plaintiff has engaged in trade libel under California common law and that Defendants are entitled to restitutionary recovery from Plaintiff.

77.     Defendants also intend to rebut any assertions by Plaintiff that Defendants enaged in patent infringement under 35 U.S.C. § 271; federal trade dress infringement and unfair competition under 15 U.S.C. § 1125(a); common law trade dress infringement and unfair competition; unfair competition under Cal. Bus. & Prof. Code § 17200; unjust enrichment, false advertising under 15 U.S.C. § 1125(a); and false advertising under Cal. Bus. & Prof. Code § 17500.

78.     Defendants' position is that documents sent on March 15 were buried in an email that looked like a supplemental document production.  No cover letter was provided informing defendants that the files were Plaintiff's pretrial order drafts, statements of facts and law, exhibit lists and motions *in limine*.  Rather, the files were described as pretrial disclosures with an additional message that additional PDFs would be sent, and no reminders were ever given. Moreover, there is no prejudice to Plaintiff since the majority of what had to be provided to Plaintiff was Defendants' separate documents and separate entries to the pretrial order.  The only collaboration was in regards to the Joint Pre-Trial order and the joint stipulated facts, Defendants made only minor changes to the collaborative sections of the PTO and Defendants' cannot stipulate to the majority of the proposed stipulated facts.  Furthermore, as a result of the stipulation, Defendants had only ten days to review and respond to Plaintiff's proposed pretrial order drafts, statements of facts and law, exhibit lists and motions *in limine* rather than the standard sixteen days to review and respond.

79.     **Gavrieli's Objections to Defendants' Statement of Intended Proof (supplemented 4/4/19):**  As stated above in Section III, Gavrieli objects to Defendants' intent to assert facts and present evidence in support of its counterclaims that was not disclosed in Soto Massini's responses to contention interrogatories served by Gavrieli.  This objection is moot, however, if the motion to dismiss Soto Massini's counterclaims is granted.

## X.   CERTIFICATION OF GOOD-FAITH SETTLEMENT EFFORTS

80.     The parties certify that they have engaged in a good-faith effort to resolve this case by settlement but have been unable to reach a resolution.

## XI.   AMENDMENTS OF THE PLEADINGS

81.     Neither party intends to request an amendment to its pleadings at the present time.

## XII.   OTHER MATTERS

### A.   Length of Trial

82.     This case is currently scheduled for a five-day trial beginning at 9:30 a.m. on April 29, 2019, with subsequent trial days beginning at 9:30 a.m. and the jury excused each day at 4:30 p.m.

83.     Plaintiff requests 12 hours per side for direct, cross, and rebuttal examination.  The parties further request 30 minutes per side for voir dire, and 30 minutes per side for an opening statement, and 60 minutes per side for closing.  Defendants request only half those amounts of time for each side, as long as the time per side is mutual.

84.     The Courtroom Deputy will keep a running total of trial time used by counsel.

### B.   Motions *in Limine*

85.     The briefing on Gavrieli's motions *in limine* is attached as **Exhibit 12**.

86.     **Gavrieli's Objection to Defendants' Untimely Disclosure:**  As with Defendants' other pretrial submissions, Gavrieli objects to Defendants' oppositions to Gavrieli's motions *in limine* because they were not disclosed by the March 25, 2019 deadline for Defendants' to disclose their portions of the pretrial order.  Defendants' counsel, Mr. Stephen Lobbin, first emailed Defendants' responses (included in Exhibit 12) to Gavrieli's counsel at **11:23 A.M. on March 29, 2019**.  As such, Gavrieli has not had a reasonable or fair opportunity to prepare reply briefs responding to the arguments raised by Defendants' in their responses.  Unless the Court prefers or

orders otherwise, Gavrieli intends to submit its reply briefs in support of its motions *in limine* as soon as possible, but no later than four (4) business days from today.

87.     Defendants' position is that documents sent on March 15 were buried in an email that looked like a supplemental document production.  No cover letter was provided informing defendants that the files were Plaintiff's pretrial order drafts, statements of facts and law, exhibit lists and motions *in limine*.  Rather, the files were described as pretrial disclosures with an additional message that additional PDFs would be sent, and no reminders were ever given. Moreover, there is no prejudice to Plaintiff since the majority of what had to be provided to Plaintiff was Defendants' separate documents and separate entries to the pretrial order.  The only collaboration was in regards to the Joint Pre-Trial order and the joint stipulated facts, Defendants made only minor changes to the collaborative sections of the PTO and Defendants' cannot stipulate to the majority of the proposed stipulated facts.  Furthermore, as a result of the stipulation, Defendants had only ten days to review and respond to Plaintiff's proposed pretrial order drafts, statements of facts and law, exhibit lists and motions *in limine* rather than the standard sixteen days to review and respond.

