01:12:40

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

GAVRIELI BRANDS, LLC,          )
                              )
            Plaintiff,         )
                              ) C.A. No. 18-462(MN)
v.                            )
                              )
SOTO MASSINI (USA) CORP., et al.,)
                              )
            Defendants.        )

Tuesday, April 16, 2019
8:27 a.m.
Pretrial Hearing

844 King Street
Wilmington, Delaware

BEFORE:  THE HONORABLE MARYELLEN NOREIKA
         United States District Court Judge

APPEARANCES:

        MORGAN LEWIS & BOCKIUS, LLP
        BY:  AMY MICHELE DUDASH, ESQ.
        BY:  AHREN C. HSU-HOFFMAN, ESQ.
        BY:  MICHAEL J. LYONS, ESQ.
        BY:  EHSUN FORGHANY, ESQ.

                    Counsel for the Plaintiffs

APPEARANCES CONTINUED:


                    STAMOULIS & WEINBLATT, LLC
                    BY:  STAMATIOS STAMOULIS, ESQ.

                    -and-

                    SML AVVOCATI, P.C.
                    BY:  STEPHEN M. LOBBIN, ESQ.

                         Counsel for the Defendants




                         - oOo -

                    P R O C E E D I N G S

               (REPORTER'S NOTE:  The following hearing was

          held in open court, beginning at 8:27 a.m.)




08:22:50
08:27:50        THE COURT:  Good morning.  Please be seated.
08:27:52   Let's start with some introductions.
08:27:55        MS. DUDASH:  Good morning, Your Honor.  Amy
08:27:59   Dudash from Morgan Lewis for plaintiff, Gavrieli Brands,
08:28:03   LLC.  And with me today is Michael Lyons, Ahren Hsu-Hoffman,
08:28:08   and Eshun Forghany.
08:28:12        THE COURT:  Good morning.
08:28:13        Mr. Stamoulis.

08:28:15  1          MR. STAMOULIS:  Good morning, Your Honor.  Stam

08:28:17  2   Stamoulis on behalf of the defendants, Soto Massini.  With

08:28:21  3   me today is Stephen Lobbin and also Thomas Pichler, the

08:28:26  4   president and CEO of Soto Massini.

08:28:29  5          THE COURT:  Okay.  We are here today for the

08:28:31  6   pretrial conference.  We have a number of issues to go

08:28:34  7   through and I have to be out of here by 10:30, so I thought

08:28:38  8   we would just start with some of the issues that I have

08:28:44  9   reviewed and am going to rule on now.  And then we'll go

08:28:49 10   through the pretrial order and some of the motions in limine

08:28:53 11   where I would like to hear some more argument.

08:28:56 12          First we have the motion to dismiss the

08:29:01 13   counterclaims and affirmative defenses in Soto Massini USA

08:29:08 14   Corps counterclaims.  And I am going to grant the motion

08:29:13 15   with respect to the fifth and sixth counterclaims which go

08:29:17 16   to false advertising under the Lanham Act and false

08:29:21 17   advertising under the California Business and Professional

08:29:25 18   Code.

08:29:25 19          To plead a claim for false advertising under the

08:29:28 20   Lanham Act, a plaintiff must allege that the defendant made

08:29:31 21   a false or misleading statement.  The Ninth Circuit has

08:29:35 22   recognized that a claim for false advertising under Section

08:29:38 23   17500 of the California Business and Professional Code is

08:29:42 24   substantially congruent to a claim for false advertising

08:29:45 25   under the Lanham Act.

08:29:47 1              Here Soto USA asserts that Gavrieli made false

08:29:53 2  statements to Kickstarter and Indiegogo.

08:29:57 3              Soto USA alleges that Gavrieli "intentionally

08:30:02 4  misled Kickstarter and Indiegogo" and that "Gavrieli

08:30:06 5  continued to make false statements to Kickstarter and

08:30:10 6  Indiegogo."  These are unsupported conclusions without any

08:30:13 7  underlying facts pleaded, such as what false statements were

08:30:17 8  made and what was done to mislead.  The Court is not

08:30:20 9  obligated to accept unsupported conclusions as true, and

08:30:26 10  Soto USA has failed to plead that Gavrieli made false or

08:30:30 11  misleading statements in a plausible way.

08:30:31 12             The Court also finds that Soto USA's allegation

08:30:35 13  that "Gavrieli told Kickstarter and Indiegogo that Soto USA

08:30:40 14  was infringing upon the asserted patents and Gavrieli's

08:30:44 15  trade dress" is insufficient to state a claim because these

08:30:48 16  alleged statements are protected by California's litigation

08:30:51 17  privilege.  And for that I'm relying on *eCash Technologies,*

08:30:56 18  *Inc. versus Guagliardo*, 127 F. Supp.  2d 1068, 1082 in the

08:31:04 19  Central District of California.

08:31:07 20             California's litigation privilege extends to

08:31:09 21  communications "with some relation to judicial proceedings,"

08:31:14 22  including communications with third parties.  Thus,

08:31:16 23  Gavrieli's alleged statements to Kickstarter and Indiegogo

08:31:20 24  fall under this privilege.

08:31:23 25             Additionally, Soto USA asserts that Gavrieli

08:31:25  1   falsely advertised by describing its Tieks brand flats as

08:31:30  2   being made with "Italian leather."

08:31:32  3          That description is not actually false because

08:31:35  4   Gavrieli's Tieks brand flats are made with Italian leather.

08:31:39  5          Soto USA's argument that this description

08:31:41  6   without disclosing the origin of manufacture is likely to

08:31:45  7   evoke specific geographical associations with Italy and

08:31:51  8   imply that the entire product is manufactured in Italy is

08:31:54  9   unpersuasive.

08:31:55 10          There is no duty under the Lantham Act to

08:31:58 11   disclose and a plaintiff's claim cannot be based on the

08:32:00 12   defendant's failure to disclose a fact.

08:32:03 13          Third, the Court finds that Gavrieli's

08:32:10 14   statements regarding Tieks brand flats unique split-sole and

08:32:14 15   flexible midsole and unparalleled comfort, flexibility,

08:32:18 16   durability, and style are nonactionable puffery.

08:32:22 17          Words constitute puffery if they are not

08:32:26 18   specific or measurable.  Words like "unique," "flexible,"

08:32:29 19   and "unparalleled" are not measurable, and Gavrieli's

08:32:32 20   statements consist of puffery and are thus non-actionable

08:32:37 21   for false advertising.

08:32:39 22          So because Soto USA failed to plead a claim for

08:32:43 23   false advertising under the Lantham Act, its Fifth

08:32:47 24   Counterclaim is dismissed.  And for the same reasons its

08:32:50 25   Sixth Counterclaim is dismissed.

08:32:51  1          The Seventh Counterclaim is unfair competition

08:32:55  2     under the California Business and Professional Code, Section

08:32:58  3     17200.

08:32:58  4          The Ninth Circuit has held that a "business act

08:33:01  5     or practice may violate the UCL if it is either unlawful,

08:33:08  6     unfair or fraudulent."  That is the Rubio versus Capital One

08:33:12  7     Bank case, 613 F.3d 1195 at 1204 in the Ninth Circuit.

08:33:19  8          To adequately plead a claim for unfair

08:33:22  9     competition, a plaintiff must specify which of the alleged

08:33:24 10     practices is unfair, which is unlawful, and which is

08:33:27 11     fraudulent.

08:33:28 12          Here, Soto USA pleads generally that Gavrieli's

08:33:32 13     wrongful conduct alleged herein constitutes an unlawful,

08:33:37 14     fraudulent, and/or unfair act or practice.

08:33:39 15          The Court finds that this allegation is

08:33:41 16     insufficient because it fails to specify which acts Soto USA

08:33:45 17     is complaining of and which acts it contends are unlawful

08:33:49 18     versus which acts are fraudulent versus which acts may be

08:33:53 19     unfair.

08:33:55 20          Therefore, Soto USA's Seventh Counterclaim is

08:33:57 21     dismissed.

08:33:58 22          The Eighth Counterclaim:  Intentional

08:34:01 23     Interference With Contractual Relations Under California

08:34:05 24     Law.

08:34:05 25          Under California law, to plead a claim for

08:34:07 1   intentional interference with contractual relations, a

08:34:11 2   plaintiff must plead a valid contract between itself and a

08:34:14 3   third party, that the defendant knew of the contract, and

08:34:17 4   that the defendant intentionally tried to disrupt the

08:34:20 5   contract.  A plaintiff must also plead that there was an

08:34:23 6   actual disruption of the contract that resulted in damages.

08:34:28 7   I'm relying there on *Nygard, Inc. versus Uusi-Kerttula*, 159

08:34:36 8   Cal. App. 4th 1027 at 1047.

08:34:37 9            Here, Soto USA fails to plead that there were

08:34:42 10  valid contracts between itself and Kickstarter or itself and

08:34:46 11  Indiegogo.

08:34:47 12           Soto USA argues that it has pleaded a valid

08:34:50 13  contract because it alleges that it had contracts with both

08:34:53 14  Kickstarter and Indiegogo "per the terms of service" of each

08:34:58 15  company.

08:35:00 16           This allegation, however, without supporting

08:35:02 17  facts that describe the substance of the contracts, is an

08:35:05 18  unsupported conclusion that the Court is not obligated to

08:35:08 19  accept as true in a motion to dismiss.

08:35:10 20           Moreover, the Court finds that even if Soto USA

08:35:14 21  had adequately pleaded the existence of valid contracts with

08:35:17 22  Kickstarter and Indiegogo, Gavrieli's alleged statements to

08:35:21 23  Kickstarter and Indiegogo are protected as I said before by

08:35:25 24  California's litigation privilege.

08:35:27 25           So because Soto USA has failed to plead a claim

08:35:31 1   for intentional interference with contractual relations, its

08:35:33 2   Eighth Counterclaim is dismissed.

08:35:35 3           The Ninth Counterclaim, Intentional Interference

08:35:38 4   With Prospective Economic Relations Under California Law.

08:35:44 5           Under California law, to plead intentional

08:35:45 6   interference with prospective economic relations, a

08:35:48 7   plaintiff must plead that an economic relationship existed

08:35:52 8   between itself and a third party, that the defendant had

08:35:55 9   knowledge of the relationship, that the defendant acted

08:35:58 10  intentionally to disrupt the relationship, and that an

08:36:01 11  actual disruption of the relationship occurred.  And I guess

08:36:06 12  fourth, that the plaintiff suffered economic harm because of

08:36:09 13  the disruption.

08:36:10 14          For that I'm relying on *CRST Van Expedited, Inc.*

08:36:17 15  *versus Werner Enterprises*, 479 F.3d 1099 from the Ninth

08:36:21 16  Circuit.

08:36:21 17          The Ninth Circuit has held that a plaintiff must

08:36:24 18  also "allege an act that is wrongful independent of the

08:36:27 19  interference itself."  For that, citing the same case.

08:36:33 20          Here, Soto USA fails to plead that Gavrieli

08:36:36 21  engaged in an act that was wrongful independent of the

08:36:38 22  interference itself.

08:36:40 23          Moreover, even if Soto USA did plead that

08:36:43 24  Gavrieli engaged in an independently wrongful act, the Court

08:36:47 25  finds that Soto USA fails to plead that an actual disruption

08:36:50 1    occurred.

08:36:52 2           Soto USA's allegation that its relationships

08:36:54 3    with Kickstarter and Indiegogo "were disrupted as a result

08:36:58 4    of Gavrieli's conduct and Soto USA was harmed thereby" is an

08:37:03 5    unsupported conclusion that the Court does not need to

08:37:07 6    accept as true and is not adequately supported by facts.

08:37:11 7    Therefore, Soto USA's Ninth Counterclaim is dismissed.

08:37:15 8           Under California law, the Tenth Counterclaim,

08:37:21 9    Trade Liable, to prove trade liable, a plaintiff must plead

08:37:24 10   that the defendant made a false, disparaging statement to a

08:37:28 11   third party.  The plaintiff must also plead special damages.

08:37:30 12   And for that I'm relying on *New.net, Inc. versus Lavasoft*,

08:37:36 13   356 F. Supp. 2d 1090 at 1113 from the Central District of

08:37:42 14   California.

08:37:42 15          Even when viewing the allegations in the light

08:37:46 16   most favorable to Soto USA here, Soto USA has failed to

08:37:49 17   adequately plead a claim for trade libel.

08:37:53 18          First, Soto USA has failed to adequately plead

08:37:58 19   that Gavrieli made a false, disparaging statement to a third

08:38:01 20   party.

08:38:01 21          Courts in California have held that a plaintiff

08:38:04 22   must allege facts regarding the allegedly libelous

08:38:08 23   statement, such as to whom the statements were made to, the

08:38:11 24   substance of the statements, and when the statements were

08:38:14 25   made, to adequately plead a claim for trade libel.

