*Read in open court on 4/29/19*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| GAVRIELI BRANDS LLC, a California Limited Liability Company, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 18-462 (MN) |
| SOTO MASSINI (USA) CORP., a Delaware corporation and THOMAS PICHLER, an individual, | ) ) ) ) | |
| Defendants. | ) ) | |

## PRELIMINARY JURY INSTRUCTIONS

# TABLE OF CONTENTS

1.   INTRODUCTION ....................................................................................... 1

2.   THE DESIGN PATENT CLAIMS .............................................................. 2

3.   THE TRADE DRESS CLAIMS .................................................................. 5

4.   THE UNFAIR COMPETITION, FALSE ADVERTISING, AND UNJUST
     ENRICHMENT CLAIMS ........................................................................... 7

5.   CONDUCT OF THE JURY ........................................................................ 8

6.   BENCH CONFERENCES ........................................................................ 10

7.   EVIDENCE ............................................................................................... 11

8.   DIRECT AND CIRCUMSTANTIAL EVIDENCE ................................... 13

9.   CREDIBILITY OF WITNESSES; WEIGHING CONFLICTING TESTIMONY ......... 14

10.  DEPOSITION TESTIMONY ................................................................... 15

11.  EXPERT TESTIMONY ........................................................................... 16

12.  QUESTIONING OF WITNESSES AND NOTE TAKING ...................... 17

13.  BURDEN OF PROOF .............................................................................. 19

14.  JUROR NOTEBOOK ............................................................................... 21

15.  COURSE OF THE TRIAL ....................................................................... 23

16.  TRIAL SCHEDULE ................................................................................. 23

## 1.   **INTRODUCTION**

Now that you have been sworn, I have the following preliminary instructions for your guidance as jurors in this case.

These instructions are intended to introduce you to the case and the law that you will apply to the evidence that you will hear.  I will give you more detailed instructions on the law at the end of the trial.  Also, because this case involves patents, I will give you some preliminary instructions regarding patents as well.

You will hear the evidence, decide what the facts are, and then apply those facts to the law that I will give to you.

You and only you will be the judges of the facts.  You will have to decide what happened. I play no part in judging the facts.  You should not take anything I may say or do during the trial as indicating what I think of the evidence or what your verdict should be.  My role is to be the judge of the law.  I make whatever legal decisions have to be made during the course of the trial, and I will explain to you the legal principles that must guide you in your decisions.  You must follow that law whether you agree with it or not.

**Authority:**

Third Circuit Model Civil Jury Instr. 1.1 (10/2017).

## 2.    THE DESIGN PATENT CLAIMS

This case involves disputes relating to United States design patents owned by the plaintiff in this case, Gavrieli Brands, LLC, also referred to as "Gavrieli" or "Tieks."  The defendants in this case are Thomas Pichler, or "Mr. Pichler," and Soto Massini (USA) Corporation or "Soto Massini."  I may collectively refer to Mr. Pichler and Soto Massini as "Defendants" or the "Soto Massini Defendants."

Before summarizing the positions of the parties and the legal issues involved in the dispute, let me take a moment to explain what patents are and how they are obtained.

The United States Constitution, Article I, Section 8, grants the Congress of the United States the power to enact laws "[t]o promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries."  Patents are granted by the United States Patent and Trademark Office, which is sometimes referred to as the "Patent Office," "USPTO," or "PTO."  There are two basic types of patents in the United States: utility patents and design patents.  In general terms, a "utility patent" protects the way an article is used and works.  It also protects a method or process of making or doing something.  On the other hand, a "design patent" protects the way an article looks.  A design patent protects the ornamental design of an article of manufacture.  "Ornamental design" means the shape of the design and/or the surface decoration on the design.

A valid U.S. patent gives the patent owner the right to prevent others from making, using, offering to sell, or selling the patented invention within the United States, or from importing it into the United States, during the term of the patent without the patent holder's permission.  A violation of the patent owner's rights is called infringement.  The patent owner may enforce a patent against infringers by filing a lawsuit in a federal court, such as this one.

