IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| GAVRIELI BRANDS LLC, a California Limited Liability Company, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 18-462 (MN) |
| SOTO MASSINI (USA) CORP., a Delaware corporation and THOMAS PICHLER, an individual, | ) ) ) ) | |
| Defendants. | ) ) | |

**<u>FINAL JURY INSTRUCTIONS</u>**

# TABLE OF CONTENTS

1.   GENERAL INSTRUCTIONS ................................................................... 1
   1.1   INTRODUCTION ................................................................... 1
   1.2   JURORS' DUTIES ................................................................... 2
   1.3   EVIDENCE DEFINED ................................................................... 3
   1.4   DIRECT AND CIRCUMSTANTIAL EVIDENCE ................................... 4
   1.5   CONSIDERATION OF EVIDENCE ................................................... 5
   1.6   STATEMENTS OF COUNSEL ......................................................... 6
   1.7   CREDIBILITY OF WITNESSES ...................................................... 7
   1.8   EXPERT WITNESSES ................................................................... 8
   1.9   DEPOSITION TESTIMONY ............................................................ 9
   1.10  RULE 30(B)(6) DEPOSITION TESTIMONY ..................................... 10
   1.11  USE OF NOTES ........................................................................ 11
   1.12  BURDENS OF PROOF ................................................................ 12
2.   THE PARTIES AND THEIR CONTENTIONS .............................................. 14
   2.1   THE PARTIES ........................................................................... 14
   2.2   THE PARTIES' CONTENTIONS ..................................................... 15
3.   DESIGN PATENT CLAIMS .................................................................... 16
   3.1   SUMMARY OF THE PATENT ISSUES ........................................... 16
   3.2   THE PATENT LAWS ................................................................... 17
   3.3   DESIGN PATENTS – INTERPRETATION OF PATENT CLAIMS ............... 18
   3.4   DESIGN PATENTS – BURDEN OF PROOF ...................................... 19
   3.5   DESIGN PATENTS – INFRINGEMENT GENERALLY .......................... 20
   3.6   DESIGN PATENTS – DIRECT INFRINGEMENT ................................. 21
   3.7   DESIGN PATENTS – INDUCING PATENT INFRINGEMENT .................... 23
   3.8   DESIGN PATENT INFRINGEMENT – COMPARISONS .......................... 24
   3.9   DESIGN PATENT INVALIDITY ...................................................... 25
   3.10  DESIGN PATENT INFRINGEMENT DAMAGES – BURDEN OF
         PROOF ................................................................................... 26
   3.11  DESIGN PATENT INFRINGEMENT DAMAGES – DEFENDANTS'
         PROFITS ................................................................................. 27
   3.12  DESIGN PATENTS – WILLFUL INFRINGEMENT ............................... 28
4.   TRADE DRESS CLAIMS ....................................................................... 29
   4.1   TRADE DRESS INFRINGEMENT – INTRODUCTION ........................... 29

# TABLE OF CONTENTS
(continued)

Page

4.2    TRADE DRESS INFRINGEMENT – DEFINITION OF TRADE DRESS ....... 30

4.3    TRADE DRESS INFRINGEMENT – PROTECTABILITY ............................. 31

4.4    TRADE DRESS INFRINGEMENT – PROTECTABILITY – DISTINCTIVENESS – SECONDARY MEANING........................................... 32

4.5    TRADE DRESS INFRINGEMENT – PROTECTABILITY – NON-FUNCTIONALITY REQUIREMENT................................................. 34

4.6    TRADE DRESS INFRINGEMENT – ELEMENTS AND BURDEN OF PROOF......................................................................................................... 36

4.7    TRADE DRESS INFRINGEMENT – LIKELIHOOD OF CONFUSION ........ 37

5.    UNFAIR COMPETITION BASED ON TRADE DRESS INFRINGEMENT.............. 39

6.    FALSE ADVERTISING CLAIMS ................................................................ 40

6.1    FALSE ADVERTISING – GENERALLY ................................................ 40

6.2    FALSE ADVERTISING – ELEMENTS OF FALSE ADVERTISING ............. 41

6.3    FALSE ADVERTISING – ELEMENT ONE – FALSE OR MISLEADING STATEMENTS.................................................................. 42

6.4    FALSE ADVERTISING – ELEMENT TWO – DECEPTION OR TENDENCY TO DECEIVE.......................................................................... 44

6.5    FALSE ADVERTISING – ELEMENT THREE – MATERIALITY................. 45

6.6    FALSE ADVERTISING – ELEMENT FOUR – TRAVEL IN INTERSTATE COMMERCE ...................................................................... 46

6.7    FALSE ADVERTISING – ELEMENT FIVE – INJURY OR LIKELIHOOD OF INJURY ......................................................................... 47

7.    UNFAIR COMPETITION BASED ON FALSE ADVERTISING.................................. 48

8.    DAMAGES FOR TRADE DRESS INFRINGEMENT, UNFAIR COMPETITION, AND FALSE ADVERTISING............................................................. 49

8.1    TRADE DRESS, UNFAIR COMPETITION, AND FALSE ADVERTISING DAMAGES – IN GENERAL ................................................ 49

8.2    TRADE DRESS, UNFAIR COMPETITION, AND FALSE ADVERTISING DAMAGES – ACTUAL DAMAGES.................................... 50

8.3    TRADE DRESS, UNFAIR COMPETITION, AND FALSE ADVERTISING DAMAGES – DEFENDANTS' PROFITS ............................ 51

8.4    TRADE DRESS, UNFAIR COMPETITION, AND FALSE ADVERTISING DAMAGES – INTENTIONAL AND WILLFUL CONDUCT ................................................................................................... 52

# TABLE OF CONTENTS
(continued)

**Page**

9.      UNJUST ENRICHMENT ............................................................................... 53

10.     PUNITIVE DAMAGES .................................................................................. 54

11.     DELIBERATION AND VERDICT .................................................................. 56

     11.1   INTRODUCTION ............................................................................. 56

     11.2   UNANIMOUS VERDICT................................................................... 57

     11.3   DUTY TO DELIBERATE ................................................................. 58

     11.4   SOCIAL MEDIA .............................................................................. 59

     11.5   COURT HAS NO OPINION.............................................................. 60

1.    **GENERAL INSTRUCTIONS**

1.1    **INTRODUCTION**

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.  Each of you has been provided a copy of these instructions.  You may read along as I deliver them if you prefer.

I will start by explaining your duties and the general rules that apply in every civil case.  Then I will explain some rules that you must use in evaluating particular testimony and evidence.  Then I will explain the positions of the parties and the law you will apply in this case.  And last, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.

Please listen very carefully to everything I say.

