# THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GAVRIELI BRANDS LLC, a California Limited Liability Company, <br><br> Plaintiff, <br><br> v. <br><br> SOTO MASSINI (USA) CORP., a Delaware corporation; and THOMAS PICHLER, an individual, <br><br> Defendants. | Case No. 18-cv-00462-MN |

## PLAINTIFF GAVRIELI BRANDS LLC'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR PERMANENT INJUNCTION, ATTORNEYS' FEES, ENHANCED DAMAGES, AND PRE– AND POST–JUDGMENT INTEREST

John V. Gorman (DE Bar No. 6599)
Amy M. Dudash (DE Bar No. 5741)
**MORGAN, LEWIS & BOCKIUS LLP**
The Nemours Building
1007 North Orange Street
Suite 501
Wilmington, Delaware 19801
Telephone:  302.574.3000
Fax:  302.574.3001
john.gorman@morganlewis.com
amy.dudash@morganlewis.com

Michael J. Lyons (admitted *pro hac vice*)
Ahren C. Hsu-Hoffman (admitted *pro hac vice*)
Ehsun Forghany (admitted *pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
1400 Page Mill Road
Palo Alto, CA 94304
Telephone: 1.650.843.4000
michael.lyons@morganlewis.com
ehsun.forghany@morganlewis.com

Sharon R. Smith (admitted *pro hac vice*)
Brett A. Lovejoy, Ph.D (admitted *pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone: 1.415.442.1000
sharon.smith@morganlewis.com
brett.lovejoy@morganlewis.com

Dated: June 27, 2019

*Attorneys for Plaintiff Gavrieli Brands, LLC*

# TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF PROCEEDINGS / CONCISE STATEMENT OF FACTS............. 1

SUMMARY OF THE ARGUMENT ....................................................................... 1

ARGUMENT ................................................................................................... 3

I.  GAVRIELI IS ENTITLED TO A PERMANENT INJUNCTION ................................. 3

    A.  Defendants Should be Enjoined From Further Acts of Infringement................... 4

        1.  Defendants' Infringement Imposes Irreparable Harm on Gavrieli ............ 4

            a.  Irreparable Harm Caused by Competitor Status of Defendants .................................................................... 5

            b.  Irreparable Harm to Gavrieli's Market Share ............................... 5

            c.  Irreparable Harm to Gavrieli's Reputation and Goodwill ............ 8

        2.  Money Cannot Substitute for an Injunction............................................ 10

        3.  The Balance of the Equities Weighs Decidedly in Gavrieli's Favor ....... 11

        4.  The Public Interest Is Served by an Injunction ...................................... 12

    B.  A Broad Injunction Is Warranted.................................................................. 13

II.  GAVRIELI IS ENTITLED TO ITS ATTORNEYS' FEES ........................................... 18

    A.  Defendants' Willfulness Makes This Case Exceptional..................................... 18

    B.  Defendants Presented No Defenses to Gavrieli's Lanham Act Claims, and Asserted Factually Baseless and Legally Barred Counterclaims........................ 19

    C.  Defendants Undertook a Vexatious Litigation Strategy and Employed Dilatory Tactics to Harass Gavrieli and Drive Up Its Litigation Costs .............. 21

    D.  The Court May Also Award Attorneys' Fees Under Its Inherent Powers.......... 25

III.  THE COURT SHOULD ENHANCE THE DAMAGES AWARD BY TRIPLE ........... 26

IV.  GAVRIELI IS ENTITLED TO PRE-JUDGEMENT INTEREST ................................. 28

V.  GAVRIELI IS ENTITLED TO POST-JUDGEMENT INTEREST .............................. 30

VI.  CONCLUSION................................................................................................. 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3M Innovative Properties Co. v. Avery Dennison Corp.*,
   2006 WL 2735499 (D. Minn. Sept. 25, 2006) ...................................................................14

*A & H Sportswear Co. v. Victoria's Secret Stores, Inc.*,
   167 F. Supp. 2d 770 (E.D. Pa. 2001) ...............................................................................26

*A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*,
   166 F.3d 197 (3d Cir. 1999)................................................................................................7

*A.V. by Versace, Inc. v. Gianni Versace, S.p.A.*,
   126 F. Supp. 2d 328 (S.D.N.Y. 2001)...............................................................................16

*Abbott Labs v. Sandoz, Inc.*,
   544 F.3d 1341 (Fed. Cir. 2008)........................................................................................13

*Acumed LLC v. Stryker Corp.*,
   551 F.3d 1323 (Fed. Cir. 2008)...................................................................................11, 13

*Adv. Cardiovascular Sys. v. Medtronic Vascular, Inc.*,
   579 F. Supp. 2d 554 (D. Del. 2008)....................................................................................5

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*,
   421 U.S. 240 (1975)..........................................................................................................25

*Amgen Inc. v. Hospira, Inc.*,
   2018 WL 4080353 (D. Del. 2018) .................................................................................8, 29

*Angel Flight of Georgia, Inc. v. Angel Flight America, Inc.*,
   522 F.3d 1200 (11th Cir. 2008) ..........................................................................................3

*Apple, Inc. v. Samsung Elec. Co., Ltd.*,
   2011 WL 7036077 (N.D. Cal. Dec. 2, 2011) ......................................................................6

*BASF Corp. v. Old World Trading Co., Inc.*,
   41 F.3d 1081 (7th Cir. 1994) ............................................................................................18

*Bekins Holding Corp. v. BGT Trans, Inc.*,
   2010 WL 11597623 (C.D. Cal. Nov. 19, 2010)..................................................................13

*Belleau Tech., LLC v. JoeAllenPro Ltd.*,
   2018 WL 4037882 (S.D.N.Y. 2018)..................................................................................15

*Bio-Rad Labs., Inc. v. Nicolet Inst. Corp.*,
   807 F.2d 964 (Fed. Cir. 1986)...........................................................................................29

## TABLE OF AUTHORITIES
(continued)

Page

*Bos. Prof'l Hockey Ass'n v. Dallas Cap & Emblem Mfg., Inc.*,
    597 F.2d 71 (5th Cir. 1979) ........................................................................27

*Brady Worldwide, Inc. v. Haz-Mat Resp. Techs.*,
    2016 WL 7839150 (E.D. Wis. Aug. 17, 2016) ........................................18

*Broadcom Corp. v. Qualcomm Inc.*,
    543 F.3d 683 (Fed. Cir. 2008).......................................................................7

*Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*,
    393 F.3d 1378 (Fed. Cir. 2005)....................................................................19

*Burberry Ltd. UK v. Cohen*,
    2013 WL 12113995 (C.D. Cal. Mar. 18, 2013).............................................8

*Cal. Med. Prods., Inc. v. Emergency Med. Inc.*,
    796 F. Supp. 640 (D.R.I. 1992)...................................................................12

*Calvin Klein Inds., Inc. v. BFK Hong Kong, Ltd.*,
    714 F. Supp. 78 (S.D.N.Y. 1989) ................................................................16

*Century 21 Real Estate Corp. v. Sandlin*,
    846 F.2d 1175 (9th Cir. 1988) .......................................................................3

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991)........................................................................................25

*Church & Dwight Co., Inc. v. SPD Swiss Precision Diagnostics, GmBH*,
    843 F.3d 48 (2d. Cir. 2016)..........................................................................17

*Citizens Fin. Grp., Inc. v. Citizens Nat. Bank of Evans City*,
    383 F.3d 110 (3d Cir. 2004)......................................................................4, 9

*Deering Milliken & Co. v. Gilbert*,
    269 F.2d 191 (2d Cir. 1959).........................................................................26

*Douglas Dynamics, LLC v. Buyer Prods. Co.*,
    717 F.3d 1136 (Fed. Cir. 2013).....................................................................6

*Douglas Dynamics, LLC v. Buyers Prods. Co.*,
    717 F.3d 1336 (Fed. Cir. 2013)..................................................................5, 9

*E. & J. Gallo Winery v. Consorzio del Gallo Nero*,
    782 F. Supp. 472 (N.D. Cal. 1992) ..............................................................19

*eBay Inc. v. MercExchange, L.L.C.*,
    547 U.S. 388 (2006)........................................................................................4

## TABLE OF AUTHORITIES
(continued)

**Page**

*Eon-Net LP v. Flagstar Bancorp.*,
   653 F.3d 1314 (Fed. Cir. 2011).................................................................21

*Farberware, Inc. v. Mr. Coffee, Inc.*,
   740 F. Supp. 291 (D. Del. 1990)...............................................................11

*Fisher-Price, Inc. v. Safety 1st, Inc.*,
   2008 WL 1976624 (D. Del. May 5, 2008) (J. Sleet) ................................15

*Florist's Transworld Delivery v. Worldwide Flower & Gift Emporium*,
   1998 WL 177473 (D. Nev. Jan. 27, 1998).................................................10

*Forest Labs. Inc., v. Ivax Pharma., Inc.*,
   501 F.3d 1263 (Fed. Cir. 2007).................................................................14

*Fun–Damental Too, Ltd. v. Gemmy Indus. Corp.*,
   111 F.3d 993 (2d Cir. 1997)......................................................................16

*General Motors Corp. v. Devex Corp.*,
   461 U.S. 648 (1983)...................................................................................28

*Georgetown Rail Equip. Co. v. Holland L.P.*,
   2016 WL 3346084 (E.D. Tex. June 16, 2016).....................................18, 23

*Gorenstein Enters., Inc. v. Quality Care-USA, Inc.*,
   874 F.2d 431 (7th Cir. 1989) ....................................................................29

*Green Mountain Glass LLC v. Saint-Gobain Containers, Inc.*,
   F. Supp. 3d 610 (D. Del. 2018).................................................................29

*Harris Research, Inc. v. Perrine*,
   2009 WL 1457674 (D. Utah 2009) ...........................................................15

*Herb Reed Enters., LLC v. Florida Ent. Mgmt., Inc.*,
   736 F.3d 1239 (9th Cir. 2013) ....................................................................8

