## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GAVRIELI BRANDS LLC, a California Limited Liability Company,<br><br>     Plaintiff,<br><br>     v.<br><br>SOTO MASSINI (USA) CORPORATION, a Delaware corporation; and THOMAS PICHLER, an individual,<br><br>     Defendants. | C.A. No. 18-462 (MN) |

### DEFENDANTS' MOTION FOR JMOL AND ALTERNATIVELY, NEW TRIAL

1.      Pursuant to Fed. R. Civ. P. 50(b), Defendants Soto Massini (USA) Corporation ("Soto-USA") and Thomas Pichler (collectively "Defendants" or "Soto Massini") submit as follows this Motion for JMOL and alternative request for a new trial (on certain issues where warranted) under Rule 59.[1]

### The Individual Defendant—Mr. Thomas Pichler—Should Not Be Personally Liable

2.      In ruling on Defendants' Rule 12 motion to dismiss, this Court dismissed Defendant "Soto Italy" but not the individual Defendant, Mr. Thomas Pichler.  *See* Ex. 1

---

[1] This Court should grant JMOL on any issue for which "a ***reasonable*** jury [did] not have a legally sufficient evidentiary basis to find for [Plaintiff]."  Fed. R. Civ. P. 50(a)(1) (emphasis added); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) ("[T]he court should review all of the evidence in the record."); *Walter v. Holiday Inns, Inc.*, 985 F.2d 1232, 1238 (3d Cir. 1993) (question on JMOL is "whether there is evidence upon which the jury could properly find a verdict" as it did).  Alternatively, a new trial is warranted "for any reason for which a new trial has heretofore been granted."  Fed. R. Civ. P. 59(a)(1)(A); *see also Maylie v. Nat'l R.R. Passenger Corp.*, 791 F. Supp. 477, 480 (E.D. Pa. 1992) (verdict against the weight of the evidence); *Blancha v. Raymark Indus.*, 972 F.2d 507, 512 (3d Cir. 1992) ("The decision to grant or deny a new trial is confided almost entirely to the discretion of the district court.").

(February 11, 2019 Minute Entry).[2]  The asserted basis for the requested dismissal of Defendant

Pichler included that "[h]olding Pichler liable for any alleged infringement would defeat the

entire purpose of creating a corporation . . . [and] there are no facts to indicate . . . that the

corporation is a 'facade.'"  *See* D.I. 29 at 7 ("[Because] Plaintiff cannot meet the exceedingly

high burden to hold a director liable for the actions of a corporation . . . , [t]he Court should

dismiss the claims against Pichler."); *see also* D.I. 30 (Pichler Declaration), D.I. 36-38 (reply

brief, declarations and exhibits).  Despite declining to dismiss Mr. Pichler individually without

explanation,[3] this Court has never assessed whether—as a matter of law under Rules 50 and 56

(rather than under Rule 12)—there could be any personal liability assessed against Mr. Pichler

individually, for example, by "piercing the corporate veil" and finding Pichler to be the "alter

ego" of the primary Defendant Soto- USA.  By this Motion, Defendants respectfully request that

the Court rule as a matter of law that Defendant Pichler does not share any liability in this action

with co-Defendant Soto-USA.

    3.      As the Court is fully aware, "Delaware takes corporate formalities seriously."  *See*

*Base Optics Inc. v. Liu*, 2015 Del. Ch. LEXIS 155, at *23 (Del. Ch. 2015) (citing *Wallace v.*

*Wood*, 752 A.2d 1175, 1183 (Del. Ch. 1999)).  "Veil-piercing" liability requires evidence

proving that Soto-USA is "a sham entity designed to defraud investors and creditors."  *Crosse v.*

*BCBSD, Inc.*, 836 A.2d 492, 497 (Del. 2003).  "[P]ersuading a Delaware court to pierce the

corporate veil is a difficult task.  Absent compelling cause, a court will not disregard the

corporate form or otherwise disturb the legal attributes, such as limited liability, of a

---

[2] Exhibits 1-7 hereto are filed directly herewith.

[3] The Court's February 11, 2019 Minute Entry states only as follows—in full—concerning
Defendant Pichler's requested dismissal: "The Court will DENY the Motion to Dismiss as to
defendant Thomas Pichler . . . ."  *See* Ex. 1.

corporation." *Midland Interiors, Inc. v. Burleigh*, 2006 Del. Ch. LEXIS 220, at *3 (Del. Ch. 2006) (internal quotation omitted); *see Crosse*, 836 A.2d at 497 (Delaware "courts have only been persuaded to pierce the corporate veil after substantial consideration of the shareholder-owner's disregard of the separate corporate fiction and the degree of injustice impressed on the litigants by recognition of the corporate entity.").

