## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

GAVRIELI BRANDS LLC, a California
Limited Liability Company,

       Plaintiff,

  v.

SOTO MASSINI (USA) CORP., a Delaware
corporation; and THOMAS PICHLER, an
individual,

       Defendants.

Case No. 18-cv-00462-MN

## PLAINTIFF GAVRIELI BRANDS LLC'S OPPOSITION TO DEFENDANTS' MOTION FOR JMOL AND ALTERNATIVELY NEW TRIAL

John V. Gorman (DE Bar No. 6599)
Amy M. Dudash (DE Bar No. 5741)
**MORGAN, LEWIS & BOCKIUS LLP**
The Nemours Building
1007 North Orange Street
Suite 501
Wilmington, Delaware 19801
Telephone:  302.574.3000
Fax:  302.574.3001
john.gorman@morganlewis.com
amy.dudash@morganlewis.com

Michael J. Lyons (admitted *pro hac vice*)
Ahren C. Hsu-Hoffman (admitted *pro hac vice*)
Ehsun Forghany (admitted *pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
1400 Page Mill Road
Palo Alto, CA 94304
Telephone: 1.650.843.4000
michael.lyons@morganlewis.com
ehsun.forghany@morganlewis.com

Sharon R. Smith (admitted *pro hac vice*)
Brett A. Lovejoy, Ph.D (admitted *pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone: 1.415.442.1000
sharon.smith@morganlewis.com
brett.lovejoy@morganlewis.com

Dated: July 11, 2019

*Attorneys for Plaintiff Gavrieli Brands, LLC*

## TABLE OF CONTENTS

**Page**

I.     DEFENDANT THOMAS PICHLER SHOULD REMAIN PERSONALLY LIABLE ............................................................................................ 1

    A.    Defendants' Waived Any Right to Relitigate Mr. Pichler's Personal Liability................................................................................................. 1

    B.    This Court Already Found Mr. Pichler to Be Personally Liable Under an Agency and Alter-Ego Theory.................................................... 3

    C.    The Jury Properly Found Mr. Pichler Personally Liable for Participating in SM USA's Tortious Conduct................................................. 4

    D.    Alternatively, the Court May Find Personal Liability as a Discovery Sanction.................................................................................... 7

II.    AMPLE EVIDENCE SUPPORTS THE PATENT VALIDITY VERDICT.................... 8

III.    AMPLE EVIDENCE SUPPORTS THE PATENT INFRINGEMENT VERDICT........ 12

IV.    AMPLE EVIDENCE SUPPORTS THE FALSE ADVERTISING VERDICT.............. 13

V.    AMPLE EVIDENCE SUPPORTS THE TRADE DRESS VERDICT .......................... 15

VI.    AMPLE EVIDENCE SUPPORTS THE JURY'S DAMAGES AWARD ..................... 18

VII.    CONCLUSION........................................................................................... 20

# TABLE OF AUTHORITIES

Page

**Cases**

*In the Matter of Amstar Corp.*,
    83 F.T.C. 659, 1973 WL 165279 (1973) ................................................................20

*Attrezzi, LLC v. Maytag Corp.*,
    436 F.3d 32 (1st Cir. 2006)................................................................................19

*Babby v. City of Wilmington Dept. of Police*
    614 F. Supp. 2d 508 (D. Del. 2009) (Farnan, J.) ......................................................3

*Bergstrom v. Sears, Roebuck & Co.*
    496 F. Supp. 476 (D. Minn. 1980)........................................................................20

*Berry Sterling Corp. v. Pescor Plastics, Inc.*
    122 F.3d 1452 (Fed. Cir. 1997)............................................................................10

*Big O Tire Dealers, Inc. v. The Goodyear Tire & Rubber Company*
    561 F.2d 1365 (10 Cir. 1977)..............................................................................20

*BMW of North America, LLC v. Barreira*
    633 F. App'x. 882 (9th Cir. 2015) ........................................................................17

*Briese Lichttenchnik Vertriebs Gmbh v. Langton*
    2013 WL 12061874 (S.D.N.Y. Dec. 18, 2013) ........................................................6

*Cafasso v. Pennsylvania R. Co.*
    169 F.2d 451 (3d Cir. 1948)..................................................................................9

*Compaq Computer Corp. v. Ergonome Inc.*
    387 F.3d 403 (5th Cir. 2004) ................................................................................7

*Conti v. Corporate Serv. Group, Inc.*
    30 F. Supp. 3d 1051, 1073-74..............................................................................9

*CPC Int'l Inc. v. Archer Daniels Midland Co.*
    831 F. Supp. 1091 (D. Del. 1993)..........................................................................3

*Crocs. Inc. v. ITC*
    598 F.3d 1294 (Fed. Cir. 2010).............................................................................14

*Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*
    604 F.2d 200 (2d Cir. 1979).................................................................................17

*Donsco Inc. v. Casper Corp.*
    587 F.2d 602 (3d Cir. 1978).................................................................................5

## TABLE OF AUTHORITIES
(continued)

**Page**

*Egyptian Goddess, Inc. v. Swisa, Inc.*
543 F.3d 665 (Fed. Cir. 2008) (en banc)....................................................................14

*Ely v. Reading Co.*
424 F.2d 88 (3d Cir. 1973)...........................................................................................3

*Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*
796 F.3d 1312 (Fed. Cir. 2015)...........................................................................10, 11

*Flame S.A. v. Indus. Carriers, Inc.*
39 F. Supp. 3d 752, 766 (E.D. Va. 2014) ....................................................................8

*Global Traffic Tech. LLC v. Morgan*
620 F. App'x. 895 (Fed. Cir. 2015) .........................................................................5, 6

*Guglielmo v. Scotti & Sons, Inc.*
58 F.R.D. 413 (W.D. Pa. 1973) ...................................................................................8

*Hassan v. Stafford*
472 F.2d 88 (3d Cir. 1973)...........................................................................................3

*Hologic, Inc. v. Minerva Surgical, Inc.*
2019 WL 1958020 (D. Del. May 2, 2019)..................................................................20

*Indep. Nat'l Distribs., Inc. v. Black Rain Commc'ns., Inc.*
1996 WL 238401 (S.D.N.Y. Apr. 4, 1996)..................................................................8

*Joseph v. LineHaul Logistics, Inc.*
549 F. App'x. 607 (9th Cir. 2013) ............................................................................15

*L.A. Gear, Inc. v. Thom McAn Shoe Co.*
988 F.2d 1117 (Fed. Cir. 1993).................................................................................11

