**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

GAVRIELI BRANDS LLC, a California Limited Liability Company,

Plaintiff,

v.

SOTO MASSINI (USA) CORP., a Delaware corporation; and THOMAS PICHLER, an individual,

Defendants.

Case No. 18-cv-00462-MN

**PLAINTIFF GAVRIELI BRANDS LLC'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR PERMANENT INJUNCTION, ATTORNEYS' FEES, ENHANCED DAMAGES, AND PRE– AND POST–JUDGMENT INTEREST**

John V. Gorman (DE Bar No. 6599)
Amy M. Dudash (DE Bar No. 5741)
**MORGAN, LEWIS & BOCKIUS LLP**
The Nemours Building
1007 North Orange Street
Suite 501
Wilmington, Delaware 19801
Telephone: 302.574.3000
Fax: 302.574.3001
john.gorman@morganlewis.com
amy.dudash@morganlewis.com

Michael J. Lyons (admitted *pro hac vice*)
Ahren C. Hsu-Hoffman (admitted *pro hac vice*)
Ehsun Forghany (admitted *pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
1400 Page Mill Road
Palo Alto, CA 94304
Telephone: 1.650.843.4000
michael.lyons@morganlewis.com
ehsun.forghany@morganlewis.com

Sharon R. Smith (admitted *pro hac vice*)
Brett A. Lovejoy, Ph.D (admitted *pro hac vice*)
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone: 1.415.442.1000
sharon.smith@morganlewis.com
brett.lovejoy@morganlewis.com

Dated: July 18, 2019

*Attorneys for Plaintiff Gavrieli Brands, LLC*

# TABLE OF CONTENTS

**Page**

ARGUMENT ........................................................................................................................ 3

I. THE COURT SHOULD ORDER INJUNCTIVE RELIEF ............................................ 3

II. THE COURT SHOULD AWARD GAVRIELI ITS ATTORNEYS' FEES .................... 6

III. THE COURT SHOULD TREBLE THE JURY'S DAMAGES AWARD ........................ 8

**CASES**

*Bos. Prof'l Hockey Ass'n v. Dallas Cap & Emblem Mfg., Inc.*,
597 F.2d 71 (5th Cir. 1979) ....................8

*Canon v. Do It Wiser*,
No. 1:18-cv-1490, D.I. 19 (D. Del. Feb. 12, 2019) (Ex. B) (Connolly, J.)....................2

*Chalumeau Power Sys. LLC v. Alactel-Lucent*,
2014 WL 4675002 (D. Del. Sep. 12, 2014)....................6

*Chamberlain Grp., Inc. v. Techtronic Inds. Co., Ltd.*,
315 F. Supp. 3d 977, 1011 (N.D. Ill. 2018)....................4

*Crane Sec. Tech., Inc. v. Rolling Optics AB*,
336 F. Supp. 3d 48, 60-62 (D. Mass. 2018)....................4

*Dish Network Corp. v. TiVo, Inc.*,
2009 WL 1529836 (D. Del. May 28, 2009) (Farnan, J.) ....................3

*Drägerwerk AG & Co. KGaA v. Allied Healthcare Prod., Inc.*,
No. 1:15-cv-00925, D.I. 14 (D. Del. Feb. 12, 2016) (Ex. C) (Robinson, J.) ....................2

*Electrovert Ltd. v. Tecnic Corp.*,
2010 WL 2757416 (M.D. Fla. July 13, 2010) ....................4

*Int'l Longshoreman's Ass'n v. Philadelphia Marine Trade Ass'n*,
389 U.S. 64 (1967)....................2

*Louis Vuitton S.A. v. Spencer Handbags Corp.*,
765 F.2d 966 (2d Cir. 1985)....................8

*Merck Eprova AG v. Gnosis S.p.A*,
760 F.3d 247 (2d Cir. 2014)....................7

*Monolithic Power Sys., Inc. v. 02 Micro Intern. Ltd.*,
726 F.3d 1359 (Fed. Cir. 2013)....................6

