IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

GAVRIELI BRANDS LLC, a California )
Limited Liability Company, )
)
Plaintiff, )
v. )
) C.A. No. 18-462 (MN)
SOTO MASSINI (USA) CORP., a Delaware )
Corporation, and THOMAS PICHLER, an )
individual, )
)
Defendants. )

## <u>MEMORANDUM OPINION</u>

David W. Marston, Jr. and Amy M. Dudash, MORGAN, LEWIS & BOCKIUS LLP, Wilmington, DE;
Michael J. Lyons and Ehsun Forghany, MORGAN, LEWIS & BOCKIUS LLP, Palo Alto, CA; Sharon
R. Smith and Brett A. Lovejoy, Ph.D., MORGAN, LEWIS & BOCKIUS LLP, San Francisco, CA –
attorneys for Plaintiff

Stamatios Stamoulis, STAMOULIS & WEINBLATT LLC, Wilmington, DE; Stephen M. Lobbin and
Austin J. Richardson, SML AVVOCATI P.C., San Diego, CA – attorneys for Defendants

March 24, 2020
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE:**

Presently before the Court is the renewed motion of Defendants Soto Massini (USA) Corporation ("Soto USA") and Thomas Pichler (collectively, "Defendants") for judgment as a matter of law or, in the alternative, for a new trial (D.I. 155) and the motion of Plaintiff Gavrieli Brands LLC ("Plaintiff" or "Gavrieli") for a permanent injunction, attorneys' fees, enhanced damages and pre- and post-judgment interest (D.I. 152).

## I.    BACKGROUND

Plaintiff filed this action on March 26, 2018, asserting claims of patent infringement, trade dress infringement, unfair competition and unjust enrichment against Defendants.[1]  (*See* D.I. 1; *see also* D.I. 27).  In particular, Plaintiff alleged that Defendants' Terzetto Milano ballet flats ("the accused shoes") infringed U.S. Design Patent Nos. D781,035 ("the '035 Patent"), D781,032 ("the '032 Patent"), D781,034 ("the '034 Patent"), D681,927 ("the '927 Patent") and D761,538 ("the '538 Patent") and that Defendants' infringement was willful.  (*See* D.I. 27 ¶¶ 1-2, 127-181).  Plaintiff also asserted that the accused shoes infringed Plaintiff's trade dress in its Tieks® brand ballet flats under the Lanham Act and common law, that Defendants engaged in unfair competition and false advertising in violation of the Lanham Act and California law and that Defendants were unjustly enriched.  (*Id.* ¶¶ 182-228).

The Court presided over a five-day jury trial from April 29, 2019 to May 3, 2019. (*See* D.I. 144).  On the patent infringement issues, the jury found that Defendants willfully infringed the '035, '032, '034 and '927 Patents (collectively, "the Patents-in-Suit") and that the

---

[1]    Plaintiff also sued a related Italian entity – Soto Massini S.R.S.L.  (*See, e.g.*, D.I. 1 ¶ 8; D.I. 27 ¶ 8).  That entity was dismissed from the action on February 11, 2019.  (*See* D.I. 108 at 31:23-33:22 & 36:11-37:12).

Patents-in-Suit were not invalid.[2] (*Id.* at 2-4). The jury further found that Defendants intentionally infringed the Tieks® trade dress and intentionally engaged in false advertising, which – per the parties' stipulation – also rendered Defendants liable for unfair competition under federal and state law. (*Id.* at 5-7). The jury also found that Defendants had been unjustly enriched. (*Id.* at 8). The jury awarded Plaintiff $880,658 in compensatory damages for patent infringement and unjust enrichment, $1,282,000 in compensatory damages for loss of goodwill from Defendants' trade dress infringement, false advertising or unfair competition, $790,000 in compensatory damages for corrective advertising arising from Defendants' trade dress infringement, false advertising or unfair competition, and $880,658 in compensatory damages for Defendants' profits from trade dress infringement, false advertising or unfair competition. (*Id.* at 9-11; *see also* D.I. 149 (judgment setting forth breakdown of damages totaling $2,952,658: $880,658 from profits for patent infringement and non-patent claims; $1,282,000 in lost goodwill from non-patent claims; $790,000 for corrective advertising for trade dress infringement, false advertising and unfair competition)). The jury awarded no punitive damages. (D.I. 144 at 12).

On May 13, 2019, the Court entered judgment on the jury verdict under Federal Rule of Civil Procedure 58(b). (*See* D.I. 149). Both sides filed post-trial motions on June 27, 2019. Plaintiff moved for a permanent injunction, attorneys' fees, enhanced damages and pre- and post-judgment interest. (*See* D.I. 152 & 153). Defendants filed a renewed motion for judgment as a matter of law or, in the alternative, a new trial. (*See* D.I. 155). Briefing on post-trial motions was completed on July 18, 2019. (*See* D.I. 152, 153, 154, 155, 156, 157 & 158).[3]

---

[2]     Prior to trial, Plaintiff dropped its claim of infringement for the '538 Patent. (*See* D.I. 130).

[3]     Defendants did not submit a reply in support of their post-trial motion.

## II.  **LEGAL STANDARDS**

### A.     Judgment as a Matter of Law

Judgment as a matter of law may be entered against a non-moving party if the Court "finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on [an] issue." FED. R. CIV. P. 50(a)(1).  Judgment as a matter of law is appropriate "only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993).  Entry of judgment as a matter of law is a remedy to be invoked only "sparingly." *CGB Occupational Therapy, Inc. v. RHA Health Servs. Inc.*, 357 F.3d 375, 383 (3d Cir. 2004).

Following a jury trial, a renewed motion for judgment as a matter of law under Rule 50(b) may be granted only if the movant demonstrates "that the jury's findings, presumed or express, are not supported by substantial evidence or, if they were, that the legal conclusion(s) implied [by] the jury's verdict cannot in law be supported by those findings." *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1348 (Fed. Cir. 1998) (alteration in original) (internal quotation marks omitted).  Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support the finding under review.  *See Enplas Display Device Corp. v. Seoul Semiconductor Co.*, 909 F.3d 398, 407 (Fed. Cir. 2018).  In determining whether substantial evidence supports the jury verdict, the Court may not make credibility determinations, weigh the evidence or substitute its own conclusions for that of the jury where the record evidence supports multiple inferences. *See Lightning Lube*, 4 F.3d at 1166.  Moreover, in the Third Circuit, when the movant bears the burden of proof on an issue, judgment as a matter of law is appropriate only if "there is insufficient evidence for permitting any different finding." *Fireman's Fund Ins. Co. v. Videfreeze Corp.*,

540 F.2d 1171, 1177 (3d Cir. 1976) (quoting 9 WIGMORE ON EVIDENCE § 2495 at 306 (3d ed. 1940)); *see also Amgen Inc. v. Hospira, Inc.*, 944 F.3d 1327, 1333 (Fed. Cir. 2019).