## C.     Voir Dire, Jury Instructions, and Verdict Form

88.     The parties are separately submitting to the Court proposed voir dire, jury instructions, and verdict forms.

## D.     Jurors and Jury Procedures

89.     There shall be eight jurors.  The Court will conduct jury selection through the "struck juror" method, beginning with the Court reading voir dire to the jury panel in the courtroom, continuing by meeting with jurors individually in chambers and there addressing any challenges for cause, and concluding back in the courtroom with peremptory strikes.

90.     On the first day of trial, each member of the jury will be provided a binder (prepared by Gavrieli) containing the Patents-in-Suit and a notepad for notes.

91.     The parties agree that the jurors shall be permitted to write notes by hand on their notepads during the trial, and that jurors be permitted to bring their provided binders and notepads into the deliberation room.  The parties further propose that the jurors' binders be collected by the clerk each evening after daily recess, and collected and destroyed without review after the jury's discharge.

### E.     Objections to Expert Testimony

92.     The parties request that the Court should rule at trial on any objections to expert testimony as outside the scope of prior expert disclosures.

### F.     Set-up of Electronic Equipment

93.     The parties request that the Court grant them access to the Courtroom on Friday, April 26, 2019, the business day before trial begins, to allow them to set up electronic and computer devices to be used during the trial.

### G.     Other Stipulations

94.     The parties agree that neither party will disparage the United States Patent Office.

95.     The parties agree that written responses to interrogatories may be used at trial consistent with the Federal Rules of Civil Procedure and Federal Rule of Evidence even if such responses have not been verified by the responding party.

96.     The parties agree that that they will not offer evidence or arguments related to theories, claims, patents, or defenses that are no longer in the case.

**IT IS HEREBY ORDERED** that this Final Pretrial Order shall control the subsequent course of the action, unless modified by the Court to prevent manifest injustice.

Dated:

_____
Honorable Maryellen Noreika
U.S. District Court Judge

APPROVED AS TO FORM AND SUBSTANCE:

/s/ John V. Gorman
MORGAN, LEWIS & BOCKIUS LLP
John V. Gorman (#6599)
Amy M. Dudash (#5741)
The Nemours Building
1007 North Orange Street, Suite 501
Wilmington, DE 19801
(302) 574-3000
john.gorman@morganlewis.com
amy.dudash@morganlewis.com

Michael J. Lyons (admitted *pro hac vice*)
Ahren C. Hsu-Hoffman (admitted *pro hac vice*)
Ehsun Forghany (admitted *pro hac vice*)
1400 Page Mill Road
Palo Alto, CA 94304
(650) 843-4000
michael.lyons@morganlewis.com
ahren.hsu-hoffman@morganlewis.com
ehsun.forghany@morganlewis.com

Sharon R. Smith (admitted *pro hac vice*)
Brett A. Lovejoy, Ph.D (admitted *pro hac vice*)
One Market, Spear Street Tower
San Francisco, CA 94105
(415) 442-1000
sharon.smith@morganlewis.com
brett.lovejoy@morganlewis.com

*Attorneys for Plaintiff*
*Gavrieli Brands LLC*

/s/ Stamatios Stamoulis*
STAMOULIS & WEINBLATT LLC
Stamatios Stamoulis (#4606)
800 N. West Street, Third Floor
Wilmington, DE 19801
(302) 999-1540
stamoulis@swdelaw.com

SML AVVOCATI P.C.
Stephen M. Lobbin (admitted *pro hac vice*)
Austin J. Richardson (admitted *pro hac vice*)
888 Prospect Street, Suite 200
San Diego, CA 92037
sml@smlavvocati.com
ajr@smlavvocati.com

*Attorneys for Defendants Soto Massini (USA)*
*Corporation and Thomas Pichler*

*Signature indicates approval of the form
and substance of the Final Pretrial Order and
attachments as submitted on March 29, 2019