08:38:17 1          Here, although Soto USA pleads that Gavrieli

08:38:20 2  made statements to "third parties," Soto USA fails to plead

08:38:26 3  any other necessary facts, such as the substance of the

08:38:29 4  statements, when the statements were made, or where, et

08:38:33 5  cetera.  Therefore, the Court does not have to accept these

08:38:38 6  unsupported conclusions.  There is no specific facts, and

08:38:44 7  Soto USA has failed to adequately plead that Gavrieli made

08:38:48 8  libelous statements.

08:38:50 9          The Court also finds that Soto USA failed to

08:38:52 10  plead special damages for trade libel.  Under Rule 9(g),

08:38:57 11  special damages must be specifically stated.

08:39:00 12          The Court finds that Soto USA's allegation that

08:39:04 13  it "suffered direct financial harm" is insufficient under

08:39:09 14  Rule 9(g)'s requirement to specifically state the alleged

08:39:13 15  harm.

08:39:13 16          And the Tenth Counterclaim is therefore

08:39:15 17  dismissed.

08:39:15 18          With respect to Soto USA's request for leave to

08:39:22 19  amend its Fifth through Tenth counterclaims, I'm going to

08:39:25 20  deny that request.

08:39:26 21          The Court finds that granting leave to amend

08:39:29 22  would be futile.  Soto USA was on notice of the deficiencies

08:39:33 23  in its counterclaims when Gavrieli moved to dismiss Soto

08:39:37 24  USA's First Amended Counterclaims.

08:39:39 25          Soto USA has already had the opportunity to

08:39:40  1    amend and failed to cure these deficiencies in its Second

08:39:44  2    Amended Answer and Counterclaim.

08:39:46  3            And while it's not relevant to the motion to

08:39:48  4    dismiss, I note that the interrogatory responses given with

08:39:52  5    respect to these counterclaims also offered no specifics, no

08:39:57  6    facts, and indeed no evidence to support the claims.  There

08:40:01  7    was just those references to unspecified documents under

08:40:05  8    Rule 33.

08:40:06  9            So Soto USA's request to amend is denied.

08:40:10 10            With respect to Gavrieli's motion to strike the

08:40:15 11    appended affirmative defenses, I'm going to deny that

08:40:19 12    motion.  Soto USA affirmative defenses are identical to the

08:40:22 13    affirmative defenses that have been asserted by the

08:40:25 14    defendant, Thomas Pichler, in his answer.  Gavrieli, while

08:40:30 15    they reserve the right to at some point move to strike

08:40:34 16    Mr. Pichler's affirmative defenses as untimely, there is no

08:40:38 17    motion before me and with two weeks before trial such a

08:40:42 18    motion may be untimely, therefore, the issues in those

08:40:45 19    affirmative counterclaims will likely be before the Court

08:40:49 20    and I'm not going to strike them with respect to Soto USA.

08:40:54 21            Any questions?  Okay.

08:41:03 22            Now I wanted to talk -- I guess the next motion

08:41:08 23    is the motion for sanctions.  I have reviewed the papers,

08:41:15 24    and I do continue to have serious concerns about the

08:41:18 25    defendant's discovery efforts in this case.  Mr. Pichler put

08:41:22 1   in a declaration in his response, and I see that he is going

08:41:27 2   to testify at the upcoming trial.  I suspect that the issue

08:41:31 3   of the production in the discovery and the truth of certain

08:41:35 4   statements that he made is going to be further explored at

08:41:38 5   trial.  And I would like to see what happens there and get

08:41:41 6   more of an understanding as to the issues and be able to

08:41:47 7   make some credibility assessments.

08:41:49 8          So what I'm going to do right now is deny the

08:41:52 9   motion, but I will give the plaintiff leave to renew it

08:41:56 10  orally if you chose after Mr. Pichler testifies and I have

08:41:59 11  the ability to make the determinations that I think I need

08:42:04 12  to make.

08:42:05 13         Any questions on that?  Okay.

08:42:10 14         Now I wanted to talk about the motions in

08:42:14 15  limine.  Plaintiff has submitted three motions in limine.

08:42:21 16  For number one, number two, I would like to hear a little

08:42:25 17  bit from the parties.  With respect to number three,

08:42:29 18  plaintiff's motion in limine to preclude defendants from

08:42:32 19  mentioning unrelated legal proceedings involving Mr. Kfir

08:42:36 20  Gavrieli, I am going to grant that motion.

08:42:39 21         The other litigation is a business dispute in

08:42:43 22  California between Mr. Gavrieli and certain family members.

08:42:46 23  Defendant has made no showing of relevance saying only that

08:42:50 24  someone might open a door and make it relevant or that it

08:42:54 25  might be admissible under Rules 601 or 608, but in their

08:43:00  1    papers provide no explanation of how that could be so.

08:43:03  2         Moreover, the discussion about the proceedings

08:43:05  3    is likely to confuse the jury and be prejudicial to the

08:43:09  4    plaintiff.   In the absence of any showing of relevance that

08:43:13  5    we have here and the real potential for prejudice, mention

08:43:16  6    or discussion of other evidence regarding the California

08:43:19  7    litigation will not be coming in.

08:43:22  8         Anything there?

08:43:24  9         MR. LOBBIN:   Your Honor, if I may, just a point

08:43:27 10    of clarification.   If the witness testifies at trial in some

08:43:33 11    unprovoked manner or something about how the litigation

08:43:37 12    might have some relevance, I assume that we're permitted to

08:43:41 13    cross-examine on that point?

08:43:42 14         THE COURT:   You are.   If you think that someone

08:43:43 15    has opened the door, what I would like you to do is to tell

08:43:48 16    me before you just decide for yourself that the door has

08:43:51 17    been opened.   We will discuss it and if it's true that the

08:43:54 18    door has been opened, yes, then you may ask questions.

08:43:58 19         MR. LOBBIN:   I don't recall whether I

08:43:59 20    specifically said in our opposition or our response to the

08:44:02 21    motion, but just for the Court's clarity, we have no plans

08:44:07 22    to raise -- I know nothing about the other litigation, so we

08:44:12 23    have no plans to raise it anyway.

08:44:15 24         THE COURT:   Okay.   I guess if you guys had

08:44:18 25    talked about that, you could have saved me a minute or two

08:44:21 1    in reading that.

08:44:22 2              Let's go to plaintiff's motion in limine number

08:44:24 3    two, which is to precluded defendants from using prior art

08:44:28 4    not identified in invalidity contentions or corroborated as

08:44:34 5    prior art.  I have reviewed the submission by the

08:44:38 6    defendants.  Now I would like to hear from plaintiffs in

08:44:41 7    response to the submission what, if anything, is still being

08:44:47 8    objected to in terms of disclosure.  I understand that there

08:44:50 9    are essentially two issues here, one is kind of the art

08:44:53 10   itself and whether it was disclosed properly and then there

08:44:57 11   is also the issue of corroboration.  First I would like to

08:45:01 12   take the disclosure issue.

08:45:06 13             MR. HSU-HOFFMAN:  Good morning.  Ahren

08:45:10 14   Hsu-Hoffman on behalf of plaintiff Gavrieli.  In defendant's

08:45:13 15   response to the motion in limine number two, they made it

08:45:18 16   clear that they're intending to have Mr. Pichler and his

08:45:22 17   wife testify about, "many prior art shoe designs discussed

08:45:30 18   throughout this case."  To me that suggest they're going to

08:45:33 19   get up on the stand and feel free to talk about any shoes

08:45:39 20   that have at any point come up in this case.  That mostly

08:45:44 21   includes --

08:45:44 22             THE COURT:  Wait one second.  That's not the way

08:45:46 23   I read defendant's submission.  Is that what you meant in

08:45:49 24   the submission?

08:45:50 25             MR. LOBBIN:  I'm unclear on what he means, but

08:45:52  1    no, based on what he just said, no.

08:45:56  2              MR. HSU-HOFFMAN:  I'm quoting from the first

08:45:58  3    sentence.

08:45:58  4              THE COURT:  I understand.  But then they went on

08:46:01  5    for pages and pages to identify specific pieces of prior art

08:46:04  6    that they apparently intend to rely on.  So what I need to

08:46:07  7    know from you is not just a general complaint, what in what

08:46:11  8    they said that they were going to rely on of those exhibits

08:46:14  9    are you saying was not properly disclosed?

08:46:17 10              MR. HSU-HOFFMAN:  In their response to this

08:46:21 11    Court last week, they identified 60, approximately 69 what

08:46:25 12    they contend to be invalidating pieces of prior art.  Now,

08:46:31 13    not all of those references were identified in their

08:46:35 14    invalidity contentions.  The invalidity contentions --

08:46:40 15              THE COURT:  Which ones?  I'm trying to help you

08:46:42 16    out here and figure out what you want me to say they can't

08:46:45 17    do, because otherwise we'll have a trial where nobody knows

08:46:50 18    what's coming in.  So what references -- they in their

08:46:54 19    invalidity contentions relied on Tieks for anticipation,

08:46:58 20    Tieks first edition, and then Tieks in combination with

08:47:02 21    three patents for obviousness.  So what in what they have

08:47:06 22    said they now intend to rely on was not disclosed?

08:47:11 23              MR. HSU-HOFFMAN:  I have marked each exhibit

08:47:14 24    that wasn't referenced in the invalidity contentions with an

08:47:16 25    X.  I'm prepared to read that into the record, Your Honor,

08:47:19  1   if that would be helpful.

08:47:20  2               THE COURT:  I think I need to know which ones,

08:47:22  3   and they need to know which ones you're saying weren't

08:47:26  4   disclosed and why based on what they said where they were

08:47:30  5   disclosed they shouldn't come in.

08:47:33  6               MR. HSU-HOFFMAN:  Absolutely.  This would

08:47:35  7   include DTX-1.  I'm reading the ones that were not

08:47:39  8   disclosed.  DTX-2.  DTX-3.  DTX-4.  DTX-6.  DTX-9.  DTX-10.

08:47:49  9   DTX-12.  DTX-14.  DTX-16.  DTX-18.  DTX-24.  DTX-28.

08:48:02 10   DTX-29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42,

08:48:15 11   43, 44, 45, 46.

08:48:18 12               THE COURT:  You can just group them if you want.

08:48:20 13               MR. HSU-HOFFMAN:  I'm trying make making sure I

08:48:23 14   don't skip one that wasn't in there.  This would go all the

08:48:27 15   way from 38 to DTX -- I'm sorry, they have numbering on

08:48:36 16   here, so it doesn't always go in the correct order.  So if I

08:48:42 17   go back, DTX-42 through DTX-60, DTX-61, DTX-66, DTX-70,

08:49:05 18   DTX-84, 85, 87, 88, 21, 22, 23, and 25.

08:49:26 19               THE COURT:  Now, when you say they were not

08:49:29 20   disclosed, do you mean obviously they have been disclosed

08:49:33 21   because they're in the pretrial order?  So when was the

08:49:36 22   first time that you understood that these proposed exhibits

08:49:43 23   were going to be relied on?

08:49:45 24               MR. HSU-HOFFMAN:  Well, this notice would be

08:49:49 25   that first time.  The invalidity contentions identified

08:49:55 1   specific image files, 24 image JPEG image files.  Those were

08:50:00 2   what we were on notice of in addition to the three patents

08:50:04 3   that they have identified for their obviousness contentions.

08:50:07 4        Now this list of art that they have identified

08:50:12 5   as invalidating art is somewhat confusing because it

08:50:16 6   encompasses things that aren't prior art such as things like

08:50:22 7   website source code, it just doesn't look to be a list of

08:50:26 8   art that you would submit and tell the Court you were

08:50:29 9   relying on for validity purposes.  So I think there is

08:50:33 10   possibly an intention that they're not going to rely --

08:50:36 11   they're not asserting each of these as an anticipation

08:50:40 12   reference, but according to the disclosure, that's what

08:50:43 13   they're intending to do.

08:50:45 14        What they did disclose were the JPEG image

08:50:48 15   files.

08:50:49 16        THE COURT:  Those are the 24 files.

08:50:51 17        MR. HSU-HOFFMAN:  Those are the 24 files.  The

08:50:54 18   problem we see with those files is that there is not a

08:50:57 19   percipient witness.  And I'm going to the part of their

08:51:02 20   response where they talk about what have they done to

08:51:05 21   authenticate the prior art.  They have identified images

08:51:09 22   that are currently available on the Tieks website and are

08:51:12 23   claiming that those constitute prior art.  And the way of

08:51:17 24   getting there is by having -- going to the internet archive

08:51:22 25   and printed out things from the internet archive and

08:51:29 1   claiming that the same images that they're seeing today are

08:51:33 2   the same images that were on websites, you know, about eight

08:51:37 3   years ago.