A patent includes what is called a "specification." For a design patent, the specification must contain one or more drawings of the designs as well as a description of the drawings, and it serves as a single claim. The "claim" for design patents generally refers to the drawings and how they are described.

The process of obtaining a patent is called patent prosecution. To obtain a patent one must file an application with the Patent Office. The Patent Office is an agency of the federal government and employs trained examiners who review applications for patents. After the applicant files the application, a patent examiner reviews the patent application to determine whether the claims are patentable and whether the specification adequately describes the invention claimed. In examining a patent application, the patent examiner reviews records available to the Patent Office for what is referred to as "prior art." The examiner also will review materials submitted to the Patent Office by the applicant.

Prior art is defined by law, and I will give you at a later time specific instructions as to what constitutes prior art. In general, however, prior art includes things that existed before the claimed invention, that were publicly known, or used in a publicly accessible way in this country, or that were patented or described in a publication in any country. The patent examiner considers, among other things, whether each claim defines an invention that is new, useful, and not obvious in view of the prior art.

After the prior art search and examination of the application, the patent examiner then informs the applicant in writing what the examiner has found and whether any claim is patentable, and thus will be "allowed." This writing from the patent examiner is called an "office action." If the examiner rejects the claims, the applicant then responds and sometimes changes the claims or submits new claims. This process, which takes place only between the examiner and the patent

3

applicant, may go back and forth for some time until the examiner is satisfied that the application and claims meet the requirements for a patent. The papers generated during this time of communicating back and forth between the patent examiner and the applicant make up what is called the "prosecution history." All of this material becomes available to the public no later than the date when the patent issues.

In this case, Tieks contends that the Soto Massini Defendants infringe four U.S. Design Patents and that the Soto Massini Defendants' infringement of those patents has been willful. Those patents—which are referred to as the "patents-in-suit"—are: U.S. Design Patents Nos. D781,035, D781,032, D781,034, and D681,927. Copies of the patents have been given to you in your binders. Patents are usually referred to by their last three digits. U.S. Design Patent No. D781,035 can be referred to as the '035 patent, U.S. Design Patent No. D781,032 can be referred to as the '032 patent, and so forth. Tieks contends that it is entitled to damages to compensate Tieks for the Soto Massini Defendants' infringement. The Soto Massini Defendants deny that they have infringed the patents-in-suits and contend that the patents-in-suit are invalid.

For Tieks's patent infringement claims , the first issue you will be asked to decide is whether the Soto Massini Defendants have infringed the claims of the patents-in-suit and whether those patents are valid. If you decide that any claim of any of Tieks's patents has been infringed and is not invalid, you will then need to decide any money damages to be awarded to Tieks to compensate it for the infringement. You will also need to make a finding as to whether the Soto Massini Defendants' infringement was willful. I will provide you more direct instructions on how to determine that at the end of trial.

**Authority:**

N.D. Cal. Model Patent Jury Instrs. A.1-A.3; *Apple Inc. v. Samsung Electronics Co., Ltd.*, No. 11-CV-01846-LHK, D.I. 1427, Preliminary Jury Instrs. 18-20 (N.D. Cal. 7/27/2012).

### 3.     THE TRADE DRESS CLAIMS

This case also involves disputes relating to trade dress infringement under what is known as the Lanham Act and common law.  To help you understand the evidence that will be presented in this case, I will explain what a trade dress is, and I will give you a summary of the positions of the parties.

Trade dress is the non-functional physical detail and design of a product, which identifies the product's source and distinguishes it from the products of others.  Trade dress is the product's total image and overall appearance, and may include features such as size, shape, color, color combinations, texture, or graphics.  In other words, trade dress is the form in which a product is presented to the market.

A trade dress is non-functional if, taken as a whole, the collection of trade dress elements is not essential to the product's use or purpose or does not affect the total cost or quality of the product even though certain particular elements of the trade dress may be functional.

Trade dress concerns the overall visual impression created in the consumer's mind when viewing the non-functional aspects of the product and not from the utilitarian or useful aspects of the product.  In considering the impact of these non-functional aspects, which are often a complex combination of many features, you must consider the appearance of features together, rather than separately.