You will have a written copy of these instructions with you in the jury room for your reference during your deliberations.  You will also have a verdict form, which will list the questions that you must answer to decide this case.

## 1.2    JURORS' DUTIES

You have two main duties as jurors.  The first is to decide what the facts are from the evidence that you saw and heard in court.  Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.  You are the sole judges of the facts.

Your second duty is to take the law that I give you, apply it to the facts, and decide under the appropriate burden of proof which party should prevail on any given issue.  It is my job to instruct you about the law, and you are bound by the oath you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them.  This includes the instructions that I gave you before and during the trial, and these instructions.  All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly.  Do not guess or speculate, and do not let any bias, sympathy, or prejudice you may feel toward one side or the other influence your decision in any way.

### 1.3    EVIDENCE DEFINED

You must make your decision based only on the evidence that you saw and heard here in court.  Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, including deposition transcript testimony that has been played by video or read to you, the exhibits that I allowed into evidence, and the stipulations to which the lawyers agreed.

Nothing else is evidence.  The lawyers' statements and arguments are not evidence.  The arguments of the lawyers are offered solely as an aid to help you in your determination of the facts.  Their questions and objections are not evidence.  My legal rulings are not evidence.  You should not be influenced by a lawyer's objection or by my ruling on that objection.  Any of my comments and questions are not evidence.

During the trial I may have not let you hear the answers to some of the questions that the lawyers asked.  I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see.  And, sometimes I may have ordered you to disregard things that you saw or heard, or that I struck from the record.  You must completely ignore all of these things.  Do not speculate about what a witness might have said or what an exhibit might have shown.  These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.  Make your decision based only on the evidence, as I have defined it here, and nothing else.

### 1.4     DIRECT AND CIRCUMSTANTIAL EVIDENCE

During the preliminary instructions, I told you about "direct evidence" and "circumstantial evidence."  I will now remind you what each means.

Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact.  If a witness testified that he saw it raining outside, and you believe him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact.  If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence.

The law makes no distinction between the weight that you should give to either one, nor does it say that one is any better evidence than the other.  You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

## 1.5     CONSIDERATION OF EVIDENCE

You should use your common sense in weighing the evidence.  Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

### 1.6     STATEMENTS OF COUNSEL

A further word about statements of counsel and arguments of counsel.  The attorneys' statements and arguments are not evidence.  Instead, their statements and arguments are intended to help you review the evidence presented.

If you remember the evidence differently from the way it was described by the attorneys, you should rely on your own recollection.

## 1.7     CREDIBILITY OF WITNESSES

You are the sole judges of each witness's credibility.  You may believe everything a witness says, or part of it, or none of it.  You should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witness's biases, prejudices, or interests; the witness's manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there is evidence tending to prove that the witness testified falsely about some important fact or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony he or she gave at the trial in person or by deposition testimony played by video or read to you.  You have the right to distrust such witness's testimony and you may reject all or some of the testimony of that witness or give it such credibility as you may think it deserves.

## 1.8    EXPERT WITNESSES

Expert testimony is testimony from a person who has a special skill or knowledge in some science, profession, or business.  This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony of any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case.

## 1.9    DEPOSITION TESTIMONY

During the trial, certain testimony was presented to you by the playing of video excerpts from a deposition.  The deposition testimony may have been edited or cut to exclude irrelevant testimony as the parties have only a limited amount of time to present you with evidence.  You should not attribute any significance to the fact that the deposition videos may appear to have been edited.

Deposition testimony is out of court testimony given under oath and is entitled to the same consideration you would give it had the witnesses personally appeared in court.

### 1.10    RULE 30(B)(6) DEPOSITION TESTIMONY

In this case, there is one witness identified as a "Rule 30(b)(6) witness" for Defendant Soto Massini (USA) Corp.  That witness was Thomas Pichler.  As a Rule 30(b)(6) witness, Mr. Pichler was designated to speak at his deposition on certain topics on behalf of the entity which designated him as a Rule 30(b)(6) witness.  Rule 30(b)(6) witnesses, such as Mr. Pichler, are required to testify about information known or reasonably available to the designating entity related to those particular topics.  For answers within the designated topics, the entity is bound by the answers provided by its Rule 30(b)(6) witness.  However, that does not mean the answers provided by this witness were truthful.  It is up to you to decide whether to believe Mr. Pichler's answers or conclude that he was not being truthful at his deposition.

### 1.11    USE OF NOTES

You may have taken notes during trial to assist your memory.  As I instructed you at the beginning of the case, you should use caution in consulting your notes.  There is generally a tendency I think to attach undue importance to matters which one has written down.  Some testimony which is considered unimportant at the time presented, and thus not written down, takes on greater importance later in the trial in light of all the evidence presented.  Therefore, your notes are only a tool to aid your own individual memory, and you should not compare notes with other jurors in determining the content of any testimony or in evaluating the importance of any evidence.  Your notes are not evidence, and are by no means a complete outline of the proceedings or a list of the highlights of the trial.

Above all, your memory should be the greatest asset when it comes time to deliberate and render a decision in this case.

### 1.12    BURDENS OF PROOF

In any legal action, facts must be proven by a required standard of evidence, known as the "burden of proof." In a patent case such as this, there are two different burdens of proof that are used. The first is called "preponderance of the evidence." The second is called "clear and convincing evidence." I told you about these two standards of proof during my preliminary instructions to you and I will now remind you what they mean.

Plaintiff Gavrieli Brands LLC, which has also been referred to in this case as "Gavrieli" or "Tieks," contends that the Soto Massini Defendants have committed acts of patent infringement, trade dress infringement, unfair competition, unjust enrichment, and false advertising. Tieks has the burden of proving its claims and the amount of its money damages by the first evidentiary standard—a "preponderance of the evidence." That means Tieks had to prove to you, in light of all the evidence, that what it claims is more likely true than not so. To say it differently, if you were to put the evidence of Tieks and the evidence of the Soto Massini Defendants on opposite sides of a scale, the evidence supporting Tieks's claims would have to make the scales tip somewhat on its side in each instance. If the scale should remain equal or tip in favor of the Soto Massini Defendants, you must find for the Soto Massini Defendants.

Tieks also had the burden of proving that any patent infringement, trade dress infringement, unfair competition, and false advertising was willful by a preponderance of the evidence. Tieks also had the burden to establish the amount of damages it seeks by a preponderance of the evidence.

In this case, in addition to denying Tieks's claims, the Soto Massini Defendants assert that all of the patents-in-suit are invalid. The patents-in-suit, however, are presumed to be valid based on the presumption that the United States Patent and Trademark Office acted correctly in issuing the patents. To prove that the claims of the patents-in-suit are invalid, the Soto Massini Defendants must have persuaded you by what is called "clear and convincing evidence." Clear and convincing

12

evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable.  Proof by clear and convincing evidence is, thus, a higher burden than proof by a preponderance of the evidence.