*Hologic, Inc. v. Minerva Surgical, Inc.*,
   2019 WL 1958020 (D. Del. May 2, 2019).................................................30

*Hybritech Inc. v. Abbott Labs.*,
   849 F.2d 1446 (Fed. Cir. 1985)..............................................................8, 13

*i4i Ltd. P'ship v. Microsoft Corp.*,
   598 F.3d 831 (Fed. Cir. 2010).................................................................4, 11

*Imperium IP Holdings (Cayman), Ltd. v. Samsung Elec. Co., Ltd.*,
   2017 WL 4038883 (E.D. Tex. 2017) .....................................................22, 23

# TABLE OF AUTHORITIES
(continued)

**Page**

*IMX, Inc. v. LendingTree, LLC*,
469 F. Supp. 2d 203 (D. Del. 2007)..........................................................................29

*Ironworks Patents, LLC v. Apple, Inc.*,
255 F. Supp. 3d 513 (D. Del. 2017).........................................................................30

*JEG Powersports, LLC v. M & N Dealership VI, LLC*,
2017 WL 5346388 (W.D. Okla. Nov. 13, 2017) ...................................................19

*Kirtsaeng v. John Wiley & Sons, Inc.*,
136 S. Ct. 1979 (2016)..............................................................................................21

*Linex Tech., Inc. v. Hewlett Packard Co.*,
2014 WL 461687 (N.D. Cal. Sept. 15, 2014) .........................................................21

*Larsen v. Terk Tech. Corp.*,
151 F.3d 140 (4th Cir. 1998) ...................................................................................26

*Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*,
51 F.3d 982 (11th Cir. 1995) ...................................................................................16

*LG Display Co. v. AU Optronics Corp.*,
722 F. Supp. 2d 466 (D. Del. 2010).........................................................................30

*Louis Vuitton S.A. v. Spencer Hangbags Corp.*,
765 F.2d 966 (2d Cir. 1985).....................................................................................28

*Lyda v. CBS Interactive Inc.*,
No. 4:16-cv-06592-JSW, Dkt. 35 (N.D. Cal. Jan. 24, 2018).................................21

*Midwest Fur Producers Ass'n v. Mutation Mink Breeders Ass'n*,
127 F. Supp. 217 (W.D. Wis. 1954) ........................................................................17

*Monolithic Power Sys., Inc. v. O2 Micro Intern. Ltd.*,
726 F.3d 1359 (Fed. Cir. 2013)................................................................................25

*N.V.E., Inc. v. Day*,
2009 WL 2526744 (D.N.J. Aug. 18, 2009) .............................................................29

*N.Y. Soc. of Cert. Pub. Accts. v. Eric Louis Assocs., Inc.*,
79 F. Supp. 2d 331 (S.D.N.Y. 1999)........................................................................19

*New York Racing Ass'n, Inc. v. Stroup News Agency Corp.*,
920 F. Supp. 295 (N.D.N.Y. 1996)..........................................................................26

*Nickson Indus., Inc. v. Rol Mfg. Co.*,
847 F.2d 795 (Fed. Cir. 1988)............................................................................28, 30

# TABLE OF AUTHORITIES
(continued)

**Page**

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm.*
  *Co*., 290 F.3d 578 (3d Cir. 2002) ...............................................................................6

*Novozymes A/S v. Genencor Intern., Inc.*,
  474 F. Supp. 2d 592 (D. Del. 2007) ...........................................................................7

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  572 U.S. 2014 (2014) ...........................................................................................18, 19

*On Command Video Corp. v. Columbia Pictures Indus., Inc.*,
  764 F.Supp. 1372 (N.D. Cal. 1991) ..........................................................................17

*PPG Indus. v. Guardian Indus. Corp.*,
  75 F.3d 1558 (Fed. Cir. 1996) ..................................................................................12

*Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*,
  143 F.3d 800 (3d Cir. 1998) ..................................................................................8, 9

*Parks, LLC v. Tyson Foods, Inc.*,
  2017 WL 3534993 (E.D. Pa. Aug. 17, 2017) ...........................................................22

*Pfizer, Inc. v. Teva Pharms. USA, Inc.*,
  429 F.3d 1364 (Fed. Cir. 2005) ................................................................................12

*Playboy Enter. Inc. v. P.K. Sorren Export Co., Inc. of Fl.*,
  546 F. Supp. 987 (S.D. Fla. 1982) ............................................................................28

*Polaroid Corp. v. Blue Dot Corp.*,
  1981 WL 48175 (D. N.J. Aug. 12, 1981) ..................................................................16

*Polymer Techs. v. Birdwell*,
  103 F.3d 970 (Fed. Cir. 1996) ...............................................................................6, 7

*Progressive Int'l. Corp. v. AMGTM LLC*,
  2018 WL 4091694 (W.D. Wash. Aug. 28, 2018) ......................................................22

*Reebok Int'l, Ltd. v. J. Baker, Inc.*,
  32 F.3d 1552 (Fed. Cir. 1994) ....................................................................................9

*Reebok Int'l Ltd. v. Marnatech Enters.*,
  970 F.2d 552 (9th Cir. 1992) ....................................................................................16

*Rite-Hite Corp. v. Kelley Co.*,
  56 F.3d 1538 (Fed. Cir. 1995) ..................................................................................29

*Roadway Exp. Inc. v. Piper*,
  447 U.S. 752 (1980) ..................................................................................................25

# TABLE OF AUTHORITIES
(continued)

**Page**

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
  659 F.3d 1142 (Fed. Cir. 2011) ........................................................................4, 6

*Sensonics, Inc. v. Aerosonic Corp.*,
  81 F.3d 1566 (Fed. Cir. 1996) ........................................................................24, 28

*Shields v. Zuccarini*,
  254 F.3d 476 (3d. Cir. 2001) ...............................................................................13

*Skretvedt v. E.I. DuPont De Nemours*,
  372 F.3d 193 (3d Cir. 2004) ................................................................................29

*Smith & Nephew*,
  466 F. Supp. 2d 978 (W.D. Tenn. Sept. 28, 2006) ...............................................10

*Sportco, Inc. v. TRT Tactical, LLC*,
  2015 WL 3915618 (E.D.N.Y. 2015) .....................................................................15

*Steele v. Bulova Watch Co.*,
  344 U.S. 280 (1952) ..............................................................................................16

*Sun Ship, Inc. v. Matson Nav. Co.*,
  785 F.2d 59 (3d Cir. 1986) ...................................................................................29

*Sweetzel, Inc. v. Hawk Hill Cookies, Inc.*,
  1996 U.S. Dist. LEXIS 8562 (E.D. Pa. June 19, 1996) .........................................26

*SynQor, Inc v. Artesyn Tech., Inc.*,
  2011 WL 238645 (E.D. Tex. Jan. 24, 2011) ....................................................5, 10

*Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*,
  932 F.2d 1113 (5th Cir. 1991), *aff'd*, 505 U.S. 763 (1992) .......................17, 26, 27

*Tambrands, Inc. v. Warner-Lambert Co.*,
  673 F. Supp. 1190 (S.D.N.Y. 1987) .....................................................................10

*Tinnus Enterprises, LLC v. Telebrands Corp.*,
  2017 WL 24147 (E.D. Jan. 3, Tex. 2017),
  *aff'd*, 846 F.3d 1190 (Fed. Cir. 2017) ..................................................................14

*United Construction Products, Inc. v. Title Tech., Inc.*,
  843 F.3d 1363 (Fed. Cir. 2016) ............................................................................15

*Unites States v. Marine Shale Processors*,
  81 F.3d 1329 (5th Cir. 1996) ...............................................................................11

## TABLE OF AUTHORITIES
(continued)

**Page**

*William A. Graham Co. v. Haughey,*
646 F.3d 138 (3d Cir. 2011)................................................................................................28

*World Ent'mt, Inc. v. Brown,*
2011 WL 2036686 (E.D. Pa. May 20, 2011) .......................................................................15

*Yah Kai World Wide Enterprises, Inc. v. Napper,*
292 F. Supp. 3d 337, 366 (D.D.C. 2018) .......................................................................18, 19

**Statutes**

15 U.S.C. § 1117.............................................................................................................18, 26, 27

28 U.S.C. § 1961........................................................................................................................30

35 U.S.C. § 284..........................................................................................................................28

35 U.S.C. § 285..........................................................................................................................26

**Other Authorities**

Fed. R. Civ. P. 59(e) ..................................................................................................................30

Fed. R. Civ. P. 65(d) ..................................................................................................................14

**NATURE AND STAGE OF PROCEEDINGS / CONCISE STATEMENT OF FACTS**

On May 3, 2019, after a five-day trial, the jury found Defendants Soto Massini (USA) Corporation and Mr. Thomas Pichler (collectively, "Defendants") liable for design patent infringement, trade dress infringement, false advertising, and unfair competition. D.I. 143 (verdict). The jury further found that Defendants' patent infringement was willful, and that their trade dress infringement, false advertising, and unfair competition was intentional. *Id*.

For damages, the jury found that Gavrieli was entitled to receive the profits earned by Defendants in the amount of $880,658 as compensation for patent infringement and as partial compensation for trade dress infringement, false advertising, or unfair competition. *Id*. The jury further found that Gavrieli was entitled to receive $1,282,000 as compensation for the loss of goodwill caused by Defendants' trade dress infringement, false advertising, or unfair competition, and that Gavrieli was also entitled to receive $790,000 as compensation for corrective advertising required to correct the public confusion caused by Defendants' trade dress infringement, false advertising, or unfair competition. *Id*. The Court entered Judgement on May 13, 2019. D.I. 149.