4.    Most importantly, veil piercing is only warranted when corporate formalities are disregarded to defraud the plaintiff.  That is not the case here, nor is there any evidence whatsoever to support such a contention.  To the contrary, the uncontroverted facts include that (a) Mr. Pichler did not conduct any of Soto Massini's business personally, (b) Mr. Pichler and Soto Massini have never "commingled" any funds; and (c) Mr. Pichler never received any business income directly or personally.  *See, e.g.*, D.I. 37 (Pichler Declaration).  The entire point of forming Soto-USA as a Delaware corporation was to limit Mr. Pichler's personal liability.  *See generally In re Opus E.*, LLC, 528 B.R. 30, 57-66 (Bankr. D. Del. 2015) (collecting cases); *see also Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 530 (D. Del. 2008) ("Limiting one's personal liability is a traditional reason for a corporation.") (internal citation omitted).  Moreover, even "dominion or control . . . , without evidence of fraud or similar injustice, will not support alter ego liability."  *See Opus* at 64-65 ("[F]raud or injustice [must] be found in the defendants' use of the corporate form itself."); *EBG Holdings LLC v. Vredezicht's Gravenhage*, 2008 Del. Ch. LEXIS 127, at *12 (Del. Ch. 2008) ("[T]he requisite element of fraud under the alter ego theory must come from an inequitable use of the corporate form itself as a sham, and not from the underlying claim.").  The burden of proof is beyond a mere preponderance of the evidence.  *See Burtch v. Opus, LLC*, 528 B.R. 30, 57 (Bankr. D. Del. 2015).

3

5.      More particularly as to Soto-USA and its principal Mr. Pichler, the undisputed and indisputable facts compel the conclusion as a matter of law that there can be no personal liability here.  First, every single dollar of sales revenue was received into the Soto-USA corporate bank account; not a single dollar was collected in any personal transaction.  Second, every business expense—from advertising to product cost (COGS), to legal expenses—was paid by Soto-USA, never by Mr. Pichler personally.  Third, Soto-USA produced in discovery all of the detailed records of the corporate revenues and costs, etc., in the form of all bank statements the company possesses.  Those statements show negative profits, but Plaintiff falsely claimed at trial that Mr. Pichler earned profits of over $800,000.  That is false, and Plaintiff knew and knows it is false.  Fourth, Soto-USA has paid its Delaware franchise taxes every year it has existed.  Fifth, every year of its existence, Soto-USA has appropriately filed its federal and state tax returns. *See* Ex. 2.

6.      Sixth, maintaining Soto-USA's corporate formalities also were important for Mr. Pichler's Visa status.  His status required a personal investment from abroad into a US corporation in which Mr. Pichler has a controlling ownership.  The Visa status alone requires the business to hire and employ US personnel, and to be a growing entity.  Proof submitted to DHS is required within 5 years. *See* Ex. 3.  The entity cannot legally be used to provide family income.  One is given 5 years to do that before submitting proof to the DHS.  Seventh, Soto-USA never had a chance to execute on its business plan because Plaintiff sued Soto-USA during the first step of raising funds; "kickstarter.com" is a crowdfunding/financing site, not an e-commerce/sales site.  Eighth, as everyone knows, every business starts out with only the entrepreneur(s): for example, Steve Jobs (Apple), Bill Gates (Microsoft), Elon Musk (Tesla).  Even Plaintiff's founders Kfir and Diekla Gavrieli started out small, as explained at trial.  Every

entrepreneurial venture is tied to and driven by the founders in the first phase of its existence before they hire the first employees.  This does not make the corporation less of a separate entity from its founders, just because the venture is young and in its startup phase.

7.  Ninth, the entire purpose of the corporate "veil" is to shield founders from personally liability caused by the actions of the corporation.  The veil should not be less secure just because there is only one individual involved in the business at the early stages.  Tenth and finally, Mr. Pichler relied on the strong corporate laws of Delaware for many reasons, including the strength of the corporate "veil" under Delaware corporate law, and also because he had not yet finalized where Soto-USA would actually build and grow the company after its initial crowdfunding stage.  Once determined that it would be in the state of Florida rather than in California, Soto-USA incorporated in Florida as well.