*Levi Strauss & Co. v. Shilon*
121 F.3d 1309 (9th Cir. 1997) .............................................................................16, 20

*NFL v. Governor of State of Del.*
435 F.Supp 1372 (D. Del. 1977)................................................................................17

*Nike, Inc. v. Wal-Mart Stores, Inc.*
138 F.3d 1437 (Fed. Cir. 1998)..................................................................................20

*Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*
806 F.2d 1565 (Fed. Cir. 1986)...........................................................................5, 6, 7

*Petree v. Victor Fluid Power, Inc.*
831 F.2d 1191 (3d Cir. 1987)......................................................................................3

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Power Lift, Inc. v. Lang Tools, Inc.*
  774 F.2d 478 (Fed. Cir. 1985)................................................................5

*Rembrandt Wireless Techs., LP v. Samsung Elecs. Co., Ltd., et al.*
  2016 WL 362540 (E.D. Tex. Jan. 29, 2016)..........................................18

*Rosco, Inc. v. Mirror Lite Co.*
  304 F.3d 1373 (Fed. Cir. 2002)............................................................11

*S. New Eng. Tel. Co. v. Glob. NAPs Inc.*
  624 F.3d 123 (2d Cir. 2010)..................................................................8

*SDS USA, Inc. v. Ken Specialities, Inc.*
  2002 WL 31055997 (D.N.J. Aug. 28, 2002) ..........................................7

*Sheridan v. E.I. DuPont de Nemours & Co.*
  100 F.3d 1061 (3d Cir. 1996)................................................................1

*SimpleAir Inc. v. Google Inc.*
  77 F. Supp. 3d 569, 582-83 (E.D. Tex. 2014)......................................18

*Stainton v. Tarantino*
  637 F. Supp. 1051 (E.D. Pa. 1986) .......................................................8

*Symbol Techs. v. Metrologic Instruments, Inc.*
  771 F. Supp. 1390 (D.N.J. 1991) .......................................................5, 7

*Trent v. Atlantic City Elec. Co.*
  334 F.2d 847 (3d Cir. 1964)..................................................................8

*U.S. Surgical Corp. v. Hospital Products Int'l*
  701 F. Supp. 314 (D. Conn. 1991), *aff'd* 914 F.2d 271 (Fed. Cir. 1990) .................................5

*Vasquez v. NYC Dept. of Educ.*
  2015 WL 3619432 (S.D.N.Y. June 10, 2015) .......................................9

*Versa Prod. Co., Inc. v. Bifold Co. (Mfg.) Ltd.*
  50 F.3d 189 (3d Cir. 1995)..................................................................18

*Versata Software Inc. v. SAP America Inc.*
  717 F.3d 1255 (Fed Cir. 2013)........................................................18, 20

*White v. Mar-Bel, Inc.*
  509 F.2d 287 (5th Cir. 1975) ...............................................................7

*World Carpets, Inc. v. Dick Littrell's New World Carpets*
  438 F.2d 482 (5th Cir. 1971) ..............................................................18

**TABLE OF AUTHORITIES**
(continued)

**Page**

**Rules and Regulations**

Fed. R. Civ. P. 37(b) ....................................................................................................7

Fed. R. Civ. P. 50(a) ..................................................................................................20

Fed. R. Civ. P. 50(b) .....................................................................................9, 12, 20

To avoid liability for his tortious conduct, Mr. Pichler re-hashes the same arguments the Court previously rejected in ruling Mr. Pichler personally liable under an agency and alter-ego theory, entirely disregarding the Court's express directive to explain how this issue could have been preserved despite its absence from the pre-trial order. Defendants further ask this Court to supplant virtually every decision of the jury despite ample evidence submitted throughout a week-long trial supporting their verdict. As shown below, Defendants' fail to meet the stringent standard for obtaining judgement as a matter of law ("JMOL") or for a new trial.

## I.      DEFENDANT THOMAS PICHLER SHOULD REMAIN PERSONALLY LIABLE

In their Motion, Defendants contend "that Defendant Thomas Pichler bears no individual liability in this case" because the corporate veil cannot be pierced as a matter of law.  D.I. 155 ("Mot.") at 2-5.  To the contrary, this Court has already pierced the veil, and Defendants' waived their right to relitigate this issue in post-trial briefing by not raising it in the Pretrial Order.  D.I. 119.  And Defendants simply ignore the other  two independent bases for imposing personally liable: (1) this Court's Order finding an agency relationship between Mr. Pichler and SM USA (Ex. A), and (2) the jury verdict finding that Mr. Pichler personally participated in SM USA's tortious conduct (D.I. 143).  Finally, even if Mr. Pichler had not already been found personally liable, this Court could do so now as a sanction for Defendants' discovery misconduct.

### A.      <u>Defendants' Waived Any Right to Relitigate Mr. Pichler's Personal Liability</u>

When Defendants first requested that the veil-piercing issue be "reserved" for post-trial briefing on the third day of trial (Tr. 476:6-15), this Court reminded them that the corporate veil had already been pierced (Tr. 269:13-18), and that Defendants waived any further challenge by failing to preserve it in the Pretrial Order (Tr. 476:16-477:4). Tr. 476:19-22 ("There is a section in the pretrial order for issues of law that remain to be litigated. And to the extent that you think [veil piercing] is an issue of law that remains, it should have been raised."); Tr. 270:21-271:9 ("If you're

saying there's an issue to be tried now as to his liability being separate than that of the company, it should have been in the pretrial order."). This Court authorized further briefing only to "allow [Defendants] to try and convince me that [the veil-piercing issue] was not waived, because it was not raised in the pretrial order." Tr. 476:17-477:4, 477:13-16 ("I'm saying you can try and convince me in the post-trial papers that the issue has not been waived"). Despite this clear directive, Defendants do not even bother to address waiver, re-arguing only the merits instead. Mr. Pichler has now compounded his waiver by not only failing to raise the veil-piercing issue in the Pretrial Order, but also by failing to address this waiver in its current Motion.[1]

The Pre-trial Order confirms that Mr. Pichler's personal liability had been conclusively resolved not only by failing to identify it as an open legal issue, but also by referring to Mr. Pichler and SM USA collectively as "Defendants." Tr. 476:17-477:4 (The Court: "[T]o the extent that [Defendants] think [veil piercing] is an issue of law that remains, it should have been raised. And instead the pretrial order repeatedly just refers to all the defendants together as the Soto Massini defendants without making any distinction."). Even the uncontested Verdict Form fails to differentiate Mr. Pichler from SM USA —confirming that even Defendants appreciated that the veil-piercing issue had already been resolved against them. D.I. 143.