*nCube Corp. v. SeaChange Int'l, Inc.*,
1:01-cv-00011, D.I. 200 (D. Del. Apr. 6, 2006) (Ex. G) (Farnan, J.)....................3

*nCube Corp. v. SeaChange Int'l, Inc.*,
809 F. Supp. 2d 337 (D. Del. 2011) (Stark, J.) ....................3

*Playboy Enter. Inc. v. P.K. Sorren Export Co., Inc. of Fl.*,
546 F. Supp. 987 (S.D. Fla. 1982) ....................8

*Power Integrations Inc. v. BCD Semiconductor Corp.*,
No. 1:07-cv-00633, D.I. 185 (D. Del. Feb. 12, 2009) (Ex. F) (Farnan, J.)....................3

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
No. 1:08-cv-00542, D.I. 411 (D. Del. Jan. 4, 2012) (Ex. E) (Robinson, J.) ............................3

*Square Liner 360, Inc. v. Chisum*,
691 F.2d 362 (8th Cir. 1982) ............................2

*Streck, Inc. v. Research & Diagnostic Sys., Inc.*,
665 F.3d 1269 (Fed. Cir. 2012)............................2

*SynQor, Inc. v. Artesyn Tech., Inc.*,
709 F.3d 1365 (Fed. Cir. 2013)............................7

*Taser Int'l, Inc. v. Karbon Arms, LLC*,
No. 1:11-cv-0042, D.I. 189 (D. Del. Jan. 10, 2014) (Ex. D) (Andrews, J.)............................3

*Taser Int'l Inc. v. Phazzer Elecs. Inc.*,
754 F. App'x 955 (Fed. Cir. 2018) ............................1, 2

*Tek Global v. Sealant Sys. Int'l, Inc.*,
920 F.3d 777 (Fed. Cir. 2019)............................1, 2

*TiVo Inc. v. EchoStar Corp.*,
646 F.3d 869 (Fed. Cir. 2011)............................3

*United Construction Products, Inc. v. Tile Tech, Inc.*,
843 F.3d 1363 (Fed. Cir. 2016)............................2, 4

*Wine Group, LLC v. L. and R. Wine Co., Inc.*,
2012 WL 3962500 (E.D. Cal. Sept. 10, 2012)............................6

*Yohannon v. Keene Corp.*,
924 F.2d 1255 (3d Cir. 1991)............................6

**STATUTES**

15 U.S.C. § 1117............................4, 5

# ARGUMENT

## I. THE COURT SHOULD ORDER INJUNCTIVE RELIEF

In their Opposition, Defendants acknowledge that Gavrieli is entitled to a permanent injunction prohibiting any further acts of patent and trade dress infringement, false advertising, and unfair competition. *See* Mot. at 3-13. Indeed, Defendants agree to "stipulate to a permanent injunction." Opp. at 1. Defendants also do not dispute that the permanent injunction should provide the following relief:

- "seiz[ing] the remaining inventory of infringing flats, as well as the materials used to manufacture and market those flats," Mot. at 14-16;
- requiring Defendants to "e-mail their customers a corrective notice expressly stating that they unfairly copied Gavrieli's patented designs and trade dress and falsely advertised the infringing ballet flats, and publish that notice on their website for a year," *id*. at 17;
- applying the permanent injunction "to Defendants' successors and aiders and abettors," *id*. at 14;
- "preclude[ing] Defendants' foreign acts of trade dress infringement that injure Gavrieli in the United States," *id*. at 16.

As such, the Court's permanent injunction should include at least these uncontested provisions.

The only issue raise by Defendants concerns the identification of products to which the injunction will apply. Defendants contend that they cannot be enjoined from "making, using, offering to sell, selling within the United States, or importing into the United States" products "not more than colorably different" from the adjudicated products. Opp. at 1-4. According to Defendants, the "injunction must be very narrowly-tailored" to enjoin only the "***particular accused products*** justifying the infringement finding(s)." Opp. at 1 (emphasis added).