B.      Motion for a New Trial

"A new trial may be granted to all or any of the parties and on all or part of the issues in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." FED. R. CIV. P. 59(a). Common reasons for granting a new trial are:  (1) the jury's verdict is against the clear weight of the evidence and a new trial is necessary to prevent a miscarriage of justice; (2) there exists newly discovered evidence that would likely alter the outcome of the trial; (3) improper conduct by an attorney or the Court unfairly influenced the verdict; or (4) the jury's verdict was facially inconsistent.  *See Ateliers de la Haute-Garonne v. Broetje Automation-USA Inc.*, 85 F. Supp. 3d 768, 775 (D. Del. 2015).

The decision of whether to grant a new trial is a question committed to the Court's discretion.  *See Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980).  Unlike the standard for judgment as a matter of law, the Court need not view the evidence in the light most favorable to the verdict winner when ruling on a motion for a new trial.  *See Ateliers*, 85 F. Supp. 3d at 775. "[N]ew trials because the verdict is against the weight of the evidence are proper only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks [the] conscience."  *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1353 (3d Cir. 1991).

III.   **DISCUSSION**

A.      Patent Infringement and Validity

The jury found that Defendants infringed the Patents-in-Suit and that those patents were not invalid.  (*See* D.I. 144 at 2 & 4).  Defendants now move for judgment as a matter of law that

they do not infringe the Patents-in-Suit and, further, that the Patents-in-Suit are invalid as lacking the required ornamental design for design patents, thereby failing to comply with 35 U.S.C. § 171(a). (*See* D.I. 155 at 5-9). In a footnote, Defendants also argue that the Patents-in-Suit are invalid as anticipated and/or obvious over Plaintiff's own prior art shoe. (*Id.* at 8 n.5). Because the Court finds that substantial evidence supports the jury's findings on issues properly preserved and that Defendants have waived the right to post-trial judgment as a matter of law on the remaining issues, the Court will deny Defendants' motion.

Beginning with the issue of infringement, Defendants argue that Plaintiff's experts admitted there are "many non-infringing differences" between the designs claimed in the Patents-in-Suit and Defendants' shoes. (D.I. 155 at 8). Relying on statements made by Caroline de Baere, Defendants argue that she admitted the accused shoes do not contain a "sloped-up heel," "pleating," a certain "toe box" shape or a "stair-step" sole profile, as purportedly claimed in the Patents-in-Suit. (*Id.* at 8-9). Defendants do not indicate which patent(s) are allegedly not infringed based on each of these admissions, and Defendants' arguments on non-infringement are limited to a single paragraph with minimal analysis. Even if Defendants had provided some developed argument in support of their motion, however, the Court would nevertheless find that substantial evidence supports the jury's verdict of infringement.

Design patent infringement exists where an accused design and a patented design appear substantially the same to an ordinary observer familiar with the prior art designs. *See Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010); *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008) (en banc); *see also Gorham Mfg. Co. v. White*, 81 U.S. 511, 528 (1871). Ms. de Baere, an expert in footwear design marketing, performed a patent-by-patent comparison of the patented designs with images of the accused shoe, a physical sample of

the accused shoe and the closest prior art (early model Tieks® shoe), ultimately concluding that an ordinary observer would find the accused and patented designs substantially the same. (*See* Tr. at 599:4-600:18, 602:22-603:17, 604:13-18, 619:2-633:16; *see also* PTX-117C, PTX-118C, PTX-119C, PTX-120C).[4] She mapped the blue, purple and black outsoles of the different styles of accused shoes onto the colored outsoles claimed in the '035 Patent (blue), '927 Patent (no color) and '032 and '034 Patents (blue and purple). (Tr. at 625:5-626:10). She also demonstrated where she found in the accused shoes the claimed top shoe design of the '035 Patent, the heel and peekaboo outsole design of the '032 Patent, the heel and peekaboo outsole design of the '034 Patent and the overall foldable shoe design of the '927 Patent. (Tr. at 626:11-628:13). Similarly, Professor Lance Rake, an expert in footwear design, materials and construction, also performed a patent-by-patent comparison of the accused shoes with the designs claimed in the Patents-in-Suit and the Tieks® prior art shoe. (*See* Tr. at 786:1-794:14). As with Ms. de Baere, Professor Rake also concluded that the accused shoes infringed the Patents-in-Suit.

Additionally, Plaintiff offered evidence that customers were actually confused by the similarities and believed the accused shoes to be the patented designs embodied in Plaintiff's later model Tieks® shoe. (*See, e.g.*, Tr. at 420:24-426:14). "Evidence that an ordinary observer has actually been deceived by an accused design is not necessary to a finding of infringement because a panel of jurors is a panel of ordinary observers capable of making factual determinations as to whether they would be deceived. However, the unrebutted testimony of actual confusion may be evidence from which a jury might reasonably conclude that an accused product meets the ordinary observer test." *Amini Innovation Corp. v. Anthony California, Inc.*, 211 F. App'x 938, 941 (Fed.

---

[4]     Citations to "Tr." are citations to the trial transcript. (*See* D.I. 169, 170, 171, 172, 173). Additionally, the Court notes that PTX-117C, PTX-118C, PTX-119C and PTX-120C were admitted into evidence without objection by Defendants.

Cir. 2007) (citation omitted). Based on this and other evidence in the record, the jury could reasonably determine that Defendants' shoes infringed each of the Patents-in-Suit.[5]

Turning to invalidity, Defendants' motion must be denied for several reasons. First, as to invalidity under § 171, Defendants never asserted that the Patents-in-Suit were invalid for claiming functional features until trial. None of the answers filed pleaded invalidity under § 171 as a defense or counterclaim – including the operative answers at the time of trial. (*See, e.g.*, D.I. 22, 31, 45, 109). Similarly, Defendants' invalidity contentions did not assert that the Patents-in-Suit were invalid for claiming functional features, instead focusing only on § 102, § 103 and obvious-type double patenting. (*See* D.I. 126, Ex. 1). The Pretrial Order also contains no mention of invalidity under § 171. (*See, e.g.*, D.I. 119 ¶¶ 65-78; *id.*, Ex. 3 ¶¶ 7-25; *id.*, Ex. 5 ¶ 2). Indeed, when Defendants raised this theory of invalidity for the first time at trial, the Court expressed doubt that it had been preserved as a defense. (*See* Tr. at 963:24-965:12). At the final prayer conference, Defendants were given an opportunity to submit a proposed jury instruction on invalidity under § 171 (*see* Tr. at 967:6-25), but counsel later informed the Court that they would not be pursuing such an instruction (*id.* at 977:2-8; *see also* D.I. 157, Ex. B). At that point, the Court understood invalidity under § 171 to be definitively out of the case.[6] Inexplicably, however, Defendants' counsel asserted in closing arguments that the Patents-in-Suit were invalid for claiming functional features. (Tr. at 1065:5-8). During sidebar, Defendants' counsel conceded that it was improper to

---

[5]     Defendants do not separately challenge the finding of willful infringement. (D.I. 144 at 3).