08:51:38 4          Now the problem is the internet archive did not

08:51:43 5   capture any of these images.  They have file names they

08:51:47 6   claim are the same as some of these currently available

08:51:51 7   images, and based on that infer that the same images were

08:51:56 8   available eight years ago.  And we object to that because

08:52:01 9   there is no witness in this case that can make that link.

08:52:07 10  They have done nothing to corroborate that assertion.  There

08:52:12 11  is no -- there is just no witness that can testify about the

08:52:15 12  internet archive printouts.  There is no witness that can

08:52:21 13  testify that the same images we're seeing today are in

08:52:26 14  existence or were modified from the ones that existed,

08:52:31 15  actually exist on the website in the non-prior art time

08:52:35 16  period.  This is just speculation on their part.

08:52:37 17         Our issue even with the images that were

08:52:42 18  disclosed is that there is not -- this is really going to an

08:52:46 19  objection to their trial exhibit list.  They're not going to

08:52:51 20  be able to lay a foundation to get any of these images into

08:52:54 21  evidence and we think it would be misleading and confusing

08:52:59 22  to the jury for them to suggest that any of these images are

08:53:02 23  actually prior art.

08:53:06 24         THE COURT:  When did you get the pages from the

08:53:10 25  internet archives that have the file names on them?  Were

08:53:16 1    those timely produced during discovery?

08:53:18 2              MR. HSU-HOFFMAN:  Most of them were, Your Honor.

08:53:21 3    Most of them came I believe around the time of the

08:53:23 4    invalidity contentions.  There are a couple of outliers that

08:53:27 5    were produced after the close of fact discovery, but that

08:53:32 6    kind of goes hand in hand with our objection to any of their

08:53:36 7    late produced materials, and there is a starting Bates range

08:53:41 8    that denotes that point as to whether the production was

08:53:46 9    late.

08:53:47 10             THE COURT:  Let's hear from defendants.

08:53:51 11   Mr. Lobbin, it is the practice in this Court that you're

08:53:56 12   held to what's been disclosed in discovery.

08:53:58 13             MR. LOBBIN:  As in most courts.

08:54:01 14             THE COURT:  And the scheduling order here

08:54:03 15   required the defendants to give their invalidity

08:54:06 16   contentions.  I guess my question is why are you not held to

08:54:09 17   the 24 references involving Tieks and the three patents

08:54:15 18   combined with those for obviousness?

08:54:18 19             MR. LOBBIN:  Well, I don't have our document

08:54:20 20   production in front of us, but I do know what we submitted

08:54:24 21   to the Court.  And we have got our references with Bates

08:54:28 22   labels that were produced to defendants last fall over six

08:54:32 23   months ago.

08:54:32 24             THE COURT:  Right, but you have to tell --

08:54:34 25             MR. LOBBIN:  Now our contentions --

08:54:36 1          THE COURT:  Let me talk when I'm asking a

08:54:37 2  question.

08:54:37 3          MR. LOBBIN:  Sure.

08:54:38 4          THE COURT:  You have to tell them you're relying

08:54:40 5  on these; right?

08:54:41 6          MR. LOBBIN:  Yes.

08:54:41 7          THE COURT:  There is an invalidity contention

08:54:43 8  that is saying what are you planning to rely on for

08:54:47 9  invalidity, and now you're coming in and saying we gave all

08:54:50 10 this stuff back with the TRO, and we should be able to rely

08:54:53 11 on that, but you didn't even put a sentence in there that

         12 says we may have relied on what we relied on for the TRO, so

08:55:00 13 how is it they're fairly on notice that you're going to rely

08:55:01 14 on anything else other than what you disclosed in those

08:55:04 15 contentions?

08:55:05 16         MR. LOBBIN:  Well, I would say it's a matter of

08:55:08 17 timing.  Certainly they're on notice at the TRO proceedings.

08:55:12 18 I think the TRO and the preliminary injunction proceedings a

08:55:15 19 year ago, they're on notice of what our invalidity

08:55:19 20 contentions were in that briefing.  Subsequent to that we

08:55:23 21 provided the invalidity contention per the local rules

08:55:26 22 for --

08:55:26 23         THE COURT:  It didn't include a number of

08:55:28 24 references that you now intend to rely on from the TRO;

08:55:32 25 right?

08:55:32 1          MR. LOBBIN:  A few, yes.  I don't think all the

08:55:34 2   numbers that he checked off there are correct.  But suffice

08:55:39 3   it to say there was document production subsequent to the

08:55:43 4   invalidity contentions that included additional prior art

08:55:47 5   references, yes.

08:55:47 6          THE COURT:  Did you supplement?

08:55:49 7          You understand if you just produce a piece of

08:55:52 8   prior art and you don't tell them ever, we're going to rely

08:55:56 9   on this, you don't have expert reports, so we weren't on

08:55:58 10  notice through an expert, you didn't supplement your

08:56:02 11  invalidity contentions, so how is it that just because in a

08:56:05 12  bunch of documents you send them a picture of a shoe they're

08:56:09 13  supposed to know that you're relying on that for invalidity?

08:56:13 14         MR. LOBBIN:  I understand that.  I understand

08:56:14 15  that.  And you're right.

08:56:17 16         THE COURT:  Okay.  So let's talk about the issue

08:56:22 17  with respect to corroboration and how you are planning to

08:56:28 18  corroborate the dates of reference.

08:56:30 19         MR. LOBBIN:  So Mr. Pichler is here, has been in

08:56:34 20  this business for many years, since before the critical

08:56:39 21  date.

08:56:39 22         THE COURT:  And this business being what?

08:56:41 23         MR. LOBBIN:  The shoe business, the orthotic

08:56:45 24  business, the fashion business, and so he's going to testify

08:56:50 25  at trial and he's going to corroborate the prior art status

08:56:55 1    of a number of shoes, physical shoes that will be here with

08:57:01 2    us at trial and have been disclosed in the proceedings and

08:57:04 3    been produced.  These are shoes from the plaintiffs

08:57:10 4    themselves.  These are also shoes from third parties.

08:57:13 5           And in addition to Mr. Pichler, who will be

08:57:17 6    testifying and authenticating those products, plaintiff will

08:57:23 7    have their own witness who may or may not know -- we didn't

08:57:28 8    have the budget to take depositions, so the plaintiff will

08:57:32 9    presumably have a witness who can be shown their own

08:57:35 10   product, prior art before the critical date and they will

08:57:41 11   say whatever they are going to say.

08:57:42 12          THE COURT:  How are you going to get the date in

08:57:45 13   is my question?  Mr. Pichler doesn't have in his head, here

08:57:50 14   is a shoe.  Well, that's a 1972 shoe, right.  How are you --

08:57:54 15   if you're going to show pictures of shoes, how are you going

08:57:59 16   to corroborate the date?

08:58:00 17          MR. LOBBIN:  He's going to say I bought this in

08:58:03 18   2005.

08:58:04 19          THE COURT:  Are you going to have receipts?

08:58:06 20   Have those things been produced?

08:58:08 21          MR. LOBBIN:  I don't know whether the receipts

08:58:10 22   have been produced, but he's going to testify based on his

08:58:13 23   knowledge of the shoe.

08:58:14 24          THE COURT:  But there are plenty of cases out

08:58:17 25   there that say an uncorroborated witness testimony is not

08:58:20  1    sufficient.  You need something else.  If you're telling me

08:58:23  2    I'm going to have a shoe and he's going to say I bought it

08:58:26  3    in 2005, trust me, there is plenty of case law that says

08:58:30  4    that's not sufficient.  So we need more corroboration.  So

08:58:34  5    what is your corroboration?

08:58:36  6          MR. LOBBIN:  The testimony of the witnesses,

08:58:38  7    including plaintiff's witnesses.  The documents themselves

08:58:41  8    that have dates on them.

08:58:43  9          THE COURT:  Which documents have dates on them?

08:58:46 10    Because when I looked through the TRO papers and I looked at

08:58:50 11    a lot of the pictures that were cited in here, there are no

08:58:54 12    dates on them.  So when you say dates on them, what are you

08:58:59 13    relying on?

08:59:00 14          MR. LOBBIN:  Well, some of the documents have

08:59:02 15    dates on them.  And, you know, I haven't prepared all of the

08:59:05 16    documents that we have produced for trial, but you know,

08:59:10 17    corroboration is going to come in the form of either

08:59:12 18    documentation or additional testimony from another witness,

08:59:18 19    or we'll request judicial notice of the fact that these

08:59:24 20    shoes have been around forever.  A lot of the shoes that

08:59:27 21    will be presented at trial are properly the subject of

08:59:31 22    judicial notice and plaintiff's own witnesses, there is

08:59:35 23    going to be admissions.  And they have been in this

08:59:38 24    business.  They know what products are out there.  They know

08:59:41 25    what their own products are.  And if they deny, I would love

08:59:45 1    to have them deny knowing when their own products were

08:59:48 2    produced.  I mean, the main prior art is their own products.

08:59:52 3    Precritical date products of Tieks that invalidate their own

08:59:57 4    patents and show that they didn't invent anything.

09:00:01 5              THE COURT:  Okay.  Response from the plaintiff.

09:00:13 6    Now, do you have whatever shoes he's talking about?  Do you

09:00:18 7    know what they're talking about?

09:00:20 8              MR. HSU-HOFFMAN:  I think that's part of the

09:00:22 9    problem, you know, we know of the Camper shoe.  A lot of

09:00:28 10   this is things they found on the internet.  If you go back

09:00:31 11   to their TRO filing, they had Exhibit A which they make

09:00:34 12   clear was things they just found on the internet.

09:00:37 13             THE COURT:  I'm asking about actual shoes.  He

09:00:38 14   said Mr. Pichler is going to testify I bought it in 2005.

09:00:43 15   Do you know what those exhibits are?

09:00:45 16             MR. HSU-HOFFMAN:  No, we don't.  And part of the

09:00:50 17   -- part of why I'm surprised to hear that because at his

09:00:53 18   deposition, Mr. Pichler told us that he became -- the

09:00:56 19   question was:

09:00:57 20             Question:  If you became interested in ballet

09:01:00 21   flats in 2015, this is well after the patents were filed.

09:01:04 22             He said, Oh yeah, yeah, yeah, of course.

09:01:08 23             So as far as we know, the first time he started

09:01:11 24   looking at ballet flats was five years after the patents

09:01:14 25   were filed.  We also asked him:

09:01:16  1                    "Question:  Did you keep any record of your

09:01:17  2        purchases of any shoes?

09:01:19  3                    "Answer:  No, at the time, no.  As a matter of

09:01:22  4        fact, as I said, I lived in Austria, I had a different bank

09:01:27  5        account that is no longer valid and different cards.  So no,

09:01:30  6        I didn't."

09:01:30  7                    We don't know what shoes they can corroborate.

09:01:34  8        And based on his deposition testimony, he's not a percipient

09:01:37  9        witness.  He doesn't have percipient knowledge of the ballet

09:01:41 10        flats in the priority time period.

09:01:45 11                    THE COURT:  What about the argument that they

09:01:47 12        can try to corroborate art through your witnesses?

09:01:54 13                    MR. HSU-HOFFMAN:  Well, our client, it's true,

09:01:59 14        we have made -- there was an early model Tieks shoe.  Now,

09:02:06 15        there is a difference between -- we have the actual shoe

09:02:09 16        that's been produced, the actual early model Tieks shoe.

09:02:14 17        That's what our experts have looked at.  That's what your

09:02:17 18        witnesses intend to testify about.  That's fine, we don't

09:02:22 19        dispute that.  When it comes to images, other images that

09:02:25 20        have been found on the web, that's where we have a problem.

09:02:28 21        That's where we don't think anybody is going to be able to

09:02:31 22        testify that what's on the website now is what's on the

09:02:36 23        website back before 2010.  That's where the corroboration

09:02:40 24        falls apart.

09:02:41 25                    So if they want to ask about other shoes that

09:02:47  1    our witnesses know about, I think that ends up being

09:02:50  2    dangerous territory because it risk confusing the jury that

09:02:54  3    there are other shoes out there that potentially, you know,

09:03:00  4    relate to these patents.  And I don't think the suggestion

09:03:04  5    should be made lightly that, or the references to early

09:03:08  6    ballet flats should be thrown around this courtroom casually

09:03:12  7    because it really does cause -- it's going to cause some

09:03:15  8    confusion.

09:03:16  9              THE COURT:  But these are shoes that your folks

09:03:18 10    know about, right?  They sold their shoes, presumably they

09:03:22 11    know what they sold and when.  So are you going to take a

09:03:25 12    position, what are you going to say about when you first

09:03:28 13    sold shoes that are used by the patent?