A person acquires the right to exclude others from using a trade dress by being the first to use it in the marketplace, or by using it before the alleged infringer.  The owner of a valid trade dress has the right to prevent others from "infringing" it.  "Infringement" refers to another company's use similar to the owner's trade dress that is likely to cause confusion in the marketplace.  Rights in a trade dress are obtained only through commercial use of the trade dress.

In this case, Tieks accuses the Soto Massini Defendants of infringing its trade dress relating to the "Tieks" ballet flats and contends that any infringement has been willful. The Soto Massini Defendants deny that they infringe Tieks's trade dress and contend that the trade dress is invalid.

For Tieks's trade dress infringement claim, the first issue you will have to decide is whether Tieks's trade dress is protectable. An asserted trade dress is only protectable if the trade dress has acquired distinctiveness or secondary meaning and is non-functional. The next issue you will need to decide is whether Tieks's trade dress acquired distinctiveness or secondary meaning before the Soto Massini Defendants started selling their accused products, and whether the Soto Massini Defendants' accused products are likely to cause confusion about the source of Tieks's or the Soto Massini Defendants' goods.

If you decide that Tieks's trade dress is protectable and has been infringed by the Soto Massini Defendants, you will then need to decide the money damages to be awarded to Tieks.

**Authority:**

*Rose Art Indus., Inc. v. Swanson*, 235 F.3d 165, 171 (3d Cir. 2000); *Ateliers de la Haute-Garonne v. Broetje Automation-USA Inc.*, C.A. No. 09-598-LPS, D.I. 415, Final Jury Instr. 7.1 (D. Del. 4/11/2014); *Apple Inc. v. Samsung Electronics Co., Ltd.*, No. 11-CV-01846-LHK, N.D. Cal., D.I. 1427, Preliminary Jury Instr. 21 (N.D. Cal. 7/27/2012).

4.    **THE UNFAIR COMPETITION, FALSE ADVERTISING, AND UNJUST ENRICHMENT CLAIMS**

This case also concerns claims for unfair competition, false advertising, and unjust enrichment.  Tieks contends that the Soto Massini Defendants have committed acts of unfair competition, engaged in false advertising by making false and misleading statements to consumers, and have committed inequitable acts and been unjustly enriched to Tieks's detriment.   Tieks contends that the Soto Massini Defendants' acts of unfair competition and false advertising have been willful and that Tieks is entitled to damages for the Soto Massini Defendants' unfair competition, false advertising, and inequitable activities.   The Soto Massini Defendants deny that they have committed acts of unfair competition and false advertising.   The Soto Massini Defendants also deny that they have been unjustly enriched.

5. **CONDUCT OF THE JURY**

Now a few words about your conduct as jurors.

First, I instruct you that during the trial you are not to discuss the case with anyone or permit anyone to discuss it with you. Until you retire to the jury room at the end of the case to deliberate on your verdict, you simply are not to talk about this case. If any lawyer, party, or witness does not speak to you when you pass in the hall, ride the elevator, or the like, remember it is because they are not supposed to talk with you, nor you with them. In this way, any unwarranted and unnecessary suspicion about your fairness can be avoided. If anyone should try to talk to you about the case, bring it to the Court's attention promptly.

Second, do not read or listen to anything touching on this case in any way. By that I mean that if there is a newspaper or internet article or television or radio report relating to this case, do not read the article or watch or listen to the report.

Third, do not try to do any research or investigate the case on your own. Let me elaborate. During the course of the trial, you must not conduct any independent research about the case, the matters in the case, and the individuals or entities involved in the case. In other words, you should not consult dictionaries or reference materials, search the internet, websites, blogs, or any other print, electronic, or any other means. Also, again, should there happen to be a newspaper article or television or radio report relating to this case, do not read the article or watch or listen to the report. It is important that you decide this case based solely on the evidence presented in the Courtroom. Please do not try to find out information from any other sources.

I know that many of you use cell phones, tablets, iPhones, iPads, the internet, and other tools of technology. You also must not talk to anyone about this case or use these tools to communicate electronically with anyone about the case. This includes your family and friends. You may not communicate with anyone about the case on your cell phone, through e-mail, your

tablet or iPhone or iPad, text messaging, on Twitter, through any blog or website, through any internet chat room, or by way of any other social networking web sites, including Facebook, Twitter, LinkedIn, and YouTube.