You may have heard of the "beyond a reasonable doubt" burden of proof from criminal cases.  That requirement is the highest burden of proof.  It does not apply to civil cases and, therefore, you should put it out of your mind.

## 2.    THE PARTIES AND THEIR CONTENTIONS

### 2.1    THE PARTIES

I will now review for you the parties in this action, and the positions of the parties that you will have to consider in reaching your verdict.

As I have previously told you, the plaintiff in this case is Gavrieli Brands LLC.  I will refer to the plaintiff as "Gavrieli" or "Tieks."  The defendants in this case are Soto Massini (USA) Corp. and that company's founder and chief executive officer, Thomas Pichler.  I may refer to Soto Massini (USA) Corp. as "Soto Massini."  If I refer to Mr. Pichler, specifically, I will refer to him as "Mr. Pichler."  Also, I may refer to Soto Massini and Mr. Pichler collectively as the "Soto Massini Defendants."

Tieks is the owner of U.S. Design Patents Nos. D781,035, D781,032, D781,034, and D681,927.  I may refer to these patents individually by their last three digits, such as the '035 patent, or collectively as the "patents-in-suit" or "Tieks's patents."

## 2.2    THE PARTIES' CONTENTIONS

Tieks contends that the Soto Massini Defendants infringe each of the patents-in-suit, and contends that the Soto Massini Defendants' infringement of the patents-in-suit prior to the date Tieks filed this lawsuit, March 26, 2018, was willful.  Tieks contends that it is entitled to damages to compensate Tieks for the Soto Massini Defendants' infringement.  The Soto Massini Defendants deny that they have infringed the patents-in-suit and contend that the patents-in-suit are invalid.

Tieks also contends that the Soto Massini Defendants infringed Tieks's trade dress relating to its "Tieks" ballet flats and contends that any infringement has been willful.  The Soto Massini Defendants deny that they infringe Tieks's trade dress and contend that the trade dress is invalid.

Tieks contends that the Soto Massini Defendants have committed acts of unfair competition, engaged in false advertising by making false and misleading statements to consumers, and have committed inequitable acts and been unjustly enriched to Tieks's detriment.  Tieks contends that the Soto Massini Defendants' acts of unfair competition and false advertising have been willful and that Tieks is entitled to damages for the Soto Massini Defendants' unfair competition, false advertising, and inequitable activities.  The Soto Massini Defendants deny that they have committed acts of unfair competition and false advertising.  The Soto Massini Defendants also deny that they have been unjustly enriched.

3.     **DESIGN PATENT CLAIMS**

3.1     **SUMMARY OF THE PATENT ISSUES**

I will now summarize the patent issues that you must decide and for which I will provide instructions to guide your deliberations.  You must decide the following main issues:

1.     Whether Tieks has proven by preponderance of the evidence that the Soto Massini Defendants have infringed the claims of the patents-in-suit.

2.     Whether Tieks has proven by a preponderance of the evidence that the Soto Massini Defendants willfully infringed the claims of the patents-in-suit prior to the filing of this lawsuit on March 26, 2018.

## 3.2    THE PATENT LAWS

At the beginning of the trial, I gave you some general information about patents and the patent system and a brief overview of the patent laws relevant to this case.  I will now give you more detailed instructions about the patent laws that specifically relate to this case.  If you would like to review my instructions at any time during your deliberations, you will have your copy available to you in the jury room.

### 3.3      DESIGN PATENTS – INTERPRETATION OF PATENT CLAIMS

Before you decide whether the Soto Massini Defendants have infringed one or more of Tieks's patents, or whether the design patents are invalid, you will have to understand the design patent claims.

Unlike utility patents, a design patent can only have one claim.  That claim covers all the figures in the patent.  It is permissible to illustrate more than one embodiment of a design in a single design patent application.  Each design patent contains multiple drawings to illustrate the claimed design.  The scope of the claim encompasses the design's visual appearance as a whole. It does not cover a general design concept, and is not limited to isolated features of the drawings. All matter depicted in solid lines contributes to the overall appearance of the design.

### 3.4     DESIGN PATENTS – BURDEN OF PROOF

To prove that the Soto Massini Defendants have infringed a Tieks design patent, Tieks must prove by a preponderance of the evidence that the Soto Massini Defendants infringed the patent.

### 3.5    DESIGN PATENTS – INFRINGEMENT GENERALLY

I will now instruct you as to the rules you must follow when deciding whether Tieks has proven that the Soto Massini Defendants have directly infringed Tieks's design patents.

The United States' patent law gives the owner of a valid design patent the right to exclude others from importing, making, using, offering to sell, or selling the patented designs within the United States during the term of the patent.  Any person or company that has engaged in any of those acts without the design patent owner's permission infringes the patent.

Tieks bears the burden of proving by a preponderance of the evidence that each of its patents is infringed.  Therefore, you, the jury, must determine infringement for each patent separately.

### 3.6    DESIGN PATENTS – DIRECT INFRINGEMENT

The test for infringement of a design patent is whether the overall appearance of the claimed design and the accused products would be substantially the same to the ordinary observer familiar with the prior art who gives the attention a purchaser usually gives.  The ordinary observer is the actual purchaser of the products embodying the patented and accused products.

If you find by a preponderance of the evidence that the ordinary observer would consider the overall appearance of the accused products to be substantially the same as the overall appearance of the claimed design, and that the accused products were made, used, sold, offered for sale, or imported within the United States, you must find that the accused products infringed the claimed design.

Two designs are substantially the same if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, the resemblance between the two designs is such as to deceive such an observer, inducing him to purchase one supposing it to be the other.  You do not need, however, to find that any purchasers actually were deceived or confused by the appearance of the accused products.  You should consider any perceived similarities or differences between the patented and accused designs.  Minor differences should not prevent a finding of infringement.

This determination of whether two designs are substantially the same will benefit from comparing the two designs with prior art.  You must familiarize yourself with the prior art admitted at trial in making your determination of whether there has been direct infringement.

You may find the following guidelines helpful to your analysis:

1.    If the accused design includes a feature of the claimed design that departs conspicuously from the prior art, you may find that feature important in analyzing whether the overall appearance of the accused and claimed designs are substantially the same to the ordinary observer.

2.      If the accused design is visually closer to the claimed design than it is to the closest prior art, you may find this comparison important in analyzing whether the overall appearances of the accused and claimed designs are substantially the same to the ordinary observer.

3.      When the claimed design is visually close to prior art designs, small differences between the accused design and the claimed design may be important in analyzing whether the overall appearances of the accused and claimed designs are substantially the same to the ordinary observer.