**SUMMARY OF THE ARGUMENT**

The rise of e-commerce has made it easier for brands to reach consumers, while at the same time made it more difficult for brands to obtain consumer recognition. The footwear industry is no exception. To stand out and compete in this crowded market, Gavrieli designed a novel and distinctive "Peekaboo" outsole for its Tieks ballet flats, and obtained design patent and trade dress rights covering that design. By making a substantial investment in marketing, material selection, quality control, and customer service, Gavrieli also developed goodwill in the Peekaboo design, and relies on its design patent and trade dress rights to protect that investment.

Rather than make the same investment, Defendants made a calculated business decision to trade upon Gavrieli's goodwill by copying its protected Peekaboo outsole design—a feature

consumers associate with Gavrieli.  To cause further customer confusion, Defendants falsely advertised their Terzetto Milano ballet flats (the "Infringing Flats") as being made with full-grain, Nappa leather and falsely claimed to donate sales proceeds to a women's nonprofit organization to appeal to Gavrieli's core customer base.  Defendants' wrongful conduct ensured Infringing Flats would be a commercial success despite their inferior quality.  In the first two months alone, Defendants were able to sell an unprecedented number of Infringing Flats on Kickstarter, totaling nearly a million dollars in revenue, more than half of which came from Gavrieli's current customers.  Defendants' misuse of Gavrieli's intellectual property has caused severe, long-term and irreparable harm to Gavrieli in a market where customer trust and loyalty is critical.

Defendants engaged in this conduct willfully, ignoring repeated demands from Gavrieli to refrain from their acts of infringement, false advertising, and unfair competition.  Defendants bet that the benefits of using Gavrieli's patented designs and trade dress would far outweigh any damages award that might result from litigation.  To improve their odds, Defendants made false representations to this Court, provided false discovery responses, and withheld critical documents to conceal the full extent of their infringement.  As a result, the jury's damages award is dwarfed by the benefits Defendants have reaped and will continue to reap from their unlawful conduct.  As if there was any doubt, Defendants have continued selling the infringing flats in the face of this damages award.  *See* Ex. A.  To reassure their customers, Defendants have even publicly mischaracterized the verdict, and gone so far as promising to avoid any impending injunction by forming another entity to continue their intentional infringement.  *See* Exs. B-D.  This Court can and should take further action to redress the Defendants' ongoing harmful conduct.

*First*, the Court should permanently enjoin Defendants from any further acts of patent and trade dress infringement, false advertising, and unfair competition, which have caused irreparable

harm to Gavrieli's revenues, market share, and goodwill in ways that money cannot remedy.  The equities favor Gavrieli and the requested injunctive relief will  serve the public interest.

*Second*, the Court should deem this case exceptional and award Gavrieli its reasonable attorneys' fees pursuant to the Patent Act, Lanham Act, or inherent authority due to Defendants' exceptionally weak contentions and the unreasonable manner in which they litigated this case.  In particular, Defendants asserted factually baseless and legally barred counterclaims to pressure Gavrieli into a settlement, undertook a vexatious litigation strategy that multiplied the proceedings, and employed dilatory tactics to harass Gavrieli and drive up its litigation costs.

*Third*, the Court should order a $5.9 million enhancement of the damages award pursuant to Section 1117(a) of the Lanham Act to deter Defendants' willful and ongoing infringement.  Moreover, Defendants' deliberate failure to produce complete and reliable sales records justifies tripling the damages award to compensate for the understated calculation of infringing sales.

*Finally*, the Court should award Gavrieli as the prevailing party its pre-judgment interest on the damages award, calculated at the prime rate and compounded quarterly, running from Defendants' first sale of the infringing flats on February 5, 2018 through May 13, 2019, the date of the Judgment.  The Court should likewise award Gavrieli post-judgment interest on the damages award at the current rate of 2.36%, accruing at $203.61 per day.

## ARGUMENT

## I.      GAVRIELI IS ENTITLED TO A PERMANENT INJUNCTION

Injunctive relief is the customary remedy for design patent and trade dress infringement because irreparable harm is presumed from consumer confusion.  *Angel Flight of Georgia, Inc. v. Angel Flight America, Inc.*, 522 F.3d 1200, 1209 (11th Cir. 2008) ("[C]omplete injunctions against the infringing party are the order of the day"); *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180-81 (9th Cir. 1988) ("Injunctive relief is the preferred remedy of choice").  As the Third

Circuit has explained, "a finding of infringement or the likelihood of confusion . . . signifies a loss of expectation and goodwill as well" because "[t]he infringement amounts to borrowing the [plaintiff's] reputation and goodwill, which is an injury in and of itself, even without evidence of actual loss of goodwill." *Citizens Fin. Grp., Inc. v. Citizens Nat. Bank of Evans City*, 383 F.3d 110, 131 (3d Cir. 2004). Having proven that Defendants' use of the patents designs and trade dress confuses consumers, Gavrieli now requests that the Court permanently enjoin further infringement.

### A.   Defendants Should be Enjoined From Further Acts of Infringement

A prevailing plaintiff is entitled to a permanent injunction if it can show "that (1) it has suffered an irreparable injury; (2) remedies available at law are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be 'disserved' by a permanent injunction." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 861 (Fed. Cir. 2010) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). Gavrieli satisfies all four factors.

### 1.   Defendants' Infringement Imposes Irreparable Harm on Gavrieli

The evidence presented at trial has shown that Defendants' willful patent infringement and intentional trade dress infringement subjects Gavrieli to irreparable harm. "Past harm to a patentee's market share, revenues, and brand recognition is relevant to determining whether the patentee 'has suffered an irreparable injury.'" *i4i*, 598 F.3d at 861-62 (quoting *eBay*, 547 U.S. at 391). As shown below, Gavrieli has suffered, and will continue to suffer, irreparable harm absent a court order permanently enjoining Defendants from any further acts of infringement. *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1155 (Fed. Cir. 2011) ("[T]here is no reason to believe that [the infringer] will stop infringing or that the irreparable harm resulting from its infringement will otherwise cease absent an injunction.").

### a.   *Irreparable Harm Caused by Competitor Status of Defendants*

There is no dispute that Gavrieli and Defendants directly compete with one another. Defendants' infringing ballet flats use the outsole designs covered by Gavrieli's design patent and trade dress rights. Gavrieli and Defendants are direct competitors in a niche market largely created by the substantial investments that Gavrieli made to create the novel and distinctive outsole designs that define this "new category of footwear." PTX-534; Trial Tr. at 253:13-22. "Where two companies are in competition against one another, the patentee suffers the harm—often irreparable—of being forced to compete against products that incorporate and infringe its own patented inventions." *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013). Indeed, "[t]he best case for obtaining a permanent injunction often occurs when the plaintiff and defendant are competing in the same market" because "the harm in allowing the defendant to continue infringing is the greatest." *SynQor, Inc v. Artesyn Tech., Inc.*, 2011 WL 238645, at *3 (E.D. Tex. Jan. 24, 2011); *Adv. Cardiovascular Sys. v. Medtronic Vascular, Inc.*, 579 F. Supp. 2d 554, 558 (D. Del. 2008) ("Courts awarding permanent injunctions typically do so under circumstances where [the] plaintiff practices its invention and is a direct market competitor."). Absent an injunction, Gavrieli will be forced to compete against flats using the patented designs and trade dress associated with its brand.

### b.   *Irreparable Harm to Gavrieli's Market Share*

Not only do Gavrieli and Defendants use the patented designs and trade dress in the same type of product (ballet flats), they also advertise and sell those products through the same channels of commerce (social media), and even compete for the same group of consumers (females willing to purchase luxury products online). These circumstances further compound the consumer confusion created by Defendants' infringement. Unsurprisingly, Defendants' sale of infringing ballet flats has directly impacted Gavrieli's revenue by diverting sales that would have otherwise

been made by Gavrieli.  The evidence showed that Defendants were able to sell a surprisingly large number of the Infringing Flats after they launched on Kickstarter: over 3,300 units in just under two months (totaling $700K in revenue).   Trial Tr. 606:9-12, 608:2-12, 724:1-8. Defendants' ability to quickly mobilize and attain such high sales volumes only underscores the lost sales Gavrieli would suffer in the long term if Defendants' were allowed to continue selling infringing ballet flats.

As with other competitor cases, allowing Defendants to continue selling ballet flats already deemed to infringe would also permanently erode Gavrieli's market share and customer base. "It is well settled that loss of market share or the permanent loss of customers as a result of infringing conduct may support a finding of irreparable harm." *Apple, Inc. v. Samsung Elec. Co., Ltd.*, 2011 WL 7036077, at *19 (N.D. Cal. Dec. 2, 2011) (citing *Robert Bosch*, 659 F.3d at 1153-54 and *Polymer*, 103 F.3d at 976); *Douglas Dynamics, LLC v. Buyer Prods. Co.*, 717 F.3d 1136, 1345 (Fed. Cir. 2013) ("[M]ere damages will not compensate for a competitor's increasing share of the market, a market which [the patentee] competes in, and a market that [the patentee] has in part created with its investment in patented technology.").

The unrebutted evidence at trial has established that Defendants successfully poached Gavrieli's customers by selling a lower-priced ballet flat that incorporates Gavrieli's patented designs and trade dress.  This loss of market share is particularly irreparable where, as here, it occurs in a "competitive industry where consumers are brand-loyal." *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 596 (3d Cir. 2002). Indeed, Gavrieli's customers have each purchased approximately two pairs of Tieks on average, with some customers purchasing as many as fifty pairs.  Trial Tr. 252:17-22.  And more than 50% of Defendants' customers had previously purchased a pair of Tieks.  PTX-1006; Trial Tr. at

837:10-838:17.   Unless enjoined, Defendants' continued sale of infringing products will permanently erode Gavrieli's market share as this niche market converts from a single-seller market to one with multiple sellers, especially when purchasers become accustomed to paying lower prices for Defendants' infringing flats.   As the Federal Circuit has found, "competitors change the marketplace" such that "it may be impossible to restore a patentee's exclusive position by an award of damages" because "customers may have established relationships with infringers" and "[r]equiring purchasers to pay higher prices after years of paying lower prices to infringers is not a reliable business option."  *Polymer Techs. v. Birdwell*, 103 F.3d 970, 975-76 (Fed. Cir. 1996).