8.  Accordingly, Defendants request a ruling as a matter of law that Defendant Thomas Pichler bears no individual liability in this action.

### Plaintiff Admitted The Design Patents Are Invalid, Or At Least Were Not Infringed

9.  As Plaintiff's witnesses—including its experts—admitted unequivocally and repeatedly at trial, Plaintiff contends there exist *two (and only two) non-functional aspects* to the shoe sole designs claimed in the asserted design patents: *thickness and width, nothing else*. As Plaintiff's expert Ms. de Baere admitted in her discussion at trial:

> Q.  So I'm just trying to determine, you agree with me -- well, *part of your analysis was to distinguish this prior art design from the patented design, right?*
> A.  *Yes*.
> Q.  Okay.  And so I'm just trying to understand what makes it different and then we talked about the shapes and now I want to talk about the thickness.  So what makes it different in terms of the thickness?
> A.  It's the thickness and visibility from the side profile, yes.
> Q.  Okay. And so what design aspects makes something a peekaboo whereas something else is not a peekaboo?
> A.  The visibility from the side-view.

. . .

Q.  . . . So what I'm asking here is what aspects of the sole make it a peekaboo versus not a peekaboo? I assume one of them would be thickness?

A.  Yes.

Q.  Okay.  The thicker the sole is the more likely it is to be a peekaboo?

A.  I'm looking at the Tieks shoe and its thicker than this prior art, so it's more visible, yes.

. . .

Q.  So it seems to me, what makes something a peekaboo is two things, the thickness of the sole and then how far out it goes.  Would you agree with me there?

A.  I would need to have, you know, information, but --

Q.  Well, you have all the --

A.  It's one aspect.

Q.  You did an analysis and you have a lot of information.

A.  It's one aspect.

Q.  Okay.  Peekaboo, not a peekaboo.  And I think from what I've been hearing in this case and what I saw in your analysis is that although you didn't say that, what I'm deducing is that what makes this a peekaboo, this not a peekaboo is the fact, two things, is the fact that it's thicker according to you, second factor is that it's bigger, goes out to the end of the shoe, right?

A.  The visible.

Q.  That's what makes it visible; right, those two things, the thickness and the size?

. . .

A.  Those are two things that could make it more visible.

Q.  What else besides thickness and size could potentially make something a peekaboo?

A.  I would have to look -- I would have to look.

Q.  Have to look at what?

A.  I would need to look at other things.

Q.  What would you need to look at?

A.  Specifically it is a little bit wider and it is a little bit thicker, so it does make it more visible, yes.

Q.  Width, wider, I said size, okay. Let's go with wider. The thickness and the width of the two parts of the sole?

A.  Okay.

Q.  This is ***thicker and wider, peekaboo***.  This is ***thinner and less wide, not peekaboo***.  ***Is that accurate?***

A.  Okay.

Q.  Does what I said summarize what you concluded about what makes a peekaboo versus not a peekaboo?
A.  *Yes*.

Ex. 4 at 687:24-691:21 (emphasis added) (Trial Transcript, Volume 3).

10.     Another of Plaintiff's experts—Mr. Rake—re-affirmed Ms. de Baere's prior admissions concerning thickness and width being the only design features allegedly supporting the patentability of Plaintiff's asserted design patents:

Q.  So you were here for Ms. de Baere's testimony; right?
A.  Yes, I was.
Q.  You listened to her testimony?
A.  I did.
                                        . . .

Q.  Well, *she admitted that the only two design aspects that make something a peekaboo sole are thickness and width*.  And I'm asking you, sir, *do you disagree with that admission?*
                                        . . .

A.  I look at it in a different way.  *I won't say I disagree with it --*

Ex. 5 at 813:12-14:7 (emphasis added) (Trial Transcript, Volume 4).[4]

11.     Directly opposed to—and inconsistent with—Plaintiff's patentability contention based only on sole thickness and width being "non-functional," however, are the following 2011 admissions in Plaintiff's parent utility patent confirming the functionality of these identical width/thickness design aspects:

Advantageously, the disclosed shoes combine an upper and a midsole at a seam with an insole added in separately.  Thus, the insole is not concurrently stitched into the seam that joins the midsole to the upper.  This allows for (i) the perimeter of the heel outsole patch and the toe *outsole patch to be much closer to the seam*

---

[4] The experts had to admit the correctness of the very narrow scope of the claimed novel designs, because there are many very close—and also patentable—designs.  *See* Ex. 6 (U.S. Patent No. D751,280, citing Plaintiff's U.S. Patent No. D689,272).  The existence of patents for designs more closely similar to the Soto Massini design demonstrates that Plaintiff's patent is limited to the claimed novel, non-obvious width and thickness of the sole, which was shown at trial to be neither non-obvious nor novel.