Under these circumstances, Delaware district courts routinely find "that the movant has waived any arguments and theories not presented in the Final Pretrial Order," and "deny the [movant's] Motion for [JMOL] to the extent that it raises such waived defenses." *Babby v. City of Wilmington Dept. of Police*, 614 F. Supp. 2d 508, 511 (D. Del. 2009) (Farnan, J.); *CPC Int'l Inc.*

---

[1] Defendants should not be heard to raise any arguments against waiver for the first time in the Reply. Given that Defendants needed to first persuade the Court there was no waiver before addressing the merits, their failure to address this issue in their opening brief can only be seen as a calculated and improper attempt to deprive Gavrieli of the opportunity to respond.

*v. Archer Daniels Midland Co.*, 831 F. Supp. 1091, 1102-03 (D. Del. 1993) (McKelvie, J.) (denying JMOL because movant "waived the right to rely on the defenses it identified in its post-trial briefing" by "failing to include them in the draft pretrial order"). As the Third Circuit has recognized, "[o]ne of the main purposes of the pretrial conference is to formulate the issues to be litigated to aid the parties in preparation for trial," and allowing parties "to change the positions taken at pretrial obviously destroys the effectiveness of this procedure." *Ely v. Reading Co.*, 424 F.2d 88, 95 (3d Cir. 1973); *Petree v. Victor Fluid Power, Inc.*, 831 F.2d 1191, 1194 (3d Cir. 1987) ("The finality of the pretrial order contributes substantially to the orderly and efficient trial of a case."). For this reason, "a pretrial order when entered limits the issues for trial and in substance ***takes the place of pleadings*** covered by the pretrial order." *Hassan v. Stafford*, 472 F.2d 88, 95 (3d Cir. 1973) (emphasis added). The Motion on personal liability should be denied as waived.

**B.    This Court Already Found Mr. Pichler to Be Personally Liable Under an Agency and Alter-Ego Theory**

This Court unequivocally found SM USA to be the "agent" and "alter ego" of Mr. Pichler when it exercised personal jurisdiction over him. D.I. 155 at 12-14 ("Mr. Pichler is also subject to personal jurisdiction by virtue of this Court's jurisdiction over SM USA under an agency and under an alter-ego theory."). Mr. Pichler's liability under agency and alter-ego theories turned on issues of law that this Court resolved at the February 11, 2019 hearing (Ex. A). This Court later confirmed at trial that it had already pierced the corporate veil. Tr. 269:13-15 ("I've ruled that [Mr. Pichler] is responsible [] for the actions of [SM USA] through the alter ego theory.");Tr. 269:18-20 ("[I] found that [Mr. Pichler] was an appropriate party through the alter ego theory.").

Contrary to Defendants' contentions, the Court did more than just test the sufficiency of Gavrieli's pleadings; it found SM USA to be the agent and alter ego of Mr. Pichler based on the evidence Gavrieli gathered during discovery and submitted with its briefing. D.I. 155 at 32:5-10;

D.I. 32; D.I. 86; Tr. 475:22-23 ("Discovery took place and I allowed admissions based on discovery that took place."). This Court made express findings to support its determinations:

> As to agency, Mr. Pichler controls SM USA and dominates it. He has authorized the actions that are relevant to this case. SM USA is under his dominion and control. He has authorized the actions that are relevant to this case. SM USA is under his dominion and control.
>
> * * * * *
>
> In addition, it seems clear that no corporate formalities have been followed. As stated in defendant's discovery letters, SM USA is one man. The company has been in existence since 2016, but it has not prepared any corporate records or financial documents and had not filed tax returns. There is no real board of directors. It is not registered to do business. The company and the man, Mr. Pichler, are indistinguishable regarding the issues in this case and Mr. Pichler is subject to jurisdiction by virtue of this Court's jurisdiction over SM (USA) under at least agency and alter ego theories.

D.I. 155 at 34:12-17, 35:23-36:10. Had the Court merely found that Gavrieli's *pleadings* sufficiently stated an alter-ego claim, the Court would have granted Gavrieli's request for further jurisdictional discovery. D.I. 32 at 13-16. The Court's decision not to reopen discovery further confirms that the Court pierced the veil when it exercised personal jurisdiction over Mr. Pichler.

At bottom, Defendants' request for JMOL is nothing more than an improper attempt to relitigate issues that were resolved by the Court before trial and, therefore, should be denied.

## C.   The Jury Properly Found Mr. Pichler Personally Liable for Participating in SM USA's Tortious Conduct

Defendants' Motion should likewise be denied because substantial evidence supports the jury verdict finding Mr. Pichler personally liable for patent and trade dress infringement, false advertising, and unfair competition. D.I. 143. Rather than challenge the sufficiency of this evidence, Defendants' Motion is premised on the faulty contention that Mr. Pichler cannot be personally liable for any tortious conduct he commits unless Soto USA's corporate status is disregarded. Mot. at 2. But "[e]ven with respect to officers of a corporation, it is hornbook law

that there is no need to pierce the corporate veil in order to find personal liability." *Symbol Techs. v. Metrologic Instruments, Inc.*, 771 F. Supp. 1390, 1402 (D.N.J. 1991).  Rather, "officers of a corporation are personally liable for tortious conduct of the corporation if they personally took part in the commission of the tort."  *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1579 (Fed. Cir. 1986).  For this reason, "corporate officers who actively assist their corporation's infringement may be personally liable for infringement *regardless* of whether the circumstances are such that a court should disregard the corporate entity or pierce the corporate veil."  *Global Traffic Tech. LLC v. Morgan*, 620 F. App'x. 895, 907 (Fed. Cir. 2015) (emphasis in original).  Indeed, "[t]he cases are legion in which courts have recognized and imposed personal liability on corporate officers for participating in, inducing, and approving acts of patent infringement."  *Orthokinetics*, 806 F.2d at 1579 (upholding jury verdict finding corporate officer personally liable for committing acts of direct and indirect patent infringement); *U.S. Surgical Corp. v. Hospital Products Int'l*, 701 F. Supp. 314, 348 (D. Conn. 1991), *aff'd* 914 F.2d 271 (Fed. Cir. 1990) (same); *Power Lift, Inc. v. Lang Tools, Inc.*, 774 F.2d 478, 481 (Fed. Cir. 1985) (same); *Donsco Inc. v. Casper Corp.*, 587 F.2d 602, 605 (3d Cir. 1978) (same for Lanham Act violations).