Defendants cite no authority supporting their position that a permanent injunction must be limited to the adjudicated products and cannot extend to products "not more than colorably different" therefrom. Nor can they. Defendants' reliance on *Taser Int'l* and *Tek Global* is

misplaced because those decisions support the injunction proposed by Gavrieli, not Defendants. In *Taser Int'l*, the Federal Circuit found "no error in the district court's permanent injunction" because it was properly "limited" to the "particular products identified therein (***and those not colorably different therefrom***)." *Taser Int'l Inc. v. Phazzer Elecs. Inc.*, 754 F. App'x 955, 964 (Fed. Cir. 2018) (emphasis added). Likewise, *Tek Global* upheld a permanent injunction that covered the infringing products as well as those "***not more than colorably different***" therefrom." *Tek Global v. Sealant Sys. Int'l, Inc.*, 920 F.3d 777, 792 (Fed. Cir. 2019) (emphasis added) (citing J.A. 10-13 (Permanent Injunction Order), attached as Ex. A).[1]

Indeed, the Federal Circuit has long "held that injunctions have satisfactory scope when they prohibit infringement of the patent by the adjudicated devices and infringement by devices ***not more than colorably different*** from the adjudicated devices." *United Construction Products, Inc. v. Tile Tech, Inc.*, 843 F.3d 1363, 1371-72 (Fed. Cir. 2016) (upholding permanent injunction covering any products "substantially similar" to those adjudged to infringe); *Streck, Inc. v. Research & Diagnostic Sys., Inc.*, 665 F.3d 1269, 1293 (Fed. Cir. 2012) (same). Other courts in this District routinely issue permanent injunction orders with language identical to that of the injunction requested by Gavrieli. *E.g.*, *Canon v. Do It Wiser*, No. 1:18-cv-1490, D.I. 19 (D. Del. Feb. 12, 2019) (Ex. B) (Connolly, J.) (issuing permanent injunction covering any products "not more than colorably different" from the products adjudged to infringe); *Drägerwerk AG & Co. KGaA v. Allied Healthcare Prod., Inc.*, No. 1:15-cv-00925, D.I. 14 (D. Del. Feb. 12, 2016) (Ex.

[1] As for the remaining cases, *Square Liner 360, Inc. v. Chisum*, 691 F.2d 362 (8th Cir. 1982) is inapposite because the injunction there was overturned due to ambiguities in the jury's infringement verdict—*e.g.*, "no guidance is provided by the verdict regarding which claims of the patent were infringed" (*id.* at 378). The decision in *Int'l Longshoreman's Ass'n v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64 (1967) is even less relevant because it involved a decree order that enforced an arbitrator's interpretation of a collective bargaining agreement.

C) (Robinson, J.) (same); *Taser Int'l, Inc. v. Karbon Arms, LLC*, No. 1:11-cv-0042, D.I. 189 (D. Del. Jan. 10, 2014) (Ex. D) (Andrews, J.) (same); *Robert Bosch LLC v. Pylon Mfg. Corp.*, No. 1:08-cv-00542, D.I. 411 (D. Del. Jan. 4, 2012) (Ex. E) (Robinson, J.) (same); *Power Integrations Inc. v. BCD Semiconductor Corp.*, No. 1:07-cv-00633, D.I. 185 (D. Del. Feb. 12, 2009) (Ex. F) (Farnan, J.) (same); *nCube Corp. v. SeaChange Int'l, Inc.*, 1:01-cv-00011, D.I. 200 (D. Del. Apr. 6, 2006) (Ex. G) (Farnan, J.) (same).