[6]     To be clear, the Court does not believe this theory of invalidity was ever properly in the case as it was never raised before trial. (*See, e.g.*, Tr. at 1065:15-1066:2).

make this argument to the jury as invalidity under § 171 was not an issue in the case, and the jury was told to disregard the comment for that reason. (Tr. at 1066:23-1067:20 & 1072:19-25).[7]

As detailed above, Defendants did not assert that the Patents-in-Suit were invalid as claiming functional features in violation of § 171, and that issue was not submitted to the jury. (*See* D.I. 144 at 4; *see also* D.I. 141 at 25 (Final Jury Instructions on invalidity limited to prior art)). Therefore, invalidity under § 171 cannot be a basis for judgment as a matter of law now. *See, e.g.*, *Williams v. Runyon*, 130 F.3d 568, 573-74 (3d Cir. 1997) ("By failing to offer any evidence to the jury on an issue upon which he carried the burden of proof, the Postmaster effectively waived his affirmative defense. It would be gross unfairness for the Postmaster to be allowed to sit on the issue throughout a jury trial, only to revisit the issue in a post-trial motion for a judgment as a matter of law."); *Bradford-White Corp. v. Ernst & Whinney*, 872 F.2d 1153, 1161 (3d Cir. 1989) (where statute of limitations defense pleaded in answer but not substantively addressed before or at trial, defense is waived because "it would be grossly unfair to allow a plaintiff to go to the expense of trying a case only to be met by a new defense after trial").

As to invalidity under §§ 102 and 103 – issues cursorily raised in a footnote – the Court finds Defendants' argument unpersuasive. As an initial matter, the Court does not believe this argument has been properly preserved as grounds for judgment as a matter of law. *Cf. SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006) (issues only presented in footnotes are not preserved for appeal); *UCB, Inc. v. Accord Healthcare, Inc.*, 201 F. Supp. 3d 491, 542 n.33 (D. Del. 2016) ("Arguments that are presented in limited form in footnotes are entitled to little weight."), *aff'd*, 890 F.3d 1313 (Fed. Cir. 2018); *Robocast, Inc. v. Apple Inc.*,

---

[7]     The trial transcript indicates that the sidebar discussion ended after the instruction was given but, in fact, the sidebar ended prior to this instruction.

No. 11-235-RGA, 2014 WL 2622233, at *1 (D. Del. June 11, 2014) (arguments made in footnotes are disfavored). For the sake of completeness, however, the Court will also address – and reject – Defendants' argument on the merits.

The sole prior art at issue was Plaintiff's early model Tieks® ballet flat (*see* D.I. 141 at 25), and Defendants only attempted to offer evidence on invalidity based on this prior art shoe through cross-examination of Plaintiff's witnesses. Defendants were unsuccessful at eliciting testimony from Plaintiff's witnesses or otherwise convincing the jury that the patented designs were substantially the same as the early model Tieks®. *See High Point Design LLC v. Buyer's Direct, Inc.*, 621 F. App'x 632, 638 (Fed. Cir. 2015) ("Design patent anticipation requires a showing that a single prior art reference is 'identical in all material respects' to the claimed invention. In other words, the two designs must be substantially the same." (citations omitted)). Indeed, the jury was presented with substantial evidence of differences between the early model Tieks® and the designs claimed in the Patents-in-Suit. (*See, e.g.*, PTX-117C, PTX-118C, PTX-119C, PTX-120C; *see also* Tr. at 239:4-21, 289:5-291:25, 292:4-293:6, 293:20-295:13, 296:7-297:19). As to obviousness, there is no evidence in the record as to what is the level of skill of the ordinary designer in this case, nor is there evidence as to what that ordinary designer would have found obvious at the time of invention. *See Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1330 (Fed. Cir. 2012) (setting forth test for obviousness of design patent). From all of this, the jury reasonably could have found that Defendants failed to meet their burden to prove invalidity due to anticipation or obviousness by clear and convincing evidence. Moreover, Defendants have not satisfied the standard for judgment as a matter of law that applies to an issue (like this one) on which they bear the burden of proof – that is, Defendants have not demonstrated that there is "insufficient evidence for permitting any different finding." *Fireman's Fund*, 540 F.2d at 1177.

B.    Trade Dress Infringement

The Court will also deny Defendants' motion for judgment as a matter of law of no trade dress infringement.[8]  "To establish trade dress infringement under the Lanham Act, a plaintiff must prove that (1) the allegedly infringing design is non-functional; (2) the design is inherently distinctive or has acquired secondary meaning; and (3) consumers are likely to confuse the source of the plaintiff's product with that of the defendant's product."  *McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC*, 511 F.3d 350, 357 (3d Cir. 2007).  Here, the jury was presented with substantial evidence, including expert opinion, as to each of these elements for the asserted trade dress – *i.e.*, the blue peekaboo outsole in Plaintiff's Tieks® shoe.  (*See, e.g.*, Tr. at 633:17-634:4, 634:21-635:7 (Tieks® blue peekaboo outsole nonfunctional); Tr. at 410:17-411:10 & 413:1-420:18 (Tieks® blue peekaboo outsole has acquired secondary meaning); Tr. at 635:8-642:20 (Tieks® blue peekaboo outsole distinctive); Tr. at 420:24-426:14 (consumers likely to confuse the source of accused shoes with the Tieks® shoes); Tr. at 642:21-648:21 (same)).  Contrary to Defendants' arguments, Plaintiff's expert, Kenneth Hollander, did use ballet flats in his likelihood of confusion analysis (*see* Tr. at 420:24-426:14), and he (and Ms. de Baere) concluded that customers would likely confuse the source of the accused shoes and the Tieks® shoes.  And as to Defendants' argument that there was insufficient evidence of any "commercial use" to support a finding of trade dress infringement, the Court rejects that proposition.[9]  (*See* D.I. 155 at 10).