09:03:31 14              MR. HSU-HOFFMAN:  You're talking about non-Tieks

09:03:33 15    shoes?

09:03:33 16              THE COURT:  No, Tieks shoes.

09:03:35 17              MR. HSU-HOFFMAN:  Tieks shoes.  They're going to

09:03:37 18    testify there was an early model Tieks shoe.

09:03:40 19              THE COURT:  If they testify about that, why

09:03:42 20    can't Mr. Lobbin or Mr. Stamoulis come in and start asking

09:03:48 21    them questions about other Tieks shoes?

09:03:51 22              MR. HSU-HOFFMAN:  We don't have an objection to

09:03:53 23    that, Your Honor.  We have an objection to them using images

09:03:56 24    that are from the website that we don't have that they have

09:04:00 25    done nothing to corroborate that they have just found on

09:04:03  1    their own.

09:04:04  2              THE COURT:  And your position is that if they

09:04:06  3    have a picture, they can't ask your witness about that

09:04:09  4    picture and say do you recognize this as a Tieks shoe?

09:04:14  5              MR. HSU-HOFFMAN:  I think that would be fine if

09:04:18  6    it was not shown to the jury until the witness recognized

09:04:22  7    it.  And if that's your procedures for handling

09:04:26  8    authentication, I don't think we have an objection to that,

09:04:29  9    Your Honor.

09:04:29 10              THE COURT:  When you say authentication, you're

09:04:33 11    saying that all the person would have to do is say do you

09:04:37 12    recognize that as a Tieks shoe and the person says yes, I

09:04:41 13    do, and then -- I'm trying to understand if you have two

09:04:46 14    different things, one authentication and one corroboration

09:04:49 15    of a particular date, or are you combining those two?

09:04:55 16              MR. HSU-HOFFMAN:  I think the date has to be

09:04:57 17    recognized.  I think the date has to be recognized.

09:05:00 18              THE COURT:  So you're saying if they show

09:05:02 19    something and say is that a Tieks shoe and he says yes, and

09:05:06 20    they say isn't that a Tieks shoe from 2007, and he says, you

09:05:10 21    know, just sitting here looking at this without a date on

09:05:12 22    it, I can't tell you that, your position then is the jury

09:05:16 23    can't see that shoe?

09:05:19 24              MR. HSU-HOFFMAN:  I think that's what we would

09:05:22 25    ask Your Honor because we have the actual shoe available

09:05:25 1  that was available in the prior art time period.  We think

09:05:28 2  the confusion would result from them -- I think the next

09:05:31 3  step is that they take that and suggest that was actually in

09:05:34 4  the prior art.

09:05:39 5          THE COURT:  What about their position that I

09:05:41 6  should a take judicial notice of what they found on the

09:05:44 7  internet?

09:05:45 8          MR. HSU-HOFFMAN:  I think when the facts are

09:05:46 9  disputed there has not been an authentication, there is no

09:05:51 10  witness that's going to testify about the authenticity of

09:05:56 11  source code that they pulled from the archives, about the

09:05:59 12  printouts from the archives.  Where we're disputing where

09:06:02 13  there is an issue about what images that were actually shown

09:06:06 14  on there, I don't think that's something to take judicial

09:06:09 15  notice of.  The cases they cited reference taking judicial

09:06:14 16  notice of published patents as well as facts that were not

09:06:17 17  in dispute such as whether adhesive was sticky or not.  I

09:06:24 18  think when we're in a different territory when there is a

09:06:26 19  dispute over what constitutes prior art and when stuff is

09:06:32 20  publicly available, that's not proper to take judicial

09:06:36 21  notice of.

09:06:37 22          THE COURT:  Okay.  One more question.  Are you

09:06:39 23  objecting to the Camper shoe as properly disclosed art.

09:06:43 24          MR. HSU-HOFFMAN:  The Camper shoe was not in

09:06:46 25  their invalidity contentions, so yes, we are objecting that

09:06:50  1   it was not properly disclosed.

09:06:52  2                  THE COURT:  Okay.  Mr. Lobbin, what shoes are

09:06:56  3   you -- you mentioned some samples and said Mr. Pichler would

09:07:00  4   say he bought it whenever, what are you talking about?

09:07:03  5                  MR. LOBBIN:  Well, the Camper would be one, that

09:07:05  6   was certainly part of our successful opposition to the

09:07:09  7   preliminary injunction.

09:07:11  8                  THE COURT:  Do they have an actual shoe that

09:07:14  9   you're going to show the jury?

09:07:17 10                  MR. LOBBIN:  We do.  Actually they have it and

09:07:21 11   we need it back, so I need that back.

09:07:22 12                  THE COURT:  When did you disclose that?

09:07:24 13                  MR. LOBBIN:  At a deposition in Miami in

09:07:27 14   December.

09:07:27 15                  THE COURT:  And tell me specifically for that

09:07:29 16   shoe how you would plan to corroborate its status as a prior

09:07:34 17   art.

09:07:35 18                  MR. LOBBIN:  Well, I'll have to review whether

09:07:41 19   we have documents to corroborate, but in addition to the

09:07:45 20   documents --

09:07:46 21                  THE COURT:  When you say documents to

09:07:47 22   corroborate --

09:07:49 23                  MR. LOBBIN:  Receipts.

09:07:49 24                  THE COURT:  Documents that have been produced?

09:07:51 25                  MR. LOBBIN:  Yes, correct.

09:07:52  1                THE COURT:  Not a receipt that you go back and

09:07:54  2     find today?

09:07:55  3                MR. LOBBIN:  No.  No.  No.

09:07:57  4                THE COURT:  Okay.  So let's assume that there is

09:07:59  5     no receipt that's been produced, how do you plan to

09:08:03  6     corroborate with documents?

09:08:05  7                MR. LOBBIN:  So with both Mr. Pichler and

09:08:09  8     plaintiff's witness, or witnesses, I would ask them --

09:08:14  9                THE COURT:  So if plaintiff's witness says I

09:08:20 10     don't know when this shoe was available.

09:08:22 11                MR. LOBBIN:  Fine.

09:08:23 12                THE COURT:  Which is fair.  Do you think that's

09:08:26 13     corroboration, then, in addition to what Mr. Pichler says?

09:08:31 14     Because corroboration requires something other than one

09:08:34 15     witness's testimony.  If you have a second witness who says

09:08:37 16     I don't know, is it your opinion that the don't know is

09:08:40 17     corroboration of the first.

09:08:41 18                MR. LOBBIN:  No.

09:08:42 19                THE COURT:  So if their witness says I don't

09:08:45 20     know, then you can't corroborate it; right?

09:08:49 21                MR. LOBBIN:  Well, perhaps.  Now, Mr. Pichler is

09:08:52 22     going to talk about the Camper shoe.  He has a relationship

09:08:55 23     with the Camper shoe.  He saw it.  He bought it.  He used it

09:09:00 24     in his development.  There would be a lot of testimony about

09:09:03 25     it.

09:09:03  1          THE COURT:  This will be all testimony.

09:09:05  2          MR. LOBBIN:  I understand.

09:09:06  3          THE COURT:  I'm asking you what else you have.

09:09:08  4  And you're saying he's going to say I bought it, I used it,

09:09:11  5  I saw it, I wore it, whatever, but I need to know what else

09:09:14  6  you have.

09:09:18  7          MR. LOBBIN:  And there are website images that

09:09:21  8  were produced that have the date on it.

09:09:23  9          THE COURT:  But just so I'm clear with what I

09:09:27 10  have heard, is it true that you have pictures that were

09:09:31 11  taken off the website currently, then you have from the

09:09:33 12  internet archives a file name, but no picture from something

09:09:39 13  that happened back in the appropriate time?

09:09:42 14          MR. LOBBIN:  Correct.

09:09:43 15          THE COURT:  And then you expect someone to say

09:09:45 16  well, the file name here is the file name here, ergo, even

09:09:50 17  though I don't have a picture from 2005, the shoe must be

09:09:55 18  the same picture, that's what you're going to do and you're

09:09:58 19  going to do that through Mr. Pichler?

09:10:00 20          MR. LOBBIN:  No.  That's a request for judicial

09:10:04 21  notice.

09:10:05 22          THE COURT:  You haven't made a request for

09:10:07 23  judicial notice.

09:10:08 24          MR. LOBBIN:  Well, I will.

09:10:09 25          THE COURT:  And I'm not sure that that -- I'm

09:10:13 1   supposed to say I can tell that this witness -- this file

09:10:17 2   name -- I don't know enough about file names to know whether

09:10:20 3   or not you can have different images.

09:10:22 4             MR. LOBBIN:  Understood.

09:10:24 5             THE COURT:  So don't count on me giving you

09:10:27 6   judicial notice.

09:10:28 7             MR. LOBBIN:  I understand.

09:10:29 8             THE COURT:  So I'm still not sure I understand

09:10:32 9   how you're going to get some of this in.

09:10:36 10            MR. LOBBIN:  So he will testify at length and if

09:10:40 11  this Court says that's not sufficient for corroboration of a

09:10:43 12  date --

09:10:44 13            THE COURT:  He's not going to testify about it

09:10:46 14  at all unless you can tell me how you're actually going to

09:10:50 15  corroborate it correctly, otherwise that's prejudicial to

09:10:53 16  put before the jury and then say forget about that, I need

09:10:56 17  to understand and maybe you have to go back and tell me

09:10:58 18  specifically, look at the case law on corroboration of dates

09:11:02 19  of prior art and tell me how you're going to corroborate it.

09:11:05 20  I understand if you say I'm going to show it to other

09:11:09 21  people, I just want to know what's going to happen if those

09:11:12 22  people, and you can sort of mock it, but the jury could

09:11:16 23  believe that someone sitting on a stand looking at a shoe

09:11:20 24  might not know the specific date it was available.

09:11:23 25            So if the person doesn't know, I just need to

09:11:26 1   understand what your corroboration is going to be, or if at

09:11:32 2   that point I can say you don't have corroboration and we're

09:11:36 3   not going to put this in.

09:11:37 4          MR. LOBBIN:  So Mr. Pichler's testimony is going

09:11:39 5   to be offered for many reasons in addition to prior art and

09:11:43 6   corroboration of a date.  So I'm not sure how we separate

09:11:47 7   the two.

09:11:48 8          THE COURT:  We're going to --

09:11:50 9          MR. LOBBIN:  Certainly his development of the

09:11:52 10  product, the experience with what lead to the accused

09:11:55 11  infringing products is going to be part of his testimony for

09:11:59 12  the jury, who I am, what I did, what I looked at, what I

09:12:03 13  found, what I bought, what I wore, so that testimony is

09:12:08 14  going to be offered for purposes of our general defense to

09:12:13 15  the case.

09:12:13 16         Now, some of that testimony will also go to what

09:12:18 17  is prior art based on what he did with what before the

09:12:22 18  critical date.  So I'm not sure that if he gives that

09:12:32 19  testimony we're going to be able -- well, you can tell me.

09:12:36 20  We're going to be able to say no, you can talk about what

09:12:39 21  you did in 2009, but you can't talk about specifically what

09:12:44 22  shoes you looked at and bought and handled because we don't

09:12:47 23  have a sales receipt even though that testimony is offered

09:12:52 24  for many other purposes.

09:12:54 25         THE COURT:  Right.  But if we have an

09:12:56 1    instruction to the jury that says is it anticipated, we

09:13:01 2    can't just say by Tieks generally, you have to tell them

09:13:04 3    what they're looking at.  Okay?  And any images that you're

09:13:08 4    going to suggest were anticipatory, you need to have

09:13:13 5    corroboration.

09:13:14 6           He can say yeah, I bought a shoe in 2005, but

09:13:17 7    that doesn't mean you're going to be able to rely on that as

09:13:21 8    prior art to invalidate their claims if you can't

09:13:25 9    corroborate the date, that's just part of his story that I

09:13:28 10   bought this shoe around that time.

09:13:30 11          MR. LOBBIN:  Sure.

09:13:31 12          THE COURT:  So I guess what I need to know is if

09:13:35 13   we assume that I'm going to allow you to rely on things that

09:13:40 14   were fairly disclosed, and that includes the 24 files that

09:13:44 15   were included in the invalidity contentions and the three

09:13:49 16   patents for obvious that combine with those for obviousness,

09:13:54 17   I need you to tell me how for each of the patents, I assume,

09:13:59 18   the patents are not an issue with respect to corroboration;

09:14:04 19   is that right?

09:14:05 20          MR. HSU-HOFFMAN:  No, Your Honor, no issue with

09:14:07 21   the patents, Your Honor.

09:14:07 22          THE COURT:  Okay.  Is it all 24 of the files

09:14:10 23   that you have questions about?

09:14:13 24          MR. HSU-HOFFMAN:  Yes, Your Honor.