Finally, do not form any opinion until all the evidence is in. Keep an open mind until you start your deliberations at the end of the case. I will give you detailed instructions on the law at the end of the case, and those instructions will control your deliberations and decision.

**Authority:**

*International Business Machines Corp. v. Groupon, Inc.*, C.A. No. 16-122-LPS, D.I. 366, Preliminary Jury Instr. at 12-14 (D. Del. 7/13/2018); Third Circuit Model Civil Jury Instr. 1.3 (10/2017).

6.      **BENCH CONFERENCES**

During the trial it may be necessary for me to talk with the lawyers out of your hearing by having a bench conference.  If that happens, please be patient.

We are not trying to keep important information from you. These conferences are necessary for me to fulfill my responsibility to be sure that evidence is presented to you correctly under the law.

We will, of course, do what we can to keep the number and length of these conferences to a minimum.  If you would like to stand or stretch or walk around the jury box while we are at sidebar, you should feel free to do so.

I may not always grant an attorney's request for a bench conference.  Do not consider my granting or denying a request for a conference as an indication of my opinion of the case or of what your verdict should be.

**Authority:**

*International Business Machines Corp. v. Groupon, Inc.*, C.A. No. 16-122-LPS, D.I. 366, Preliminary Jury Instr. (D. Del. 7/13/2018).

7.      **EVIDENCE**

The evidence from which you will find the facts will consist of the testimony of witnesses and the documents and other things admitted into evidence. The evidence may also include certain facts agreed to by the parties or that I may instruct you to find.

Certain things are not evidence. I will list them for you now:

1.      Statements, arguments, and questions by lawyers are not evidence.

2.      Objections to questions are not evidence. Lawyers have an obligation to their clients to make an objection when they believe testimony or exhibits being offered are not admissible under the rules of evidence. You should not be influenced by a lawyer's objection or by my ruling on the objection. If I sustain or uphold the objection and find the matter is not admissible, you should ignore the question or document. If I overrule an objection and allow the matter in evidence, you should treat the testimony or document like any evidence. If I instruct you during the trial that some item of evidence is admitted for a limited purpose, you must follow that instruction and consider that evidence for that purpose only. If this occurs during the trial, I will try to clarify this for you at that time.

3.      Testimony that the Court has excluded or told you to disregard is not evidence and must not be considered.

4.      During trial you will be shown charts and animations to help illustrate the testimony of the witnesses. These illustrative exhibits, called "demonstrative exhibits," are not admitted into evidence and should not be considered as evidence.

5.      Anything you see or hear outside the Courtroom is not evidence and must be disregarded. You are to decide this case solely on the evidence presented here in the Courtroom.

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves.

If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

**Authority:**

Third Circuit Model Civil Jury Instr. 1.5 (10/2017).

## 8.    DIRECT AND CIRCUMSTANTIAL EVIDENCE

There are two kinds of evidence that you may use in reaching your verdict:  direct and circumstantial.

Direct evidence is direct proof of a fact, such as testimony of an eyewitness.  If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining.

Circumstantial evidence is proof of facts from which you may infer or conclude that other facts exist.  If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining outside.

As a general rule, the law makes no distinction between these two types of evidence but simply requires that you find facts from all the evidence in the case, whether direct or circumstantial or a combination of the two.  You are to decide how much weight to give any evidence.

**Authority:**

Third Circuit Model Civil Jury Instr. 1.6 (10/2017).

13

9.     **CREDIBILITY OF WITNESSES; WEIGHING CONFLICTING TESTIMONY**

You are the sole judges of each witness's credibility.  You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices or interests; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

If you find the testimony to be contradictory, you must try to reconcile it, if reasonably possible, so as to make one harmonious story of it all.  But if you can't do this, then it is your duty and privilege to believe the testimony that, in your judgment, is most believable and disregard any testimony that, in your judgment, is not believable.  This instruction applies to the testimony of all witnesses, including expert witnesses.