4.      The placement and ornamentation of a logo may alter the overall design. However, the use of a mark or logo to identify the source of an otherwise infringing design will not avoid infringement.

5.      You should not consider the size of the accused products if the asserted design patent does not specify the size of the design.

While these guidelines may be helpful, the test for infringement is whether the overall appearances of the accused design and the claimed design are substantially the same to the ordinary observer, giving such attention as a purchaser usually gives.

Whether the Soto Massini Defendants knew Soto Massini's products infringed or even knew of Tieks's design patents does not matter in determining infringement.

### 3.7     DESIGN PATENTS – INDUCING PATENT INFRINGEMENT

Tieks claims that the Soto Massini Defendants have actively induced another to infringe Tieks's design patents.  In order for the Soto Massini Defendants to have induced infringement, the Soto Massini Defendants must have induced another to directly infringe the patent.  If there is no direct infringement by anyone, there can be no induced infringement.  In order to be liable for inducement of infringement, the Soto Massini Defendants must:

1.      have intentionally taken action that actually induced direct infringement by another;

2.      have been aware of the asserted patent; and

3.      have known that the acts it was causing would be infringing.

The Soto Massini Defendants may be considered to have known that the acts they were causing would infringe Tieks's patents if it was subjectively believed there was a high probability that the direct infringer's product or method was patented and nevertheless deliberately took steps to avoid learning that fact, in other words, willfully blinded itself to the infringing nature of the direct infringer's acts.

### 3.8    DESIGN PATENT INFRINGEMENT – COMPARISONS

In deciding the issue of infringement, the comparison must be between the Soto Massini Defendants' accused products and the design patents.  In addition, you have heard evidence about certain Tieks products, namely the Tieks ballet flats.  If you determine that any of Tieks's products are substantially the same as a Tieks patent design, and that the product has no significant distinctions with the design, then it is permissible to also compare the Tieks's products to the Soto Massini Defendants' accused products.  This may facilitate your determination of whether the accused products infringe the Tieks patent design.  If you determine that a particular Tieks product does not embody a patented design, you may not compare it to the accused devices.

### 3.9    DESIGN PATENT INVALIDITY

A design patent is invalid if the patented design or a product embodying the patented design was in the prior art.  To prove invalidity of any of Tieks's design patents, the Soto Massini Defendants must persuade you by clear and convincing evidence that the design patent is invalid.

In this case, prior art includes any design or product that was in public use or on sale in the United States more than one year before the patent was filed.  The date that is more than one year before the filing date of the patent is known as the critical date.  In this case, the critical date for each of Tieks's design patents is August 10, 2010.

When considering whether a piece of prior art may invalidate any of Tieks's design patents, you may only consider prior art that has been admitted into evidence.  In this case, the Soto Massini Defendants contend that only the earlier version of the Tieks shoe, Exhibit No. DTX-27, which has been admitted into evidence is prior art.  Shoes and other documents that may have been referenced by counsel or a witness, but not admitted into evidence, may not be considered in connection with your invalidity determination.

### 3.10    DESIGN PATENT INFRINGEMENT DAMAGES – BURDEN OF PROOF

I will instruct you about the measure of damages for infringement of Tieks's design patents. By instructing you on damages, I am not suggesting which party should win on any issue.

If you find that the Soto Massini Defendants have infringed any valid Tieks design patent, you must then determine the money damages to award Tieks.  The amount of those damages must be adequate to compensate Tieks for the infringement.  You should keep in mind that the damages you award are meant to compensate the patent holder and not to punish an infringer.

In relation to design patents, Tieks may prove the Soto Massini Defendants' profits as its measure of potential recovery with respect to the sale of each unit of an infringing product.

Tieks has the burden to prove that Tieks's calculation of damages is correct by a preponderance of the evidence.  While Tieks is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty.  Tieks is not entitled to damages that are remote or speculative.

### 3.11   DESIGN PATENT INFRINGEMENT DAMAGES – DEFENDANTS' PROFITS

In this case, Tieks seeks the Soto Massini Defendants' profits from sales of products alleged to infringe Tieks's design patents.  If you find infringement by the Soto Massini Defendants and do not find Tieks's design patents are invalid, you may award Tieks the total profit earned by the Soto Massini Defendants attributable to the infringing products.

The "total profit" of the Soto Massini Defendants means the entire profit on the sale of the article to which the patented design is applied, and not just the portion of profit attributable to design or ornamental aspects covered by the patent.  "Total profit" does not include profit attributable to other products that may be sold in association with an infringing article embodying the patented design.

Profit is determined by deducting certain expenses from gross revenue.  Gross revenue is all of the infringer's receipts from the sale of articles using any design found infringed.  Tieks has the burden of proving the Soto Massini Defendants' gross revenue by a preponderance of the evidence.

Expenses can include costs incurred in producing the gross revenue, such as the cost of the goods.  Other costs may be included as deductible expenses if they are directly attributable to the sale or manufacture of the infringing products resulting in a nexus between the infringing products and the expense.  The Soto Massini Defendants have the burden of proving the deductible expenses.

27

### 3.12    DESIGN PATENTS – WILLFUL INFRINGEMENT

In this case, Tieks argues that the Soto Massini Defendants willfully infringed the patents-in-suit prior to the filing of this lawsuit on March 26, 2018.

To prove willful infringement, Tieks must persuade you that the Soto Massini Defendants have infringed a valid claim of one or more of Tieks's patents.  The requirements for proving such infringement were discussed in my prior instructions.

In addition, to prove willful infringement of a patent, Tieks must persuade you that it is more likely true than not true that the Soto Massini Defendants intentionally ignored or recklessly disregarded that patent during the relevant timeframe.  You must base your decision on the Soto Massini Defendants' knowledge and actions prior to the filing of this lawsuit.  Evidence that the Soto Massini Defendants had knowledge of the patent at that time by itself is not sufficient to show willfulness.  Rather, to show willfulness, you must find that the Soto Massini Defendants engaged in additional conduct evidencing deliberate or reckless disregard of Tieks's patent rights.

In deciding whether the Soto Massini Defendants willfully infringed, you should consider all of the facts surrounding the infringement including:  whether the Soto Massini Defendants intentionally copied Tieks's patented designs in developing the accused products; whether the Soto Massini Defendants knew, or should have known, that its conduct involved an unreasonable risk of infringement; and whether the Soto Massini Defendants had a reasonable belief that at the time of infringement that its products did not infringe the asserted patent.

4.      **<u>TRADE DRESS CLAIMS</u>**

**4.1      TRADE DRESS INFRINGEMENT – INTRODUCTION**

Tieks seeks damages against the Soto Massini Defendants for infringing Tieks's trade dress relating to its "Tieks" ballet flats.  The Soto Massini Defendants deny that they infringe Tieks's trade dress and contend that the trade dress is unprotectable and thus invalid.