This is precisely why Gavrieli has never licensed its intellectual property rights to *any* brand, let alone a direct competitor selling ballet flats using its "signature" Peekaboo outsole designs.   Trial Tr. at 277:4-9; *see also id*. at 167:24-168:3, 168:24-169:8, 251:6-16; *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 702 (Fed. Cir. 2008) (irreparable harm where patentee had a history of not licensing its intellectual property to competitors); *Novozymes A/S v. Genencor Intern., Inc.*, 474 F. Supp. 2d 592, 612 (D. Del. 2007) (same).   Gavrieli not only incorporates its trade dress and patented designs into every pair of Tieks, but it also invests millions of dollars each year in "look-for" advertising so that consumers continue to associate its patented outsole designs and trade dress with a single source: Gavrieli.   Trial Tr. at 242:18-244:22.   Denial of an injunction would essentially amount to a compulsory license of Gavrieli's intellectual property rights to a direct competitor—the very rights that Gavrieli considers critical to its brand identity and commercial success.  *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 166 F.3d 197, 208 (3d Cir. 1999) (reversing royalty award for future infringement because the royalty "impos[ed] a license neither party had requested or negotiated.").

Finally, failing to enjoin Defendants' willful patent infringement and intentional trade dress infringement will embolden other competitors to enter the market. *Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1456 (Fed. Cir. 1985) (finding irreparable harm where, "in the absence of an injunction, other potential infringers will be encouraged to infringe."). Gavrieli relies on its intellectual property rights to exclude hundreds of infringers from the marketplace every year, removing over 500 online stores in 2018 alone. PTX-664; Trial Tr. at 488:18-489:24. The requested injunction is therefore not only critical to Gavrieli's enforcement efforts, but also necessary to deter future would-be infringers. *Amgen*, 581 F. Supp. 2d at 210-12 (finding irreparable harm where "[infringer's] entry into the market . . . could encourage other would-be infringers to attempt to gain access, resulting in significant litigation expenses and uncertainty about the value of Amgen's patents."). "Simply put, the value of the patents [and trade dress] at issue"—which protect designs critical to Gavrieli's business—"would be greatly diminished" without injunctive relief. *Id.*

### c.  *Irreparable Harm to Gavrieli's Reputation and Goodwill*

Gavrieli's reputation and goodwill has likewise been damaged by Defendants' sale of lower-quality ballet flats using Gavrieli's patented designs and trade dress. "Harm to goodwill and loss of the ability to control a party's reputation based on an inability to control the infringer's products are irreparable harms" because "the distribution of a great number of [infringing] goods— particularly goods of inferior quality—risks harming the goodwill." *Burberry Ltd. UK v. Cohen*, 2013 WL 12113995, at *2 (C.D. Cal. Mar. 18, 2013); *Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3d Cir. 1998) (finding "loss of control" may cause irreparable harm to "reputation, loss of trade, and loss of goodwill"); *Herb Reed Enters., LLC v. Florida Ent. Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013) (same). In design patent and trade dress cases, courts

have found that "[h]arm to reputation resulting from confusion between an inferior accused product and a patentee's superior product is a type of harm that is often not fully compensable by money because the damages caused are speculative and difficult to measure." *Reebok Int'l, Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1554 (Fed. Cir. 1994); *Pappan*, 143 F.3d at 805 ("Irreparable injury can also be based upon the possibility of confusion."). "Even absent consumer confusion, however, there can still be harm to a company's reputation, particularly its perception in the marketplace by customers." *Douglas Dynamics*, 717 F.3d at 1344.

The evidence presented at trial proved that Gavrieli has developed goodwill in the outsole designs covered by its patents and trade dress due to its significant investments in research, marketing, manufacturing, material selection, quality control, and customer service. Trial Tr. at 653:25-656:6. Rather than make a similar investment, Defendants chose instead to trade upon Gavrieli's reputation by using the patented designs and trade dress to disguise the inferior-quality of Defendants' ballet flats. *Id.* at 656:7-659:17. The jury found that the Defendants' use of the trade dress created a likelihood of confusion, D.I. 143, which "signifies a loss of expectation and goodwill as well." *Citizens Fin. Grp.*, 383 F.3d at 131 (reversing denial of injunction). Indeed, "[o]nce it has been proven that confusion is likely, this means that customers will be likely to mistakenly attribute to plaintiff defects or negative impressions they have of the infringer's goods," which puts "plaintiff's reputation (and the value of the trade dress that symbolize that goodwill []) at risk." J. Thomas McCarthy, McCarthy on Trademarks § 30:66 (4th Ed. 2014) (collecting cases).

To be sure, the evidence presented at trial has shown that consumers are not only extremely dissatisfied with the inferior quality of Defendants' ballet flats, but are also likely to blame Gavrieli for the inferior quality of the infringing products. Trial Tr. at 656:7-659:17. Worse yet, the inferior quality of the Infringing Flats has made customers less willing to purchase ballet flats from

Gavrieli or any other brand that sells flats exclusively online.  *Id.*  Indeed, one Tieks customer testified that, after purchasing Defendants' lower-quality ballet flats, "I am less trustworthy of other online-only ballet flat retailers, including Tieks, for ballet flats made of leather at similar price points, than before I purchased ballet flats from Soto Massini" (PTX-112); and another Tieks customer similarly testified that "I am now more hesitant to purchase ballet flats in the online marketplace," (PTX-109).  These are well-recognized forms of irreparable harm.  *Florist's Transworld Delivery v. Worldwide Flower & Gift Emporium*, 1998 WL 177473, at \*8 (D. Nev. Jan. 27, 1998) (irreparable harm where "[a]ny dissatisfaction by such customers [with the infringing product] could not be measured or remedied by plaintiff, thus affecting plaintiff's goodwill."); *e.g.*, *SynQor*, 2011 WL 238645, at \*3 (irreparable harm where "the evidence shows that [patentee] will continue to suffer harm to its customer relationships").

### 2.    Money Cannot Substitute for an Injunction

Although the jury awarded Gavrieli damages for Defendants' past infringement, no monetary award could compensate Gavrieli for the irreparable harm it would suffer from Defendants' continued infringement.  *SynQor*, 2011 WL 238645, at \*3 (finding that the jury's monetary award is "designed to compensate [patentee] fairly and reasonably for its past injury … [it] does not make future damages adequate in the sense that they are a suitable proxy for injunctive relief.").  The harm resulting from Defendants' ongoing infringement "is particularly difficult to quantify," and this "difficulty in estimating monetary damages is evidence that remedies at law are inadequate."  *Id.* ("[L]oss of brand name recognition and goodwill are often incalculable and irreparable."); *Smith & Nephew*, 466 F. Supp. 2d 978, 983 (W.D. Tenn. Sept. 28, 2006)  ("[T]he loss of market share and the resulting lost profits and loss of brand name recognition which [patentee] suffered because of [infringer's] continued sales of the infringing product constitutes injuries that are both incalculable and irreparable."); *Tambrands, Inc. v. Warner-Lambert Co.*, 673

F. Supp. 1190, 1195 (S.D.N.Y. 1987) ("Because it is very difficult to establish actual damages in a competitive market, legal remedies for [Lanham Act violations] are often inadequate."). The inability to calculate Gavrieli's future loss of market share, customers, and goodwill renders any monetary award inadequate.

Even if these harms could be quantified with any certainty, Gavrieli's patented designs and trade dress are a "delicate matter" that have "great value but that are [also] easily destroyed, and therefore should be protected with corresponding care." *Farberware, Inc. v. Mr. Coffee, Inc.*, 740 F. Supp. 291, 295 (D. Del. 1990). Moreover, Gavrieli's reputation is staked "upon the character of the goods" and a monetary award is incapable of repairing Gavrieli's reputation each time Defendants market or sell an infringing ballet flat. *Id.* Injunctive relief is thus necessary.

### 3. The Balance of the Equities Weighs Decidedly in Gavrieli's Favor

"The 'balance of hardships' assesses the relative effect of granting or denying an injunction on the parties." *i4i*, 598 F.3d at 863. Here, the substantial and irreparable harm that Gavrieli has suffered, and will continue to suffer without injunctive relief, far outweighs any potential harm to Defendants for at least three reasons.

*First*, the jury's finding of willful patent infringement and intentional trade dress infringement tips the scale dramatically in favor of an injunction. D.I. 143. Courts "need not balance the hardships when a defendant's conduct has been willful." *Unites States v. Marine Shale Processors*, 81 F.3d 1329, 1358 (5th Cir. 1996). As the Federal Circuit has repeatedly made clear, "[o]ne who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected." *Acumed LLC v. Stryker Corp.*, 551 F.3d 1323, 1330 (Fed. Cir. 2008) (affirming permanent injunction and district court's decision not to consider in the balance of hardships analysis the fact that defendants incurred expenses in designing and marketing the infringing products).

*Second*, as shown above, Gavrieli will suffer immediate and irreparable harm in the form of lost market share, customers, and goodwill unless Defendants' infringement is permanently enjoined.  *See Nike*, 2006 WL 3883278, at *3 ("Nike will be severely handicapped in its ability to prevent further importation of infringing products, thereby destroying any potential of preserving the status quo pending a resolution of this case on the merits."); *Cal. Med. Prods., Inc. v. Emergency Med. Inc.*, 796 F. Supp. 640, 647 (D.R.I. 1992) ("[T]he potential harm to [patentee] outweighs the potential harm to [defendant]" if denying injunctive relief would "cause considerable harm to [patentee's] reputation and threaten its market position").