>*joining the midsole to the upper [i.e. wider]*, and (ii) the ***outsole patches to be
thicker***, thereby affording better protection of the seam, midsole, and upper,
greater support and comfort to the foot, a more rigid footbed, and allows for the
insertion of thicker more substantial cushioning.

Ex. 7 (Trial Exhibit DTX-151, U.S. Patent No. 8,745,893 at 2:22-32).

12.     Therefore, because the only two claimed "ornamental" design aspects in the

asserted design patents are admittedly functional, as a matter of law the design patents are invalid

for functionality and thus, a lack of the required ornamentality for a design to be patentable.  *See*

35 U.S.C. § 171(a) (patentability requires a "new, original ***and ornamental***" design) (emphasis

added); *Best Lock Corp. v. Ilco Unican Corp.*, 94 F.3d 1563, 1566 (Fed. Cir. 1996) (asserted

design not patentable because claimed "ornamental" features instead functional).[5]  Alternatively,

a new trial would be necessary as the jury's verdict on patent validity is against the weight of the

foregoing uncontroverted admissions.

### The Patent Infringement Finding Was Unsupported By The Evidence

13.     Even if the asserted design patents could remain valid and extant, Plaintiff's

experts also admitted to the many non-infringing differences between the designs claimed in the

patent drawings, and the accused infringing Soto-USA design.  Ms. de Baere, for example,

admitted to the absence of many design features specifically claimed via the solid lines in the

patent drawings: (1) "sloped-up" heel profile (*see* Ex. 4 at 697:2-9); (2) "pleating" (*see id.* at

704:6-11); (3) shape of the "toe box" (*see id.* at 712:2-10); and (4) "stair-step" sole edge profile

---

[5] A judgment of patent invalidity is compelled also because of the immaterial differences in
"thickness" and "width" between the claimed ornamental soles and those of Plaintiff's own prior
art shoe.  As Ms. de Baere admitted (*see* Ex. 5 at 687:9-689:24), and as is apparent from any
reasonable comparison of the prior art and claimed designs, there is no difference meaningful
enough to support the novelty and non-obviousness required for patentability.

(*see id.* at 714:15-22).  All of these differences together make the jury's verdict of patent infringement insupportable, requiring JMOL of non-infringement or a new trial.

## The Evidence Was Insufficient To Support False Advertising

14.     The jury's finding of false advertising is insupportable based on the evidentiary record, warranting JMOL in favor of Soto-USA.  Plaintiff's first contention was that Soto-USA falsely advertised its shoes as made with "full grain Nappa leather."  Ex. 4 at 795:3-802:15. Plaintiff's expert analyzed a sample shoe, and also asserted that "leather is important to consumers" (*id.* at 799:10-20) and Plaintiff was harmed (*id.* at 802:5-15).  Completely missing from Plaintiff's evidence was any proof whatsoever that the shoe the expert analyzed was a commercial product, rather than an early factory sample (*i.e.*, prototype which it was).  Plaintiff presented no evidence concerning the leather used in the actual commercial products received by Soto-USA's crowdfunding backers.  Without any such proof of any "use in commerce," the Lanham Act and its "false advertising" provisions are not implicated and cannot form the legal basis for any relief.  *See* 15 U.S.C. § 1125(a) (false advertising claim arises only through "use[] in commerce . . . in commercial advertising or promotion").  As the famous *Conte Brothers* case reminds, the Lanham Act is limited to "commercial interests [that] have been harmed by a competitor's false advertising," not whether cheaper leather is used in an early, non-production, "one-off" sample of a shoe given to an insider for testing and feedback.  *See Conte Bros. Auto., Inc. v. Quaker State-Slick 50, Inc.*, 165 F.3d 221, 234 (3d Cir. 1998) (emphasis added).