The Federal Circuit's decision in *Global Traffic* is controlling.  There, the corporate officer appealed a jury verdict finding him personally liable for the corporation's patent infringement, arguing that as a "corporate officer, he cannot be found personally liable for infringement absent a finding that the corporate veil should be pierced."  620 F. App'x. at 907.  The Federal Circuit squarely rejected this argument, holding that "there was no need to pierce the corporate veil to find [the officer] derivatively liable for [the corporation's] infringement." *Id*. Relying solely on evidence that the officer had helped the corporation's customers perform the patented method, the court found that "the jury had a sufficient basis to find that [the officer] personally induced

infringement based on his own actions, and was therefore directly liable."  *Id.*; *see also* *Orthokinetics*, 806 F.2d at 1580 (corporate officer liable for direct patent infringement); *Briese Lichttenchnik Vertriebs Gmbh v. Langton*, 2013 WL 12061874, at *5 (S.D.N.Y. Dec. 18, 2013).

The trial evidence in this case easily meets—and exceeds—the *Global Traffic* criteria for holding Mr. Pichler personally liable.  As the only owner, officer, and employee of SM USA (Tr. 853:14-16 (N. Zoltowski), 932:1-3 (T. Pichler)), Mr. Pichler was solely responsible for every act of patent and trade dress infringement, false advertising, and unfair competition committed by SM USA and was "the only one[] who stood to benefit from sales of [the infringing flats]." *Orthokinetics*, 800 F.2d at 1579 (officer personally liable where he was "at all material times the President and sole stockholder" of the corporation). The record shows that Mr. Pichler designed the infringing flats, created the marketing materials for those flats, disseminated advertisements falsely describing the flats, personally operated the Kickstarter and Indiegogo campaigns that sold the flats under his own name, and even responded to customer inquiries about the flats.  Tr. 516:7-12, 524:2-6, 898:16-25 (T. Pichler); PTX-396; PDX-3-38; *Orthokinetics*, 806 F.3d at 1579 (officers personally liable where they "were directly responsible for the design and production of the infringing chairs"); *Symbol Tech.*, 771 F. Supp. at 1405 (same where officer "personally conceived of the infringing device"); *White v. Mar-Bel, Inc.*, 509 F.2d 287, 292-93 (5th Cir. 1975) (same where officer "participated in the development and promotion of the sale of his machine").

The trial record also supports holding Mr. Pichler personally liable based on his inducement of SM USA's infringement.  The jury was instructed on induced infringement (D.I. 141), and presented with evidence showing that Mr. Pichler both had pre-suit knowledge of Gavrieli's patent and trade dress rights (Tr. 255:19-257:13 (K. Gavrieli); PTX-406, PTX-408, PTX-410), and knowledge that SM USA infringed those rights, as demonstrated by Mr. Pichler's

false assurances to Gavrieli that he would cancel the Kickstarter campaign before any customers were charged (Tr. 259:23-260:16 (K. Gavrieli); PTX-408, PTX-410). Mr. Pichler is personally liable for his decision to direct SM USA to continue its infringement of Gavrieli's patent and trade dress rights. Tr. 260:21-261:20; *SDS USA, Inc. v. Ken Specialities, Inc.*, 2002 WL 31055997, at *7 (D.N.J. Aug. 28, 2002) (officer personally liable for directing sales after notice of patents).

### D. Alternatively, the Court May Find Personal Liability as a Discovery Sanction

To the extent Mr. Pichler had not already been deemed personally liable, the Court could do so now as a sanction for Defendants' discovery misconduct. *Compaq Computer Corp. v. Ergonome Inc.*, 387 F.3d 403, 412-14 (5th Cir. 2004) (affirming veil-piercing sanction for frustrating discovery). As set forth in Gavrieli's Motion for Sanctions (D.I. 111), Defendants may be sanctioned under Rule 37(b) and the Court's inherent authority for *violating this Court's Discovery Order* by continuing to withhold critical evidence of Mr. Pichler's personal liability after repeatedly *making false statements to this Court*, *falsely answering discovery requests*, and *falsely testifying at deposition* to conceal the existence of this evidence. D.I. 111. By withholding financial records and falsely testifying about finances, Defendants' misconduct has improperly obscured the structure and operation of their business. *Indep. Nat'l Distribs., Inc. v. Black Rain Commc'ns., Inc.*, 1996 WL 238401, at *5 (S.D.N.Y. Apr. 4, 1996) (piercing corporate veil as a discovery sanction where evidentiary "'weakness' … is a direct result of [Defendants'] failure to comply with discovery requests and orders."); *S. New Eng. Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 147 (2d Cir. 2010) (same); *Flame S.A. v. Indus. Carriers, Inc.*, 39 F. Supp. 3d 752, 766 (E.D. Va. 2014) (same). This Court should similarly find Mr. Pichler personally liability as a sanction.

## II.     AMPLE EVIDENCE SUPPORTS THE PATENT VALIDITY VERDICT

Defendants contend that the jury's finding of patent validity should be set aside because the claimed designs purportedly consist of only two elements—thickness and width—and these elements are functional, not ornamental.  Mot. at 5-8.  This contention fails for multiple reasons.

As an initial matter, Defendants' request to overturn the jury's verdict based on allegations of functionality should be rejected because Defendants' waived this defense by choosing not to submit an instruction to the jury on this issue.  At the charge conference, Defendants told the Court that "we'll get you a proposed instruction with citations" on "the functionality issue." Tr. 967:6-17.  But Defendants never did so.  Ex. B (5/2/19 Email from S. Lobbin to D. Welham: "Please inform the Judge that Defendants will not be submitting an additional proposed jury instruction for consideration.").  Defendants thus waived the right to have this issue considered by the jury. *Stainton v. Tarantino*, 637 F. Supp. 1051, 1076 (E.D. Pa. 1986) (holding claim abandoned by failing to submit jury instruction); *Cafasso v. Pennsylvania R. Co.*, 169 F.2d 451, 454 (3d Cir. 1948) (same). Since Defendants abandoned its functionality defense and the jury was not instructed on this issue, it cannot serve to set aside the jury's verdict through a Rule 50(b) motion. *Vasquez v. NYC Dept. of Educ.*, 2015 WL 3619432, at *8 (S.D.N.Y. June 10, 2015) ("[T]he Court will not set aside the jury's verdict based on an affirmative defense that was not included in the jury's instructions, particularly where the Defendants were aware of the defense and by all appearances made a conscious decision not to request the instruction."); *Conti v. Corporate Serv. Group, Inc.*, 30 F. Supp. 3d 1051, 1073-74 (denying JMOL; "Defendants' failure to request a jury instruction on a WLAD same-decision defense is fatal to their attempt to invoke it now").