Contrary to Defendants' assertions, the injunction here does not need to define "what is 'colorably different'" from the Infringing Flats. *See* Opp. at 3-4. It is neither possible nor practical to divine and describe each and every product variation that would be not more than colorably different from the Infringing Flats. Nor is there any need for the injunction to define those "colorable differences" now; that determination would be made in a contempt proceeding. *TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869, 882 (Fed. Cir. 2011) ("[T]he party seeking to enforce the injunction must prove both that the newly accused product is not more than colorably different from the product found to infringe and that the newly accused product actually infringes."); *see also Dish Network Corp. v. TiVo, Inc.*, 2009 WL 1529836, at *3 (D. Del. May 28, 2009) (Farnan, J.) (recognizing contempt proceedings as the "appropriate vehicle" for determining "whether the redesigned products are 'colorably different' from the products adjudged to infringe."); *nCube Corp. v. SeaChange Int'l, Inc.*, 809 F. Supp. 2d 337, 341-42 (D. Del. 2011) 809 F. Supp. 2d 337, 351 (D. Del. 2011) (Stark, J.) (same).

Applying the injunction to products "not more than colorably different" from the Infringing Products is critical to deter Defendants from continuing infringement while making only nominal changes to shoes judged to infringed Gavrieli's intellectual property rights. If the injunction does not expressly prohibit Defendants from producing non-colorably different variants, Defendants

may be tempted to introduce a substantially similar ballet flat while claiming the variant skirts the injunction. To ensure that the injunction is respected, Defendants should be expressly forbidden from selling not only shoes that are identical to the Infringing Products, but also shoes that are substantially similar to the Infringing Products. *United Construction*, 843 F.3d at 1372 (upholding permanent injunction barring "substantially similar products" as "an acceptable means of preventing future infringement"); *Chamberlain Grp., Inc. v. Techtronic Inds. Co., Ltd.*, 315 F. Supp. 3d 977, 1011 (N.D. Ill. 2018) (ordering permanent injunction covering "any device not more than colorably different" from the adjudicated products "as an appropriate disincentive for further infringing activity."); *Crane Sec. Tech., Inc. v. Rolling Optics AB*, 336 F. Supp. 3d 48, 60-62 (D. Mass. 2018) (same); *see also Electrovert Ltd. v. Tecnic Corp.*, 2010 WL 2757416, at *4 (M.D. Fla. July 13, 2010) ("[A] 'colorable difference' in [a product] is one only 'made for the purpose of evading the decree without essential change in the nature of the device.").

## II. <u>THE COURT SHOULD AWARD GAVRIELI ITS ATTORNEYS' FEES</u>

Gavrieli's Motion sought an award of attorneys' fees under the Lanham Act based on three independent grounds: (1) Defendant's intentional and willful infringement; (2) Defendants' weak litigation position; and (3) Defendant's vexatious litigation strategy. Mot. at 18-24. In response, Defendants do not dispute that their "litigation positions (or lack thereof) makes this case exceptional." *See id*. Defendants do not even challenge that they "failed to present any defenses whatsoever to Gavrieli's Lanham Act claims," that they "asserted counterclaims that they knew were factually baseless to gain leverage in this case," or that they "chose to ignore black-letter law" by moving "forward with counterclaims that were plainly barred by California's litigation privilege." *See id*. Thus, the Court should award attorneys' fees for this reason alone.

Defendants nonetheless contend that the "Defendants' victory in this action at the preliminary stage" prevents their intentional Lanham Act violations from making this case

exceptional.[2] Opp. at 4 (citing D.I. 18). Not true. As an initial matter, Defendants' reliance on the Temporary Restraining Order ("TRO") is unavailing because Mr. Pichler only obtained this purported "victory" by falsely representing to Judge Sleet that the Infringing Flats had "not yet [been] manufactured or sold." *See* Mot. at 21; *compare* D.I. 13 (Pichler Decl. ISO Opp. to TRO) at ¶ 4, *with* D.I. 111 at Ex. 17 (3/17/2017 invoice from Defendants for the sale of 296 Infringing Flats). In any event, the TRO is irrelevant to Defendants' willful *trade dress* infringement under the Lanham Act because Gavrieli only relied on its *design patent* rights in seeking a TRO. (D.I. 3). This request for attorneys' fees is pursuant to the Lanham Act and Judge Sleet never even considered the likelihood of Gavrieli succeeding on any of its Lanham Act claims, including Gavrieli's claim for trade dress infringement (D.I. 18).