---

[8]    Defendants do not separately challenge the finding of intentional infringement.  (D.I. 144 at 5).

[9]    Defendants do not cite any case law to support the proposition that lack of commercial use of the accused products results in no liability for trade dress infringement.  Nor do they cite to any evidence in the record to support their assertions that the accused shoes "had a different shade of blue as its concept used in a few prototypes" or that customers signed disclaimers that indicated the accused shoes had no affiliation with Plaintiff.  (D.I. 155 at 10 & n.6).

Defendants at least offered for sale the accused shoes with blue outsoles (*see* Tr. at 649:8-650:12 & PTX-387), and an offer for sale of a product that is likely to cause confusion with protectable trade dress is sufficient to support trade dress infringement liability. Indeed, initial interest confusion – *i.e.*, confusion that creates initial customer interest without any sale completion – is actionable under the Lanham Act. *See McNeil Nutritionals*, 511 F.3d at 358. Thus, Defendants' motion for judgment as a matter of law of no trade dress infringement is denied.

C. <u>False Advertising and Unfair Competition</u>

Defendants' request for judgment as a matter of law of no false advertising will also be denied.[10] To prove false advertising under the Lanham Act, Plaintiff must show: (1) Defendants made false or misleading statements regarding their product, (2) a substantial portion of the intended audience tended to be or actually was deceived, (3) the deception is material in that it is likely to influence purchasing decisions, (4) the advertised product was used in interstate commerce and (5) there is likely injury to Plaintiff from fewer sales, loss of goodwill, etc. *See McNulty v. Citadel Broad. Co.*, 58 F. App'x 556, 565-66 (3d Cir. 2003); *see also* 15 U.S.C. § 1125(a). Plaintiff must also demonstrate that there is a nexus between Defendants' false statement(s) and a customer's decision to not do business with Plaintiff. *See McNulty*, 58 F. App'x at 566.

Here, Plaintiff asserted three grounds for false advertising: Defendants advertised blue-soled shoes but instead delivered black- or purple-soled shoes, Defendants falsely claimed that they "donate about one quarter of [their] profits to women or children focused non-profit organizations" and Defendants falsely advertised that their shoes were made with "full grain Nappa

---

[10]     Defendants do not separately challenge the finding of intentional false advertising. (*See* D.I. 144 at 6).

leather." The jury was presented with substantial evidence of the elements of false advertising for each of these asserted grounds. (*See, e.g.*, Tr. at 606:9-607:22, 648:22-659:17; PTX-387 at GAV0000074 (depicting split blue sole); PTX-402 (advertisement indicating Defendants "donate 5% of [their] revenues" to certain non-profit organizations); PTX-647 (same); Tr. at 794:15-806:1; PTX-387 at GAV0000074-75 (product brochure indicating shoes made with "Supple Nappa leather"); PTX-396 at GAV0001512 & GAV0001528-29 (Mr. Pichler informing customers the leather is "full grain" or "full grain nappa" leather); *see also* Tr. at 522:14-523:2 & 537:3-538:5 (Mr. Pichler testifying that the accused shoes were initially sold with blue soles, that no money has been given to non-profit organizations and that he does not know type of leather used in accused shoes)).

Defendants nevertheless assert that there was insufficient evidence to support the verdict as to the "full grain Nappa leather" advertising because there was no "proof" that Plaintiff analyzed a commercial product, as opposed to a prototype. (*See* D.I. 155 at 9). Yet Plaintiff's expert was able to analyze shoes purchased directly from Defendants' Kickstarter campaign,[11] and that expert concluded, *inter alia*, the shoe was not made with full grain leather, as advertised. (*See* Tr. at 794:15-799:9). That the shoes were purchased on the Kickstarter campaign is sufficient to show the use in commerce element of false advertising. As to Defendants' arguments that the claims about donating revenue to charity were simply "aspirational" (*see* D.I. 155 at 9-10), the Court is unpersuaded. Defendants' advertisements stated: "[w]e donate 5% of our revenues (about one quarter of our profits) to women or children focused non-profit organizations." (PTX-402; *see also* PTX-647). The jury was entitled to draw its own inferences based on that language, including

---

[11] Defendants never challenge the assertion that Plaintiff's counsel was able to obtain this product from the Kickstarter campaign.

that such donations were already underway and important in attracting prospective purchasers. (*See, e.g.*, Tr. at 650:13-652:1).

Thus, Defendants are not entitled to judgment as a matter of law of no false advertising. Additionally, the parties stipulated that Defendants' liability for unfair competition would be decided based on the jury's findings for false advertising – and the jury was instructed accordingly. (*See* D.I. 141 at 48; *see also* D.I. 144 at 7). Because the jury's verdict of false advertising will stand, Defendants are liable for unfair competition as well.

D.      Personal Liability of Thomas Pichler

Defendants dedicate a substantial portion of their motion for judgment as a matter of law to arguing that Mr. Pichler should not be held personally liable in his individual capacity. (*See* D.I. 155 at 1-5). The Court determined that Mr. Pichler was a proper party in this case when ruling on Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(2). (*See* D.I. 29, 30, 32, 33, 36, 37, 38, 86, 87, 92). Contrary to Defendants' argument, the Court did not decline to dismiss Mr. Pichler individually "without explanation." (D.I. 155 at 2; *see also id.* at 2 n.3 ("The Court's February 11, 2019 Minute Entry states only as follows—in full—concerning Defendant Pichler's requested dismissal: 'The Court will DENY the Motion to Dismiss as to defendant Thomas Pichler . . . .")). At the conclusion of the February 11, 2019 argument, the Court read its ruling from the bench, along with the accompanying reasoning, all of which appears on the record in this case. (*See* D.I. 108). In making that ruling, the Court carefully reviewed all evidence submitted by both sides and ultimately found that Mr. Pichler could be held personally liable under both an alter ego and agency theory. (*See id.* at 31:19-36:10). Mr. Pichler never requested reargument or reconsideration of that ruling.

Moreover, and more importantly, Defendants never raised the issue of Mr. Pichler's personal liability at any point during the final pretrial conference or anywhere in the Final Pretrial Order, which can only be amended to prevent manifest injustice. (*See* D.I. 119, 128). There is nothing in Defendants' statement of remaining issues of fact or law that goes to the issue of Mr. Pichler's liability. When Defendants' counsel attempted to raise this issue during trial, the Court specifically expressed its opinion that the issue had been waived because it was not included in the Final Pretrial Order. (*See* Tr. at 270:21-271:9, 476:16-477:4). The Court nevertheless provided Defendants with an opportunity to show in their post-trial papers why the issue had not been waived for failure to include it in the Final Pretrial Order. (*See id.* at 477:13-15). Defendants' brief is silent on this point, instead simply attempting to argue the merits of the personal liability issue. Defendants have failed to convince the Court that the personal liability of Mr. Pichler has been preserved given its omission from the Final Pretrial Order. *See, e.g., Babby v. City of Wilmington Dep't of Police*, 614 F. Supp. 2d 508, 510-11 (D. Del. 2009) ("Legal theories and issues not raised in the pretrial order are considered waived."). Thus, Defendants' motion for judgment as a matter of law of no personal liability for Mr. Pichler is denied.