09:14:14 25          THE COURT:  So I guess I would like to know for

09:14:16 1    the 24 files how you're going to plan to corroborate and if

09:14:19 2    you are planning to use shoes, actual shoes, as prior art,

09:14:27 3    and those are fairly within what you're relying on in the

09:14:31 4    invalidity contentions, then I guess I need to know how you

09:14:37 5    are planning to corroborate those as well so I can rule on

09:14:42 6    this motion.

09:14:43 7            MR. LOBBIN:  So our contention is at the very

09:14:45 8    least the prior art disclosed in the preliminary injunction

09:14:49 9    opposition as well as the invalidity contentions are --

09:14:52 10           THE COURT:  No.

09:14:53 11           MR. LOBBIN:  Okay.

09:14:54 12           THE COURT:  You did not even bother to put a

09:14:56 13   single line in there that says oh, and we're relying on all

09:15:00 14   the stuff that we included in the TRO.  So I think it's fair

09:15:04 15   and there are cases that plaintiff cited and you didn't cite

09:15:08 16   any in response to say that they could reasonably have

09:15:13 17   though you decided to drop that and rely on new art.  I

09:15:17 18   think we're going to go with what you fairly disclosed in

09:15:20 19   the invalidity contentions.

09:15:22 20           MR. LOBBIN:  Okay.  I think it was a scrivener's

09:15:27 21   error.  I don't think that's fair, particularly when they

09:15:30 22   deposed our client and asked all this stuff in the context

09:15:32 23   of prior art after the invalidity contention.  They deposed

09:15:38 24   him on the invalidity contentions as well as preliminary

09:15:43 25   injunction --

09:15:43  1          THE COURT:  Did you supplement?

09:15:44  2          MR. LOBBIN:  We did not.  They put us out of

09:15:46  3  business.  This is a shoestring defense, Your Honor, and I

09:15:49  4  apologize, but they put us out of business with this

09:15:53  5  litigation.  He's not even making any sales or any money in

09:15:56  6  the last year.  We can barely -- if Your Honor continued

09:16:00  7  this case, we would just fold up tent.  This is -- I'm not

09:16:03  8  getting paid.  This is a labor of truth and love.  And I'm

09:16:08  9  sorry, that needs to be said.

09:16:12 10          So yes, you're right, technically you're right,

09:16:15 11  my associate did not reference the preliminary injunction

09:16:18 12  papers in this contention.  And he will hear about it.  Is

09:16:20 13  it fair that they knew about the preliminary injunction

09:16:23 14  papers and knew that that was prior art that they were going

09:16:26 15  to rely, yes, it is.  If you put them on the stand and have

09:16:29 16  them raise their hand, they would admit that.  They're big

09:16:32 17  boys.  They have done litigation before, we have all have.

09:16:35 18          This is not a case where scrivener's errors

09:16:39 19  should go to their benefit and to our detriment.  We have a

09:16:42 20  case to present.  There are millions of ballet flats since

09:16:45 21  the 1950's and I am going to ask witnesses what they are,

09:16:50 22  they are going to know, they are going to know when they

09:16:51 23  were, and the jury is entitled to know this is a crowded art

09:16:54 24  if there is any inventions here at all.  And that's how I'm

09:16:57 25  going to corroborate what we have in our contentions.  I'm

09:17:01  1    going to show them an image, I'm not going to show them the

09:17:04  2    internet file with a URL site and ask any witness to talk

09:17:09  3    about the URL.  I'm going to show them a picture of an image

09:17:14  4    and say what is this?  How do you know?  When did you know

09:17:16  5    it?  Oh, really, before the critical date?  That's what the

09:17:19  6    other witness said, and that's what the other witness said,

09:17:22  7    that's what the other witness said.  Great, that was around

09:17:25  8    and these forty-seven other shoes were around.  And gosh,

09:17:28  9    now we have a patent on this.  Okay.  This looks a lot like

09:17:32 10    that and a lot like that and a lot like that and a lot like

09:17:36 11    that.  Ladies and gentlemen of the jury, what invention do

09:17:37 12    we have, if we have any invention at all --

09:17:39 13              THE COURT:  Okay.  Okay.  I get it.  I get it.

09:17:42 14    And it's unfortunate that this case has taken such an

09:17:47 15    economic toll.  But nevertheless, it hasn't settled, the

09:17:53 16    case is going forward, and I cannot let things go before the

09:17:58 17    jury that shouldn't be before a jury.  And I get the feeling

09:18:02 18    that you just want to sort of make it up now at the end of

09:18:05 19    the case because it wasn't put forward before.  And when you

09:18:09 20    say I'm going to show a picture and it's not a dated

09:18:12 21    picture, we're not talking about printed publications here

09:18:16 22    that have a date on them and everybody understands, you want

09:18:18 23    to show this that there is no date on, and have someone say

09:18:23 24    oh, looks 2007 to me.  That's where I have a problem because

09:18:28 25    I have a problem with you putting that before the jury if

09:18:32 1    it's not appropriately corroborated.  And if the

09:18:35 2    corroboration you're telling me is their witnesses plus

09:18:39 3    Mr. Pichler, I'll ask their position on that, but not -- but

09:18:47 4    it will not be Mr. Pichler alone that establishes that as

09:18:51 5    prior art, because the case law is clear that a single

09:18:53 6    witness cannot corroborate it.

09:18:56 7                 MR. LOBBIN:  Well, that's what we're going to

09:18:59 8    do.

09:18:59 9                 THE COURT:  No, you're not going to do it if I

09:19:01 10   don't let you do it.

09:19:03 11                MR. LOBBIN:  Okay.  It's not going to be a

09:19:05 12   single witness.

09:19:06 13                THE COURT:  And so I just want to understand, if

09:19:09 14   you have other people who say I don't know the date, then if

09:19:15 15   you want me to still allow that in as prior art, you're

09:19:20 16   going to have to come up with some other corroboration.

09:19:26 17                MR. LOBBIN:  Understood.

09:19:27 18                THE COURT:  Okay.  Now one issue that Mr. Lobbin

09:19:33 19   raised with respect to the preliminary -- you can sit down.

09:19:38 20   I would like to talk to plaintiff.

09:19:40 21                MR. LOBBIN:  Thank you.

09:19:40 22                THE COURT:  One issue that Mr. Lobbin raised

09:19:45 23   with respect to the TRO stuff, I understand we're still

09:19:49 24   going to have the corroboration issue, but why is it not

09:19:53 25   fair if you guys really did ask Mr. Pichler about that after

09:19:56 1    the invalidity contention, why not suggest that you kind of

09:20:00 2    knew that it was in the case?

09:20:02 3           MR. HSU-HOFFMAN:  Because when we asked

09:20:03 4    Mr. Pichler about the Camper shoe, we asked him where did

09:20:07 5    you -- when did you first acquire these shoes.  He said the

09:20:10 6    summer of 2015 at the store called Humanic, H-U-M-A-N-I-C,

09:20:18 7    like in China, Humanic, and I know exactly where it was, at

09:20:23 8    the Europark Shopping Center in Salzburg, Austria.

09:20:27 9           It's well after the patents were filed.  It's

09:20:30 10   not in the U.S.  That Camper shoe seemed to have gone --

09:20:34 11   seemed to be out of the case at that point after that

09:20:39 12   question.

09:20:39 13          So that's why we filed the motion in limine

09:20:43 14   because it wasn't based on their -- based on things that

09:20:49 15   they indicated to us, we weren't sure that they weren't

09:20:52 16   going to try to go there and suggest to the jury that things

09:20:55 17   they found on the web and what they were looking at with the

09:20:59 18   Camper shoe is a history of Camper shoes.

09:21:01 19          THE COURT:  Is that the only TRO art that you

09:21:04 20   asked about during the deposition?

09:21:08 21          MR. HSU-HOFFMAN:  There were -- I believe there

09:21:13 22   were some other shoes, that was the main focus of the

09:21:16 23   deposition because that's the shoe that he came forward

09:21:18 24   with.  He actually appeared at the deposition with that

09:21:22 25   shoe.  But that was the focus of that one.

09:21:26 1              The stuff in the TRO, like I said, was based on

09:21:29 2      stuff that they found on the internet, and that coupled with

09:21:32 3      the fact that he testified he first became interested in

09:21:36 4      ballet flats in 2015 confirmed to us that there wasn't

09:21:40 5      percipient knowledge of earlier ballet flat shoes that

09:21:45 6      Mr. Pichler had.

09:21:48 7              MR. LYONS:  Your Honor, just to amplify that

09:21:50 8      point because I took that particular deposition.  We relied

09:21:53 9      very heavily on their disclosure of invalidity.  Mr. Pichler

09:21:57 10     referred to a lot of different things.  He brought up the

09:22:00 11     Camper shoes, so we followed up, we confirmed it wasn't

09:22:03 12     prior art.  He had never seen it in the prior art.  He had

09:22:06 13     never seen any shoe in the prior art because he was not

09:22:08 14     interested in ballet flats until 2015.

09:22:11 15             We did not met methodically through their

09:22:15 16     disclosures from a year later.  We focused on the

09:22:18 17     contentions they were making in this case.  And I can tell

09:22:21 18     you with great confidence if they told us this is what we're

09:22:26 19     focusing on, we would have put our time and energy into

09:22:30 20     discovery on that, not just with Mr. Pichler, but our own

09:22:34 21     fact investigation about that shoe.  We focused our case

09:22:37 22     around those contentions.  Everybody does.

09:22:43 23             THE COURT:  Okay.  Mr. Lobbin, is Mr. Pichler

09:22:53 24     planning to say something different about the Camper shoe

09:22:56 25     than the 2015 date he gave at his deposition?

09:23:01 1                    MR. LOBBIN:  If I could confer.

09:23:06 2                    THE COURT:  Sure.

09:23:23 3                    (Discussion off the record.)

09:25:10 4                    MR. LOBBIN:  So look, I understand their

09:25:18 5      argument, he bought it -- he may have bought it after the

09:25:22 6      critical date, okay, so that's -- his purchase of it is not

09:25:26 7      prior art.  And they went into that at his deposition.  And

09:25:30 8      they're relying on that to prove that the shoe, the actual

09:25:34 9      shoe is not prior art, was not in the public domain as of

09:25:38 10     the critical date, which is not true.  And Mr. Pichler is

09:25:42 11     going to testify about not only his purchase, but his

09:25:46 12     knowledge of the shoe, his research into the shoe, some of

09:25:49 13     which, you know, may have some evidentiary issues.  Their

09:25:53 14     witness has been in this business since before these patents

09:25:57 15     were filed.  They know about the shoe as well as various

09:26:00 16     other prior art shoes.

09:26:01 17                    And we have been through this discussion.  So I

09:26:03 18     plan to ask their witness about.  I plan to ask Mr. Pichler

09:26:07 19     what he did, when, what he has, has the shoe, show the shoe.

09:26:12 20     I didn't go to Mallorca and take a deposition of Camper and

09:26:18 21     provide their testimony through deposition to validate.

09:26:22 22                    THE COURT:  We don't need to be silly here.  You

09:26:24 23     didn't need to go to Mallorca to do that.  You could have

09:26:28 24     done that in a number of ways including by asking them

09:26:31 25     questions, interrogatories, or even taking a single

09:26:34 1    deposition of them on the issue.  I understand what you're

09:26:39 2    planning to do.

09:26:39 3              Let me just ask you, do you agree that if your

09:26:46 4    witnesses were to recognize a particular shoe as being from

09:26:52 5    a particular time period that that would be sufficient

09:26:55 6    corroboration in addition to whatever Mr. Pichler says?

09:27:09 7              MR. HSU-HOFFMAN:  I think, Your Honor, I think

09:27:11 8    if it's coupled with some documentary evidence and our

09:27:15 9    witnesses recognize both the shoe and the time period, I

09:27:21 10   don't think -- we don't have an objection.

09:27:22 11             THE COURT:  What do you mean by documentary

09:27:24 12   evidence?  You know what the documents are now.  Are you

09:27:28 13   just telling me that and knowing that there is nothing that

09:27:30 14   you accept, or is there something that they could show you?

09:27:34 15             MR. HSU-HOFFMAN:  I think, for example, if there

09:27:37 16   is an article that references the shoe.

09:27:38 17             THE COURT:  Have any of those been produced that

09:27:40 18   you're aware of that they're relying on?

09:27:43 19             MR. HSU-HOFFMAN:  There are some articles that

09:27:45 20   reference particular shoes, but I think that coupled with

09:27:49 21   the witnesses' testimony that they recognize that shoe would

09:27:53 22   have some firsthand knowledge of that being sold or

09:27:56 23   available in the prior time period, we don't have an

09:28:00 24   objection.