**Authority:**

Third Circuit Model Civil Jury Instr. 1.7 (10/2017); *International Business Machines Corp. v. Groupon, Inc.*, C.A. No. 16-122-LPS, D.I. 366, Preliminary Jury Instr. at 9-10 (D. Del. 7/13/2018).

10.     **DEPOSITION TESTIMONY**

You may hear witnesses testify through deposition testimony.  A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath and swears to tell the truth, and lawyers for each party may ask questions.  A court reporter is present and records the questions and answers.  The deposition may also be recorded on videotape.  Deposition testimony is entitled to the same consideration and is to be judged, insofar as possible, in the same way as if the witness had been present to testify.

**Authority:**

*AVM Techs., LLC, v. Intel Corp.*, C.A. No. 1:15-cv-00033-RGA, D.I. 611, Joint Proposed Preliminary Jury Instr. at 7 (D. Del. 4/14/2017).

11. **EXPERT TESTIMONY**

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business. This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience. In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case. You are free to accept or reject the testimony of experts, just as with any other witness.

**Authority:**

*International Business Machines Corp. v. Groupon, Inc.*, C.A. No. 16-122-LPS, D.I. 366, Preliminary Jury Instr. at 10 (D. Del. 7/13/2018).

**12.     QUESTIONING OF WITNESSES AND NOTE TAKING**

Only the lawyers and I are allowed to ask questions of witnesses.  You are not permitted to ask questions of witnesses.

If you wish, you may take notes during the presentation of evidence, the summations of attorneys at the conclusion of the evidence, and during my instructions to you on the law.  My courtroom deputy will arrange for pens, pencils, and paper.  Remember that your notes are for your own personal use.  They are not to be given or read to anyone else.

The court reporters will be transcribing the testimony during the course of the trial.  But you should not assume that the transcripts will be available for your review during your deliberations.  Nor should you consider notes that you or fellow jurors may take as a kind of written transcript.  Instead, as you listen to the testimony, keep in mind that you will be relying on your recollection of that testimony during your deliberations.

Note-taking is permitted, but it is not required.  If you do take notes, do not take them away from court.  At the end of each day, leave your notes in the jury room.  At the conclusion of the case, after you have reached a verdict, a court officer will collect and destroy your notes.

A word of caution is in order.  There is generally a tendency to attach undue importance to matters which one has written down.  Some testimony which is considered unimportant at the time presented, and thus not written down, takes on greater importance later in the trial in light of all the evidence presented.  Therefore, you are instructed that your notes are only a tool to aid your own individual memory and you should not compare your notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence.

Your notes are not evidence and are by no means a complete outline of the proceedings or a list of the highlights of the trial.  Also, keep in mind that you will not have a transcript of the

testimony to review.  So, above all, your memory will be your greatest asset when it comes time to deliberate and render a decision in this case.

**Authority:**

Third Circuit Model Civil Jury Instrs. 1.8 and 1.9 (10/2017); *International Business Machines Corp. v. Groupon, Inc.*, C.A. No. 16-122-LPS, D.I. 366, Preliminary Jury Instr. at 13-14 (D. Del. 7/13/2018).

## 13. **BURDEN OF PROOF**

In any legal action, facts must be proven by a required standard of evidence, known as the "burden of proof." In a case involving patents, such as this, there are two different burdens of proof that are used. The first is called "preponderance of the evidence." The second is called "clear and convincing evidence."

Tieks is accusing the Soto Massini Defendants of patent infringement, trade dress infringement, unfair competition, unjust enrichment, and false advertising. Tieks has the burden of proving its claims and the amount of its money damages by the first evidentiary standard I mentioned—a "preponderance of the evidence." That means Tieks has to prove to you, in light of all the evidence, that what it claims is more likely true than not so. To say it differently, if you were to put the evidence of Tieks and the evidence of the Soto Massini Defendants on opposite sides of a scale, the evidence supporting Tieks's claims would have to make the scales tip somewhat on its side in each instance. If the scale should remain equal or tip in favor of the Soto Massini Defendants, you must find for the Soto Massini Defendants.