Here are the instructions you must follow in deciding Tieks's trade dress infringement claim.

### 4.2    TRADE DRESS INFRINGEMENT – DEFINITION OF TRADE DRESS

Trade dress is the non-functional physical detail and design of a product, which identifies the product's source and distinguishes it from the products of others.

Trade dress is the product's total image and overall appearance, and may include features such as size, shape, color, color combinations, texture, or graphics.  In other words, trade dress is the form in which a product is presented to the market.

A trade dress is non-functional if, taken as a whole, the collection of trade dress elements is not essential to the product's use or purpose or does not affect the total cost or quality of the product even though certain particular elements of the trade dress may be functional.

Trade dress concerns the overall visual impression created in the consumer's mind when viewing the non-functional aspects of the product and not from the utilitarian or useful aspects of the product.  In considering the impact of these non-functional aspects, which are often a complex combination of many features, you must consider the appearance of features together, rather than separately.

A person who uses the trade dress of another may be liable for damages.

### 4.3    TRADE DRESS INFRINGEMENT – PROTECTABILITY

The first step in considering Tieks's claims that the Soto Massini Defendants infringed Tieks's trade dress is to determine whether or not the trade dress is protectable.

You must find that Tieks's trade dress is protectable if the trade dress:

1.    has acquired distinctiveness through secondary meaning; and

2.    is non-functional.

Tieks bears the burden of proving by a preponderance of the evidence that its trade dress is both distinctive and non-functional.  If you find that Tieks has met its burden, you must find that trade dress is protectable.  Otherwise, you must find the trade dress unprotectable.

**4.4    TRADE DRESS INFRINGEMENT – PROTECTABILITY – DISTINCTIVENESS – SECONDARY MEANING**

To be protectable, Tieks's trade dress must have acquired distinctiveness through "secondary meaning."  A trade dress acquires a secondary meaning when it has been used in such a way that its primary significance in the minds of the prospective consumers is not the product itself, but the identification of the product with a single source, regardless of whether consumers know who or what that source is.

For Tieks's claimed trade dress, you must find that the preponderance of the evidence shows that a significant number of the consuming public associates the trade dress with a single source, in order to find that it has acquired secondary meaning.

When you are determining whether Tieks's trade dress has acquired a secondary meaning, consider the following factors:

1.    <u>Consumer Perception.</u>  Whether the people who purchase women's ballet flats associate the claimed trade dress with Tieks;

2.    <u>Advertisement.</u>  To what degree and in what manner Tieks may have advertised the claimed trade dress;

3.    <u>Demonstrated Success.</u>  Whether Tieks successfully used the claimed trade dress to increase the sales of its products;

4.    <u>Extent of Use.</u>  The length of time and manner in which Tieks has used the claimed trade dress;

5.    <u>Exclusivity.</u>  Whether Tieks's use of the claimed trade dress was exclusive;

6.    <u>Copying.</u>  Whether the Soto Massini Defendants intentionally copied Tieks's claimed trade dress;

7.      <u>Actual Confusion.</u>  Whether the Soto Massini Defendants' use of Tieks's claimed trade dress has led to actual confusion among a significant number of consumers; and

8.      <u>Customer Surveys.</u>   Whether survey evidence showed that consumers believed that Tieks's trade dress was associated with a single source.

The presence or absence of any particular factor should not necessarily resolve whether the asserted trade dress has acquired secondary meaning.

There is no particular length of time that a trade dress must be used before it acquires a secondary meaning.

### 4.5   TRADE DRESS INFRINGEMENT – PROTECTABILITY – NON-FUNCTIONALITY REQUIREMENT

Only non-functional trade dress is protectable.

The term "functional" has a specific meaning in trade dress law.  Trade dress is not considered "functional" merely because the trade dress, or its components, perform useful functions.  Thus, for example, all bottles perform the same function of holding a liquid, but this does not mean that the specific design chosen for a bottle is necessarily considered "functional" and unprotectable.

A design feature of a product is considered "functional" and thus unprotectable as trade dress if that design feature is essential to the use or purpose of the product or if it affects the cost or quality of the product.  Put another way, a feature is functional if the product works better because of that particular feature.

To determine whether Tieks's trade dress is non-functional, you should consider whether the design as a whole is functional, that is whether the whole collection of elements making up the design or form are essential to the product's use or purpose.

To determine whether a product feature is functional, you may consider the following factors:

1.    <u>The Design's Utilitarian Advantage</u>.  In considering this factor, you may examine whether the particular design or product feature yield a utilitarian advantage over how the product might be without that particular design or product feature.  If there is a utilitarian advantage from having the particular design or feature, this would weigh in favor of finding the design or feature is functional; if it seems merely ornamental, incidental, or arbitrary it is more likely to be nonfunctional;

2.      <u>Availability of Alternate Designs</u>.   In considering this factor, you may examine whether an alternate design could have been used, so that competition in the market for that type of product would not be hindered by allowing only one person to exclusively use the particular design or configuration.  For this to be answered in the affirmative, the alternatives must be more than merely theoretical or speculative.   They must be commercially feasible.   The unavailability of a sufficient number of alternate designs weighs in favor of finding the design or feature is functional;

3.      <u>Advertising Utilitarian Advantage in the Design</u>.   In considering this factor, you may examine whether the particular design or configuration has been touted in any advertising as a utilitarian advantage, explicitly or implicitly.   If a seller advertises the utilitarian advantages of a particular feature or design, this weighs in favor of finding that design or feature is functional; and

4.      <u>The Design's Method of Manufacture</u>.   In considering this factor, you may examine whether the particular design or feature results from a relatively simple or inexpensive method of manufacture.  If the design or feature is a result of a particularly economical production method, this weighs in favor of finding the design or feature is functional; if the feature is essential to the use or purpose of the device or affects its cost or quality, it is more likely functional.

Tieks has the burden of proving by a preponderance of the evidence that its trade dress is non-functional.

### 4.6    TRADE DRESS INFRINGEMENT – ELEMENTS AND BURDEN OF PROOF

Tieks contends that the Soto Massini Defendants' accused products infringe Tieks's trade dress.  To prove trade dress infringement, Tieks bears the burden of proving by a preponderance of the evidence each of the following elements:

1.    Tieks's trade dress acquired distinctiveness through secondary meaning;

3.    Tieks's trade dress is non-functional; and

4.    the Soto Massini Defendants used Tieks's trade dress in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the Soto Massini Defendants' goods.

If you find that Tieks has proven each of these elements, your verdict should be for Tieks. If, on the other hand, Tieks has failed to prove any one of these elements, your verdict should be for the Soto Massini Defendants.