*Third*, the requested injunction is narrowly tailored to prevent Defendants from selling only those flats that use Gavrieli's patented designs and trade dress, not ballet flats altogether.  Ms. de Baere and Mr. Rake both testified at trial that multiple design alternatives exist that Defendants could have readily pursued.  Trial Tr. at 633:20-635:7, 789:19-790:21.  Any purported harm from precluding Defendants' ongoing infringement does not outweigh the permanent and irreparable harm to Gavrieli caused by the infringement.  It is well settled that "[a]n alleged infringer's loss of market share and customer relationships, without more, does not rise to the level necessary to overcome the loss of exclusivity experienced by a patent owner due to infringing conduct." *Pfizer, Inc. v. Teva Pharms. USA, Inc.*, 429 F.3d 1364, 1382 (Fed. Cir. 2005).  Any hardship caused by permanently enjoining Defendants' infringement is limited to the injury ordinarily expected from an injunction.  The balance of equities thus strongly favors injunctive relief.

### 4.   The Public Interest Is Served by an Injunction

The injunction requested by Gavrieli serves the public interest for three reasons.  *First*, "strong public policy favor[s] the enforcement of patent rights," including the right to prevent infringement through a permanent injunction. *PPG Indus. v. Guardian Indus. Corp.*, 75 F.3d 1558, 1567 (Fed. Cir. 1996).  Indeed, "[w]ithout the right to obtain an injunction, the right to exclude

granted to the patentee would have only a fraction of the value it was intended to have." *Smith Int'l*, 718 F.2d at 1578.  Allowing Defendants to continue their willful and intentional infringement would discourage the types of investments made by Gavrieli to develop and protect its designs. *Abbott Labs v. Sandoz, Inc.*, 544 F.3d 1341, 1363 (Fed. Cir. 2008) ("The patent laws promote . . . progress by offering a right of exclusion for a limited period as an incentive to inventors to risk the often enormous costs in terms of time, research, and development.").

*Second*, enjoining Defendants' infringing activities will not harm the public. There are many other ballet flats on the market not covered by Gavrieli's design patents and trade dress.  The public will still be able to purchase these non-infringing products, despite an injunction against Defendants.  *Acumed*, 551 F.3d at 1331 (Fed. Cir. 2008) (granting permanent injunction and finding no public interest bar because non-infringing alternatives existed); *Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1458 (Fed. Cir. 1988) (same).

*Third*, the public would actually benefit from enjoining Defendants' infringement.  The Third Circuit has recognized that the "public interest . . . is synonym for the right of the public not to be deceived or confused" by ongoing infringement.  *Shields v. Zuccarini*, 254 F.3d 476, 486 (3d. Cir. 2001); *see also Angel Flight of Georgia*, 522 F.3d at 1209 ("[T]he public deserves not to be led astray by the use of inevitably confusing marks"); *Bekins Holding Corp. v. BGT Trans, Inc.*, 2010 WL 11597623, at *12 (C.D. Cal. Nov. 19, 2010) (granting injunctive relief and finding that the defendant's "behavior is likely to confuse the public, and that it would be in the public interest to take steps to prevent this confusion.").  Thus, the public interest strongly favors injunctive relief.

### B.    A Broad Injunction Is Warranted

As shown below, the full scope of the requested injunction is not only appropriate, but also necessary to prevent the aforementioned types of irreparable harm to Gavrieli.

***The injunction should apply to Defendants' successors and its aiders and abettors***. Following the judgment, Mr. Pichler published an update to his customers suggesting that he would seek to avoid any injunction by forming another entity to continue his willful and intentional infringement.   Ex. C (Update #2) ("You can kill the man but you can't kill the idea!, the shoe concept we invented and started will move forward, *regardless of brand name, person, or company*.") (emphasis added).   To prevent Mr. Pichler from evading an injunction, the injunction should apply not only to Defendants' "officers, agents, servants, employees, and attorneys" (FRCP 65(d)), but also to any successors in interest and any aiders and abettors thereto.  *Forest Labs. Inc., v. Ivax Pharma., Inc.*, 501 F.3d 1263, 1272 (Fed. Cir. 2007) (affirming injunction applied to non-party manufacturer); *Tinnus Enterprises, LLC v. Telebrands Corp.*, 2017 WL 24147, at *3-5 (E.D. Jan. 3, Tex. 2017), *aff'd*, 846 F.3d 1190 (Fed. Cir. 2017) (applying injunction to non-party retailers); *3M Innovative Properties Co. v. Avery Dennison Corp.*, 2006 WL 2735499, at 2 (D. Minn. Sept. 25, 2006) (applying permanent injunction to "[non-party] distributors aiding and abetting [defendant] in its efforts to avoid the impact of the injunction.").

***The Courts should seize the remaining inventory of infringing flats, as well as the materials used to manufacture and market those flats***.   In several post-trial publications to customers, Mr. Pichler has promised "to deliver the rest of the shoes to every supporter in the coming weeks and months, regardless of the future of Soto Massini (USA) Corp."  Ex. B (Update #1); Ex. C (Update #2) ("While I don't know yet what the future holds for the legal entity Soto Massini (USA) Corp. under which we operate, I will do everything in my power to deliver the shoes to every supporter.").  Worse yet, Defendants' customer communications suggest that some of this inventory has already been delivered.  Ex. A.  Defendants should not be allowed to sell off their remaining inventory of infringing flats.  *3M*, 2006 WL 2735499, at *2 (enjoining patent

infringement and refusing to permit defendant to sell its remaining inventory).  Where, as here, the patentee does not license its patents, courts routinely order the defendant to surrender the remaining inventory of infringing products to the patentee for destruction.  *Sportco, Inc. v. TRT Tactical, LLC*, 2015 WL 3915618, at *3 (E.D.N.Y. 2015) (enjoining patent infringement and ordering defendant to "surrender all existing inventory of the [infringing product] to [patentee's] counsel for destruction"); *Harris Research, Inc. v. Perrine*, 2009 WL 1457674, at *8 (D. Utah 2009), *adopting report and recommendation*, 2010 WL 936071 (D. Utah 2010) (ordering pro se defendants to turn over inventory of accused product to patentee); *Fisher-Price, Inc. v. Safety 1st, Inc.*, 2008 WL 1976624, at *3 (D. Del. May 5, 2008) (Sleet, J.) (holding infringer in contempt of a seizure order for not exercising all reasonable efforts to retrieve existing inventory from retailers).

Additionally, Defendants should be required to take down and destroy any remaining online or printed marketing materials for the infringing flats, including, but not limited to, those explicitly identified in the requested injunction.  *Belleau Tech., LLC v. JoeAllenPro Ltd.*, 2018 WL 4037882, at *1 (S.D.N.Y. 2018) (enjoining patent infringement and ordering defendant to "destroy any copies of the [infringing] software product" and "take down and/or destroy any remaining marketing for the [infringing product], including, but not limited to, taking down the autoprompter.com website, [and] removing the AutoPrompter promotional video posted by [defendant] on YouTube."); *World Ent'mt, Inc. v. Brown*, 2011 WL 2036686 (E.D. Pa. May 20, 2011), *aff'd*, 487 F. App'x. 758 (3d Cir. 2012) (enjoining further trademark infringement and ordering destruction of all products and marketing materials bearing infringing marks).  Given that the outsole designs are a crucial component of the patents and trade dress rights at issue here, Defendants should also be required to surrender any molds used to create the outsoles of the

infringing ballet flats.  *United Construction Products, Inc. v. Title Tech., Inc.*, 843 F.3d 1363, 1372 (Fed. Cir. 2016) (upholding injunction requiring defendant to surrender molds used to manufacture the infringing products "as an acceptable means of preventing future infringement" of the patents).

   ***The Court should preclude Defendants' foreign acts of trade dress infringement that injure Gavrieli in the United States***.  "It is well-established that United States courts have jurisdiction to apply the Lanham Act to allegedly infringing conduct occurring outside the United States when necessary to prevent harm to United States commerce."  *A.V. by Versace, Inc. v. Gianni Versace, S.p.A.*, 126 F. Supp. 2d 328, 337 (S.D.N.Y. 2001); *Steele v. Bulova Watch Co.*, 344 U.S. 280, 289 (1952) (affirming injunction precluding foreign sales of infringing watches that damaged rights holder's reputation in the U.S.); *Polaroid Corp. v. Blue Dot Corp.*, 1981 WL 48175 (D. N.J. Aug. 12, 1981), *aff'd*, 688 F.2d 823 (3d Cir. 1982) (same for trade dress infringement); *Fun–Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993 (2d Cir. 1997) (same).

   Defendants' intentional trade dress infringement has caused Gavrieli to lose sales, market share, customers, and goodwill in the United States, which "affect American foreign commerce in a manner that causes an injury to [Gavrieli] cognizable under the Lanham Act."  *Reebok Int'l Ltd. v. Marnatech Enters.*, 970 F.2d 552, 554-555 (9th Cir. 1992) (enjoining sales of infringing shoes in Mexico due to the "decreased sale of genuine REEBOK shoes" in the U.S.).  Moreover, since Mr. Pichler has been found to control Soto Massini USA (D.I. 108), his "[Austrian] citizenship cannot serve as a shield against the application of the Lanham Act."  *A.V. by Versace,* 126 F. Supp. 2d at 337 (enjoining both U.S. corporation and foreign national who controlled the corporation from selling infringing apparel abroad); *Calvin Klein Inds., Inc. v. BFK Hong Kong, Ltd.*, 714 F. Supp. 78, 80 (S.D.N.Y. 1989) (same); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982,  985 (11th Cir. 1995) (same).

***The Court should order Defendants to distribute corrective notices***.  "In fashioning relief against a party who has transgressed the governing legal standards, a court of equity is free to proscribe activities that, standing alone, would have been unassailable," including distributing corrective notices "to dispel customer confusion."  *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1126 (5th Cir. 1991), *aff'd*, 505 U.S. 763 (1992); *On Command Video Corp. v. Columbia Pictures Indus., Inc.*, 764 F.Supp. 1372, 1374 (N.D. Cal. 1991) ("Courts routinely uphold good-faith notifications to non-parties of intellectual property claims.").