15.     Plaintiff's second contention was that Soto-USA falsely advertised that it donated "about one quarter of our profits to women or children-focused nonprofit organizations."  Ex. 4 at 537:3-538:5.  But again, besides no proof that any such statement was commercial in nature or used "in commerce," Mr. Pichler explained that the statement was understood to be aspirational,

not past- or present-tense factual.  *See id.* at 538:4-5 ("I just said because that's the plan for the

Soto Massini business.").  As such, the jury did not have "a legally sufficient evidentiary basis to

find for [Plaintiff]" on false advertising, and JMOL should be entered in Defendants' favor, or a

new trial should be ordered.

### The Evidence Was Insufficient To Support Trade Dress Infringement

16.     As with false advertising, Plaintiff's trade dress claim—which was based solely

on blue-colored soles—should fail for insufficient evidence of any commercial use by Soto-USA

of any blue-colored soles.  As presented by Plaintiff itself, Soto-USA never sold or even offered

for sale any blue-soled shoes. See Ex. 4 at 523:6-23.  Soto-USA had a different shade of blue as

its concept used in a few prototypes, but that was all.  Therefore, the jury did not have "a legally

sufficient evidentiary basis to find for [Plaintiff]" on trade dress infringement, and JMOL should

be entered in Defendants' favor, or a new trial should be ordered.[6]  A second reason the trade

dress claim was insufficiently proven is that Plaintiff's expert admitted he did not use any ballet

flats in his "likelihood of confusion" comparison charts.  Compounding that failure, Plaintiff

provided no proof of "single source confusion" based on the blue colored soles, as opposed to

customers simply recognizing that Plaintiff's shoes—among perhaps many others—use the color

blue (one of only 6 primary and secondary colors).

---

[6] The jury's finding of customer confusion was unwarranted for lack of sufficient evidence as
well, particularly on balance compared to rebuttal evidence including the disclaimer signed by all
backers of Soto Massini, acknowledging no affiliation with Plaintiff.  No confusion resulted in a
sale to Soto-USA rather than Plaintiff.  Why would anyone wait for a Soto-USA shoe for a year
when they could buy from Plaintiff within a few days?  Because—the Soto-USA shoe is distinct
from Plaintiff rather than confusingly similar.

## The Monetary Award Should Be Eliminated Or At Least Reduced

17.      The jury's verdict on damages was so inordinately high, there was no "legally sufficient evidentiary basis" for the amounts determined.  *See* D.I. 149 at 1-2.  Revisiting a jury verdict on damages is appropriate where the amount of an award is "so grossly excessive that it shocks the judicial conscience, or if it is unconstitutionally excessive because it is predicated on an impermissible basis." *Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, 391-92 (3d Cir. 2016). First, the jury awarded "profits earned by Defendants in the amount of $880,658," but as Mr. Pichler testified repeatedly, Soto-USA earned less than ZERO profits.  *See* Ex. 5 at 931:15-25.[7] Second, the jury awarded "$1,282,000 as compensation for loss of goodwill caused by Defendants' trade dress infringement [and] false advertising," but even if liability remains, Soto-USA sold no blue-soled shoes (only a few prototypes), and its statements about its leather and charitable aspirations were so de minimis that any liability cannot support such an exorbitant level of damages assessed for "loss of goodwill."  It makes no logical sense.  Third, the jury also awarded "$790,000 as compensation for corrective advertising," which again is wildly disproportionate to the extent of any actual liability.  Therefore, the jury did not have "a legally sufficient evidentiary basis" to support these damages numbers, and JMOL should be entered in Defendants' favor, or a new trial should be ordered.

---

[7] The jury apparently (and improperly) ignored Mr. Pichler unrebutted testimony that the costs incurred to deliver the Soto Massini products to its backers exceeded the company's revenues. See Ex. 5 at 931:15-25.  The finding of any "profits" by the jury was completely counter-factual.

## Conclusion

18.     For each of the foregoing reasons, Defendants request respectfully JMOL in their

favor (in whole or in part) and/or a new trial.


                                        Respectfully submitted,

Dated:  June 27, 2019                   **STAMOULIS & WEINBLATT LLC**

OF COUNSEL:                             _/s/ Stamatios Stamoulis_
                                        Stamatios Stamoulis (#4606)
Stephen M. Lobbin                       800 N. West Street, Third Floor
Austin J. Richardson                    Wilmington, DE  19801
**SML AVVOCATI P.C.**                   302.999.1540
888 Prospect Street, Suite 200          stamoulis@swdelaw.com
San Diego, CA 92037
sml@smlavvocati.com                     _Attorneys for Defendants_
ajr@smlavvocati.com