Even if Defendants' had not waived this defense, they have not demonstrated there is anything impermissibly functional about the claimed designs that warrants judgment as a matter of law.  Defendants contend that Gavrieli has conceded that "thickness" and "width" are purely

functional elements, but Gavrieli has done no such thing.  Indeed, "thickness" and "width" are not terms that denote functions, they describe how a design appears.  Defendants' assertion ignores the evidence presented at trial confirming the claimed "peekaboo" design is complex and incapable of being distilled down to just two elements.  Multiple witnesses testified that the peekaboo design is a unique, multifaceted design where the outsole not only peeks out from the bottom of the shoe but also creates a prominent, distinctive look without overpowering the elegance of a classic ballet flat.  *E.g.*, Tr. 166:13-20, 168:4-21 (S. Hinton); Tr.  233:1-24, 234:20-24, 235:2-23, 236:5-17, 237:1-24, 238:23-239:23, 291:10-23, 292:14-295:13, 296:7-18, 301:4-302:12 (K. Gavrieli); Tr. 685:20-686:7 (C. de Baere); Tr. 792:8-10, 826:6-20 (L. Rake).

In particular, Professor Lance Rake confirmed that thickness and width are "part of what contributes to the peekaboo sole," but that they are not the only things that define the design.  Tr. 826:1-3.  He explained to the jury that the peekaboo sole design provides a unique "stance" with "a complex relationship of the uppers and the shape of the peekaboo sole," and that "[y]ou have to take all of that stuff into account to really get a feel for the character of that overall design."  *Id.* at 826:12-17.  He concluded "you can't distill it down to width and thickness or . . . the shape of a top line"—rather, "[i]t's got to be the overall visual impression and it's that character that comes through."  *Id.* at 826:17-20.  Ms. de Baere's testimony, quoted by Defendants, likewise explains that thickness and size were "two things that could make [the peekaboo sole] more visible"—but she did not say these were the only two things that defined the peekaboo design.  *See* Tr. 690:5-10 ("Q. So it seems to me, what makes something a peekaboo is two things, the thickness of the sole and then how far out it goes.  Would you agree with me there?  . . . A. It's *one* aspect.").

Defendants' motion should be denied because it ***fails to address*** why the ***overall*** peekaboo design should be declared invalid as functional as a matter of law.  *See Ethicon Endo-Surgery, Inc.*

*v. Covidien, Inc.*, 796 F.3d 1312, 1329 (Fed. Cir. 2015) ("We have also instructed that the overall appearance of the article—the claimed design viewed in its *entirety*—is the basis of the relevant inquiry, not the functionality of elements of the claimed design viewed in isolation."); *Berry Sterling Corp. v. Pescor Plastics, Inc.*, 122 F.3d 1452, 1455 (Fed. Cir. 1997) (same).

Defendants' motion also ***fails to apply*** the ***correct standard*** for determining whether the claimed designs are impermissibly functional.  A design patent is not invalid, as Defendants contend, just because it is possible to identify a function served by the article itself or a particular feature of the claimed design.  *Ethicon*, *at* 1329 ("[A] claimed design is not invalid as functional simply because the 'primary features' of the design could perform functions.").  Rather, the design must be "dictated by" its function.  *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993) ("[T]he design of a useful article is deemed to be functional when the appearance of the claimed design is 'dictated by' the use or purpose of the article.").  The Federal Circuit has focused on "the availability of alternative designs as an important—if not dispositive—factor in evaluating the legal functionality of a claimed design."  *Ethicon,* at 1329-30.  "[I]f other designs could produce the same or similar functional capabilities, the design of the article in question is likely ornamental, not functional."  *Rosco. v. Mirror Lite*, 304 F.3d 1373, 1378 (Fed. Cir. 2002).

In this regard, Defendants completely ignore the evidence confirming for the jury that the claimed peekaboo sole design is not dictated by function.  Professor Rake testified that, like the handle of a key, the peekaboo sole design serves a function (*i.e.*, protecting the midsole and the foot from the street) but "can appear a lot of different ways and still perform that same function."  Tr. 789:19-790:5.  Using the below demonstrative (*see* Ex. C), Professor Rake gave the jury an example of a sole design that is different from the claimed peekaboo design yet performs the same function of protecting the midsole and bottom of the foot:



PDX-3-25; Tr. 790:1-5 ("[T]he sole [on the right] is completely different. So even though it's performing the same function, it has a completely different appearance."). Professor Rake also opined that the accused designs—which were substantially similar to and found by the jury to infringe the claimed designs—were likewise nonfunctional. Tr. 790:6-16. Thus, there was substantial evidence that the overall peekaboo design—including the thickness and width of the outsole—is not governed by function.

The utility patent cited by Defendants (DTX-151) does not demonstrate functionality either.[2] Rather, it describes characteristics of the outsole (*i.e.*, "much closer to the seam," "thicker") and cites certain functions served by an outsole (*i.e.*, "better protection," "greater support," "comfort"). DTX-151 at 2:22-32. But this patent never suggests that the peekaboo sole claimed in Gavrieli's design patents is ***dictated by*** these functions. As Professor Rake confirmed, alternative designs serve the very same functions provided by the peekaboo sole design.

Finally, Defendants' threadbare argument in footnote 5—that Gavrieli's patents should be found invalid due to immaterial differences between the claimed designs and the early model

---

[2] In their motion, Defendants cite another patent, D751,280, and contend this patent somehow suggests the scope of the Tieks patents is narrow. But D751,28 was never presented at trial, never entered into evidence, and never the subject of any fact or expert witness testimony. Defendants' assertion that this patent should be considered in a Rule 50(b) motion is thus inexplicable, as the jury never saw or heard anything about it. This is yet another example of Defendants disregarding this Court's prior directives to refrain from introducing and making arguments based on evidence that was not timely or properly disclosed. Defendants new arguments based on D751,280 and the scope of the Tieks patents should also be disregarded because Defendants never requested any claim constructions for the Tieks patents. Finally, D751,280 could not even theoretically be relevant to the validity inquiry because this patent is not prior art to any of the Tieks patents.