Defendants next contend that their litigation misconduct does not make this case exceptional because Defendants had "very limited resources to present (as zealously as possible) a defense to Plaintiff's claims." Opp. at 5. But limited resources are no excuse for Defendants' false representations and other discovery misconduct, their assertion of factually baseless and legally barred claims, or their dilatory tactics that multiplied the proceedings—the hallmarks of a case that has been litigated in an unreasonable manner. *See* Mot. at 21-23; *Chalumeau Power Sys. LLC v. Alactel-Lucent*, 2014 WL 4675002, *3 (D. Del. Sep. 12, 2014) (the "economics of the case"

[2] Seeking to minimize the egregiousness of their intentional infringement, Defendants contend that "there was no time to obtain a formal, written 'opinion of counsel." Opp. at 5. But as Defendants readily concede, Mr. Pichler "promptly retained counsel" after receiving Gavrieli's February 16, 2018 cease-and-desist letter (*id.*)—more than a month before Gavrieli filed suit on March 26, 2018 (D.I. 1). On the advice of counsel, Mr. Pichler assured Gavrieli on March 13, 2018 that he "will not violate Gavrieli's IP," and after counsel for both parties conferred telephonically on March 14, 2018, Mr. Pichler promised on March 16, 2018 to "withdraw the [Kickstarter] project and that no backers will be charged" to avoid a lawsuit. PTX 408, 410. Defendants' decision to renege on that promise and continue infringing without an opinion of counsel evidences their reckless disregard for Gavrieli's intellectual property rights.

and “the suit no longer [being] economically feasible” does not excuse litigation misconduct). Nor can limited resources excuse Defendants’ attempts to ambush Gavrieli at trial by litigating issues and presenting evidence that were never disclosed before trial, much less preserved in the Pretrial Order. *See* Mot. at 24. If Defendants’ resources were truly limited, then that was all the more reason for Defendants to focus on presenting only their properly-noticed defenses to the jury. Trial by ambush is not zealous advocacy. *Wine Group, LLC v. L. and R. Wine Co., Inc.*, 2012 WL 3962500, at *10-11 (E.D. Cal. Sept. 10, 2012) (the filing of “frivolous claims [and] conducti[ing] no discovery on [those claims]” warrants Rule 11 sanctions and does not constitute “zealous advocacy on behalf of clients”); *Yohannon v. Keene Corp.*, 924 F.2d 1255, 1259 (3d Cir. 1991) (same for “trial by ambush”).

Defendants’ attempts to cast their behavior at trial as “professional” is likewise misplaced. There was nothing professional about Defendants presenting to the jury evidence that had already been excluded by the Court, making statements that contradicted or mischaracterized the Court’s rulings, ignoring requests from the Court for supporting evidence and case law, and failing to submit construction positions and supplemental jury instructions after requesting and obtaining leave by the Court to do so. Mot. at 24-25. When considered collectively, Defendants’ “numerous instances of litigation misconduct” amounts to “an overall vexatious litigation strategy” that is more than “sufficient to support an exceptional case determination.” *Monolithic Power Sys., Inc. v. 02 Micro Intern. Ltd.*, 726 F.3d 1359, 1367 (Fed. Cir. 2013).

## III. **THE COURT SHOULD TREBLE THE JURY’S DAMAGES AWARD**

Defendants’ arguments against enhancement likewise ring hollow. In their Opposition, Defendants do not dispute that the Court may treble the damages award based solely on “a finding of willful infringement,” or alternatively, on the “failure to produce complete and reliable sales

records." Mot. at 26-27 (collecting cases). Instead, Defendants argue that the circumstances here do not justify enhancement under either basis. Opp. at 5-6. That is not true.