E.    Damages

Defendants also argue that the jury's award of damages was "so inordinately high" that it lacked a "sufficient evidentiary basis" and, therefore, the award cannot stand. (D.I. 155 at 11). The Court disagrees. The Court may reduce the damages verdict only if "it is so grossly excessive that it shocks the judicial conscience[] or if it is unconstitutionally excessive because it is predicated on an impermissible basis." *Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, 391-92 (3d Cir. 2016) (citations omitted).

Defendants first argue that Mr. Pichler testified that "Soto-USA earned less than ZERO profits" and therefore the $880,658 award of lost profits cannot stand. (D.I. 155 at 11 & 11 n.7). Plaintiff offered evidence that this figure captured the amount that Defendants received from sales of the accused shoes on Kickstarter, Indiegogo and Shopify, minus the costs that Plaintiff's expert could determine from bank statements. (*See, e.g.*, Tr. at 827:18-833:9, 842:15-844:15; *see also* PTX-1013 at SM001825-78). Defendants, however, did not produce any documents to support Mr. Pichler's testimony that there were no profits from sales of the accused shoes. Nor did Defendants introduce any evidence of additional costs incurred by Defendants that would reduce the lost profits number. *See* 15 U.S.C. § 1117(a) ("In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed."). The only evidence that Defendants provided was Mr. Pichler's testimony and assessing the credibility of witnesses is left to the jury. *See Lightning Lube*, 4 F.3d at 1166. The Court will not disturb the damages verdict as it pertains to lost profits.

Defendants next argue that the damages award of $1,282,000 for loss of goodwill caused by trade dress infringement and false advertising is "exorbitant," and that such an award cannot stand because only a few blue-soled prototypes were sold and the false statements about leather and "charitable aspirations" were "so de minimis." (D.I. 155 at 11). Defendants cite no record evidence or case law supporting their argument that these acts are "de minimis" or that, even if true, the award should be reduced. Plaintiff, however, offered substantial evidence to the jury that the loss of goodwill suffered from Defendants' acts was significant – *i.e.*, that the loss exceeded $5,000,000. (*See* Tr. at 833:10-840:9; *see also* Tr. at 653:23-659:17; PTX-371, PTX-372, PTX-373, PTX-374, PTX-378, PTX-380, PTX-109, PTX-112).[12] Although Defendants offered no

---

[12]     These PTX exhibits were all admitted into evidence without objection by Defendants.

expert on damages, they attempted to cast doubt on the extent of this damage and how much was attributable to Defendants' actions through cross-examination of Plaintiff's expert. (*See, e.g.*, Tr. at 860:2-862:19). The jury ultimately found that the loss of goodwill suffered was less significant than Plaintiff contended, but the $1,282,000 damages award is grounded in the evidence presented at trial. The Court declines to reduce the award.

Finally, Defendants argue that the jury award of $790,000 for corrective advertising is "wildly disproportionate to the extent of actual liability." (D.I. 155 at 11). Yet again, Defendants cite nothing in the record and no cases to support their proposition. At trial, Plaintiff presented the jury with substantial testimony regarding the damage Plaintiff incurred from Defendants' acts and the amount of advertising necessary to correct the damage. (*See, e.g.*, Tr. at 840:10-842:14, 844:16-845:8; PTX-263 at GAV0046089 (cost to acquire customer compared to retaining one); *see also* Tr. at 648:22-653:22; Tr. at 241:13-243:11 (substantial amount of money spent on Tieks® advertisements generally)). Using two different methodologies, Plaintiff's expert calculated values for corrective advertising, ultimately opining that corrective advertising would exceed $3,100,000 in this case. (*See, e.g.*, Tr. at 840:10-842:14). Defendants did not offer any competing expert testimony at trial, instead relying again on cross-examination of Plaintiff's expert to question the number. (*See, e.g.*, *id.* at 860:2-862:19). And the jury ultimately awarded a number for corrective advertising that was lower than what Plaintiff's expert calculated. But, as above with loss of goodwill, the award was still tethered to the record and the Court will not disturb it.

In sum, Defendants have failed to persuade the Court that any portion of the jury's damages award lacks a sufficient evidentiary basis, shocks the Court's judicial conscience or is otherwise constitutionally excessive. *See Leonard*, 834 F.3d at 391-92.

F.      New Trial

For each of the above issues apart from Mr. Pichler's personal liability, Defendants request a new trial in the alternative. (*See* D.I. 155 at 8, 9, 10, 11). Although not always clearly articulated, Defendants' request for a new trial is apparently based on the argument that the jury's verdict was against the weight of the evidence. In connection with Defendants' request for judgment as a matter of law, the Court has already found that substantial evidence supports the jury verdict on each of the asserted causes of action. For the same reasons, the Court concludes that the jury's verdict was not against the weight of the evidence, even without viewing the evidence most favorably to Plaintiff. That is, Defendants have failed to show that "a miscarriage of justice would result if the verdict were to stand," that the verdict "cries out to be overturned" or that the verdict "shocks [the] conscience." *Williamson*, 926 F.2d at 1352-53. Therefore, Defendants' motion for a new trial is denied.

G.      Plaintiff's Requests for Permanent Injunction, Enhanced Damages and Pre- and Post-Judgment Interest

Plaintiff requests that the Court permanently enjoin Defendants and their successors from future patent and trade dress infringement. (D.I. 153 at 13-17; *see also* D.I. 152-1 at pg. 3 of 5). As to patent infringement, Plaintiff seeks a permanent injunction that prohibits Defendants and their successors from directly or indirectly infringing the Patents-in-Suit by manufacturing, using, selling or offering to sell in the United States, as well as importing into the United States, the accused shoes and any products "not more than colorably different" than the accused shoes (or with feature(s) not more colorably different than the infringing feature(s)). (*See* D.I. 152-1 at pg. 3 of 5). As to trade dress infringement, Plaintiff asks that the Court enjoin Defendants and their successors from directly or indirectly infringing the Tieks® trade dress by "making, advertising, selling, or offering to sell, both within and outside of the United States, or importing into the United

States" the accused shoes. (*Id.*). Additionally, Plaintiff requests that the Court: (1) seize any remaining inventory of the accused shoes and materials used to manufacture those shoes, (2) order Defendants to take down and/or destroy remaining online or printed marketing materials related to the accused shoes, (3) require Defendants to surrender any molds used to create the outsoles for the accused shoes, (4) enjoin foreign acts of trade dress infringement, (5) order Defendants to distribute corrective notices to their customers. (D.I. 153 at 14-17; *see also* D.I. 152-1).