09:28:00 25             THE COURT:  Okay.  Well, I will issue an order

09:28:09  1    on this next while on the motion in limine number two, but I

09:28:14  2    think that brings us to motion in limine number one, which

09:28:18  3    is the testimony of Mr. Pichler and his wife.  And when I

09:28:22  4    looked at the proposed jury instructions, documents that he

09:28:30  5    made it did not appear that Mr. Pichler's wife was a

09:28:34  6    witness.  Is that issue done now?

09:28:38  7             MR. LOBBIN:  I believe they listed -- I'm not

09:28:43  8    sure, maybe it didn't.  She's not listed on our witness list

09:28:48  9    and she's not a witness.

09:28:50 10             MR. LYONS:  If she's not a witness, then she's

09:28:53 11    not an issue, Your Honor.  We had a concern if she was, but

09:28:56 12    if she's not, then --

09:28:59 13             THE COURT:  This is plaintiff's position, so

09:29:01 14    I'll hear from plaintiff first on it.

09:29:08 15             MR. LYONS:  So for this limine motion, Your

09:29:11 16    Honor, this is my Mike Lyons for plaintiff, the concern is

09:29:16 17    we don't have an expert report from Mr. Pichler, and our

09:29:22 18    only concern was just based on some of the comments we've

09:29:25 19    heard from counsel, it became clear to us that he may be

09:29:30 20    intending to give expert testimony on questions of patent

09:29:36 21    validity, patent infringement, trade dress infringement and

09:29:40 22    we didn't think that would be appropriate coming from a fact

09:29:43 23    witness.  We do have expert witnesses who are going to

09:29:48 24    testify.  They're experienced in this industry, in the

09:29:52 25    fashion marketing industry.  They have got their own design

09:29:56  1   patents.  They have got design experience.  And they're well

09:29:59  2   qualified to provide expert opinion testimony.

09:30:04  3              Obviously Mr. Pichler can testify about his

09:30:07  4   percipient experiences, but I don't think that extends to

09:30:11  5   and should include opinions on whether the patents are valid

09:30:14  6   or over prior art, whether it qualifies for trade dress,

09:30:21  7   whether it's invalid.  He has counsel, they're going to be

09:30:23  8   able to make arguments in light of the evidence that's

09:30:26  9   submitted.  We just don't think it should come from a lay

09:30:30 10   witness and it shouldn't come from a lay witness who didn't

09:30:33 11   offer any expert report at all in this matter.

09:30:35 12              THE COURT:  Is there an allegation of

09:30:37 13   willfulness in this case?

09:30:38 14              MR. LYONS:  There is.

09:30:39 15              THE COURT:  So Mr. Pichler should be able to get

09:30:42 16   up there and defend himself on willfulness, right, and say,

09:30:47 17   you know, I didn't think that we were using that patent

09:30:50 18   because of X, Y and Z.  Do you have a problem with that?

09:30:55 19              MR. LYONS:  Well, I think he can point out what

09:30:58 20   he believes are differences.  He received a cease and desist

09:31:02 21   letter.  He responded to that letter.  He made certain

09:31:05 22   promises about things that he would do that he didn't follow

09:31:08 23   through on.  You know, we would expect him to testify about

09:31:12 24   that.  I think that's different from testifying that this is

09:31:18 25   an invalid patent and here is why, and I'm an expert and let

09:31:22  1    me tell you about the ordinary observer test and how one

09:31:27  2    exercises that.  So I think there is some line drawing here.

09:31:32  3         He obviously should be given an opportunity to

09:31:34  4    get on the stand and talk about what he thought about as a

09:31:38  5    percipient witness when he was confronted with the evidence

09:31:42  6    of this infringement, but we don't think he should present

09:31:45  7    that as an expert testimony.

09:31:46  8         THE COURT:  And what about, I understand that

09:31:50  9    there is a dispute as to when his relevant knowledge began,

09:31:55 10    2015, 2008, whatever, there is a dispute between you all.

09:32:08 11    Are you saying that he shouldn't be able -- let's assume his

09:32:14 12    knowledge goes back and you can cross-examine him on when

09:32:18 13    his knowledge actually began, but let's say he wanted to

09:32:22 14    testify on what he knew back in 2008, are you okay with that

09:32:25 15    if we're not talking about him calling it -- him opining

09:32:31 16    that something is prior art or him opining on the ultimate

09:32:37 17    issue of validity or something like that?

09:32:40 18         MR. LYONS:  If he testifies about what he

09:32:42 19    personally knew in 2008 as a percipient witness, we'll

09:32:46 20    certainly impeach him.  He testified very clearly at his

09:32:50 21    deposition that he began looking at ballet flats in 2015, so

09:32:54 22    he's not going to have detailed personal knowledge going

09:32:59 23    back.  What he knows about 2018 is about research he did on

09:33:03 24    the internet and that gets into a lot of topics we just

09:33:07 25    discussed earlier about uncorroborated prior art.

09:33:11 1          Some of our concerns are him talking about well,

09:33:14 2     in 2015, I learned the following about what was going on in

09:33:18 3     2008 based on trolling around on the internet and finding a

09:33:23 4     picture or two or buying a shoe in 2015 and saying I'm sure

09:33:27 5     it's been around for a while.  That's where our concern is.

09:33:31 6     But his actual experiences in 2018 as a percipient witness,

09:33:35 7     I believe he's entitled to testify about that, we're also

09:33:39 8     entitled to cross-examine him on that, but I think that's

09:33:42 9     all fair game.

09:33:43 10          THE COURT:  Mr. Lobbin.

09:33:46 11          MR. LOBBIN:  Thank you, Your Honor.

09:33:46 12          THE COURT:  What is it that Mr. Pichler is going

09:33:49 13    to say?  I agree that he should be able to talk about his

09:33:52 14    own experience, but if you're going to get into ultimate

09:33:59 15    issues, that means you expect him to opine the patents are

09:34:04 16    invalid, or just to talk about his experience with shoes

09:34:09 17    prior to the critical date.

09:34:12 18          MR. LOBBIN:  Yes, Your Honor, that's exactly

09:34:15 19    what he will do.

09:34:17 20          THE COURT:  I said or, so you got to tell me

09:34:19 21    which of the or.

09:34:20 22          MR. LOBBIN:  What you said, the latter.

09:34:23 23          THE COURT:  Okay.

09:34:23 24          MR. LOBBIN:  So these issues obviously are legal

09:34:26 25    issues.  Patent infringement as you know, Your Honor, lots

09:34:29  1    of experts, lots of stuff.  He's an entrepreneur.  Our

09:34:35  2    budget didn't allow for experts.  We don't need experts.

09:34:38  3    We're going to be asking a jury to determine what would an

09:34:44  4    ordinary observer see as substantially similar.  What would

09:34:48  5    likely -- what would be likely to confuse on trade dress.

09:34:53  6    We're asking the jury --

09:34:55  7              THE COURT:  You're not going to ask Mr. Pichler

09:34:58  8    that, would someone be likely confused; right?

09:35:00  9              MR. LOBBIN:  No.

09:35:01 10              THE COURT:  And you're not going to ask him is

09:35:03 11    it infringed, you might ask him his perceptions of

09:35:07 12    differences between the shoes.

09:35:08 13              MR. LOBBIN:  That's exactly right.  That's

09:35:11 14    exactly right.  The underlying fact that go into such a

09:35:16 15    determination from the perspective of an ordinary observer

09:35:21 16    which the jury is going to be asked to do.

09:35:23 17              THE COURT:  He's not going to be asked what the

09:35:25 18    ordinary observer test is?

09:35:28 19              MR. LOBBIN:  No.  He doesn't know anything about

09:35:30 20    that.  That's my job.  And so as we put in our response to

09:35:32 21    the motion in limine, this is not a pharmaceutical case

09:35:35 22    where you need expert to battle the experts on infringement

09:35:39 23    and on validity.  This is a case where we're talking about

09:35:42 24    shoes, we're talking about asserted trade dress, and the

09:35:46 25    jury is perfectly capable to judge what the witness says

09:35:50  1    about a product, what are the differences, what do you see,

09:35:53  2    differences between this and this.  The jury can agree,

09:35:56  3    disagree, make their own determination.  They're going to be

09:35:59  4    asked to do that anyway.

09:36:01  5            THE COURT:  So I guess my question is in your

09:36:03  6    papers you said this isn't expert testimony under 702, it's

09:36:09  7    lay opinion under 701.  But what you're describing to me

09:36:13  8    here is fact testimony.  What is it that you expect to do

09:36:18  9    that's lay testimony because everything that you have just

09:36:21 10    said seems to be pretty much his experience and fact based?

09:36:26 11            MR. LOBBIN:  Well, we could argue about whether

09:36:29 12    it's a fact or an opinion for a witness to say I see

09:36:33 13    similarities between this and that, I see differences

09:36:36 14    between this and that, have a jury observe them,

09:36:39 15    credibility.  So I would say that's an opinion, the

09:36:42 16    differences between this and that, it's not a fact.  Was the

09:36:47 17    light red, was the light green, that's a fact.

09:36:50 18            So a lay opinion, the rules of evidence

09:36:52 19    obviously allow for opinions that are based on the witness's

09:36:58 20    perception, based on the background and understanding.  He

09:37:01 21    is an ordinary observer just like every juror.  So the

09:37:07 22    jury's ultimate determination is going to be an opinion.

09:37:11 23    Infringement, that's an opinion.

09:37:11 24            THE COURT:  I just want to make sure Mr. Pichler

09:37:14 25    is not going to be giving an opinion on infringement.

09:37:16 1          MR. LOBBIN:  No, he's not going to say -- that

09:37:20 2     would be foolish for me to say, Mr. Pichler, you have

09:37:22 3     learned about infringement in this case and you know the

09:37:24 4     case law, you know, he's not qualified to do that.  He is

09:37:29 5     qualified to say this is a shoe with these features, this is

09:37:32 6     a shoe with these features.  Okay?  And look at all the

09:37:36 7     other shoes with similar features.  So that's what he's

09:37:44 8     going to testify, just the facts and lay opinions, not

09:37:47 9     expert opinions.

09:37:48 10         And one point of clarification.  I'm looking at

09:37:51 11    pretrial order Exhibit 7, our witness list, we do have oddly

09:37:55 12    on it Geraldo, who is Mr. Pichler's wife, as a witness.

09:38:01 13         THE COURT:  She is on that.  She was not on the

09:38:03 14    witness list that was submitted with the preliminary jury

09:38:06 15    instructions and the jury instructions, so I don't know if

09:38:08 16    you're planning to call her or not, but if you are, we need

09:38:12 17    to discuss it.  If you're not, then we don't.

09:38:14 18         MR. LOBBIN:  The legal argument I just gave is

09:38:16 19    the same for her.

09:38:17 20         THE COURT:  But it's not the same for disclosure

09:38:20 21    because they asked for her deposition and you said no.

09:38:22 22         MR. LOBBIN:  Oh, oh, oh, okay.  I understand the

09:38:25 23    issue.  I wasn't clear.  So she's on our witness list.  She

09:38:29 24    did not get deposed because of scheduling issues.  I think

09:38:35 25    their contention is that we somehow frustrated their ability

09:38:38 1   to get her deposition.

09:38:39 2              THE COURT:  You said she has no relevance, knows

09:38:42 3   nothing about the issues and she doesn't work for the

09:38:44 4   company.  That's what was said at least in the motion in

09:38:48 5   limine.

09:38:50 6              MR. LOBBIN:  I don't remember saying that.  Was

09:38:53 7   that on the phone?  She's not part of the company, so that's

09:39:11 8   true.

09:39:22 9              THE COURT:  Okay.  This is what I have.  In a

09:39:24 10  November 27th e-mail, counsel for defendants reiterated

09:39:29 11  their refusal to produce Ms. Geraldo for a deposition

09:39:34 12  claiming that, "Ms. Geraldo is not even an employee and

09:39:37 13  certainly she is not an officer or director of SM USA, nor

09:39:42 14  was she ever 'a managing agent.'  She manages nothing

09:39:48 15  related to the business and has only done work for the

09:39:51 16  business on rare occasions as the wife of the principal,

09:39:55 17  nothing more.  Her real job is being a wife and mother and

09:39:58 18  raising her young children."

09:40:00 19             So given that, how am I supposed to say they had

09:40:04 20  fair notice after they asked for her deposition and they

09:40:07 21  were told nope, she doesn't have anything relevant, that you

09:40:11 22  should be able to bring her in?

09:40:13 23             MR. LOBBIN:  What you just read does not say, I

09:40:16 24  never deposed her, so I don't know what she may know that's

09:40:20 25  relevant.  All I'm telling them is that she doesn't work for

09:40:24 1   the company.  I choose my words carefully.  I'm not tending

09:40:28 2   to mislead.  And we had offered them dates for a deposition.

09:40:32 3   We offered them a date.  They said no, that doesn't work for

09:40:35 4   us.  We went back and forth.