Tieks also has the burden of proving that any patent infringement, trade dress infringement, unfair competition, and false advertising was willful by a preponderance of the evidence. Tieks also has the burden to establish the amount of damages it seeks by a preponderance of the evidence.

In this case, in addition to denying Tieks's claims, the Soto Massini Defendants assert that all of the patents-in-suit are invalid. The patents-in-suit, however, are presumed to be valid based on the presumption that the United States Patent and Trademark Office acted correctly in issuing the patents. To prove that the claims of the patents-in-suit are invalid, the Soto Massini Defendants must persuade you by what is called "clear and convincing evidence." Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is

highly probable.  Proof by clear and convincing evidence is, thus, a higher burden than proof by a preponderance of the evidence.

You may have heard of the "beyond a reasonable doubt" burden of proof from criminal cases.  That requirement is the highest burden of proof in our judicial system.  It applies in criminal cases, but does not apply to civil cases, like this one, and, therefore, you should put it out of your mind.

**Authority:**

*International Business Machines Corp. v. Groupon, Inc.*, C.A. No. 16-122-LPS, D.I. 366, Preliminary Jury Instr. at 10-11 (D. Del. 7/13/2018); *Ateliers de la Haute-Garonne v. Broetje Automation-USA Inc.*, C.A. No. 09-598-LPS, D.I. 407, Preliminary Jury Instr. 5 (D. Del. 4/7/2014); Third Circuit Model Civil Jury Instrs. 1.10 and 1.11 (10/2017).

14.      **JUROR NOTEBOOK**

To assist in your deliberations, you have been provided with a notebook that contains the following:

-      Copies of the patents-in-suit

-      Pictures of the witnesses

These materials have been jointly submitted by the parties.  Please refer to these materials to assist you during the trial.

**Authority:**

*International Business Machines Corp. v. Groupon, Inc.*, C.A. No. 16-122-LPS, D.I. 366, Preliminary Jury Instr. at 14 (D. Del. 7/13/2018).

## 15.   <u>COURSE OF THE TRIAL</u>

The case will now begin.

First, Tieks may make an opening statement outlining its case.  Next the Soto Massini Defendants may make an opening statement outlining their case.  What is said in the opening statements is not evidence, but is simply an outline to help you understand what each party expects the evidence to show.

After the opening statements, the parties will present their evidence.  Tieks will go first and present its witnesses that support its claims, and the Soto Massini Defendants may cross-examine them.  When Tieks is finished, the Soto Massini Defendants may present evidence, and Tieks may cross-examine any witnesses presented by the Soto Massini Defendants.

After all the evidence is presented, the attorneys will offer closing arguments.  The closing arguments are not evidence.  Their purpose is to summarize and interpret the evidence for you.  I will give you instructions on the law and describe for you the matters you must resolve.

After that you will retire to the jury room to deliberate on your verdict.

**Authority:**

Third Circuit Model Civil Jury Instr. 1.12 (10/2017); *International Business Machines Corp. v. Groupon, Inc.*, C.A. No. 16-122-LPS, D.I. 366, Preliminary Jury Instr. at 15-16 (D. Del. 7/13/2018).

16.    **TRIAL SCHEDULE**

Though you have heard me say this during the jury selection process, I want to again outline the schedule I expect to maintain during the course of this trial.

As I mentioned previously, once trial begins, this case is expected to take up to five business days to try, between now and Friday, May 3, 2019.

We will normally begin the day at 9:00 A.M.  We will go until around 12:30 P.M. and, after about a 45 minute break for lunch, continue until 4:30 or 4:45 P.M.  There will be a fifteen minute break in the morning and another fifteen minute break in the afternoon.

What I have just outlined is the general schedule.  It is possible there will be some interruptions when I have to attend to other matters.

The only significant exception to this schedule may occur when the case is submitted to you for your deliberations.  At that point, you will be permitted to deliberate as late as you wish.

Please keep in mind that this is a timed trial.  That means I have allocated each party a maximum number of hours in which to present all portions of its case.  This allows me to assure you that we expect to be completed with this case by Friday.

Of course, you can help me keep us on schedule by being here promptly each morning and being ready to proceed at the end of each break.