### 4.7     TRADE DRESS INFRINGEMENT – LIKELIHOOD OF CONFUSION

You must decide whether the Soto Massini Defendants' alleged use of Tieks's trade dress in the accused products is likely to cause confusion about the source, sponsorship, affiliation, or approval of the accused products.

I will suggest some factors you should consider in deciding whether there is a likelihood of confusion. The presence or absence of any particular factor that I suggest should not necessarily resolve whether there was a likelihood of confusion, because you must consider all relevant evidence in determining this. As you consider the likelihood of confusion you should examine the following:

1.      <u>Strength or Weakness of Tieks's Asserted Trade Dress</u>.  The more the consuming public recognizes Tieks's trade dress as an indication of origin of Tieks's goods, the more likely it is that consumers would be confused about the source of the Soto Massini Defendants' goods if the Soto Massini Defendants use a similar design or configuration.

2.      <u>The Soto Massini Defendants' Use of the Trade Dress</u>.  If the Soto Massini Defendants and Tieks use their designs on the same, related, or complementary kinds of goods, there may be a greater likelihood of confusion about the source of the goods than otherwise.

3.      <u>Similarity of Tieks's and the Soto Massini Defendants' Designs</u>.  If the overall impression created by Tieks's asserted trade dress in the marketplace is similar to that created by the Soto Massini Defendants' designs in appearance, there is a greater chance of likelihood of confusion.

4.      <u>Actual Confusion</u>.  If use by the Soto Massini Defendants of Tieks's trade dress has led to instances of actual confusion, this strongly suggests a likelihood of confusion. However, Tieks need not produce evidence of actual buyer confusion in order for you to find that a likelihood of confusion exists.

5.      The Soto Massini Defendants' Intent.   Knowing use by the Soto Massini Defendants of Tieks's trade dress to identify similar goods may strongly show an intent to derive benefit from the reputation of Tieks's trade dress, suggesting an intent to cause a likelihood of confusion.   On the other hand, even in the absence of proof that the Soto Massini Defendants acted knowingly, the use of Tieks's trade dress to identify similar goods may indicate a likelihood of confusion.

6.      Marketing/Advertising Channels.   If Tieks's and the Soto Massini Defendants' goods are likely to be sold through the same or similar distribution or sales channels, or advertised in similar media, this may increase the likelihood of confusion.

7.      Purchaser's Degree of Care.   The more sophisticated the potential buyers of the goods or the more costly the goods, the more careful and discriminating the reasonably prudent purchaser exercising ordinary caution may be.   They may be less likely to be confused by similarities in Tieks's and the Soto Massini Defendants' products.

**5.     <u>UNFAIR COMPETITION BASED ON TRADE DRESS INFRINGEMENT</u>**

The parties agree that the same standard governs infringement of Gavieli's trade dress as governs the claim for unfair competition under the same federal statute.  The parties further agree that the same standards govern Tieks's claims for trade dress infringement and unfair competition under the common law and unfair competition in violation of California state law where the underlying act of unfair competition is trade dress infringement.  Therefore, if you find for Tieks on its trade dress infringement claim, you should also find for Tieks on its unfair competition claims based on trade dress infringement.  Similarly, if you find for the Soto Massini Defendants on Tieks's trade dress infringement claim, you should also find for the Soto Massini Defendants on Tieks's unfair competition claims based on trade dress infringement.

## 6.  **FALSE ADVERTISING CLAIMS**

### 6.1  **FALSE ADVERTISING – GENERALLY**

Tieks has alleged that the Soto Massini Defendants engaged in false advertising under federal law also known as the United States Lanham Act.

To be considered false advertising under the Lanham Act, there must be a false or misleading misrepresentation that is made in commercial advertising or promotion, regarding the nature, characteristics or qualities of one's own product or another's product.  For a false or misleading statement to violate the Lanham Act, it must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within the industry.  The level of circulation required to constitute advertising and promotion will vary from industry to industry and from case to case.

The Lanham Act does not mandate the form that such statement must take.  For example, oral statements by a company's sales representatives concerning a product may constitute "commercial advertising or promotion" under the Lanham Act if disseminated sufficiently to the relevant purchasing public within the relevant industry.  Where a number of separate, unique communications are made to individual customers, but these communications share the same competitive approach as part of an organized campaign to penetrate the marketplace, you may view the communications in the aggregate as a single advertising campaign.  Similarly, press releases and sales presentations may qualify as a commercial advertisement or promotion if they are sufficiently disseminated to the relevant purchasing public within the relevant industry.

In some cases, a product name can also qualify as a false or misleading statement of fact. But an omission or failure to disclose a fact about a commercial product is not considered false advertising under the Lanham Act.

### 6.2     FALSE ADVERTISING – ELEMENTS OF FALSE ADVERTISING

To establish a claim for false advertising under the Lanham Act, Tieks must prove the following five elements by a preponderance of the evidence:

1.      That the Soto Massini Defendants made false or misleading statements as to their own product;

2.      That there is actual deception or at least a tendency to deceive a substantial portion of the intended audience;

3.      That the deception is material in that it is likely to influence purchasing decisions;

4.      That the advertised goods traveled in interstate commerce; and

5.      That there is a likelihood of injury to Tieks in terms of declining sales, loss of good will, etc.

The burden rests with Tieks.  You must evaluate the elements for each allegedly false or misleading statement.  If a party meets its burden as to any one allegedly false or misleading statement by a preponderance of the evidence, then you may find the other party engaged in false advertising as to that particular statement.

### 6.3    FALSE ADVERTISING – ELEMENT ONE – FALSE OR MISLEADING STATEMENTS

Tieks can prevail in its false advertising action if it proves that the Soto Massini Defendants' advertising statement is either (1) false on its face or literally false; or (2) literally true or ambiguous, but is still likely to mislead and confuse consumers.  There need not be a direct comparison to a competitor for a statement to be actionable.

As to literal falsity, in deciding whether an advertising claim is literally false, you must decide, first, whether the claim conveys an unambiguous message and, second, whether that unambiguous message is false.  Only an unambiguous message can be literally false.

In other cases, a statement is false because it necessarily implies other messages that are literally false.  A message conveyed by necessary implication is one where the audience would consider the advertisement in its entirety and would recognize the message as being made as readily as if it had been explicitly stated.  If an advertising claim is untrue, it must be deemed literally false.

Although a plaintiff, such as Tieks, normally has the burden to demonstrate that the Soto Massini Defendants' advertising claims are false, you may find that a completely unsubstantiated advertising claim or claims by the Soto Massini Defendants is per se false without additional evidence from Tieks to that effect.  The message conveyed by an advertising claim must be substantiated by sufficiently reliable tests.