To dispel the confusion and deception caused by their transgressions, Defendants should be ordered to e-mail their customers a corrective notice expressly stating that they unfairly copied Gavrieli's patented designs and trade dress and falsely advertised the infringing ballet flats, and publish that notice on their website for a year.  *Taco Cabana,* 932 F.2d at 1125 (affirming injunction ordering defendant to "display[] a prominent sign for a year acknowledging that [defendant] had unfairly copied [plaintiff's trade dress]"); *Church & Dwight Co., Inc. v. SPD Swiss Precision Diagnostics, GmBH*, 843 F.3d 48, 72 (2d. Cir. 2016) (affirming injunction ordering "Defendant to distribute corrective notices that expressly acknowledge that the court found Defendant to have engaged in false and misleading advertising."); *Midwest Fur Producers Ass'n v. Mutation Mink Breeders Ass'n,* 127 F. Supp. 217, 229-230 (W.D. Wis. 1954) (ordering defendant to publish in "a trade journal of general circulation in the same manner as its previous advertisements . . . either a full statement or a fair summary of this judgement and decree").  This relief is particularly appropriate where the acts of infringement, unfair competition, or and false advertising were intentional.  *Church & Dwight*, 843 F.3d at 72 (corrective notice appropriate "in view of the district court's finding that defendant was intentionally deceptive in its advertising").

## II.   GAVRIELI IS ENTITLED TO ITS ATTORNEYS' FEES

Section 1117(a) of the Lanham Act authorizes an award of attorneys' fees in "exceptional" cases.  Although the term "exceptional" is not defined in the statute, "the Third and Fourth Circuits have since held that the standard in *Octane Fitness* also applies to attorney fee awards under the Lanham Act."  *Brady Worldwide, Inc. v. Haz-Mat Resp. Techs.*, 2016 WL 7839150, at \*4 (E.D. Wis. Aug. 17, 2016) (citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 2014 (2014)).  Under *Octane Fitness*, an "exceptional case" is one that "stands out from others" either in terms of (1) "the substantive strength of a party's litigating position," and/or (2) "the unreasonable manner in which the case was litigated" by Defendants.  *See Octane Fitness*, 572 U.S. at 554.  This case is "exceptional" under either prong.

### A.   Defendants' Willfulness Makes This Case Exceptional

The jury's finding of intentional trade dress infringement, false advertising, and unfair competition "alone is a compelling indication that this is an exceptional case."  *Georgetown Rail Equip. Co. v. Holland L.P.*, 2016 WL 3346084, at \*4 (E.D. Tex. June 16, 2016); *see also Brady Worldwide*, 2016 WL 7839150, at \*5 (awarding attorneys' fees to trademark holder; "[W]illfulness support[s] a finding that this case is exceptional and justifies awarding attorneys' fees."); *Yah Kai World Wide Enterprises, Inc. v. Napper*, 292 F. Supp. 3d 337, 366 (D.D.C. 2018), *appeal dismissed*, 2018 WL 4641349 (D.C. Cir. 2018) (awarding attorneys' fees to trademark holder due to defendant's "willful trademark infringement and unfair competition"); *see also BASF Corp. v. Old World Trading Co., Inc.*, 41 F.3d 1081, 1099 (7th Cir. 1994) (affirming attorneys' fees award where defendant's false advertising was "deliberate").  Aside from the willfulness finding, "this case is also undoubtedly extraordinary" because "[Defendant's] deliberate heist [of Gavrieli's trade dress]—and the accompanying intentional freeriding on the goodwill that [Gavrieli] had

established with customers . . . is exceedingly unusual, and therefore, this case is far from run-of-the-mill." *Yah Kai*, 292 F. Supp. at 366 (D.D.C. 2018).

Indeed, Defendants' willful misconduct justifies fees even under *Brooks Furniture*, which the *Octane Fitness* Court abrogated for being "too restrictive" and "demanding." *Octane Fitness*, 572 U.S. at 554 (recognizing that "a case is exceptional under [*Brooks Furniture*] only 'when there has been some material inappropriate conduct related to the matter in the litigation, such as willful infringement'") (quoting *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378 (Fed. Cir. 2005)).  Moreover, Defendants' failure to obtain an opinion of counsel upon receiving notice of their trade dress infringement also supports exceptionality and an award of fees to Gavrieli.  *See E. & J. Gallo Winery v. Consorzio del Gallo Nero*, 782 F. Supp. 472, 476 (N.D. Cal. 1992) (attorneys' fees awarded to trademark holder; "[Defendant] could have retained legal counsel to obtain an opinion as to the likelihood of [trademark] infringement."); *N.Y. Soc. of Cert. Pub. Accts. v. Eric Louis Assocs., Inc.*, 79 F. Supp. 2d 331, 349 (S.D.N.Y. 1999) (same).

### B.     Defendants Presented No Defenses to Gavrieli's Lanham Act Claims, and Asserted Factually Baseless and Legally Barred Counterclaims

The one-sidedness of the jury verdict demonstrates not only the strength of Gavrieli's claims, but also the unusual disparity between the parties' litigation positions. *Cf. JEG Powersports, LLC v. M & N Dealership VI, LLC*, 2017 WL 5346388, at *2 (W.D. Okla. Nov. 13, 2017) (denying attorneys' fees to trademark holder where "[its] victory at trial was only partial."). Defendants' litigation positions (or lack thereof) makes this case exceptional for two reasons.

*First*, Defendants failed to present any defenses whatsoever to Gavrieli's Lanham Act claims. For its false advertising claim, Gavrieli presented evidence that Defendants' advertisements, including those claiming that the Infringing Flats are made with "full grain" and/or "Nappa" leather and that a portion of each sale is donated to charity, were literally false and

material to consumer purchasing decisions.  Defendants never responded, failing to present any

rebuttal evidence whatsoever.  Likewise, for its trade dress infringement claim, Gavrieli presented

evidence of secondary meaning and a likelihood of confusion that included surveys, expert

opinions, and consumer testimony, while Defendants failed to present any rebuttal evidence at all.

   ***Second***, Defendants asserted counterclaims they knew were factually baseless in a

desperate attempt to gain leverage in this case.  As just one example, Defendants alleged that

Gavrieli committed unfair competition by paying for positive reviews, without pleading any

particular facts to support those allegations.  D.I. 22, 31, 45.  Thereafter, Mr. Pichler admitted

during his Dec. 4, 2018 deposition that he was unaware of any facts supporting this bald allegation:

> Q. Do you have any evidence or any reason to believe [Gavrieli] pay[s]
>    people to provide positive reviews?
>
> A. I don't know.
>
> Q. Why is that in your lawsuit?
>
> A.  I don't know.

Ex. E (Pichler Depo Tr. at 299:22-300:1).  Mr. Pichler also admitted that Defendants' false

advertising counterclaims against Gavrieli were likewise factually baseless:

> Q. There's also a contention that's been made in the lawsuit by Soto Massini
>    that the Tieks sold by Gavrieli are not made with Italian leather.
>
> A. No, I don't think we ever said that.
>
> Q. You have no reason to believe they don't use Italian leather?
>
> A. No, I have no reason to believe that they don't.

*Id*. at 302:10-17.  The same is true for Defendants' other counterclaims, which Mr. Pichler

admittedly ***never investigated***.  *Id*. at 302:2-7 (Q. You didn't investigate the trade libel claim or --

A. No. Q. Or any of the other claims that were made against Gavrieli in this case? A. No.").  Even

after fact discovery closed, Defendants still could find no evidence to support their frivolous

counterclaims.  Rather than withdraw counterclaims they knew were baseless, Defendants forced

Gavrieli to move for their dismissal (D.I. 34), and then mooted that motion by filing an amended answer that made only nominal amendments (D.I. 45), forcing Gavrieli to once again move for their dismissal (D.I. 90). Simply put, Defendants "exhibited an overall vexatious strategy by continuing to hold these groundless claims over [Gavrieli's] head to increase potential settlement" and to increase Gavrieli's legal expenses. *Linex*, 2014 WL 4616847, at \*5. This conduct exhibits an "indicia of extortion" sufficient to show that Defendants "acted in bad faith by exploiting the high cost to defend complex litigation." *Eon-Net LP v. Flagstar Bancorp.*, 653 F.3d 1314, 1327-28 (Fed. Cir. 2011).

Moreover, Defendants moved forward with counterclaims that were plainly barred by California's litigation privilege. *See Lyda v. CBS Interactive Inc.*, No. 4:16-cv-06592-JSW, Dkt. 35 (N.D. Cal. Jan. 24, 2018) (awarding attorneys' fees for claims barred by *res judicata*); *Linex Tech., Inc. v. Hewlett Packard Co.*, 2014 WL 461687, at \*3-5 (N.D. Cal. Sept. 15, 2014) (same). Despite Gavrieli's repeated warnings that the Fifth through Tenth counterclaims were legally barred (D.I. 34, 52, 90), Defendants chose to ignore black-letter law and pressed on until the Court dismissed those counterclaims on that very basis. D.I. 108.

## C.   Defendants Undertook a Vexatious Litigation Strategy and Employed Dilatory Tactics to Harass Gavrieli and Drive Up Its Litigation Costs

"[W]hatever the reasonableness of [Defendants'] claims or defenses," this Court "may order fee-shifting because of [their] litigation misconduct." *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1988 (2016). Defendants' litigation misconduct began at the very start of this case, when Mr. Pichler avoided a temporary restraining order ("TRO") by falsely representing to Judge Sleet that the Infringing Flats had "not yet [been] manufactured or sold," D.I. 13 at ¶ 4—even though Mr. Pichler had already made and sold hundreds of Infringing Flats earlier that year, D.I. 111 at Ex. 2 (Defendants' discovery letter admitting pre-suit sales); *id.* at Ex. 17 (invoice for

pre-suit sales).  Emboldened by the success of his misrepresentations, Mr. Pichler took another

chance at avoiding liability altogether by carrying out a calculated scheme designed to prevent

Gavrieli from proving its claims.   In particular:

- To conceal his TRO misrepresentations, Mr. Pichler submitted false discovery responses about when, where, and by whom the Infringing Flats were made and sold. D.I. 111 at 9, Exs. 6-8.