Tieks—is not developed or explained and should be summarily rejected.  Indeed, Defendants entirely ignore the overwhelming evidence presented to the jury regarding the substantial differences between the early model Tieks and the claimed designs and how the former does not feature the "peekaboo" sole design claimed in the patents.  These differences were confirmed by the testimony of Ms. de Baere, much of which Defendants cite in their own motion.  *See* Mot. at 5-6; Tr. 624:5-625:1; PDX-2-14 (demonstrative comparing early model Tieks versus current Tieks employing claimed design), PDX-2-46 to -49 (three-way comparisons of claimed designs with accused Soto Massini shoe and early model Tieks).  Gavrieli's other fact and expert witnesses likewise identified meaningful differences, providing additional, substantial evidence supporting the jury's conclusion that the claimed designs were not invalid in view of the early model Tieks shoe.  Tr. 239:4-21 (K. Gavrieli: "The early model . . . stuck to the convention of the traditional ballet flat, doesn't emphasize the outsole."); *id.* at 291:10-23, 292:19-293:5, 293:15-295:13, 296:7-24, 297:9-19, 301:4-302:12 (K. Gavrieli); *id.* at 603:3-23 (C. de Baere); *id.* at 788:13-25, 792:2-11, 793:1-7, 793:22-794:6 (L. Rake); PTX-119 (comparison charts comparing early model Tieks shoe with claimed designs).  The Motion for invalidity should therefore be denied.

## III.    AMPLE EVIDENCE SUPPORTS THE PATENT INFRINGEMENT VERDICT

Defendants contend that the patent infringement verdict should be set aside due to some purported differences between the claimed and infringing designs.  But the law is clear that "[m]inor differences between a patented design and an accused article's design cannot, and shall not, prevent a finding of infringement."  *Crocs. Inc. v. ITC*, 598 F.3d 1294, 1303 (Fed. Cir. 2010) Rather, the "overall appearance" of the patented and infringing designs need only be "substantially the same" to the ordinary observer.  D.I. 141, Final Jury Instruction 3.6; *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670 (Fed. Cir. 2008) (en banc).  The trial evidence far exceeds this standard.  The jury was provided with substantial evidence—including testimony from Gavrieli's

two independent infringement experts, Soto Massini customers, and even Mr. Pichler—showing that the overall appearance of the patented and infringing designs would be substantially the same to the ordinary observer.  Tr. 619:2-633:16 (C. de Baere), 782:24-784:3, 784:10-794:14 (L. Rake), 398:16-399:6 (A. Duffy), 524:7-526:16 (T. Pichler). Gavrieli also presented substantial evidence of actual confusion between the infringing flats and Tieks, which embody the patented designs. Tr. 628:14-17 (C. de Baere), 790:22-791:4 (L. Rake), 420:24-426:14 (K. Hollander: 49%-52.5% confusion rate), 524:7-10 (T. Pichler: admitting customers have "mentioned similarities between Tieks and Soto Massini"); PTX-105-115; PTX-490, -494, -517; PTX-302, -439, -957.  As the trier of fact, the jury was free to rely on this evidence of actual confusion and dismiss any purported differences between the infringing and patented designs as trial and not affecting the overall appearance of those designs to the ordinary observer.  The Motion should therefore be denied.

## IV.   AMPLE EVIDENCE SUPPORTS THE FALSE ADVERTISING VERDICT

Defendants contend that "[t]he jury's finding of false advertising is unsupportable based on the evidentiary record," but their Motion only challenges two of the three grounds for sustaining the false advertising verdict.  Mot. at 9-10.  In addition to falsely advertising the leather quality of the infringing flats and their charitable donations, the trial evidence shows that Defendants perpetrated a bait-and-switch scheme by advertising the infringing ballet flats in a blue outsole to trade upon Gavrieli's goodwill, but then, once the sale became final, delivered infringing flats with a black or purple outsole.  Tr. 261:6-20 (K. Gavrieli); *id.* at 522:14-23 (T.Pichler); *id.* at 607:14-22, 610:18-25-611:1 (C. de Baere).  Moreover, Gavrieli's footwear design and marketing expert, Ms. Caroline de Baere, testified that the outsole color of flats are highly influential to customers' purchasing decision (Tr. 649:16-21; PTX-219, PDX-2-111), and several Soto Massini customers even testified that they purchased the infringing ballet flats due to the blue outsole (Tr. 398:11-15,

527:16-528:6, 649:23-650:4, 650:7-12; PTX-106, PDX-2-112).  Defendants' failure to challenge this ground warrants denial of the Motion as futile.  *Joseph v. LineHaul Logistics, Inc.*, 549 F. App'x. 607, 610 (9th Cir. 2013) (affirming denial of JMOL motion as futile "because it challenged only the first ground, leaving the two grounds to sustain the verdict.").

The challenges raised by Defendants to the other two grounds are no more effective.  *First*, while Defendants argue that Gavrieli failed to present "any proof whatsoever that the shoe the expert analyzed was a commercial product" (Mot. at 9), the trial record shows otherwise.  In addition the alleged "prototype" flats that Alison Stevens produced during her deposition (PTX 369; PDX-3-41), Professor Rake testified that he also tested two infringing flats that Gavrieli's counsel had directly ordered through Kickstarter (Tr. 796:16-798:10 (L. Rake); PTX 1016 and 1023; PDX-3-42 and 3-43). These test results were even published to the jury (Ex. D).  PDX-3-43. Thus, Defendants falsely advertised the ballet flats that had been sold and delivered to customers; not just the purported "sample" that was produced by Ms. Stevens.

*Second*, Defendants incorrectly claim that Gavrieli offered no proof that Defendants' advertisements stating that "we donate about one quarter of our profits to women or children-focused nonprofit organizations" were "commercial in nature or used in commerce."  Mot. at 9. Not only did Ms. de Baere testify that social cause advertisement are highly influential to consumers' purchasing decisions (Tr. 649:1-21; PTX-249; PDX-2-117), but Mr. Pichler even admitted that these false statements were intended to persuade customers to buy the infringing flats (Tr. 537:12-20).  That Mr. Pichler personally understood this false statement to be "aspirational" is not credible, and irrelevant in any event because he is not a member of the relevant purchasing group, and is unqualified to opine on this issue. D.I. 131-132.  The clear wording of this marketing

assertion falsely conveys that Defendants have actually made donations, deceiving customers into believing that a portion of their purchase price would go to charity.

## V.     AMPLE EVIDENCE SUPPORTS THE TRADE DRESS VERDICT

The trial evidence showed—and the jury reasonably found—that Defendants committed trade dress infringement by using a blue outsole in a manner that created a likelihood of confusion amongst consumers. D.I. 143. Unable to challenge the sufficiency of this evidence, Defendants advance three flawed arguments for overturning this verdict, none of which warrants JMOL.