***First***, Defendants contend that, despite their intentional trade dress infringement, the Court should decline to enhance the damages award because any "extra damages" would be akin to "gilding the lily." Opp. at 5-6. To the contrary, the jury's damages award was based on the ***actual*** harm suffered by Gavrieli, and only a trebling of these damages will punish defendants for their disregard of Gavrieli's rights and will deter them from engaging in similar conduct in the future. *Merck Eprova AG v. Gnosis S.p.A*, 760 F.3d 247, 263 (2d Cir. 2014) (affirming treble damages; "enhanced damages may also be awarded under Section 35 where deterrence of willful infringement is needed."); *see also* Mot. at 26-27 (collecting cases). That Defendants have continued to intentionally infringe in the face of the jury's damages award underscores the need to enhance those damages. *SynQor, Inc. v. Artesyn Tech., Inc.*, 709 F.3d 1365, 1385 (Fed. Cir. 2013) (affirming enhancement where "[t]he district court found Defendants' conduct 'egregious' in continuing [infringing] sales in the face of an infringement verdict").

***Second***, Defendants contend that enhancement is also not warrant here because they "did not withhold any documents from discovery." Opp. at 5-6. That is false. As Gavrieli has repeatedly demonstrated, Defendants violated this Court's discovery order by continuing to withhold their sales invoices to brick-and-mortal stores, as well as the underlying sales order records from Kickstarter, Indiegogo, and Shopify. *See* D.I. 93; D.I. 111 at 5-9. Defendants' attempt to cast these as "speculation" is belied by Gavrieli's production of several sales order records that were not only withheld by Defendants, but also unaccounted for in their sales summaries. *See, e.g.*, D.I. 111, Ex. 17 (withheld sales invoice to brick-and-mortar store); *id*. at Ex. 14 (withheld sales order from Shopify), *id*. at Ex. 15 (withheld sales order from Indiegogo).

Due to Defendants' willful failure to produce complete and reliable sales records, the damages calculations presented to the jury understated the true extent of Defendants' infringing sales, as well as the loss of goodwill caused by each infringing sale and the corrective advertising expenditures needed to remedy the harm created by those sales (*see, e.g.*, Trial Tr. at 849:23-850:2). Under these circumstances, enhancement is necessary simply to address the actual harm to Gavrieli. *Bos. Prof'l Hockey Ass'n v. Dallas Cap & Emblem Mfg., Inc.*, 597 F.2d 71, 77 (5th Cir. 1979) ("[I]ncreased damages may be justified by defendant's withholding or misrepresenting available sales records, which would have the effect of making much more difficult, if not impossible, plaintiffs' proof of damages or profits."). At a minimum, the withheld sales orders call into doubt the actual number of infringing sales, and the law requires that this uncertainly be resolved in Gavrieli's favor. *Louis Vuitton S.A. v. Spencer Handbags Corp.*, 765 F.2d 966, 973 (2d Cir. 1985) (recognizing that doubts about an infringer's actual sales should be resolved in the trademark holder's favor because the infringer controls its sales data); *Playboy Enter. Inc. v. P.K. Sorren Export Co., Inc. of Fl.*, 546 F. Supp. 987, 998 (S.D. Fla. 1982) (enhancing damages award where "record strongly indicates that plaintiff's damages award and defendants' profits were both greater than the amounts conclusively proven").

Dated: July 18, 2019

Respectfully submitted,

MORAN, LEWIS & BOCKIUS LLP

*/s/ Amy M. Dudash*
John V. Gorman (DE Bar No. 6599)
Amy M. Dudash (DE Bar No. 5741)
The Nemours Building
1007 North Orange Street
Suite 501
Wilmington, Delaware 19801
Telephone: 302.574.3000
Fax: 302.574.3001
john.gorman@morganlewis.com
amy.dudash@morganlewis.com

*Attorneys for Plaintiff Gavrieli Brands LLC*