Defendants do not oppose much of the requested injunctive relief and, in fact, agree to stipulate to a permanent injunction if liability is upheld. (*See* D.I. 156 at 1 ("If this Court upholds the findings of design patent infringement and/or trade dress infringement, then Defendants would stipulate to a permanent injunction.")). Indeed, as Plaintiff points out, Defendants apparently only take issue with what products are subject to the injunction. (*See* D.I. 158 at 3; *see also* D.I. 156 at 2-4). As to Defendants' issue with the "not colorably different" language in the patent-related provision, the Court finds that language is appropriate. The Federal Circuit has made clear that the "colorable differences" test is the proper one for determining whether a newly accused product violates a prohibition on continued infringement by a product already adjudged to be infringing. *See TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869, 881-82 (Fed. Cir. 2011); *see also United Constr. Prod., Inc. v. Tile Tech, Inc.*, 843 F.3d 1363, 1372 (Fed. Cir. 2016). But the Court agrees with Defendants' argument that the provision relating to trade dress infringement is overly broad. Although Plaintiff's trade dress requires a blue outsole, the evidence presented at trial clearly shows that some accused shoes have no blue outsole whatsoever. Plaintiff nevertheless requests that the Court permanently enjoin trade dress infringement based on certain activities relating to the accused shoes regardless of outsole color. (*See* D.I. 152-1 at pg. 3 of 5). Given that Defendants agree to a permanent injunction and the Court has now resolved the only disputes over the scope

of the injunction, the parties shall meet and confer and submit agreed-upon language regarding a permanent injunction in this case.[13]

Plaintiff also requests that the Court enhance damages awarded under § 35(a) of the Lanham Act for two reasons. *See* 15 U.S.C. § 1117(a) ("In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount."). First, Plaintiff argues that the intentional nature of Defendants' trade dress infringement, false advertising and unfair competition "alone warrant[s]" enhanced damages. (*See* D.I. 153 at 26-27). Second, Plaintiff argues that Defendants intentionally failed to produce complete and reliable sales records for the accused shoes and the Court should enhance damages to compensate for that failure. (*See id.* at 27-28). The Court may – in its discretion – enhance damages under § 35(a) of the Lanham Act to ensure that Plaintiff is fully compensated for its injuries under the Lanham Act. *See, e.g.*, *Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1114 (9th Cir. 2012). Enhanced damages are not, however, used to penalize or otherwise punish Defendants. *Id.*

The Court is not persuaded that enhancement of damages is warranted in this case. Contrary to Plaintiff's argument, that the jury found Defendants' actions to be intentional does not necessarily mean that enhancement of damages under the Lanham Act follows. In the Court's view, this is not sufficient on its own to warrant enhanced damages. Indeed, if that were true, every case involving intentional conduct under the Lanham Act would result in enhanced damages. And as to Plaintiff's argument about Defendants' failure to produce more reliable sales data, the Court finds this to be an insufficient reason to enhance damages in this case. Defendants did

---

[13]     The Court expects the injunction to include provisions consistent with items that Defendants did not oppose – *e.g.*, Defendants shall certify destruction of any remaining inventory of the accused shoes and materials used to manufacture the shoes, etc.

produce bank statements and Plaintiff's expert was able to use those statements to estimate net sales from the accused shoes. (*See supra* § III.E). Plaintiff has not articulated how Defendants' failure to produce additional sales data calls into question the amount of compensatory damages awarded by the jury – an amount totaling $2,952,658. Indeed, having reviewed the entire trial record and given the apparently limited duration of Defendants' conduct, the Court sees no reason to conclude that the amount awarded does not adequately compensate Plaintiff. Thus, the Court declines to exercise its discretion to enhance damages.

Plaintiff requests prejudgment interest for the patent-infringement damages, as well as the damages awarded for trade dress infringement, false advertising and unfair competition. (*See* D.I. 153 at 28-30). In particular, Plaintiff requests $58,582 prejudgment interest on the patent damages and $196,414 prejudgment interest on the non-patent damages – sums both calculated at the prime rate and compounded quarterly. (*Id.* at 30). Defendants do not actually oppose prejudgment interest, instead merely stating that they "entrust any additional amounts of interest to this Court's sound discretion." (D.I. 156 at 6). The Court finds that prejudgment interest compounded quarterly at the prime rate is reasonable in this case. *See, e.g.*, *In re Frescati Shipping Co.*, 886 F.3d 291, 315 (3d Cir. 2018) (district court within its discretion to award pre-judgment interest at the prime rate or post-judgment rate prescribed by 28 U.S.C. § 1961(a)); *Taxman v. Bd. of Educ. of Twp. of Piscataway*, 91 F.3d 1547, 1566 (3d Cir. 1996) ("The adjusted prime rate, established periodically by the Secretary of the Treasury and codified in 26 U.S.C. § 6621, has been used regularly by district courts to calculate prejudgment interest."); *see also Amgen Inc. v. Hospira, Inc.*, 336 F. Supp. 3d 333, 364 (D. Del. 2018) (for patent damages, awarding prejudgment interest at the prime rate compounded quarterly), *aff'd*, 944 F.3d 1327 (Fed. Cir. 2019). The

judgment shall be amended accordingly to include $58,582 prejudgment interest on the patent damages and $137,832 on the non-patent damages, totaling $196,414 in prejudgment interest.

Finally, post-judgment interest is mandatory for damages awarded in civil cases. *See* 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court."). Defendants do not dispute this, nor do they dispute the daily amount of post-judgment interest calculated by Plaintiff. (*See* D.I. 153 (post-judgment interest at 2.36%, totaling $203.61 per day); *see also* D.I. 154 at Schedule 3). And, as required by § 1961(a), the rate used by Plaintiff is the weekly average one-year constant maturity Treasury yield for the week preceding entry of judgment. (*see also* D.I. 154 ¶ 9; *see also id.* at Schedule 3). Therefore, Plaintiff shall be awarded post-judgment interest calculated using that daily rate and starting from the date judgment on the jury verdict was entered. (*See* D.I. 149 at 3). The judgment shall be amended accordingly.