09:40:37 5          This is a man who moved from San Diego, he and

09:40:41 6   Rianna moved from San Diego to Miami to Columbia, to

09:40:50 7   Columbia the country, to have the children in school.

09:40:51 8   They're back and forth here and there.  We nailed down dates

09:40:54 9   for her deposition.  And they said no, we're not going to do

09:40:56 10  that.  It has to be this date.  She was on a plane.

09:40:59 11  Literally I was back and forth 72 times trying to figure out

09:41:03 12  what date would work.  I think we considered a Saturday.

09:41:06 13  Ultimately she flew to Columbia to be with her children.

09:41:10 14         They came to Miami to depose Mr. Pichler, and

09:41:14 15  they said -- I said look, she's not part of the company.

09:41:16 16  She's his wife.  She certainly knows about, you know, what

09:41:21 17  he did, and what he's been doing, and she knows -- she's on

09:41:27 18  his website, her picture, the shoes.  So it's not for me to

09:41:32 19  tell them how strenuously they may want to insist on getting

09:41:38 20  her deposition.  We offered them her deposition.

09:41:45 21         MR. LYONS:  So, Your Honor, Ms. Draun was not on

09:41:49 22  their initial disclosure list as anyone with relevant

09:41:53 23  evidence and what Your Honor read was a direct quote from an

09:41:57 24  e-mail to us from Mr. Lobbin that we received when we were

09:42:01 25  trying to schedule her deposition.  And I'll add to that, we

09:42:06 1    were told she is gone.  She's left the country for the

09:42:09 2    entire month of December, which was the last month of

09:42:14 3    discovery.  And, you know, that emphatic discussion that she

09:42:20 4    basically knows nothing and implying that we're sort of

09:42:23 5    harassing his wife who has nothing to do with the case, we

09:42:27 6    obviously dropped it believing she had nothing to do with

09:42:30 7    the case at that point so we didn't pursue it, so we were

09:42:34 8    very surprised to suddenly see that she would be testifying

09:42:38 9    at trial, we haven't deposed her and we think that would be

09:42:41 10   an unfair surprise.

09:42:42 11           I did have one comment --

09:42:44 12           THE COURT:  Did they give you a date for her

09:42:46 13   deposition that you said no?

09:42:48 14           MR. LYONS:  They gave us a date.  The sequence

09:42:52 15   was this.  There was a date.  We said we couldn't do that

09:42:55 16   date, can we schedule another.  He said no.  Within I think

09:42:59 17   forty-eight hours we came back and we said, fine, we'll do

09:43:03 18   your date.  And that's when we got the message, she's out of

09:43:06 19   the country now.  Too late.  She's on a plane to Columbia.

09:43:10 20   She's gone.  And we were told the entire month of December,

09:43:15 21   it's Christmas in Columbia, so she can't come back.

09:43:19 22           And just to add insult to injury on all this,

09:43:22 23   after we finally gave up on her deposition, she attended --

09:43:27 24   she showed up with Mr. Pichler at his deposition, and so she

09:43:31 25   hadn't left the country.  That was just something they told

09:43:35  1    us.  It was all just remarkable.  But at that point I had

09:43:38  2    already -- you know, I had a flight out that evening and

09:43:42  3    there was no way to get her deposition done at that point.

09:43:45  4          THE COURT:  And your position if I were to ask

09:43:48  5    that they should be deposed before trial?

09:43:50  6          MR. LYONS:  Well, certainly we think the

09:43:52  7    appropriate resolution is that she not testify.  I mean, if

09:43:56  8    she doesn't have relevant evidence, she simply is just being

09:44:00  9    put on the stand essentially to garner sympathy.  That seems

09:44:05 10    to be what they want to use her for.  We don't think that's

09:44:08 11    appropriate.  If Your Honor is inclined to let her testify,

09:44:12 12    yes, we would ask that she be deposed before she takes the

09:44:15 13    stand.

09:44:16 14          THE COURT:  Mr. Lobbin, what is your position on

09:44:19 15    that?

09:44:19 16          MR. LOBBIN:  Mr. Pichler is tickling my ear to

09:44:23 17    put it lightly to say just a few short words if Your Honor

09:44:26 18    will allow about this subject.

09:44:29 19          THE COURT:  Sure.

09:44:32 20          MR. LOBBIN:  Please stand.

09:44:33 21          MR. PICHLER:  Your Honor, my wife, she was part

09:44:37 22    of the business from beginning on.  She had helped me.  She

09:44:40 23    was part of me looking for a store.  She was the person that

09:44:43 24    tried the shoes.  She's gone with me through the entire

09:44:49 25    journey.  She's frequently involved in every detail of it.

09:44:52  1   She doesn't work for the company.  I don't work for the

09:44:53  2   company.  The company got incorporated.  We manage it as

09:44:57  3   owners, not employees.  There is nobody on the payroll

09:45:00  4   because there was no money.

09:45:00  5          Her native language is Spanish.  She speaks very

09:45:03  6   good English.  She felt uncomfortable.  She said I have no

09:45:07  7   problem with the deposition, you go first.  I said

09:45:10  8   absolutely, no problem.  We offered the date and we were in

09:45:14  9   San Diego from January to summer and from summer to fall we

09:45:17 10   were in Miami, all the time available.  Only before

09:45:20 11   Christmas we had to go to Columbia to see our kids.  They

09:45:24 12   were the entire year there.

09:45:24 13          They scheduled the deposition a week before we

09:45:28 14   had to leave.  It was not enough.  They could have deposed

09:45:31 15   her the entire year if they wanted to.  And then when we

09:45:35 16   offered the dates, she literally had to fly leaving.  When

09:45:40 17   my deposition was scheduled, I asked, can you please change

09:45:43 18   the flight and go with me, and she said I will change the

09:45:47 19   flight but I have to go back because my sister is taking

09:45:50 20   care of the kids.  She came with me.  And had they given her

09:45:54 21   the dates after that, she would have done it.  They were

09:45:56 22   very inflexible to changing the dates, that's why she

09:46:00 23   couldn't, not because she didn't want to, she wanted to.

09:46:03 24          THE COURT:  We do have disclosure rules in this

09:46:05 25   Court.  She was not listed on the disclosure.  I don't think

09:46:08  1    there was a dispute about that.  But my question was what

09:46:12  2    was your position on whether she should be deposed now

09:46:15  3    before trial?

09:46:16  4              MR. LOBBIN:  Well, I think that they can depose

09:46:24  5    her, certainly.  She's in Miami?

09:46:30  6              MR. PICHLER:  Yes.

09:46:30  7              MR. LOBBIN:  They can depose her next week.

09:46:37  8              THE COURT:  Okay.  I'll think about that.  And

09:46:42  9    your position is she's going to testify on what?

09:46:46 10              MR. LOBBIN:  She's going to testify about the

09:46:54 11    shoes, the Massini shoes, what they do, how they -- what the

09:47:01 12    aspect of the design are, how they feel, what the purpose of

09:47:04 13    them is.  This is an orthotic shoe, much different purpose

09:47:09 14    than their shoes, so there are distinctions in form,

09:47:13 15    function, everything about these shoes.  They're not a copy

09:47:17 16    as they're alleged.  They're not even in the same market,

09:47:21 17    really, submarket, so she's going to testify as, you know,

09:47:25 18    as the wife of the owner, someone who wears the shoes,

09:47:30 19    somebody who has helped in the advertising of the shoes, to

09:47:35 20    help inform the jury about what these shoes are all about.

09:47:40 21              THE COURT:  Okay.  I'll think about that and

09:47:42 22    issue that with my order on the other motion in limine.

09:47:52 23              Other issues from the pretrial order.  The

09:47:59 24    untimeliness of defendant's pretrial disclosures, can we get

09:48:04 25    past that given that I have given plaintiff extra time to

09:48:07 1  deal with those?

09:48:09 2          MR. HSU-HOFFMAN:  Yes, Your Honor.

09:48:10 3          THE COURT:  Plaintiff's proposal not to assert

09:48:13 4  United States Design Patent D761536.  So as I understand it,

09:48:21 5  there are counterclaims involving that, and so it seems like

09:48:26 6  defendant's position is correct that you can't just drop it

09:48:30 7  without their consent or without something, what is it that

09:48:35 8  you plan to do with that patent?

09:48:38 9          MR. LYONS:  Well, Your Honor, I think if they

09:48:40 10 are going to go forward, I think maybe we'll just present it

09:48:43 11 as part of our case.  We were trying to streamline things,

09:48:47 12 but if they won't agree to drop it, maybe we'll just assert

09:48:51 13 it.

09:48:52 14         THE COURT:  And Mr. Lobbin, is that what you

09:48:54 15 prefer?

09:48:58 16         MR. LOBBIN:  Your Honor, I think we'll be fine

09:49:02 17 with them dropping it.  We'll drop our counterclaim.

09:49:06 18         MR. LYONS:  All right.

09:49:07 19         THE COURT:  So you guys submit me a stipulation

09:49:11 20 that deals with that.

09:49:11 21         MR. LYONS:  We will, Your Honor.

09:49:13 22         THE COURT:  Great.  Thank you, both.

09:49:15 23         We have an issue in paragraphs 33 to 45 about

09:49:22 24 documents on the exhibit list that were never produced or

09:49:26 25 were untimely.  And some of that I think we have discussed

09:49:30 1   with respect to the prior art.  Is there anything in

09:49:38 2   addition that I need to deal with that's raised in those

09:49:42 3   paragraphs?

09:49:44 4           MR. LYONS:  Yes, Your Honor.  As you know, there

09:49:46 5   has been a lot -- a lot that's been produced after the close

09:49:50 6   of discovery.  Some that we saw for the first time when we

09:49:55 7   got their trial exhibits.  Some of it is related to prior

09:49:58 8   art.  Some of it is related to other matters.  It's our view

09:50:03 9   that defendants should not be able -- shouldn't be able to

09:50:07 10  put on their list anything that they have produced after the

09:50:10 11  close of discovery.

09:50:11 12          THE COURT:  The problem I have with that one is

09:50:14 13  that we had a discovery conference after the close of

09:50:16 14  discovery where I did ask them, or order them to produce

09:50:21 15  certain documents.  Mr. Pichler didn't become a defendant

09:50:28 16  until after the close of fact discovery, so I'm with you on

09:50:32 17  anything that you got the first time with the pretrial

09:50:35 18  order, that seems far too late, but the end of discovery

09:50:39 19  which was in December when a substantial amount was done

09:50:42 20  after January, I'm just not sure that that is --

09:50:46 21          MR. LYONS:  I guess our view on that, Your

09:50:49 22  Honor, would be that we came to the Court asking for

09:50:52 23  additional documents, and the Court agreed that they should

09:50:55 24  be produced.  So we think as plaintiff we should be able to

09:50:58 25  rely on them.  That was why they were being produced.  But

09:51:03 1     for defense to fail to produce them finally during the

09:51:07 2     discovery period, produce them later and then rely in their

09:51:11 3     own defense, obviously if we put them on our list, they're

09:51:16 4     entitled to use them as well, but for them to be able to

09:51:19 5     produce them late and then rely upon them, there is some

09:51:23 6     unfairness there.

09:51:24 7             THE COURT:  I think what I have said before with

09:51:26 8     respect to validity, they can rely on the 24 Tieks

09:51:32 9     references they disclosed, and again, this is assuming

09:51:37 10    corroboration.  I'm just talking about disclosure, the 24

09:51:41 11    references plus the three obviousness references.

09:51:45 12            What I can't tell is what else, if the other

09:51:52 13    stuff isn't included, is there anything -- I don't know what

09:51:57 14    else is left that you're objecting to on timeliness.  So if

09:52:00 15    I say to you anything that's prior art we have a limited

09:52:09 16    universe.  Anything that was disclosed for the first time in

09:52:11 17    the pretrial order that they gave you is too late.  What is

09:52:14 18    the universe that's left that you're objecting to that came

09:52:19 19    after discovery?

09:52:20 20            MR. LYONS:  Your Honor, I would have to go back

09:52:23 21    and check what that is.

09:52:23 22            THE COURT:  If you could let me know sort of

09:52:26 23    like I asked defendants just so that I have some idea of

09:52:29 24    what we're talking about so I know is this something I need

09:52:32 25    to rule on before trial or if it's two or three exhibits, we

09:52:35 1    don't need to deal with it and we'll see if they put them on

09:52:39 2    the list to use with witnesses.

09:52:41 3              MR. LYONS:  Understood fully, Your Honor.

09:52:44 4              THE COURT:  Okay.  Now I wanted to talk about a

09:52:55 5    little bit about the trial logistics and the number of hours

09:52:58 6    for trial.  I am going to -- I have dismissed the

09:53:05 7    counterclaims, so I am going to say each side will have ten

09:53:09 8    hours total for trial, and that includes the opening and

09:53:13 9    closing, however you want to allocate your time.