Once Tieks proves literal falsity of an advertising claim, you may presume that all other aspects or elements of liability for a false advertising claim have been established and you may find the Soto Massini Defendants liable for false advertising without considering the advertising claim's impact on the purchases.  But for purposes of establishing any amount of damages, you

must find that the false advertising caused harm to Tieks.  The foregoing does not prevent the Soto Massini Defendants from offering evidence to rebut literal falsity.

Tieks must prove either literal falsity or consumer confusion, but not both.  Where literal falsity is demonstrated, consumer confusion is presumed.

If Tieks fails to prove that the Soto Massini Defendants' advertising claims are literally false, Tieks can still prevail on its false advertising claim by proving that the statement is misleading or impliedly false.  A statement is misleading if it is true or ambiguous but has the tendency to deceive a substantial portion of consumers.

### 6.4    FALSE ADVERTISING – ELEMENT TWO – DECEPTION OR TENDENCY TO DECEIVE

If Tieks does not prove an advertising claim to be literally false, it must prove that it is deceptive or misleading.  Whether an advertising statement is deceptive or misleading depends on the message that is conveyed to consumers.  For you to find that a statement is true but misleading, Tieks must show that the statement actually deceived or had the tendency to deceive a substantial segment of the audience.

Whether a challenged advertising statement is misleading may be proven by evidence of the diversion of sales, customer deception, publications, articles, salesperson deception, which may be probative to establish customer or purchasing deception or other evidence.  You must determine whether the purchasing public was in fact misled.  Evidence of actual confusion is difficult to find and even a few incidents may therefore be probative.

If Tieks demonstrates that the Soto Massini Defendants have intentionally set out to deceive the public and its conduct in this regard is of an egregious nature, a presumption arises that consumers are, in fact, being deceived.

### 6.5     FALSE ADVERTISING – ELEMENT THREE – MATERIALITY

Once Tieks proves literal falsity of an advertising claim, you may presume that the advertising was material in that it is likely to influence the purchasing decision.

If Tieks does not prove an advertising claim to be literally false, it must also show that the Soto Massini Defendants' misrepresentation is material in that it is likely to influence the purchasing decision.  Materiality focuses on whether the false or misleading statement is likely to make a difference to purchasers.  If the Soto Massini Defendants' advertising statement is determined to be false, it is presumed to be material.  However, the Soto Massini Defendants may rebut this presumption of materiality by providing sufficient evidence to show, by a preponderance of the evidence, that the false statement is immaterial to purchasing decisions.

If the Soto Massini Defendants' advertising statement is true but misleading, then Tieks must show that the deceptive statement is material and that it is likely to influence purchasing decisions.  Certain evidence may be used to show whether or not a false or misleading claim or claims or statements are material.  Whether a claim or statement is material can also be shown by demonstrating that the statement concerns an inherent quality or characteristic of the product, or because it involves health, safety, or any other area influential to reasonable consumers.

### 6.6     FALSE ADVERTISING – ELEMENT FOUR – TRAVEL IN INTERSTATE COMMERCE

Tieks must also show that the advertised products traveled in interstate commerce. This element is met if the Soto Massini Defendants' products, for example, traveled across state lines or were advertised on a website accessible via the Internet.

### 6.7     FALSE ADVERTISING – ELEMENT FIVE – INJURY OR LIKELIHOOD OF INJURY

Tieks must prove that it has been injured or is likely to be injured in terms of declining sales, lost goodwill, et cetera.  To do this Tieks must prove, by a preponderance of the evidence, that an allegedly false or misleading statement is likely to cause harm.  A party's mere subjective belief that it is likely to be injured is insufficient to satisfy this element.  Rather, Tieks must demonstrate in some manner a causal link between the allegedly false or misleading statement and a likelihood of harm.

The causal connection may be established by either direct or circumstantial evidence. Tieks can establish a causal connection with a challenged advertising statement by showing a direct diversion of sales or the lessening of goodwill associated with Tieks's products.

7.      **<u>UNFAIR COMPETITION BASED ON FALSE ADVERTISING</u>**

The parties agree that the same standard governs Tieks's false advertising claim under federal law as governs Tieks's claim for false advertising in violation of California law and unfair competition in violation of California state law where the underlying act of unfair competition is false advertising.  Therefore, if you find for Tieks on its false advertising claim, you should also find for Tieks on its unfair competition and false advertising claims under California state law. Similarly, if you find for the Soto Massini Defendants on Tieks's false advertising claim, you should also find for the Soto Massini Defendants on Tieks's unfair competition and false advertising claims under California state law.

**8.** **DAMAGES FOR TRADE DRESS INFRINGEMENT, UNFAIR COMPETITION, AND FALSE ADVERTISING**

**8.1** **TRADE DRESS, UNFAIR COMPETITION, AND FALSE ADVERTISING DAMAGES – IN GENERAL**

If you find based on the instructions you have been given that the Soto Massini Defendants have infringed Tieks's trade dress, unfairly competed with Tieks, and/or committed acts of false advertising, then you may award Tieks damages in an amount you determine to be fair and equitable, consisting of the sum of (1) Tieks's actual damages attributable to the Soto Massini Defendants' trade dress infringement, unfair competition, and/or false advertising; and (2) the Soto Massini Defendants' profits attributable to the infringement, unfair competition, and/or false advertising.

### 8.2     TRADE DRESS, UNFAIR COMPETITION, AND FALSE ADVERTISING DAMAGES – ACTUAL DAMAGES

If you find for Tieks on its trade dress infringement, unfair competition, and false advertising claims, you must determine Tieks's actual damages.  Tieks has the burden of proving actual damages by a preponderance of the evidence.

Damages means the amount of money which will reasonably and fairly compensate Tieks for any injury you find was caused by the Soto Massini Defendants' trade dress infringement, unfair competition, and or false advertising.

You should consider the following: (1) The injury to or loss of the Tieks's reputation; (2) The injury to or loss of Tieks's goodwill, including injury to Tieks's general business reputation; (3) The lost profits that Tieks would have earned but for the Soto Massini Defendants' infringement; (4) The expense of preventing customers from being deceived; and (5) The cost of future corrective advertising reasonably required to correct any public confusion caused by the infringement.  In measuring the harm to Tieks's goodwill or reputation, you should consider Tieks's expenditures in building its reputation to estimate the harm to its reputation after the Soto Massini Defendants' bad acts.

When considering prospective costs, you must not overcompensate.  Accordingly, your award of such future costs should not exceed the actual damage to the value of the Tieks's trade dress at the time of the infringement by the Soto Massini Defendants.

### 8.3    TRADE DRESS, UNFAIR COMPETITION, AND FALSE ADVERTISING DAMAGES – DEFENDANTS' PROFITS

In addition to actual damages, Tieks is entitled to any profits earned by the Soto Massini Defendants that are attributable to the trade dress infringement, unfair competition, and/or false advertising, which Tieks proves by a preponderance of the evidence.  You may not, however, include in any award of profits any amount that you took into account in determining actual damages.