- To prevent Gavrieli from uncovering the truth through document requests, Mr. Pichler withheld sales order records for the Infringing Flats and e-mails evidencing customer confusion for the entire duration of fact discovery.  D.I. 111, Exs. 9-11 and 14-17.

-  In response to Gavrieli moving to compel the withheld sales order records and customer e-mails in October 2018 (D.I. 65), Mr. Pichler falsely stated that sales order records and customer e-mails did not exist (D.I. 66)—a misrepresentation that this Court relied on in its Order denying Gavrieli's motion to compel (D.I. 68).

- To hide his discovery misconduct, Mr. Pichler falsely testified at his deposition that the Infringing Flats were never manufactured or sold prior to the lawsuit, and were never made available for sale outside of the Kickstarter or Indiegogo.  D.I. 111 at 8-9, Ex. 4.

- To prevent Gavrieli from proving its design patent and trade dress infringement claims, Mr. Pichler violated this Court's Feb. 11, 2019 Discovery Order by withholding e-mails evidencing customer confusion and sales order records revealing the extent of his infringing sales.  *See generally* D.I. 111.

Defendants never disputed these facts. D.I. 115. This Court found Defendants conduct in discovery

to be "disturbing," noting that it was "troubled" by Defendants' "changing positions on the

existence of those documents."  Ex. F at 37:13-20.  Each of these acts alone supports an exceptional

case finding.  *Progressive Int'l. Corp. v. AMGTM LLC*, 2018 WL 4091694, at *5-6 (W.D. Wash.

Aug. 28, 2018) (case exceptional due to infringer's false testimony to reduce damages exposure);

*Imperium IP Holdings (Cayman), Ltd. v. Samsung Elec. Co., Ltd.*, 2017 WL 4038883, at *3 (E.D.

Tex. 2017), *rev'd on other grounds*, 2019 WL 404572 (Fed. Cir. 2019) (case exceptional due to

infringer's "multiple material misrepresentations under oath and in their pleadings").

Defendants also engaged in the sort of "wasteful procedural maneuvers or dilatory tactics

that are the hallmark of a case that has been litigated in an unreasonable manner."  *Parks, LLC v.*

*Tyson Foods, Inc.*, 2017 WL 3534993, at *1 (E.D. Pa. Aug. 17, 2017). Not only did Defendants fail to provide discovery timely, they refused to produce critical discovery altogether, leaving Gavrieli with no choice but to engage in multiple rounds of fruitless meet and confers, only to have to seek court intervention by filing two separate motions to compel (D.I. 65, 93). *Imperium IP*, 2017 WL 4038883, at *3 (exceptional case due to discovery misconduct). Even after this Court compelled the production of these documents, Defendants violated that Order by failing to produce the requested documents, forcing Gavrieli to yet again seek legal redress from the Court (D.I. 111).

Defendants engaged in other dilatory tactics that multiplied the proceedings in this case. For example, Defendants refused to stipulate to facts that they had previously admitted to in their discovery responses (D.I. 117 ¶ 12, Ex. 1). Moreover, Defendants failed to submit their pre-trial disclosures on time (*id.* ¶ 15, n.3), leading this Court to order Gavrieli to "supplement the Pretrial Order," which was "incomplete" "because of late disclosures by Defendants" (Apr. 3, 2019 Order). As another example, after jointly submitting the proposed jury instructions (D.I. 123-125), Defendants demanded that the jury be instructed on inequitable conduct and functionality, and then failed to submit any proposed instructions despite obtaining leave from the Court to do so. Trial Tr. at 478:8-480:2. Similarly, after refusing to make Ms. Giraldo available for a deposition during fact discovery, Defendants demanded that she be permitted to testify at trial (D.I. 128), but then refused to make Ms. Giraldo available for the court-ordered deposition (D.I. 131-132), causing Gavrieli to needlessly prepare for her deposition on the eve of trial. Even if any one of "these things, in isolation," did not make this case exceptional, "when a party does all of these things, the Court can only conclude the party needlessly multiplied the proceedings at the expense of the opposing side and the Court." *Georgetown Rail*, 2016 WL 3346084, at *22-24.

The same is true for the "litigation misconduct and unprofessional behavior" Defendants exhibited at trial, which "suffice to make a case exceptional." *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1574 (Fed. Cir. 1996).  After obstructing the discovery in this case, Defendants repeatedly sought to ambush Gavrieli at trial by litigating issues and presenting evidence that were never disclosed before trial, much less preserved in the Pretrial Order.  As this Court stated:

> I will note that defendants have on at least three occasions raised issues that were not properly included in the pretrial order.  I have attempted to give some latitude to defendants given the circumstances, but I am cognizant of the prejudice that this continued surprise may cause to plaintiff.  So you are now warned.  ***I will not continue to tolerate trial by surprise*** and if it does continue, I will use what discretionary power I have, including sanctions, to stop it.

5/1/19 Trial Tr. at 464:2-10 (emphasis added).  Defendants' trial misconduct did not stop there.  As shown below, Defendants tried repeatedly to present evidence excluded by the Court, contradicted and mischaracterized Court rulings, ignored requests from the Court for supporting evidence and case law, and failed to submit construction positions and supplemental jury instructions after requesting and obtaining leave by the Court to submit them.

- Defendants' opening statements contradicted the Court's Feb. 11, 2019 Order finding Mr. Picher personally liable for failing to follow the corporate formalities, claiming "[Mr. Pichler] followed the law, followed all formalities . . . nothing personal about this business."  4/29/19 Trial Tr. 157:22-25.

- Defendants' opening statements mischaracterized the Court's TRO Order.  4/29/19 Trial Tr. at  157:1-4 ("[A] year ago they came to this court and asked the court to shut us down.  You know what the court said? Case isn't good enough.  Sorry.")

- Defendants' opening statements also referred to shoes that were never admitted into evidence, or previously excluded by the Court.  4/29/19 Trial Tr. at 160:16-23 ("[T]he evidence will show lots of brand ballet flats from before 2000, the year 2000s.  Mr. Pichler himself bought a pair ballet flats with the same kind of dual sole design, it's called a Camper Shoe in 2005, the evidence will show, for his wife, who was pregnant at the time."); *Id*. at 162:21-24 ("Gap makes a dual sole ballet flat, Cohan, Camper, I mean, there are many other designs which are all of a similar general look").

- Rather than provide Gavrieli with fair notice of the trial exhibits they intended to use with each witness, Defendants identified over 160 exhibits for each of their witnesses

and anything that was already admitted into evidence, and then failed to narrow their disclosures after the Court ordered them to do so. *See* 5/1/19 Trial Tr. at 480:21-483:5 (The Court: "I want you to narrow that list tonight when you figure out what you're actually going to use.").

- At the end of the second day of trial, Defendants demanded a Markman hearing for the first time in the case, and then failed to file the submission ordered by the Court to hold a Markman hearing the following morning. *See* 5/1/19 Trial Tr. at 462:19-464:1.

- To reduce his damages exposure, Mr. Pichler falsely testified at trial that no Infringing Flats had been made or sold before June 2018. *See* 5/2/19 Trial Tr. at 939:10-19.

There is no disputing that Defendants engaged in "numerous instances of litigation misconduct" at every stage of this case, which when considered collectively, amounted to "an overall vexatious litigation strategy" that is more than "sufficient to support an exceptional case determination." *Monolithic Power Sys., Inc. v. O2 Micro Intern. Ltd.*, 726 F.3d 1359, 1367 (Fed. Cir. 2013).

### D.      The Court May Also Award Attorneys' Fees Under Its Inherent Powers

Under its inherent powers, a district court may "assess attorneys' fees . . . when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 259 (1975). The bad-faith standard for the award of fees "is not restricted to cases where the action is filed in bad faith," therefore "[b]ad faith may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation." *Roadway Exp. Inc. v. Piper*, 447 U.S. 752, 766 (1980). "[I]f in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991).

As detailed above, Defendants acted in bad faith by willfully infringing the patents and committing intentional trade dress infringement, false advertising, and unfair competition; they litigated this case through trial without any defenses to Gavrieli's Lanham Act claims; they asserted factually baseless and legally barred counterclaims in an attempt to force a settlement; and they unreasonably multiplied the proceedings to force Gavrieli to incur significant legal

expenses.  Defendants' collective actions wantonly wasted the resources of the Court and Gavrieli, justifying an award of attorneys' fees under the Court's inherent authority.

For the foregoing reasons, Gavrieli requests an order finding this case exceptional under 35 U.S.C. § 285, and 15 U.S.C. § 1117, and the Court's inherent power.  If the motion is granted, Gavrieli requests fourteen days to submit the appropriate documentation and affidavits to substantiate the amount of attorneys' fees it seeks to recover.

### III.    THE COURT SHOULD ENHANCE THE DAMAGES AWARD BY TRIPLE

"Section 35 of the Lanham Act endows the district court with considerable discretion in fashioning an appropriate remedy for infringement" by awarding any amount in excess of actual damages that does not exceed three times that amount.  *Taco Cabana*, 932 F.2d at 1127 (citing 15 U.S.C. s 1117(a)).  The jury's damages award should be tripled for at least two reasons.