*First*, Defendants contend that there was no evidence Defendants "commercially used" the trade dress because they "never sold or even offered for sale any blue-soled shoes." Mot. at 10. That is not true. Gavrieli presented ample evidence at trial showing that the infringing flats were offered for sale *exclusively* in a blue outsole during the entire duration of the Kickstarter Campaign. Tr. 649:1-650:12 (C. de Baere). Nothing more is needed to create liability for trade dress infringement. *Levi Strauss & Co. v. Shilon*, 121 F.3d 1309, 1312 (9th Cir. 1997) (affirming finding of trademark infringement based on "naked offer" to sell goods that were never actually sold or produced by defendant; "The [Lanham Act] does not require that the defendant be in possession of [infringing] goods at the time of the offer or that the defendant make an actual sale."). Nevertheless, the trial evidence also showed that Defendants sold at least 5,500 infringing ballet flats to 3,354 backers (totaling 880,658). Tr. 606:9-12 (C. de Baere); *id.* at 845:19-21, 849:18-19, 850:23-851:1, 855:19-24 (N. Zoltowski); Tr. 258:4-9 (K. Gavrieli); Tr. 606:5-8 (C. de Baere) ("When a creator posts a project on KickStarter, they're inviting other people to form a contract with them. Anyone who backs a project is accepting the creator's offer in forming that contract."). Because Defendants offered the shoes for sales and secured sales commitments using Gavrieli's blue sole trade dress, whether Defendants later fulfilled those infringing sales orders with flats that included the infringing blue outsole trade dress is irrelevant. *BMW of North America, LLC v.*

*Barreira*, 633 F. App'x. 882, 884 (9th Cir. 2015) (affirming finding of infringement where defendant "continued to accept online orders" but "did not actually complete any sales of the [infringing] merchandise").   Indeed, Gavrieli presented evidence showing that Defendants published a "Product Catalog" on their Kickstarter and Indiegogo Campaigns that ***only*** depicted the infringing flats in a blue outsole, and later used that same Product Catalog to sell ballet flats that did not have a blue outsole. PTX-387. Courts have found similar conduct sufficient to support a finding of infringement.  *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 203 (2d Cir. 1979) (trade dress infringement based on advertisements containing pictures of the infringing product); *NFL v. Governor of State of Del.*, 435 F.Supp 1372, 1381 (D. Del. 1977).

 ***Second***, Defendants assert that "the trade dress claim was insufficiently proven" because "Plaintiff's expert admitted that he did not use any ballet flats in his 'likelihood of confusion' comparison charts."  Mot. at 10.  Wrong again.  Gavrieli's survey expert, Mr. Ken Hollander, testified at trial that survey respondents were shown photographs of Gavrieli's Tieks ballet flats and Defendants' infringing ballet flats, and based on those photographs, 59.7% of respondents mistakenly believed that Gavrieli put out the infringing ballet flats.  Tr. 420:24-426:14; PDX-1-35

 Even if Defendants could identify a flaw in Mr. Hollander's survey methodology, they cannot raise this challenge now "under the guise of sufficiency of evidence" because "a JMOL is not an appropriate context for attacking the expert's methodology."  *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co., Ltd., et al.*, 2016 WL 362540, at *3-4 (E.D. Tex. Jan. 29, 2016) (declining to consider JMOL arguments challenging expert's methodology for calculating damages); *Versata Software Inc. v. SAP America Inc.*, 717 F.3d 1255, 1264 (Fed Cir. 2013) (same). As such, Defendants "waived" any such challenge by "fail[ing] to raise this issue in *Daubert* motions." *SimpleAir Inc. v. Google Inc.*, 77 F. Supp. 3d 569, 582-83 (E.D. Tex. 2014).

Moreover, aside from the likelihood of confusion survey, the record is replete with other types of evidence—including proof of **actual** confusion—that independently support the jury's verdict of trade dress infringement. *World Carpets, Inc. v. Dick Littrell's New World Carpets*, 438 F.2d 482 (5th Cir. 1971) ("There can be no more positive or substantial proof of the likelihood of confusion than proof of actual confusion."). Indeed, several Soto Massini customers testified that they mistakenly confused Gavrieli as the source of Defendants' infringing flats. Tr. 648:5-21 (C. de Baere). Gavrieli's expert, Ms. Caroline de Baere, likewise testified that 100% of the customers she interviewed in her focus group believed that the infringing flats were either made or approved by Gavrieli, or were somehow sponsored by, or affiliated with, Gavrieli. Tr. 636:170-637:13, 642:2-20; PTX-113; PDX-2-104 Ms. de Baere also identified hundreds of online customer comments mistakenly associating Gavrieli with the infringing ballet flats. PTX-302, 439; 957.

The trial record also showed that Gavrieli received numerous customer e-mails evidencing actual confusion. For example, one customer informed Gavrieli that: "I saw this KickStarter project, it looked like your shoe with a more sneaker insole … but the bottom of the shoe, exactly your color. *I thought they were Tieks*." PTX-490 (emphasis added); PTX-494, -517. Gavrieli's head of brand protection, Ms. Catherine Pickard, testified that she received "dozens" of these e-mails from both customers and non-customers about Defendants' Kickstarter Campaign. Tr. 495:14-500:11; *see also id.* at 495:1-5 ("I became aware of [Defendants] when our customer service team was getting bombarded with e-mails from people who were asking about, you know, whether or not Tieks had some sort of affiliation with Soto Massini."). Even Mr. Pichler admitted that customers sent him communications concerning Tieks. Tr. 524:2-6 (T. Pichler). This evidence alone supports the jury's verdict of trade dress infringement. *Attrezzi, LLC v. Maytag Corp.*, 436 F.3d 32 (1st Cir. 2006) (finding eight misdirected e-mails sufficient evidence of actual confusion).

*Third*, Defendants claim that "Plaintiff provided no proof of 'single source confusion' based on the blue colored soles." Mot. at 10. Not true. Both Mr. Hollander and Ms. de Baere testified that Defendants' use of a blue sole causes a likelihood of confusion among consumers. Tr. 420:24-421:17, 425:12-426:14 (K. Hollander); *id.* at 628:14-24, 644:12-14, 646:18-648:21 (C. de Baere). Soto Massini customers also attributed their confusion to Defendants' use of the blue sole. PTX-113 ("The first time I came across pictures of the Competing Ballet Flats, I was confused as an online consumer, because the 'Tiek blue' outsole design I associate only with Tieks, was being used by the company putting out the Competing Ballet."); Tr. 397:19-399:56 (A. Duffy); Tr. 497:16-22, 498:3-17, 499:9-21, 499:23-500:8 (C. Pickard); PTX-490, -494, -517. Mr. Pichler even admitted that "one of the reasons [he] changed from the blue colored sole is so [the infringing flats] wouldn't look as similar to the Tieks shoe." Tr. 527:10-13.