### H.     Plaintiff's Request for Attorneys' Fees

Plaintiff argues that this case has been exceptional within the meaning of the Lanham Act and that it should be awarded attorneys' fees pursuant to 15 U.S.C. § 1117(a).[14] (*See* D.I. 153 at 18-25). Plaintiff also requests that the Court invoke its inherent authority to award attorneys' fees as a sanction for what it refers to as Defendants' bad faith conduct. (*See* D.I. 153 at 25-26).

The Court first addresses Plaintiff's request for attorneys' fees under the Lanham Act. As with the Patent Act, the Lanham Act provides that the Court may award reasonable attorneys' fees in exceptional cases. *Compare* 15 U.S.C. § 1117(a), *with* 35 U.S.C. § 285. The Third Circuit has held that the *Octane Fitness* framework for exceptionality and attorneys' fees under the Patent Act

---

[14]     Plaintiff has not requested attorneys' fees under the Patent Act. Although § 285 is cited in Plaintiff's brief at the conclusion of the attorneys' fees section (*see* D.I. 153 at 26), there is no discussion of attorneys' fees or exceptionality related to the patent infringement asserted in this case. The Court considers Plaintiff's request for attorneys' fees based on an exceptional case finding to be limited to the Lanham Act.

applies equally to claims arising under the Lanham Act. *See Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 314-15 (3d Cir. 2014) ("We therefore import *Octane Fitness*'s definition of 'exceptionality' into our interpretation of § 35(a) of the Lanham Act."). "Under *Octane Fitness*, a district court may find a case 'exceptional,' and therefore award fees to the prevailing party, when (a) there is an unusual discrepancy in the merits of the positions taken by the parties or (b) the losing party has litigated the case in an 'unreasonable manner.'" *Id.* at 315; *see also Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014) ("[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."). Whether a case is exceptional is a question committed to the Court's discretion, and the Court must consider the totality of the circumstances in reaching its conclusion. *Octane Fitness*, 572 U.S. at 554. A party seeking attorneys' fees must show the case is exceptional by a preponderance of the evidence. *Id.* at 557-58. The Court may award attorneys' fees in "the rare case in which a party's unreasonable conduct – while not necessarily independently sanctionable – is nonetheless so 'exceptional' as to justify an award of fees." *Id.* at 555.

Plaintiff first argues that the intentional nature of Defendants' trade dress infringement, false advertising and unfair competition alone renders this case exceptional. (D.I. 153 at 18-19). The Court disagrees. Because the Third Circuit has made clear that the *Octane Fitness* framework applies equally to claims of exceptionality under the Lanham Act, the Court looks to the patent context for guidance on this issue. That a defendant's patent infringement is found to be willful does not automatically result in an exceptional case finding. *See Stryker Corp. v. Zimmer, Inc.*, 837 F.3d 1268, 1279 (Fed. Cir. 2016) ("Though we uphold the district court's willfulness

determination, it does not necessarily follow that the case is exceptional."). As with willfulness and exceptionality in the patent context, the Court does not believe a case involving the Lanham Act necessarily becomes exceptional where there is intentional or willful conduct. The Court must instead examine the totality of the circumstances to evaluate whether the strength of Defendants' litigation positions was unusually weak compared to Plaintiff's, as well as whether Defendants litigated in the present case in an unreasonable manner. *See Fair Wind*, 764 F.3d at 315.

Plaintiff argues there was, in fact, "unusual disparity between the parties' litigation positions" and that Defendants litigated this case in an unreasonable manner. (D.I. 153 at 19, 21). In particular, Plaintiff argues that Defendants failed to "present any defenses whatsoever" to the Lanham Act claims and, further, that Defendants asserted counterclaims that "they knew were factually baseless" and barred by California's litigation privilege. (*Id.* at 19 & 21). And as to unreasonable litigation tactics, Plaintiff points to numerous purportedly false assertions made by Mr. Pichler throughout the course of these proceedings, dubious positions on whether certain critical documents existed, repeated and significant discovery failures and many late (and surprise) disclosures made during pretrial exchanges and during trial that seriously hampered Plaintiff's ability to try its case. (*See id.* at 21-25).

As an initial matter, the Court does not agree that there was unusual disparity in the merits of Defendants' litigation positions as compared to Plaintiff's. Despite Plaintiff's argument to the contrary (*see* D.I. 153 at 25), Defendants tried to defend against the Lanham Act claims – *e.g.*, attempting to elicit testimony (albeit unsuccessfully) that the accused shoe did not use the same blue color as the Tieks® trade dress.[15] (*See, e.g.*, Tr. at 722:2-726:25). Nevertheless, the Court

---

[15]     To the extent that Plaintiff is suggesting that Defendants **must** present affirmative (or other) defenses against the Lanham Act claims, the Court rejects such a proposition. A defendant

ultimately agrees that Defendants conducted this litigation in an unreasonable manner. Indeed, the Court is particularly troubled by the number of unreasonable litigation tactics used by Defendants in the present case. There are various examples of discovery deficiencies, questionable assertions made by Mr. Pichler, prejudicially late disclosures, surprise requests at trial and improper arguments at trial. (*See, e.g.*, D.I. 108 at 37:13-25; D.I. 118; Tr. at 222:2-226:12, 270:21-271:4, 459:5-460:16, 476:16-26, 478:8-19, 749:9-750:16, 1065:5-1068:9). Particularly egregious in the Court's view were Defendants' assertions of certain counterclaims that Mr. Pichler testified were apparently baseless and the attempt to try patent invalidity by surprise, which are set forth in more detail below.

Defendants attempted to assert counterclaims of unfair competition based on Plaintiff allegedly paying for positive product reviews and false advertising on the basis that Tieks® were not made with Italian leather. (*See* D.I. 45 ¶¶ 46-63 (federal and state law counterclaims for false advertising), ¶¶ 64-67 (unfair competition counterclaim); *see also id.* ¶¶ 10-26). Mr. Pichler – the only employee of Soto USA – testified at his deposition that he had no reason to believe Plaintiff pays for positive product reviews or that Tieks® were not made with Italian leather and, further, that he had no idea why those counterclaims were asserted. (*See* D.I. 153, Ex. E at 299:22-300:1, 302:10-17; *see also id.* at 301:10-17). Although Plaintiff argues the same was true for the other counterclaims that were ultimately dismissed by the Court, Mr. Pichler's testimony seems more equivocal as to whether those counterclaims were baseless. Yet his testimony that the counterclaims for false advertising and unfair competition were baseless is concerning enough.