09:53:18 10             I do not charge time for voir dire of the panel

09:53:25 11   unless it becomes excessive at which time I'll give you a

09:53:30 12   warning and tell you I will plan to start charging time for

09:53:33 13   voir dire.

09:53:33 14             With respect to voir dire, we have pretty

09:53:40 15   limited voir dire in this court.  What we typically do is we

09:53:45 16   have the panel back there, I will ask them a series of

09:53:48 17   questions.  Anyone who answers affirmatively to those

09:53:52 18   questions we will bring back into chambers and talk.  We

09:53:55 19   will talk mainly about their issues and whether or not if

09:53:59 20   they raised issues for being excused for cause.  We don't

09:54:03 21   get into, you know, substantive discussions about things

09:54:07 22   outside of those issues that have been raised.

09:54:10 23             I do charge time for the preemptory strikes, so

09:54:15 24   that's when you'll start being on the clock.

09:54:19 25             Trial days will run from 9:00 a.m. to 4:30 p.m.,

09:54:28 1  sometimes 4:45 if the jury prefers.  We'll have a 15-minute

09:54:33 2  break in the morning, a lunch break for about an hour, and a

09:54:36 3  15-minute break in the afternoon.

09:54:38 4          I am generally disinclined to close the

09:54:40 5  courtroom.  And I'm not sure that there are any issues here

09:54:44 6  that would mandate that, but if there are, I would ask you

09:54:47 7  to give me a heads up about that so we can discuss it and

09:54:50 8  figure out if it's appropriate to close the courtroom.

09:54:54 9          Deposition designations, I understand that there

09:54:58 10 will be no disputes about deposition designations because

09:55:03 11 defendants have no testimony designated, and they offered no

09:55:08 12 counter-designations to plaintiff.  And defendants did not

09:55:12 13 object in the pretrial order to any of Gavrieli's

09:55:15 14 designations.  So there is a paragraph about how we'll deal

09:55:19 15 with those disputes, but I don't see how any of those

09:55:23 16 disputes could possibly be not waived.

09:55:27 17         No exhibits will be admitted without a witness.

09:55:38 18 For timeliness to objections to exhibits -- hold on one

09:55:50 19 second.

09:55:52 20         (Discussion off the record.)

09:56:06 21         THE COURT:  So we have timeliness as an issue.

09:56:09 22 I'm going to try to rule on that.  Hopefully we can minimize

09:56:14 23 that with the order that I have given.  But if there are

09:56:18 24 continued timeliness objections to exhibits, the losing

09:56:21 25 party is going to be charged the time necessary for the

09:56:25  1    Court to hear and resolve the objections.

09:56:27  2            Objections to exhibits used on cross will be

09:56:31  3    addressed at the time that they are used.  And the losing

09:56:35  4    party will be charged with time to resolve the objection.

09:56:39  5    Defendants did not object to any of Gavrieli's exhibits in

09:56:42  6    the pretrial order so I don't think that there should be any

09:56:45  7    objections to exhibits going that direction.

09:56:49  8            If there is an objection to any exhibits that

09:56:55  9    are offered for use with a particular witness, if the

09:57:02 10    parties are unable to reach an agreement after meeting and

09:57:05 11    conferring, they must e-mail my judicial administrator,

09:57:12 12    Diana Welham, by 7:30 a.m. on the day the witness is to

09:57:16 13    testify.  And we will then come in a little bit early before

09:57:18 14    the jury gets here and see if we can work out the objections

09:57:25 15    or I rule them.

09:57:26 16            Juror notebooks, I understand that Gavrieli is

09:57:29 17    preparing the notebooks and they'll be ready on the first

09:57:31 18    day.  Consistent with the Court's procedures, the party

09:57:38 19    shall provide a completed AO Form 187 exhibit list to the

09:57:43 20    courtroom deputy on the first day of trial.

09:57:45 21            With respect to moving around the courtroom, I

09:57:48 22    ask you not to encroach on the jury's space.  If you want to

09:57:54 23    approach a witness, you just need to ask the first time and

09:57:59 24    after I have granted leave, if you need to approach that

09:58:02 25    witness again, that's fine, you're free to do that.  And

09:58:06  1   you're free once you have asked permission once, you're free

09:58:10  2   to move this way in the courtroom, it's just the jury gets

09:58:13  3   uncomfortable with people getting too close to it.  So over

09:58:17  4   here I will limit it to just you moving, coming up to hand

09:58:21  5   something to a witness.

09:58:23  6          The parties may have access to the courtroom on

09:58:27  7   the afternoon of April 26th, 2019 to set up for trial

09:58:34  8   starting at two clock.  And if you have any questions, you

09:58:38  9   can coordinate that with my chambers.

09:58:40 10          We're still taking a look at the proposed jury

09:58:43 11   instructions that were submitted to us, but at the very

09:58:48 12   least they'll need to be revised in light of my rulings

09:58:52 13   today on the counterclaims, so I would ask that the parties

09:58:58 14   submit a revised set of jury instructions in the next week

09:59:04 15   or so.

09:59:06 16          Okay.  Are there issues in the pretrial order or

09:59:10 17   questions that you have about my procedures that I have not

09:59:13 18   addressed?

09:59:18 19          MR. HSU-HOFFMAN:  Your Honor, we have one issue

09:59:20 20   relating to the stipulated facts if we may be heard.

09:59:23 21          THE COURT:  I'm not going to agree that we make

09:59:28 22   them stipulate to facts that you propose.  I saw what you

09:59:33 23   had proposed in Exhibit 1, and you're going to be set to

09:59:38 24   prove any of those that you think need to be proved.

09:59:40 25          MR. HSU-HOFFMAN:  The reason we identified those

09:59:44  1    facts is because they were admitted in response to the Soto

09:59:50  2    USA answer.  These were facts that we saw as undisputed

09:59:53  3    throughout this case and probably should be part of the

09:59:57  4    stipulated list of facts, but we understand your -- there

10:00:01  5    will be plenty of time to do that at trial.

10:00:03  6         THE COURT:  The way it was set out there

10:00:06  7    required me to do a lot of counter-referencing and figuring

10:00:09  8    out what you were talking about, and I'm not going -- I

10:00:12  9    don't have time to do that.  So I'm not going to force them

10:00:15 10    to agree to things that they did not agree to.

10:00:18 11         MR. HSU-HOFFMAN:  Thank you, Your Honor.

10:00:18 12         THE COURT:  If you want to point out at some

10:00:20 13    point that it's in the answer, you're free to do that.

10:00:23 14         Okay.  Mr. Lobbin.

10:00:25 15         MR. LOBBIN:  Thank you, Your Honor.  A question

10:00:27 16    about witnesses and recalling or rebuttal case.  So

10:00:31 17    Mr. Pichler obviously is a key witness for us.  They took

10:00:35 18    his deposition.  He'll be here, so they're going to call him

10:00:39 19    I assume on their case in chief.  When I have redirect, am I

10:00:43 20    also at that time presenting my facts in support after

10:00:49 21    affirmative defenses, or do I recall him later when they

10:00:53 22    rest their case?  Did I miss something?

10:00:57 23         THE COURT:  That's a very good question.

10:00:59 24         MR. LYONS:  Well, I can clear this one up.

10:01:02 25    Mr. Pichler is a 30(b)(6) witness.  We're entitled to play

10:01:06  1   deposition testimony as 30(b)(6) testimony.  We don't intend

10:01:11  2   to call him live in our case, so if he wants to testify

10:01:14  3   live, they can call him as a witness when they think it's

10:01:18  4   appropriate.

10:01:19  5           THE COURT:  Does that work for you?

10:01:21  6           MR. LOBBIN:  Sure.

10:01:22  7           How about other witnesses, are we going to have

10:01:26  8   them hang around so that I can call them on my rebuttal

10:01:29  9   case, or do we examine them, for example, their witness,

10:01:33 10   they're going to call their witness, do I then --

10:01:35 11           THE COURT:  You got to give me names.  I don't

10:01:37 12   know who you're talking about.

10:01:38 13           MR. LOBBIN:  Mr. Gavrieli.

10:01:42 14           MR. LYONS:  I don't believe he's on their

10:01:46 15   witness list.  We're going to call Mr. Gavrieli to testify.

10:01:52 16   And he'll be cross-examined.  I'm not sure I understand the

10:01:55 17   question.

10:01:56 18           MR. LOBBIN:  Well, our witness list says that --

10:02:05 19   we specifically reserve the right to call live as a witness

10:02:08 20   at trial any witness called live by plaintiff or any witness

10:02:15 21   presented on plaintiff's witness list.  We don't recreate

10:02:18 22   their list.

10:02:19 23           MR. LYONS:  First of all, there is another

10:02:20 24   question with Mr. Gavrieli.  He is the company rep.  He's

10:02:24 25   going to be here for the whole trial, so if we're just

10:02:27 1    talking about Mr. Gavrieli, he'll be here and they can call

10:02:30 2    him in their case in chief if they choose to.

10:02:34 3              THE COURT:  Okay.  I don't want this to become a

10:02:37 4    thing where every single witness is deposed twice because I

10:02:41 5    think that's unfair to the jury and inefficient use of the

10:02:44 6    jury's time.  Why don't you all confer on who you want to

10:02:48 7    call and who versus who you just want to depose, and try and

10:02:56 8    come up with a proposal for how we're going to do this in an

10:03:00 9    efficient manner.  There may be people, Mr. Pichler doesn't

10:03:05 10   sound like it's going to be an issue, maybe Mr. Gavrieli who

10:03:09 11   is going to be here the whole time, maybe that makes sense

10:03:12 12   if it's going to interrupt the flow of the testimony, but

10:03:17 13   for the most part, I would like to see people up here once.

10:03:21 14             MR. LOBBIN:  That would be my proposal, Your

10:03:24 15   Honor.  For instance, Mr. Gavrieli, if they're going to ask

10:03:27 16   him certainly about their case, they're not going to talk to

10:03:30 17   him about prior art and things like that, so I would propose

10:03:34 18   that I just ask my questions while he's up there instead of

10:03:37 19   calling him two days later.

10:03:38 20             THE COURT:  That was the one where I just said

10:03:40 21   that one might make sense since he's going to be here the

10:03:45 22   whole time and since it might interrupt the flow of things

10:03:49 23   we could do it in two separate sections, especially since we

10:03:53 24   are talking about infringement positions in the plaintiff's

10:03:55 25   case and invalidity in the defendant's case, but for other

10:03:58  1    people see if you can work it out.

10:04:00  2                MR. LYONS:  Thank you, Your Honor.

10:04:00  3                THE COURT:  Anything else?

10:04:02  4                MS. DUDASH:  Just one other issue.  You talked

10:04:04  5    about objections.  And we read your procedures, but if there

10:04:07  6    is an objection to something a witness says, hearsay, other

10:04:11  7    kinds of objections, should we just stand up and say

10:04:14  8    objection?  Should we give a rule number in front of the

10:04:17  9    jury?  How would you like us to handle that?

10:04:20 10                THE COURT:  I think you can stand up and say

10:04:23 11    objection, you can give me a rule number if you want, you

10:04:26 12    can say hearsay, but I don't want long objections that might

10:04:32 13    influence or prejudice the jury.

10:04:35 14                MR. LYONS:  You know, there is one more

10:04:37 15    question.  So Mr. Gavrieli will be the corporate

10:04:40 16    representative.  He's also going to testify.  I know usually

10:04:44 17    the fact witnesses are sequestered.  I wonder if there would

10:04:50 18    be an exception for Mr. Gavrieli since it's his company, we

10:04:54 19    hope he would be able to attend the entire trial.

10:04:57 20                THE COURT:  I assume you wouldn't have an

10:04:59 21    objection for reciprocity for Mr. Pichler?

10:05:02 22                MR. LYONS:  No, Your Honor.

10:05:02 23                THE COURT:  Any objection?

10:05:03 24                MR. LOBBIN:  No objection.

10:05:04 25                THE COURT:  I think as a matter of course in our

10:05:06 1   district, corporate representatives are excluded from the

10:05:11 2   sequestration orders, but given that there are no

10:05:13 3   objections, Mr. Gavrieli and Mr. Pichler may attend the

10:05:18 4   entire trial.

10:05:18 5           But if Ms. Geraldo testifies, she would be

10:05:25 6   sequestered from the trial until the time of her testimony.

10:05:29 7           MR. LOBBIN:  Understood.

10:05:31 8           THE COURT:  Okay.  Any other questions?

10:05:37 9           MR. LYONS:  None from plaintiff, Your Honor.

10:05:39 10           THE COURT:  Thank you very much.

10:05:39 11           (Court recessed at 10:05 a.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25