Profit is determined by deducting all expenses from gross revenue.  Gross revenue is all of the Soto Massini Defendants' revenues resulting from the trade dress infringement, unfair competition, and/or false advertising.

Expenses are all operating, overhead and production costs incurred in producing the gross revenue.  The Soto Massini Defendants have the burden of proving the expenses and the portion of the profit attributable to factors other than use of the infringed trade dress, unfair competition, and/or false advertising by a preponderance of the evidence.

Unless you find that a portion of the profit from the Soto Massini Defendants' use of Tieks's trade dress, unfair competition, or false advertising is attributable to other factors, you shall find that the total profit is attributable to the trade dress infringement, unfair competition, and false advertising.

### 8.4    TRADE DRESS, UNFAIR COMPETITION, AND FALSE ADVERTISING DAMAGES – INTENTIONAL AND WILLFUL CONDUCT

If you find that the Soto Massini Defendants infringed Tieks's trade dress, you must also determine whether the Soto Massini Defendants used the trade dress intentionally and willfully, knowing it was an infringement.  You must also determine whether the Soto Massini Defendants intentionally and willfully committed acts of false advertising.

9.     **UNJUST ENRICHMENT**

The Soto Massini Defendants were unjustly enriched if their conduct caused the Soto Massini Defendants to receive a benefit that they would otherwise not have achieved.  To decide the amount of any unjust enrichment, first determine the value of the Soto Massini Defendants' benefit that would not have been achieved except for their conduct.  Then subtract from that amount the Soto Massini Defendants' reasonable expenses.  In calculating the amount of any unjust enrichment, do not take into account any amount that you included in determining any amount of damages for the Soto Massini Defendants' patent infringement, trade dress infringement, unfair competition, and or false advertising.

10.     <u>**PUNITIVE DAMAGES**</u>

If you decide that Mr. Pichler's or Soto Massini's conduct caused Tieks harm, you must decide whether that conduct justifies an award of punitive damages.  The purposes of punitive damages are to punish a wrongdoer for the conduct that harmed Tieks and to discourage similar conduct in the future.

You may award punitive damages against the Soto Massini Defendants only if Tieks proves by clear and convincing evidence that Mr. Pichler engaged in that conduct with malice, oppression, or fraud.  To do this, Tieks must prove one of the following by clear and convincing evidence:

1.     That the conduct constituting malice, oppression, or fraud was committed by one or more officers, directors, or managing agents of Soto Massini, who acted on behalf of Soto Massini; or

2.     That the conduct constituting malice, oppression, or fraud was authorized by one or more officers, directors, or managing agents of Soto Massini; or

3.     That one or more officers, directors, or managing agents of Soto Massini knew of the conduct constituting malice, oppression, or fraud and adopted or approved that conduct after it occurred.

"Malice" means that Mr. Pichler or Soto Massini acted with intent to cause injury or that Mr. Pichler's or Soto Massini's conduct was despicable and was done with a willful and knowing disregard for Tieks's rights.  A person acts with knowing disregard when he or she is aware of the probable harmful consequences of his or her conduct and deliberately fails to avoid those consequences.

"Oppression" means that Mr. Pichler's or Soto Massini's conduct was despicable and subjected Tieks to cruel and unjust hardship in knowing disregard of Tieks's rights.

"Despicable conduct" is conduct that is so vile, base, or contemptible that it would be looked down on and despised by reasonable people.

"Fraud" means that Mr. Pichler or Soto Massini intentionally misrepresented or concealed a material fact and did so intending to harm Tieks.

An employee is a "managing agent" if he or she exercises substantial independent authority and judgment in his or her corporate decision-making such that his or her decisions ultimately determine corporate policy.

There is no fixed formula for determining the amount of punitive damages, and you are not required to award any punitive damages. If you decide to award punitive damages, you should consider all of the following factors in determining the amount:

(a)     How reprehensible was Mr. Pichler's or Soto Massini's conduct? In deciding how reprehensible their conduct was, you may consider, among other factors: (i) whether Mr. Pichler's or Soto Massini's conduct involved a pattern or practice; and (ii) whether Mr. Pichler or Soto Massini acted with trickery or deceit.

(b)     Is there a reasonable relationship between the amount of punitive damages and Tieks's harm?

(c)     In view of Mr. Pichler's or Soto Massini's financial condition, what amount is necessary to punish them and discourage future wrongful conduct? You may not increase the punitive award above an amount that is otherwise appropriate merely because Mr. Pichler and Soto Massini have substantial financial resources. Any award you impose may not exceed Mr. Pichler or Soto Massini's ability to pay.

Punitive damages may not be used to punish Mr. Pichler or Soto Massini for the impact of their alleged misconduct on persons or entities other than Tieks.

## 11. <u>DELIBERATION AND VERDICT</u>

### 11.1    INTRODUCTION

I have concluded the part of my instructions explaining the rules for considering some of the testimony and evidence.  Now let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case.  If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer.  The officer will give them to me, and I will respond as soon as I can.  I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you.  Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is Juror No. 1.

One more thing about messages.  Do not ever write down or tell anyone how you stand on your votes.  For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be.  That should stay secret until you are finished.

## 11.2    UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict.  Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict.  Remember at all times that you are not partisans.  You are judges—judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you.  I will review it with you in a moment.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form.  You will then return to the courtroom and my deputy will read aloud your verdict.

It is proper to add the caution that nothing said in these instructions, and nothing in the form of a verdict, is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find.  What the verdict shall be is your sole and exclusive duty and responsibility.

### 11.3    DUTY TO DELIBERATE

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room.  In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement.  Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say.  Try your best to work out your differences.  Do not hesitate to change your mind if you are convinced that other jurors are right and that your original position was wrong.  But do not ever change your mind just because other jurors see things differently, or just to get the case over with.  In the end, your vote must be exactly that, your own vote.  It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say.  So you should all feel free to speak your minds.  Listen carefully to what the other jurors have to say, and then decide for yourself.

**11.4    SOCIAL MEDIA**

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case.  You may not use any electronic device or media, such as the telephone, a cell phone, smartphone, iPhone, iPad, blackberry, tablet or computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog or website such as Facebook, Linkedin, YouTube, Instagram, Snapchat or Twitter to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.  In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case.  You can only discuss the case in the jury room with your fellow jurors during deliberations.

**11.5    COURT HAS NO OPINION**

Let me finish by repeating something I said to you earlier.  Nothing that I have said or done during this trial was meant to influence your decision in any way.  You must decide the case yourselves based on the evidence presented.