*First*, Defendants' acts of intentional trade dress infringement, false advertising, and unfair competition alone warrant enhancing the jury's damages award by triple.  *Taco Cabana*, 932 F.2d at 1127 (enhancing damages for willful trade dress infringement; "An enhancement of damages may be based on a finding of willful infringement."); *e.g.*, *Deering Milliken & Co. v. Gilbert*, 269 F.2d 191, 194 (2d Cir. 1959) (trebling damages due to "the deliberate and fraudulent nature of the infringement."); *Larsen v. Terk Tech. Corp.*, 151 F.3d 140 (4th Cir. 1998) (same); *New York Racing Ass'n, Inc. v. Stroup News Agency Corp.*, 920 F. Supp. 295, 301 (N.D.N.Y. 1996) (same). By continuing to willfully infringe in the face of a court judgement, Defendant have shown that the jury's damages award is not a sufficient deterrent.  Enhancement is therefore needed not only to deter Defendants from willfully infringing in the present case, but also from engaging in egregious infringement in the future.  *See A & H Sportswear Co. v. Victoria's Secret Stores, Inc.*, 167 F. Supp. 2d 770, 802 (E.D. Pa. 2001) ("Damages may be enhanced … in order to deter cases of egregious infringement"); *Sweetzel, Inc. v. Hawk Hill Cookies, Inc.*, 1996 U.S. Dist. LEXIS

- 26 -

8562, at *7 (E.D. Pa. June 19, 1996) ("[C]ourts have required that the final remedy imposed …

provide a sufficient deterrent to ensure that the guilty party will not return to its former ways and

once again pollute the marketplace.").

*Second*, the jury's damages award should be enhanced to compensate for Defendants'

intentional failure to produce complete and reliable sales records. "[E]nhancement could,

consistent with the 'principles of equity' promoted in [§ 1117], provide proper redress to an

undercompensated plaintiff where imprecise damages calculations fail to do justice, ***particularly***

***where the imprecision results from defendant's conduct***."  *Taco Cabana*, 932 F.2d at 1127

(emphasis added); *Bos. Prof'l Hockey Ass'n v. Dallas Cap & Emblem Mfg., Inc.*, 597 F.2d 71, 77

(5th Cir. 1979) ("[I]ncreased damages may be justified by defendant's withholding or

misrepresenting available sales records, which would have the effect of making much more

difficult, if not impossible, plaintiffs' proof of damages or profits.").

Rather than produce complete sales records for all of their sales channels, Defendants only

produced a summary of their Kickstarter sales, and intentionally withheld all of their sales order

records from Indiegogo and Shopify, including the sales orders placed by Gavrieli's counsel (D.I.

93 at Ex. 7) and Gavrieli's infringement expert, Ms. Caroline de Baere (D.I. 111 at Exs. 14-15).

Even after the Court compelled their production, Defendants' chose to violate that order by

continuing to withhold these sales order records.  Because Defendants' Indiegogo and Shopify

sales cannot be independently verified,[1] Gavrieli could not calculate with detailed specificity

Defendants' ill-gotten gains.  Indeed, Gavrieli's damages expert, Mr. Neil Zoltowski, testified at

trial that the sales data produced by Defendants was incomplete, unreliable, and inconsistent,

leading to damages calculations that likely understated the true extent of Defendants' infringing

---

[1] Unlike Kickstarter, Indiegogo and Shopify do not publish sales revenues on their websites.

sales, as well as Gavrieli's loss of goodwill and cost of corrective advertising.  *See, e.g.*, Trial Tr. 849:23-850:2.  Given that Defendants' discovery misconduct and unreliable recordkeeping created this uncertainty, the Court should resolve any doubts about Defendants' sales in Gavrieli's favor. *Louis Vuitton S.A. v. Spencer Hangbags Corp.*, 765 F.2d 966, 973 (2d Cir. 1985) (recognizing that doubts about an infringer's actual sales should be resolved in the trademark holder's favor because infringer controls its sales data).

Accordingly, Defendants' willful failure to produce complete and reliable sales records justifies tripling the jury's damages award to compensate for the understated calculation of Defendants' sales.  *Playboy Enter. Inc. v. P.K. Sorren Export Co., Inc. of Fl.*, 546 F. Supp. 987, 998 (S.D. Fla. 1982) (enhancing damages award where "record strongly indicates that plaintiff's damages and defendants' profits were both greater than the amounts conclusively proven").

## IV.    <u>GAVRIELI IS ENTITLED TO PRE-JUDGEMENT INTEREST</u>

As the prevailing party, Gavrieli is presumptively entitled to prejudgment interest on the patent damages awarded "from the date of infringement to the date of judgment."  *Nickson Indus., Inc. v. Rol Mfg. Co*., 847 F.2d 795, 800 (Fed. Cir. 1988) (citing 35 U.S.C. § 284).  As the Supreme Court made clear in *General Motors Corp. v. Devex Corp*., 461 U.S. 648, 657 (1983), "prejudgment interest should ordinarily be awarded absent some justification for withholding such an award."  There is no reason to deviate from that rule here.  A prejudgment interest award "serves to make the patent owner whole, for damages properly include the foregone use of money of which the patentee was wrongly deprived."  *Sensonics*, 81 F.3d at 1574.

Prejudgment interest should also be awarded for Gavrieli's non-patent damages.  "It is a long-standing rule of our federal common law that, in the absence of an explicit statutory command otherwise, district courts have broad discretion to award prejudgment interest on a judgment obtained pursuant to a federal statute."  *William A. Graham Co. v. Haughey*, 646 F.3d 138, 144

(3d Cir. 2011).  Courts routinely award prejudgment interest in Lanham Act cases.  *See Gorenstein Enters., Inc. v. Quality Care-USA, Inc*., 874 F.2d 431, 436 (7th Cir. 1989) (awarding prejudgment interest on trademark infringement damages, noting that "[w]ithout [prejudgment interest], compensation of the plaintiff is incomplete and the defendant has an incentive to delay"); *N.V.E., Inc. v. Day*, 2009 WL 2526744, at *5 (D.N.J. Aug. 18, 2009) ("although the damages provisions of the Lanham Act appear silent on the matter, most courts have also permitted an award of prejudgment interest in exceptional cases" and "[w]illful and deliberate trademark infringement constitutes an exceptional case for purposes of attorneys' fees and prejudgment interest.").

The rate at which prejudgment interest is calculated is left to the sound discretion of the district court.  *Bio-Rad Labs., Inc. v. Nicolet Inst. Corp.*, 807 F.2d 964, 969 (Fed. Cir. 1986); *Skretvedt v. E.I. DuPont De Nemours*, 372 F.3d 193, 208 (3d Cir. 2004); *Sun Ship, Inc. v. Matson Nav. Co*., 785 F.2d 59, 63 (3d Cir. 1986) ("In federal question cases, the rate of prejudgment interest is committed to the discretion of the district court.").  After calculating the interest rate, courts determine whether to award simple or compound interest.  *Rite-Hite Corp. v. Kelley Co*., 56 F.3d 1538, 1555 (Fed. Cir. 1995).  Delaware courts frequently award prejudgment interest at the prime rate, compounded quarterly.  Courts in this District recognize that "the prime rate best compensate[s] a patentee for lost revenues during the period of infringement because the prime rate represents the cost of borrowing money, which is a better measure of the harm suffered as a result of the loss of the use of money over time."  *Amgen Inc. v. Hospira, Inc.*, 2018 WL 4080353, *20-21 (D. Del. 2018) (awarding prejudgment interest at the prime rate, compounded quarterly) (quoting *IMX, Inc. v. LendingTree, LLC*, 469 F. Supp. 2d 203, 227 (D. Del. 2007)); *Green Mountain Glass LLC v. Saint-Gobain Containers, Inc*., F. Supp. 3d 610, 627-28 (D. Del. 2018)

(same); *Ironworks Patents, LLC v. Apple, Inc.*, 255 F. Supp. 3d 513, 533-34 (D. Del. 2017) (same); *LG Display Co. v. AU Optronics Corp.*, 722 F. Supp. 2d 466, 475 (D. Del. 2010) (same).

Accordingly, Gavrieli respectfully requests that this Court award prejudgment interest on the $880,658 patent damages award, calculated at the prime rate, compounded quarterly. Gavrieli also requests that this Court award prejudgment interest on the $2,072,000 damages award from Defendants' trade dress infringement, false advertising, or unfair competition, calculated at the prime rate, compounded quarterly. Such interest should run from Defendants' first sale of infringing shoes on February 5, 2018 through May 13, 2019, the date of the Judgment. *Nickson*, 847 F.2d at 800. As set forth in the accompanying declaration of Gavrieli's damages expert, Neil Zoltowski, the total amount of prejudgment interest on the patent damages is $58,582, and the total amount of prejudgment interest on the nonpatent damages is $137,832, for a total of $196,414 in prejudgment interest. Zoltowski Decl., ¶ 8. Gavrieli therefore respectfully requests this Court amend the Judgment under Fed. R. Civ. P. 59(e) to award $196,414 in prejudgment interest. *See Hologic, Inc. v. Minerva Surgical, Inc.*, 2019 WL 1958020, at *4-5 (D. Del. May 2, 2019) ("Rule 59(e) has been invoked . . . to include prejudgment interest to which a party was entitled.").

## V.     **GAVRIELI IS ENTITLED TO POST-JUDGEMENT INTEREST**

As indicated in the Judgment, Gavrieli is entitled to post-judgment interest on the damages awarded pursuant to 28 U.S.C. § 1961(a). D.I. 149, ¶ 12. Section 1961 provides that post-judgment interest shall be "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield . . . for the calendar week preceding the date of the judgment."). 28 U.S.C. § 1961(a). Here, such rate was 2.36%. Zoltowski Decl., ¶ 9. As such, post-judgment interest currently accrues at $203.61 per day. *Id.*

## VI.    **CONCLUSION**

Gavrieli respectfully requests that the Court order the aforementioned relief.

Dated:  June 27, 2019

Respectfully submitted,

MORAN, LEWIS & BOCKIUS LLP

*/s/ Amy M. Dudash*
John V. Gorman (DE Bar No. 6599)
Amy M. Dudash (DE Bar No. 5741)
The Nemours Building
1007 North Orange Street
Suite 501
Wilmington, Delaware 19801
Telephone:  302.574.3000
Fax:  302.574.3001
john.gorman@morganlewis.com
amy.dudash@morganlewis.com

*Attorneys for Plaintiff Gavrieli Brands LLC*