## VI.    AMPLE EVIDENCE SUPPORTS THE JURY'S DAMAGES AWARD

Defendants waived any challenge to the sufficiency of the evidence supporting the jury's damages award. Gavrieli's damages expert, Neil Zoltowski, disclosed in his expert report the damages evidence presented at trial, but Defendants never challenged this evidence before or at trial. *Versata Software,* 717 F.3d at 1264. Defendants also failed to raise these arguments in a Rule 50(a) motion. Thus, the damages arguments are waived. Fed. R. Civ. P. 50(a)-(b); *Hologic, Inc. v. Minerva Surgical, Inc.*, 2019 WL 1958020, at *4 (D. Del. May 2, 2019) ("A renewed post-verdict JMOL motion under Federal Rule of Civil Procedure Rule 50(b) may not be made on grounds not included in the earlier [Rule 50(a)] motion").

Defendants' damages arguments also fail on the merits. Defendants contend the Jury's award of $880,658 in Defendants' profits was erroneous because profits were actually less. Mr. Zoltowski testified that "disgorgement of profits or taking away the benefits received by Soto Massini based upon sales of their infringing ballet footwear totals $880,658." Trial Tr. at 845:19-

22.  Defendants do not dispute this revenue figure, but argue it should have been reduced by some unspecified costs.  Defendants, however, bore the burden of proving applicable costs to be deducted from infringing revenue.  D.I. 141, Final Jury Instruction 3.11 ("The Soto Massini Defendants have the burden of proving the deductible expenses."); *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1447-48 (Fed. Cir. 1998); *Bergstrom v. Sears, Roebuck & Co*., 496 F. Supp. 476, 495 (D. Minn. 1980) ("The burden of establishing the nature and amount of these costs, as well as their relationship to the infringing product, is on the defendants.").  Defendants failed to provide any details regarding costs incurred from the sales of Accused Products.  The only evidence presented was cursory, vague testimony from Mr. Pichler that his costs exceeded his revenues.  Trial. Tr. at 931:15-25 ("So on the shoe that we sold on Kickstarter for $150, I probably paid 155.").  Such testimony, providing no details regarding the purported costs, did not warrant any deductions.  *See Nike*, 138 F.3d at 1447 (no clear error when court did not deduct "claimed overhead expenses" in calculating profits from infringing shoes when defendant "failed to present any supporting evidence" or "produce the actual business records").  Similarly here, as Mr. Zoltowski testified, although "[p]rofits typically include costs," the Defendant failed to "provide[] cost information that's reliable and competent."  Trial Tr. at 849:17-851:11.  A reasonable juror could have found that Defendants failed to prove any costs should be deducted from their net sales.

Defendants also argue that the jury's award of $1,282,000 as compensation for loss of goodwill caused by Defendants' trade dress infringement and false advertising was not supported because "Soto-USA sold no blue-soled shoes (only a few prototypes), and its statements about its leather and charitable aspirations were so *de minimis* that any liability cannot support such an exorbitant level of damages…"  Mot. at 11.  While Defendants may not have delivered infringing flats with a blue outsole, Gavrieli presented evidence that Defendants had sold the infringing flats

based on *offers* to sell the infringing flats with the blue sole that infringed Gavrieli's trade dress. Tr. 649:1-650:12 (C. de Baere: the infringing flats were offered for sale *exclusively* in a blue outsole); PTX 163 and -387.  These offers alone constitute infringement of Gavrieli's trade dress. *See Levi Strauss & Co.*, 121 F.3d at 1312.  Mr. Zoltowski testified, without objection, that Gavrieli suffered "loss of goodwill" of "no less than $5.1 million" based on Defendants' Trade Dress infringement. Tr.  833:10-840:9.  Gavrieli also presented evidence that Defendants' false advertising harmed the Tieks brand.   Tr. 260:21-262:16, 264:24-265:18 (K. Gavrieli); *id.* at 648:22-653:22, 654-659:5, 659:14-17 (C. de Baere); PTX-109 and -112.

Finally, Defendants describe the jury's award of "$790,000 as compensation for corrective advertising" as "wildly disproportionate to the extent of any actual liability."  Mot. at 11.  Yet, Ms. de Baere testified that, based on her marketing expertise, Gavrieli would need to spend millions in advertising to correct the consumer misconceptions caused by Defendants' infringement and false advertising (Tr.  648:22-649:7, 653:19-22; PDX-2-120), and Mr. Zoltowski testified, without objection, that corrective advertising damages ranged from $3.1 to $3.9 million. Tr. 840-842. He calculated $3.9 million in damages by applying well-known FTC guidelines requiring businesses engaging in misleading advertising to spend 25% of their advertising budget on corrective advertising. Tr. 840:10-841:2; *Big O Tire Dealers, Inc. v. The Goodyear Tire & Rubber Company*, 561 F.2d 1365, 1375 (10th Cir. 1977).  He also calculated $3.1 million in damages by relying on industry analysis that "the cost of companies to acquire a customer is roughly five times as much to retain that customer." Tr. 841:5-842:14.  Mr. Zoltowski testified that "the corrective advertising damages total no less than $3,159,735."  *Id.* ; Tr. 242:21-243:1 (K. Gavrieli); *id.* at 653:19-22 (C. de Baere).  This evidence supports the jury's award of $790,000 for corrective advertising.

## VII.   <u>CONCLUSION</u>

Gavrieli respectfully requests that the Court deny Defendants' Motion.

Dated:  July 11, 2019

Respectfully submitted,

MORAN, LEWIS & BOCKIUS LLP

*/s/ Amy M. Dudash*
John V. Gorman (DE Bar No. 6599)
Amy M. Dudash (DE Bar No. 5741)
The Nemours Building
1007 North Orange Street
Suite 501
Wilmington, Delaware 19801
Telephone:  302.574.3000
Fax:  302.574.3001
john.gorman@morganlewis.com
amy.dudash@morganlewis.com

*Attorneys for Plaintiff Gavrieli Brands LLC*