---

is certainly within its rights to defend against a claim in litigation by simply arguing that the plaintiff has failed to meet its burden of proof on that claim.

Similarly, Defendants' habitually late and surprise disclosures were prejudicial, unreasonable and warrant further comment, particularly as to the patent-related litigation. Defendants asserted various pieces of prior art in opposing Plaintiff's request for a temporary restraining order and preliminary injunction but nearly all of that prior art was subsequently dropped in Defendants' invalidity contentions. (*See* D.I. 126, Ex. 1 (Defendants' invalidity contentions)). Plaintiff relied on that art being omitted from the invalidity contentions, (reasonably) believing the invalidity defenses to be limited to Plaintiff's early model Tieks® flat and obvious-type double patenting. Then, in their pretrial disclosures, Defendants added numerous prior art theories that were apparently never disclosed or apparently had been withdrawn. Plaintiff was forced to file a motion *in limine* to preclude Defendants from using prior art not fairly disclosed, a motion the Court granted. (*See* D.I. 127 at 3-4; *see also* D.I. 121 (ordering Defendants to describe where apparently new prior art was fairly disclosed); D.I. 126 (Defendants' largely unhelpful response with substantial argument that the Court should just take judicial notice of new prior art)). Then, at the end of the second day of trial, Defendants raised for the first time a request for *Markman* proceedings. (Tr. at 459:5-460:16). Noting the issue had likely been waived because it was omitted from the Final Pretrial Order, the Court nonetheless provided Defendants with an opportunity to present any *Markman* issues that, in their view, required resolution before the case went to the jury. (*Id.* at 462:19-464:1). In the very next sentence, the Court warned Defendants that they had repeatedly raised issues not included in the Final Pretrial Order and that the Court was willing to exercise its discretion to stop the "trial by surprise." (*Id.* at 464:2-10). It did not stop. As just one example, described in detail above, Defendants attempted to sneak in a theory of invalidity under § 171, failed to submit a proposed instruction even when given permission to do so, improperly argued to the jury in closing that the Patents-in-Suit were invalid under § 171

and then dedicated a substantial portion of their post-trial motion for judgment as a matter of law to invalidity under § 171. (*See supra* § III.A). Such litigation tactics are unacceptable.

Thus, in light of the totality of the circumstances, the Court finds this case to be exceptional based on the unreasonable manner used by Defendants to litigate this case. That being said, the Court will not award attorneys' fees for the entirety of the litigation. Indeed, despite finding the present case to be exceptional, the Court need not award any fees at all. *See Icon Health & Fitness, Inc. v. Octane Fitness, LLC*, 576 F. App'x 1002, 1005 (Fed. Cir. 2014) ("The Supreme Court's decision in *Octane* did not, however, revoke the discretion of a district court to deny fee awards even in exceptional cases."). The decision to award limited fees derives in part from the Court's inability to determine whether the unreasonable manner in which this case was litigated is attributable to Defendants or to Defendants' counsel. This decision also derives in part from the fact that Defendants will almost certainly fail to satisfy the monetary award in this case, even without an award of attorneys' fees. (*See, e.g.*, Tr. at 932:15-21). And finally, the decision takes into account that the Court does not believe that Plaintiff is without blame for the price tag it bears for this litigation. Plaintiff over-litigated this case. Plaintiff is a large and sophisticated company, whereas Defendants are a small start-up company and an engineer turned footwear designer in his individual capacity. Although Plaintiff is certainly entitled to enforce its intellectual property rights and pursue litigation, the Court believes some of the fees incurred by Plaintiff could have been avoided. For example, Plaintiff presented testimony from eleven witnesses at trial, including four experts, whereas Defendants called only Mr. Pichler and no experts. And this over-litigation was not limited to trial. Less than a month after post-trial briefing was completed, Plaintiff attempted to initiate post-judgment discovery from Defendants. (*See, e.g.*, D.I. 161, 162, 163). The Court understands Plaintiff's concerns that Mr. Pichler would leave the country, but that

concern does not necessitate an onslaught of discovery and attempting to bring the resultant discovery dispute to the Court before the Court could rule on the post-trial motions. Therefore, in its discretion, the Court will award attorneys' fees under an exceptional case finding only for the most egregious actions by Defendants. Plaintiff may thus recover its reasonable attorneys' fees incurred in connection with the following: Plaintiff's motions to dismiss Defendants' counterclaims (D.I. 34, 89), Plaintiff's motion *in limine* to preclude prior art not fairly disclosed (*see, e.g.*, D.I. 119, Ex. 12 at pgs. 12-15), Plaintiff's supplementation of the Final Pretrial Order in response to Defendants' untimely disclosures (D.I. 118) and any preparation Plaintiff may have undertaken during trial in connection with Defendants' withdrawn request for *Markman* proceedings.

Within fourteen days, Plaintiff shall submit to the Court an accounting of its attorneys' fees in connection with briefing or other litigation activity related to the limited conduct just described, along with supporting evidence. And to be clear, the Court will not award Plaintiff its fees incurred in connection with briefing the motion for fees or tabulating those fees, at least in part because a fee amount or estimate should already have been provided.[16]

Turning to Plaintiff's request for attorneys' fees pursuant to the Court's inherent authority (D.I. 153 at 25-26), the Court declines to award additional fees under this theory. An award of attorneys' fees pursuant to the Court's inherent authority requires a finding of bad faith. *See Landon v. Hunt*, 938 F.2d 450, 454 (3d Cir. 1991); *see also Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-59 (1975) (attorneys' fees may be assessed against a losing party that acted in bad faith, vexatiously, wantonly or for oppressive reasons). Plaintiff's request

---

[16]     In its motion, Plaintiff was required to "state the amount sought or provide a fair estimate of it." FED. R. CIV. P. 54(d)(2)(B)(iii). Plaintiff failed to do so.

for attorneys' fees pursuant to the Court's inherent authority is based on the same arguments and conduct relied upon for the exceptional case fees under the Lanham Act. The Court has already found this case to be exceptional and will award certain attorneys' fees based on the most egregious conduct by Defendants, as set forth above. In the Court's view, adding further attorneys' fees is not warranted. And as for the other parts of the litigation, the Court is not persuaded that Defendants acted in bad faith, vexatiously, wantonly or for oppressive reasons. Thus, the Court declines to award additional attorneys' fees under its inherent authority.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' renewed motion for judgment as a matter of law or, in the alternative, for a new trial (D.I. 155) is DENIED and Plaintiff's motion for a permanent injunction, attorneys' fees, enhanced damages and pre- and post-judgment interest (D.I. 152) is GRANTED-IN-PART and DENIED-IN-PART. An appropriate order will follow.